# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Mail Room**

FEB 2 2 2010

United States Court of Appeals
District of Columbia Circuit

Case No.: 09-7034

Lower Court Case No. 02-2216(RMU)

# TATE v. DISTRICT OF COLUMBIA
## 601 F. Supp. 2d 132

# APPELLANT'S BRIEF

**Date of oral argument**

**Christine A. Tate**
**Plaintiff/Appellant, pro se**
**P.O. Box 9451**
**Washington, DC 20016-9451**
**202-286-175**
**catdcmesl@hotmail.com**

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
## BRIEF OF APPELLANT
## CONTENTS

Page

TABLE OF AUTHORITIES                                                    i

GLOSSARY OF ABBREVIATIONS                                              ii

CERTIFICATE AS TO PARTIES                                             iii

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION                  iv

I.      INTRODUCTION                                                    1

II.     JURISDICTIONAL STATEMENT                                        1

III.    STATUTES AND REGULATIONS                                        2

IV.     STANDARD OF REVIEW                                              2

V.      STATEMENT OF ISSUES                                             3

VI.     STATEMENT OF FACTS                                              4

VII.    SUMMARY OF ARGUMENTS
        **A.** DISTRICT COURT ERRED WHEN IT RULED THAT THERE ARE NO    12
        GENUINE ISSUES AS TO MATERIAL FACT AND THE DISTRICT OF
        COLUMBIA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.
            1.  Dispute about whether, when and how Plaintiff received "proper" notice    13
                that her car was to be sold at auction as an "abandoned" vehicle.
            2.  Dispute about outcome of May 29, 2002 hearing, whether stay was granted   17
                and whether Blue Plains fees were waived.
            3.  Material unresolved questions about the legitimacy of boot and            20
                impoundment under D.C. Code, policies and procedures and possible
                misapplied or unapplied payments.

        **B.** DISTRICT COURT **DID** NOT FULLY CONSIDER PLAINTIFF'S FOURTH              22
        AMENDMENT CLAIMS.
            1.  District court erroneously held in that District Code permits seizure for 2    24
                outstanding tickets and plaintiff had 2 outstanding tickets therefore "no
                reasonable jury could find that the District's impoundment of the car was
                unreasonable under the **Fourth** Amendment."
            2.  District court erroneously held that because the authority of police to seize  25
                and remove from the streets vehicles impeding traffic or threatening public
                safety and convenience is beyond Fourth Amendment challenge, Plaintiff
                has provided no basis for declaratory judgment.

3.  Facial challenge of D.C. Code § 50-2201.03(k)(1) would serve the purpose    26
    of preventing prosecutions under a constitutionally defective standard.
4.  Court did not address Plaintiffs Fourth Amendment "as applied" claim    28
    with regard to D.C. Code §50-2623.
5.  This is not a civil forfeiture case, vehicle was not an instrument of criminal    29
    activity.

C.  DISTRICT COURT **DID** NOT FULLY CONSIDER PLAINTIFF'S  FIFTH    29
AMENDMENT CLAIMS
    1.  As a matter of law, Plaintiff can prevail on her claim of Taking of Property    29
        Without Just Compensation.
    2.  This is not a civil forfeiture case, vehicle was not an instrument of criminal    32
        activity.
    3.  District Deprived Plaintiff of Property Without Due Process of Law    32
    4.  Violation of Right to Equal Protection.    33

D.  PRO SE PLAINTIFF **DID** NOT CONCEDE COMMON LAW CLAIMS
    1.  Conversion (Count VI)    36
    2.  Promissory Estoppel (Count VII)    37
    3.  Negligent Misrepresentation (Count VIII)    38
    4.  Unjust Enrichment (Count IX)    39
    5.  Intentional and Reckless Infliction of Emotional Distress (Count X)    40

E. DISTRICT OF COLUMBIA'S BLANKET TICKET AMNESTY PROGRAM    40
VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.
                                                                          42

**VIII.  CONCLUSION**

**ADDENDUM – D.C. STATUTES**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
BRIEF OF APPELLANT
TABLE OF AUTHORITIES

**Case Law**                                                                 Page Ref.

*Anderson  v. Liberty Lobby, Inc.,* 477 **U.S.** 242, 106 S. Ct. 2505, 91 L Ed. 2d 202        2, 3, 18
                                                                                          12

*Appley v. West,* 832 F.2d 1021 (7th Ctr.)
*Bennis v. Michigan,* 516 U.S. 442, 116 S. Ct. 994, 134 L **Ed.** 2d 68        26, 29, 32
                                                                                  27
*Brockington v. Rhodes,* 396 U.S. 41, 90 S. Ct. 206, 24 L Ed. 2d **209**        12

*Canada  v. Blain's Helicopters, Inc.,*  831 F.2d 920 (9th Ctr.)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 91 **L** Ed. 2d 265, 106 S. Ct. 2548        2, 3, 12, 18, 19

*Central Kentucky **Production** Credit Ass'n v. U.S.,* 846 F.2d 1460 (DC Cir)        27
                                                                                  24
*Cooper v. California,* 386 U.S. 58, 87 S. Ct. 788, 17 L **Ed.** 2d 730
*Daskalea v District of Columbia,* 227 F. 3d 433 (DC Cir)        40

*Diamond v. Atwood,* 43 F.3d 1538 (DC Cir)        2

*Esmail v. Macrane,* 52 F.3d 176        36

*Gorman v. Wolpoff & Abramson, LLP,* 552 F.3d 1008 (9th Ctr.)        12, 25

*Greene v.  Dalton* 164 F. 3d 671,675 (DC Cir)        2, 3, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 **US** 574, 106 S. Ct. 1348, 89 L **Ed.** 2d 538        3

*Miranda. City of Cornelius,* 429 **F.** 3d 858 (9th Cir.)        24, 25, 26, 29, 32

*Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013 (11th Ctr.)        13

*Rollins v. TechSouth, Inc.,* 833 F.2d 1525 (11th Ctr)        13

Schail v. Martin, 467 **US** 253        27

*School District of Hatboro-Horhsam v. Alexander,* 981 F. 2d 1265 (DC Cir )        2

*Sibron v. New York,*  392 **U.S.** 40, 88 S. Ct. 1889, 20 L Ed. 2d 917        24

*Soldal v. Cook County,* 506 **US.** 56, 113 S. Ct. 538, 121 L Ed. 2d 450        24, 23

i    (1 of 2)

\* *South Dakota v. Opperman*, 428 U.S. 364 — 25, 26

*United States v. Proctor*, 489 F.3d 1348 (DC Cir) — 25

\* *Village of Willowbrook v. Olech*, 120 S.Ct. 1073, 58 U.S. 562, 145 L Ed. 2d 1060 — 36

*White v. Baxter Healthcare Corporation*, 533 F.3d 381 (6th Ctr.) — 13

**United States Constitution**
\* Fourth Amendment — 22–29
\* Fifth Amendment — 29–36

**Statutes**
28 U.S.C. §1291 — 2
28 U.S.C. §1331 — 1
28 U.S.C. §1343 — 1
28 U.S.C. §1367 — 1
42 U.S.C. §1983 — 1
42 U.S.C. §1985 — 1
42 U.S.C. §1986 — 1
42 U.S.C. §1988 — 1
\* D.C. Act 14-413 — 11, 40–42
\* D.C. Code § 50-2201.03(k) — 6, 22, 23, 24, 26, 27
D.C. Code § 50-2201.03(k) (as zmended) — 6, 22, 26, 27
\* D.C. Code §50-2303.5(d) — 5, 20, 21
\* D.C. Code § 50-2401(1)(E) — 7, 14, 17
\* D.C. Code §50-2402 — 7, 40, 9, 14, 15, 17, 29, 33, 37
\* D.C. Code §50-2602(6)  See DC code 50-2401(1)(E)
\* D.C. Code §§50-2622 (repealed) — 7, 8, 15, 16, 17, 29, 33, 37, 46
\* D.C. Code §50-2623 (repealed) — 14, 23, 25, 29, 30–33

\* Authorities on which the brief principally relies are marked with asterisks.

i (2 OF 2

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
### BRIEF OF APPELLANT

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **Am· Compl.** | First Amended Complaint |
| **D.C. or DC** | District of Columbia |
| **Decl.** | Declaration |
| **Def.'s Mem. Pts. Auth.** | District of Columbia's Memorandum of Points and Authorities in support of Defendant's Motion for Summary Judgment |
| **Def.'s Mot. Summ. J.** | District of Columbia's Motion for Summary Judgment |
| **Def.'s Stmt.** | District of Columbia's Statement of Material Fact in support of Defendant's Motion for Summary Judgment |
| **DMV** | District of Columbia's Department of Motor Vehicles |
| **DPW** | District of Columbia's Department of Public Works |
| **Ex.** | Exhibit or exhibits |
| **HR** | Administrative Hearing |
| **Mem. Opn.** | District Court's Memorandum Opinion Granting Defendant's Motion for Summary Judgment |
| **MPD** | District of Columbia's Metropolitan Police Department |
| **NOI** | Notice of Infraction |
| **P·** | Page or pages |
| **Pl. 1st Adm.** | Plaintiffs First Set of Requests for Admission entered into the record on May 3,2005 |
| **Pl.** Opp. or **Pl.'s** Opp. | Plaintiffs Opposition to Defendant's Motion for Summary Judgment |

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
## BRIEF OF APPELLANT
## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

*1.  Parties and Amici:*

Christine A. Tate, Plaintiff/Appellant

Matthew Reinhard, Miller & Chevalier, Court-appointed Amicus Curiae

District of Columbia, Defendant/Appellee    ( See Am. Compl.)

*2.  Rulings Under Review:*

**a.**  Underlying decision from which appeal **arises** - Memorandum Opinion Granting the Defendant's Motion for Summary Judgment, February 27, 2009, United States District Judge Ricardo M. Urbina

3.  Related **Cases:**

a.  This case *(Tate v District of Columbia)* was previously before the Court of Appeals with regard to Plaintiff's Motion for Preliminary Injunction that was denied. Case No. 03-7013.

b.  There are no related cases currently pending in this Court or in any other court.

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT
# BRIEF OF APPELLANT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

To the best of my knowledge, this brief substantially complies with the type-volume limitation of Fed.R. App. P. 32(a)(7) because this brief contains less than 1200 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Respectfully submitted,

Christine A. Tate, pro se
PO Box 9451
Washington, DC 20016
202-286-1795
catdcmes1@hotmail.com

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
**BRIEF OF APPELLANT**

**I.**                     **INTRODUCTION**

In this civil action brought pro se, Plaintiff/Appellant brought action against the District of Columbia (referred to herein as the District or the District of Columbia) for constitutional violations under the Fourth and Fifth Amendments and common law torts resulting from the immobilization, impoundment and sale of her car for unpaid parking tickets.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the District of Columbia moved for summary judgment. The district court granted the District of Columbia's motion for summary judgment for all claims in the complaint.

Plaintiff respectfully requests that the court of appeals reverse the district court's opinion and remand the case for further proceedings. Further, Plaintiff respectfully requests declaratory relief as appropriate.

**11.**                  **JURISDICTIONAL STATEMENT**

Plaintiff brought the complaint under the Fourth and Fifth Amendments to the United States Constitution, **42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, 42 U.S.C. §1988,** applicable District of Columbia Code and under the common law.

The United States District Court for the District of Columbia has jurisdiction over Plaintiff s Federal Constitutional claims pursuant to 28 U.S.C. *§1331.* The district court has further jurisdiction pursuant to *28 U.S.C. §1343.* The court has supplemental jurisdiction over the remainder of Plaintiff's claims pursuant to 28 *U.S.C.* $1367 because **these** claims **form** part of the same case or controversy that gives rise to Plaintiffs federal claims under Article III of the United States Constitution.

The United States Court of Appeals for the District of Columbia Circuit has jurisdiction pursuant to *28 U.S.C. §1291* from a final decision of the United States District Court for the District of Columbia.

The notice of appeal was filed on March 26,2009 for the order and memorandum opinion issued contemporaneously on February 27,2009.   The appeal is from a final order granting Defendant's motion for summary judgement that disposed of all Plaintiff's claims in the complaint.

**III.**          **STATUTES AND REGULATIONS**

Statutes are contained in an addendum and bound with the Appellant's Brief.

**IV.**          **STANDARD OF REVIEW**

A court of appeals reviews a district court's entry of summary judgment de novo. *Diamond v. Atwood,* 43 F.3d 1538 (D.C.Cir.); School *District* of *Hatboro-Horhsam v. Alexander* 981 F.2d 1265, 1267 (D.C. Cir.).  The court of appeals must give the judgment plenary review, applying the same legal standards that bound the district court. *Greene v. Dalton* 164 F.3d 671, 674.

A party bears a heavy burden of showing that summary disposition is appropriate. Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex* Corp. v. *Catrett,* 477 U.S. 317,322; *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.).  The nonmoving party must present specific facts that would enable a reasonable jury to find in his or her favor. *Greene* 164 F.3d 671,675.  A genuine issue is one whose resolution could establish an element of a claim or defense and therefore affect the outcome. *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322.  To determine whether a fact is material, the court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248.

In ruling on a motion for summary judgment, the court must draw justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson., 477 U.S. 242,255. A court must view all the facts and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith* 475 **U.S.** 574,587. Any doubt as to the existence of a material fact should be resolved against the moving party. *Celotex Corp. v. Catrett,* 91 L Ed 2d 265, 278.

The moving party in a motion for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact. Celotex *Corp. v. Catrett,* 477 **U.S.** 317, *323; Greene* v. *Dalton 164* F.3d 671,675 (D.C.Cir.) The burden of persuasion imposed on a moving party is a stringent one. Summary judgment should not be granted unless it is clear that a trial is unnecessary.

Under Fed. R. Civ. P. 56, summary judgment is proper only if the <u>pleadings</u>, depositions, answers to interrogatories, and <u>admissions on file</u>, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### V.        STATEMENT OF ISSUES

In this case, there are genuine issues of material facts and application of law and sufficient evidence exists to require submission of the case **to** a jury. The merits of Plaintiffs case and appeal are "clear." The district court erred when it granted the District of Columbia's motion for summary judgment. Specifically,

A. District court erred when it ruled that when drawing all justifiable inferences in Plaintiffs (nonmoving party's) favor and accepting the Plaintiff's evidence as true, there are no genuine issues as to material fact and the District of Columbia is entitled to judgment as a matter of law.
B. District court did not fully consider Plaintiffs **Fourth** Amendment claims.
C. District court did not fully consider Plaintiffs Fifth Amendment claims.
D. Pro *se* Plaintiff did not concede common law claims.
E. District of Columbia's blanket Ticket Amnesty Program violated Plaintiff's right to equal protection.

## VI.                STATEMENT OF FACTS

The Plaintiff owned a 1998 Volkswagen Beetle, which she purchased new and registered with the District's Department of Motor Vehicles ("DMV") on August 3, 1998, license number AH3283,[1] VIN 3VWBB61COWMO29158. Am. Compl. ¶7 & Def.'s Mot. for Surnm. J., **Ex.** 1 ("Claytor Decl.")[2] ¶¶4&5 & Ex.A. Plaintiff was the sole owner of the vehicle and there were no encumbrances on the vehicle at the time the car was sold. Am. Compl. ¶7.

On March 12, 2002, Plaintiffs car was immobilized for outstanding parking tickets. Am. Compl. ¶8 & Def.'s Stmt. ¶5. At the time the car was immobilized, it was legally parked in the Georgetown section of Washington, D.C. and not jeopardizing public safety or the efficient movement of traffic. Am. Compl. ¶8. District agents or employees did not ticket the vehicle on the date of immobilization. *Ibid. See* also, Plaintiffs First Set of Requests for Admission[3] (referred to herein as "Pl. 1ˢᵗ Adrn."), Sec. II ¶16. *See* also, Claytor Decl. **Ex.** F, a March 14, 2002 DMV ticket printout that verifies there were no tickets issued on March 12, 2002.

On March 26, 2002, Plaintiffs car was towed across the state line to the District's Addison Road Lot in MARYLAND, where it was impounded. *Am.* Compl. ¶8, Pl. 1ˢᵗ Adm. ¶8 & Def.'s Stmt. ¶6. At the time the car was impounded, it was legally parked and not jeopardizing public safety or the efficient movement of traffic. [4] *Am.* Compl. 98. District agents or employees did not ticket the vehicle on the date of impound. Pl. 1ˢᵗ Adm., Sec. II ¶17. The District asserts, and the record reflects, that Plaintiff's car was seized as a result of unpaid parking tickets. Am. Compl. ¶8, Pl. 1ˢᵗ Adm., Sec. II ¶8, Def.'s Stmt. ¶6 & Def.'s Mot. Summ

---

[1] The District incorrectly refers to Plaintiffs license plate number as AH3823 in Def.'s Stmt. & Mem. Pts. & Auth. in support of Def.'s Mot. Summ. J. The correct license plate number is AH3283. **See,** Claytor Decl., Ex. A & Pl. 1st Adm., Ex. B.

[2] Cassandra Claytor is DMV's Chief Hearing Examiner. She held this position since 1998. **See,** Claytor Decl. ¶2.

[3]Plaintiffs First Set of Requests for Admissions (Pl. 1ˢᵗ Adm.) was served upon *the* District of Columbia via certified mail o December 7, 2004. Many of the documents included as exhibits to Pl. 1ˢᵗ Adm. were previously submitted by the District o Columbia as exhibits to its Opposition to Plaintiffs Motion for Preliminary Injunction (to require the District to remit to Plaintiff proceeds from the sale of Plaintiffs car). Plaintiff's intent was to enter documents and facts that should not have been in disput Plaintiff's Motion for Leave to enter into the record Pl. 1ˢᵗ Adm. was filed and served upon the District on or about February 18 2005. The District of Columbia did not formally respond or object to Plaintiffs admissions or the motion. In open court on Ma 3, 2005, the district court granted Plaintiffs motion as conceded (Minute Order 5/03/2005).

[4]See, Pl. 1ˢᵗ Adm., Sec. II ¶¶16 & 17. Also, see Winchester Decl., Ex. A, which verifies that there were no tickets issued on March 12, 2002 and Claytor Decl., **Ex.** B that verifies there were no tickets issued on May 12, 2002 or any time thereafter.

-4-

J., Ex. 2, ("Winchester Decl.")[5] ¶¶ 4, 5 and 6. There was no notice or discussion in written or oral communications or in administrative hearings about any other legitimate interest on the part of the District of Columbia. Am. Compl. ¶8. Storage fees of $10 per day were assessed by the District of Columbia beginning on March 26, 2002. Am. Compl. ¶9.

On March 12, 2002, the date Plaintiffs car was immobilized, the District asserts Plaintiff had five (5) notices of infraction (**NOIs**) outstanding for 30 days or more. Def.'s Stmt ¶5 & Claytor Decl. ¶8 & **Ex.** F. Three (3) outstanding parking tickets were issued in January 2002: two Jan. 29, 2002 tickets (NOI511695074 & NOI511695063) for which the 60-day period[6] clearly had not yet expired and thus the infraction was not yet deemed admitted under *§50-2303.5(d)(2)* and one ticket issued on Jan. 10, 2002 (NOI514657964) for which it appears the 60 day period had not yet expired and for which Plaintiff was still entitled to a hearing. Pl. Opp. p. 4 & 7-8 & Claytor Decl., Ex. F. The District also asserts there were two outstanding parking tickets issued in December 2001: Dec. 13, 2001 (NOI518146355) and Dec. 18, 2001 (NOI540049952). Claytor Decl. ¶8 & **Ex.** F. One of the December 2001 tickets was not fully adjudicated at the time of the boot since Plaintiff was appealing the ticket. Pl. Opp. p. 14. In addition, there were issues with regard to the application and timeliness of application of payment: for the tickets, such as possible unapplied payments (including a $40 payment amount), overpayments and/or payment(s) in transit. Am. Compl. ¶10 & Pl. Opp. p. 4 &8.

Further, there is an apparent dispute or disagreement among District personnel about the District's policies for booting and impounding vehicles. Ms. Winchester, Associate Administrator of DPW Parking Services Administration, mistakenly states that at the time Plaintiffs car was booted, Plaintiff had five (5) unresolved tickets for which the time to respond **had** passed and thus she was deemed liable. Winchester Decl. ¶ 5. Per *§50-2303.5(d)(2),* if a

---

[5] Betty Winchester is the Associate Administrator for DPW Parking Services Administration. She has held this position since 3/30/08. From Oct. 2005 to Mar. 2008, she was the Vehicle Immobilization and Towing Manager. As Associate Administrator, she is "responsible for the overall operation of Ticket insurance, Booting, Towing and Abandon Vehicle Operation." See, Winchester Decl. ¶¶ 2-3.

[6] Per §50-2303.5(d)(1), a person must answer an NOI within 30 days otherwise monetary penalties are imposed. Per §50-2303.5(d)(2), if a person fails to answer within 60 days, the infraction is deemed admitted and all penalties and fines are assessed (referred to herein as the "60-day period").

1   person fails to answer within 60 **days,** the infraction is **deemed admitted.** Ms. Claytor, Chief

2   Hearing Examiner, states that a ticket could not be used as justification for a boot unless it was

3   thirty (30) days old and notes that a driver would be liable for a ticket if 61 days passed without a

4   formal response to the violation.[7] Claytor Decl. ¶8.

5       *D. C.* Code *§50-2201.3(k)(1)* provided the authority for the District of Columbia to

6   immobilize and impound vehicles for **two** or more unpaid parking tickets.\* In 2003, D.C. Code

7   *§50-2201.3(k)(1)* was amended to state that the District may immobilize or impound vehicles

8   against which there are **two** or more unpaid tickets **that the owner was deemed to have**

9   **admitted or that were sustained after a hearing.**

10

11      Following the boot on March 12, 2002, Plaintiff had administrative hearings before the

12  District's Bureau of Adjudication/Adjudication Services (at 65 K Street, N.E) for two of the

13  January 2002 outstanding tickets: NOI51 1695074 & NOI514657964.  At a hearing on March 14,

14  2002, the hearing examiner affirmed the $50 fine and $50 penalty[g] for NOI5 11695074 that was

15  issued on Jan. 29, 2002 for failure to properly display a front license plate. Claytor Decl., Ex. G.

16  Plaintiff was not aware of Jan.10, 2002 ticket NOI514657964. Am. Compl. ¶9. Plaintiff

17  received notice about her right to a hearing for Jan. 10, 2002 NOI514657964 just prior to the boot

18  date on or about March 12, 2002. *Ibid* & Pl. Opp. p.7.  While at DMV on March 14, 2002,

19  Plaintiff obtained information about the Jan.10, 2002 rush hour parking violation (e.g., time and

20
21  location of alleged parking infraction for parking in an area where no parking was permitted

22  during the evening rush hour) and she returned the next day on March 15, 2002 for a hearing.

23

24

25
---
[7]  The District states that "while Plaintiff did have an interest in the use of her Car, the time period between the booting of her Car and the administrative hearings she received was brief." **See,** Def.'s Mem. Pts.Auth. (pg. 11).
[\*]  In the Mem. Opn. (p.5), the district court incorrectly references the statute that authorizes the District to immobilize and impound vehicles against which there are **2** or more outstanding violations.  The court cites D.C. Code **§50-2201.03(d)(1**  The correct statutory cite is D.C. Code **§50-2201.03(k)(1).**
[g]  **A** penalty equal to the fine is imposed after **30** days.  If a person fails to answer within **60 days,** the infraction is **deemed admitted.** See, *§50-2303.5(d)* . **See also, Claytor Decl. ¶¶** 6 and **7.**

Am. Compl. ¶9. At the March 15,2002 hearing, the hearing examiner affirmed the $100 fine for NOI514657964, but waived the $100 penalty. Claytor Decl. ¶10 & Ex. **H.**

At the time Plaintiffs car was impounded on March 26,2002, the District asserts Plaintiff owed $200 (including fines and penalties) for the two January 2002 parking tickets that were the subject of the March 14 and 15,2002 administrative hearings (NOI511695074 & NOI514657964), plus a boot fee. [10] Am. Compl. ¶8 & Pl. 1st Adm., Sec. II ¶¶3&8. Also, Def.'s Stmt. ¶6 and Winchester Decl. ¶6. There are issues with regard to the application and the timeliness of the application of payments, including apparent overpayments and an unapplied amount. [11] Am. Compl. ¶10 & Pl. Opp. p.4 &7-8. Thus, the outstanding balance on the date of impoundment may have been and should have been less than $200. *Ibid*

On April 9, 2002, Plaintiffs car was taken into the custody of the Abandoned and Junk Vehicle Division and moved from the District's Addison Road lot in Maryland to its Blue Plains lot in the District of Columbia. Def.'s Stmt. ¶7 & Winchester Decl. ¶8. The District charged a tow fee for moving the car to the Blue Plains Lot and continued to assess storage fees of $10 per day.

On or about April 12,2002, as required by D.C. Code §§ *50-2622(a) & 50-2402(a)(5)*, the District attempted to notify Plaintiff via certified mail that her vehicle would be sold at public auction if not claimed within 45 days after the date of the **notice.**[12] Am. Compl. ¶12 &

---

[10] In Def.'s Stmt. ¶6, the District states that "eleven days after Plaintiff was found liable at the administrative hearing for the tickets which still went unpaid, Plaintiffs car was towed by the District of Columbia to its Addison Road lot." Although the District does not explicitly state that they assert there were two tickets outstanding, it may be reasonably inferred since the District referenced the two tickets for which Plaintiff was found liable at the March 14-15, 2002 hearings. **See,** Def.'s Stmt. ¶6 & Winchester Decl. ¶6. **See** also, Pl. 1**st** Adm., **Sec. II** ¶¶3&8 to which the District did not object. See also, 4/19/02 DMV ticket printout, which reflects $200 due for two tickets. Pl. 1**st** Adm., Ex. C. Further, the Towing and Impoundment Crane Form includes a manual notation − Before Processing $295.00 (which includes the boot fee). **See,** Pl.'s 1**st** Adm., **Ex.** J. There are issues with regard to the application and the timeliness of the application of payments, including apparent overpayments and an unapplied amount. Thus, the outstanding balance on the date of impoundment may have been and should have been less than $200. Am. Compl. ¶10 & Pl. Opp. p.4 &7-8.

[11] As of 8/23/04, District records appear to reflect an unapplied amount of *$45*, as well as, an overpayment of $45 for an 8/02/99 ticket, NOI950844296 (*See* Claytor Decl., **B**). Further, the record **r**eflects a number of instances where the penalty exceeded the original fine NOI518146355 (12/13/01), NOI514638154 (11/23/01), NOI974473006 (7/01/01), NOI968696540 (1/05/01), NOI526042650 (11/03/00), NOI950844296 (8/02/99) and NOI949979925 (9/27/98) . *Ibid*. In addition, a *$5* check payment for NOI51 1695074 was credited on July 15,2002, more than a month **after** the car was sold at auction (**See,**Claytor Decl., Ex. E and Pl. 1**st** Adm., **Ex.** H) and Plaintiff has raised issues about the timeliness and application of payments made by Plaintiff and on Plaintiffs behalf. Am. Compl. ¶10 & Pl.'s Opp. Pg. 4 &7-8.

[12] There are minor inconsistencies between applicable D.C. laws and the language of the written notice sent by the District of Columbia. *D.C.* **Code** *§ 50-2401(1)(E* )defines in relevant part an abandoned vehicle as one "that has remained unclaimed for 45 days after proper notice." (emphasis added). Similarly, *§50-2402(a)(5* ) required notification that the "abandoned vehicle would

Def.'s Stmt. ¶8. Specifically, the written notice stated that *failure* to claim the car within **45** day

shall constitute a waiver *of* all right, title, and interest **in** the vehicle and shall constitute consent

to the sale *of* the vehicle at public auction. Def.'s Mot. Summ. J., Ex. 3 ("Jones Decl.")[13], Ex.

C. & Pl. 1st Adm., Ex. N.[14] The notice further provided information about how to "claim" the

vehicle and the amounts that had to be paid before the vehicle would be "released." Zbid. The

District did NOT send the written notice to Plaintiffs last known address (3305 O Street, NW)

as reflected in the DMV vehicle registration system and as required by statute, but rather due to *i*

"TYPOGRAPHICAL ERROR' on the part of the District of Columbia the notice was sent to

an erroneous nonexistent address (**3805 O** Street, NW). Am. Compl. ¶12 & Pl. 1st Adm., Ex. **O**

Also, Def's. Stmt. ¶8 & Jones Decl. ¶8. The notice was returned to the District of Columbia as

undelivered. **Ibid.**

Moreover, the District did not comply with the statutory requirement mandating

publication of information pertaining to abandoned vehicles. Am. Compl. ¶13. *D.C. Code § 50-*

*2622(b)* required publication in a newspaper of general circulation for two (2) consecutive week;

*a* notice that (i) describes any vehicle subject to sale, and (ii) informs the vehicle's owner of his

or her statutory right to reclaim the vehicle. Zbid. The District's records reflect that it published

notice regarding Plaintiffs vehicle just once on April 13, 2002. Zbid. Also, Pl. 1st Adm., **Ex.** P

& Def.'s Mot. for Summ. J., **Ex. 4.**

On April 19, 2002 while visiting DMV to inquire about the status of the application of

payments for the outstanding tickets and storage fees, a DMV clerk informed Plaintiff that her

car had been moved from the District's Addison Road Lot in Maryland to its Blue Plains Lot in

---

[13] e sold at public auction if not reclaimed within 45 days after the date of the notice." (emphasis added). The actual written notice hat was sent by the **DPW** Abandoned and Junk Vehicle Division (and returned undeliverable) stated that "failure to claim the vehicle within forty five **(45) days** from **the date of arrival of this vehicle**, shall constitute a waiver of all right, title, and nterest in the vehicle and shall constitute consent to the sale of the vehicle at public auction." (emphasis added). **The** written notice was dated 4/12/02, the vehicle arrived at the Blue Plains lot on 4/09/02. **See** Jones Decl., **Ex.** C.

[13] Cynthia Jones has been Program Manager in DPW's Parking Services Administration's Abandoned Vehicle Operations since Mar. 2004. From Mar 2002-Mar **2004** she was Manager of the Abandoned Vehicle Investigations Branch. As Program Manager of Abandoned Vehicle Operations, she is "responsible for the Abandoned Vehicle Program, Budget, adherence to Policies, procedures and work processes." Jones **Decl. ¶¶** 2-3.

[14] **A** copy of the notice originally was included in the record as Exhibit G to Defendant's Opposition to Plaintiffs Motion for Preliminary Injunction. See Pl. 1st Adm., **Ex.** N.

the District of Columbia. Plaintiff had complained that her car initially was towed across the

state line and impounded in MARYLAND. Pl. Opp. p.9. On April 19,2002, Plaintiff visited

the Blue Plains Lot to remove a case from her car. Pl. 1st Adm., Ex. M. Defendant asserts that

Plaintiff "would have" been informed about the June 4,2002 auction date when she visited the

Blue Plains Lot on April 19,2002. Def.'s Stmt ¶11. Plaintiff asserts that she did not receive

actual notice until May 2002. Pl. Opp. p. 5&9.

In May 2002, Plaintiff became aware of the addition of a third parking ticket. Am.

Compl. ¶11. The ticket allegedly was issued on November 19,2001, yet it had a letter date of

May 10,2002 and it did not appear on the April 19,2002 DMV printout of outstanding parking

tickets for Plaintiffs vehicle. Pl. 1st Adm., Exs. C & D and Am. Compl.¶11.

Also in May 2002, Plaintiff visited DMV to inquire about the status of the application of

payments made for the two (2) alleged outstanding parking tickets (NOI511695074 &

NOI514657964) and storage fees. *Am.* Compl.¶14. While at DMV, Plaintiff learned that her car

was scheduled to be sold at public auction on June **4,** 2002.[15] *Ibid.* Based on this information,

Plaintiff requested a hearing for both a stay of the June 4, 2002 auction and the addition of the

third ticket. *Ibid.*

On May 29, 2002, Plaintiff appeared before a hearing examiner. With regard to the

November 19, 2001 ticket, the hearing examiner dismissed the ticket as a warning "because it is

not shown on respondent's ticket printout which means it was not entered into our system as of

4/19/02." Claytor Decl, Ex. J. With regard to the pending June 4,2002 auction, a stay was

granted and Blue Plains storage fees were waived. Am. Compl.¶14 & Pl. 1st Adm. ¶12&13 &

---

[15] **A** minor point of clarification is required with regard to the Amended Complaint (Am. Compl.). Am. Compl. ¶14 states that 'Sometime in May 2002, Plaintiff visited DMV to inquire about the status of the application of payments for the outstanding tickets and storage fees. While at the DMV, Plaintiff learned that her car had been moved to the Blue Plains lot and was subject to sale as an 'abandoned' vehicle." On April 19,2002 while visiting DMV to inquire about the status of the application of payments for the outstanding tickets and storage fees, Plaintiff learned that her car had been moved to the Blue Plains lot. In late May 2002 while visiting DMV to inquire about the status of the application of payments for the outstanding tickets and storage fees, Plaintiff learned that her car was considered "abandoned" and would be sold as an "abandoned" vehicle on June 4,2002. Plaintiff did not receive the notice required by *D.C.* **Code** *§§ 50-2622(a) & 50-2402(a)(5),* and Plaintiff did not **know** that the District's transfer of her car to the Blue Plains lot had possible implications with regard to her ownership rights in her vehicle.

1  Ex. J.  The hearing examiner informed Plaintiff that she would be charged additional storage fee!

2  from the hearing date up until the date she retrieved her car.  Am. Compl.¶14.

3  The District of Columbia disputes that a stay was granted and that Blue Plains storage

4  fees were waived at the May 29,2002 hearing. Claytor Decl.¶14.  However, the District of

5  Columbia did not object or respond to Pl. 1st Adm. that was entered into the record on May 3,

6  2005, and contains in Sec. II ¶12 a statement that *"BluePlains storage, tow and otherfees were*

7  *waived at the 5/29/02 hearing"*  and in Sec.II ¶13 a statement that *"DPW records reflect that all*

8  *Blue Plains Tow & Storage Fees were released per Hearing No. 778 on 5/29/02."*  Pl. 1st Adm.,

9  ¶¶12 & 13.

10  At the May 29,2002 hearing, Plaintiff was informed that she should contact the Blue

11  Plains lot.  Plaintiff obtained the Blue Plains lot telephone number from a DMV clerk.  As

12  instructed, Plaintiff contacted the Blue Plains lot and she was informed that she should pick up

13  her car by June 7,2002. [16]   Am. Compl. ¶15.  The car contained two laptop computers, office

14  supplies and other personal property.  *Zbid.* Plaintiff did not remove her personal property from

15  the car because the car was locked, District personnel did not have the key and Plaintiff

16  "claimed" her vehicle and had a May 29,2002 hearing on the matter and she was informed her

17  car would not be sold. *Zbid.*

18  When Plaintiff arrived at the Blue Plains lot on June 7,2002, she was informed that her

19  car and the contents therein had been sold at public auction on June 4,2002.  Am. Compl.¶16. &

20  Def s Stmt.¶16.

21  Following the auction, the District of Columbia failed to provide Plaintiff with an

22  accounting for the sale of her car. *Am.* Compl. ¶17.  All that Plaintiff learned was that her car

23  and property contained therein had been sold on June 4,2002.  *Ibid.* Plaintiffs ex-spouse spoke

24  with the individual dealer who purchased the vehicle and the dealer asserted that he paid $8,000

25

---

[16]  **The District disputes the fact that Plaintiff was informed that she should pick up her car by June 7, 2002 but acknowledges that Plaintiff went to the Blue Plains lot on June 7, 2002 to attempt to retrieve her vehicle and "when Plaintiff arrived at the Blue Plains lot on June 7, 2002, she was informed that her car and the contents therein had been sold at public auction on June 4, 2002."**

for the vehicle. *Ibid.* The District subsequently stated that the car was sold for only $4,000. Zbid & Jones Decl. ¶11. The District also stated that records from the auction did not indicate that any laptop computers or other personal property described by Plaintiff was sold. See, Def.'s Stmt. ¶15. The Blue Book value for the car at the time of sale was approximately $13,000. Plaintiff purchased the car new for about $20,000 (inclusive of taxes and fees) and at the time the car was sold, the cost to replace the car was more than $24,000 and the cost to replace the computers on board was about $4,000. See, Pl.'s Opp. p. 2 &17.

The District of Columbia refused to apply the proceeds from the sale of Plaintiffs car to Plaintiffs DMV balance for her vehicle (per DMV records one $95 outstanding ticket NOI51 1695074 and Addison Road storage fees of $210). Am. Compl. ¶¶18&20 & Pl. 1st Adm. Ex. F&G. District records reflect a payment of $5 on July 15,2002 for that one outstanding ticket and a $95 outstanding balance. See, Pl. 1st Adm., **Ex.** H. The District also refused to remi to Plaintiff the difference between the sales price for her vehicle and personal property contained therein and the amount the District claimed Plaintiff owed for that one outstanding ticket (NOI51 1695074) and Addison Road storage fees of $210. Am. Compl. ¶19. Further, on October 8, 2002, the District denied Plaintiff's claim. See, Pl. 1st Adm. Ex. A.

In July 2003, after the sale of Plaintiffs car, the District blocked the renewal of Plaintiffs driver's license due to the one (1) outstanding parking ticket (NOI51 1695074) per DMV records. See, Pl. 1st Adm., Sec.II ¶15 & Ex. I.

In July 2002, the District of Columbia enacted a blanket ticket amnesty program that **forgave original fines for parking tickets'',** as well as, penalties for millions of tickets totaling *hundreds of millions of* dollars? See, Pl. 1st Adm., Ex. Q. & Am. Compl.¶22.

---

[17] In its Mem. Pts. Auth (p.22), the District provides a description of a partial amnesty program, not the actual 2002 amnesty program that provides blanket forgiveness of original fines and penalties for certain tickets. Further, the District included as exhibits to Defs Mot. Summ. J an 8/13/01 memo and a 6/12/01 press release that discuss an earlier amnesty program(s) that forgave only penalties, not the original fines.

[18] A July 3, 2002 *Washington Post* Article, *D.C. Council Votes to Erase Traffic Tickets Williams May Veto $347 Million Amnesty* indicated that the Council for the District of Columbia voted to forgive millions of dollars of parking tickets and penalties incurred before 1997. An Earlier *Washington Post* article on June 21, 2002, *District Will Offer Partial Amnesty on Parking Tickets,* stated that the District was planning to forgive penalties on pre-1997 tickets, which totaled $130 million, and to permit individuals to work out payment plans for the original ticket balances. The Council extended the amnesty to include not just penalties but also the original fines.

-11-

Prior to the impoundment and sale of Plaintiffs car, Plaintiff wrote letters to city official:

about the District's failure to investigate and prosecute crimes that were committed against her.

Am. Compl.¶21. In January 2001, Plaintiff filed a complaint with the Office of Professional

Responsibility about the District of Columbia's Metropolitan Police Department (MPD). *Zbid.*

In December 2001, Plaintiff also informed city officials about her intent to take civil action

against the District. *Zbid.*

### VII.            SUMMARY OF ARGUMENTS

**A.        District court erred when it ruled that when drawing all justifiable inferences in
Plaintiff's (nonmoving party's) favor and accepting the Plaintiff's evidence as true,
there are no genuine issues as to material fact and the District of Columbia is entitled
to judgment as a matter of law.**

The burden of persuasion imposed on a moving party is a stringent one. Summary

judgment should not be granted unless it is clear that a trial is unnecessary. Any doubt as to the

existence of a material fact should be resolved against the moving party. *Celotex Corp. v.*

*Catrett,* 91 L Ed 2d 265,278. The District of Columbia did not meet its burden of identifying

evidence that demonstrates that there is no genuine issue of material fact. *Celotex Corp.* v.

*Catrett,* 477 U.S. 317, 91 L Ed 2d 265. To the contrary, the District has assisted Plaintiff in

highlighting genuine issues.

For each claim, Plaintiff has made a strong showing sufficient to establish the existence of

an element(s) essential to Plaintiffs case. Plaintiff has identified genuine issues of material fact

and produced evidence for all claims which, if believed, is "sufficient to allow a reasonable trier

of fact to find" in her favor. Plaintiff has presented sufficient evidence to survive summary

judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Ctr. 1987); *Gorman v.*

Wolpoff *& Abramson, LLP,* 552 F.3d 1008 (9th Ctr. 2009); Appley v. *West* 832 F.2d 1021 (7th

Ctr. 1987); *Offshore Aviation* v. *Transcon Lines, Inc.,* 831 F.2d 1013 (11th Ctr. 1987); *White* V. *Baxter Healthcare Corporation, 533* F.3d 381 (6th Ctr. 2008).

It appears, however, the district court discounted, and even ignored, pro *se* Plaintiff's evidence, including Plaintiffs First Set of Request for Admissions (referred to as "Pl. 1[st] Adrn.") that was entered into the record on May 3, 2005.    Pl. 1st Adm., as well as, the Motion for Leave to enter Pl. 1st Adm. into the record were served upon the District of Columbia.    The District did not object or formally respond, and thus, Pl. 1st Adm. was entered into the record in open court on May 3, 2005.[19]    In at least one instance, with regard to the outcome of the May 29, 2002 hearing (discussed below), the district court considered the District of Columbia's (moving party's) related statements of fact to be true even where there was contradictory evidence submitted by both parties and there were contradictory statements in Pl. 1st Adm. (e.g., ¶12&13).   It appears the district court, in granting the District of Columbia's motion for summary judgment "strayed from its proper role and made credibility determinations." *Rollins v. TechSouth, Inc.,* 833 F.2d 1525.  In *Rollins,* the court held that the trial judge's function was not to weigh the evidence and determine the truth of the matter but to determine whether there was a genuine issue for trial. In Greene *v. Dalton,* the court stated that "Like the weighing of Evidence generally, the task of determining the credibility of a witness is the exclusive domain of the finder of fact." *Greene,* 164 F. 3d 671, 674.

1.  **Dispute About Whether, When And How Plaintiff Received "Proper" Notice That Her Car Was To Be Sold At Auction As An "Abandoned" Vehicle.**

---

[19] See Plaintiffs First Set of Request for Admissions (referred to as "Pl. 1[st] Adm.") entered into the record on May 3 2005. Plaintiffs First Set of Requests for Admissions (Pl. 1st Adm.) was served upon the District of Columbia via certified mai on December 7, 2004. Many of the documents included as exhibits to Pl. 1st Adm. were previously submitted by the District o Columbia as exhibits to its Opposition to Plaintiffs Motion for Preliminary Injunction to require the District to remit to Plaintiff proceeds from the sale of her car and contents therein. Plaintiffs intent was to enter documents and facts that should not have been in dispute. Plaintiffs motion for leave to enter into the record Pl. 1st Adm. was filed and served on or about February 18 2005.   The District of Columbia did not formally respond or object to Plaintiff's admissions or the motion. In open court on Ma 1, 2005, the district court granted Plaintiffs motion as conceded (Minute Order *5/03/2005*).

There continue to be a material dispute about whether, when and how Plaintiff received proper notice that her car was to be sold at auction as an "abandoned" vehicle. The district court glossed over this dispute, did not consider arguments made by Plaintiff and for all intents and purposes ignored matters that call into question the legality of the District's actions.

Plaintiff's car was not used for criminal activity or purchased with the proceeds from criminal activity. The District purportedly seized and ultimately sold Plaintiffs car to collect two (2) outstanding **parking** tickets. The District's actions with regard to the sale of Plaintiffs car were taken pursuant to its abandoned vehicle statutes.[20] If Plaintiffs car did not meet the statutory definition of an "abandoned" vehicle, the District of Columbia did not have statutory authority under *D.C. Code §§ 50-2402* and *50-2623* to sell Plaintiff's car as an "abandoned" vehicle nor authority under *D.C. Code § 50-2623* to retain the proceeds from the sale of Plaintiff's car as an "abandoned" vehicle.

The District of Columbia asserts that under D.C. Code *§50-2623* the District was <u>required</u> to retain all of the proceeds from the sale of Plaintiff's vehicle as an "abandoned" vehicle. The District asserts that *D.C. Code §50-2623* required the District to apply proceeds from the sale of Plaintiffs car first to the expenses of the auction and the cost of towing and storing and to deposit any remainder in the Abandoned and Junk Vehicle Division Fund to be used by the Abandoned and Junk Vehicle Division (the "Division") to carry out its duties. Def.'s Mem. Pts. Auth. p. 19. The District further asserts that it is not permitted to reimburse a vehicle owner with the proceeds from the sale of a vehicle as the Division is required to use such funds for its own operations. Def.'s Mem. Pts. Auth. p.20.

An abandoned vehicle is defined in relevant part as a vehicle "that has remained unclaimed for 45 days after proper notice." *D.C. Code § 50-2401(1)(E)* . If Plaintiff did not

_____

[20] Per *D.C. Code § 50-2401(1)(E),* an abandoned vehicle is defined in relevant part as a vehicle "that has remained unclaimed for 5 days after proper notice."

receive "proper notice" and if her vehicle did not remain "unclaimed for 45 days after proper

notice," Plaintiffs car would not be considered "abandoned" under the relevant statutes.

Per *D.C. Code §50-2402(a)(1)*, the District was required to determine whether Plaintiff:

vehicle was "abandoned" in accordance with D.C. Code *§50-2401* and per D.C. Code *§50-*

*2402(a)(5)* the District was required to notify Plaintiff (and any lien holder of record) that the

"abandoned" vehicle would be sold at public auction if not reclaimed within **45** days after the

date of notice. D.C. *Code §50-2622(a)* provided further requirements with regard to the written

notice.

Plaintiff did not receive the written notice required by *D.C.* Code *§50-2402(a)(5)* **and**

D.C. *§50-2622(a)*. The District admits that on April 12,2002, the written notice was sent

via certified mail to an incorrect address due to a "**TYPOGRAPHICAL ERROR**' and that the

notice was returned undelivered. [21]  The notice was **NOT** sent to Plaintiffs last known address a:

reflected in the DMV system and as required by D.C. Code, which was **3305 O Street, NW,** but

rather it was sent to a nonexistent address, **3805 O Street, NW.**[22]

The undelivered written notice previously was entered into the record by the District of

Columbia as Attachment G to Defendant's Opposition to Plaintiffs Motion for Preliminary

Injunction.[23]  A second copy of the undelivered notice was entered as Jones Decl., Ex.C. The

undelivered written notice would have: (1) notified Plaintiff that her vehicle was in the custody

of the DPW; (2) provided notice about the ramifications of failure to **"claim"** the vehicle; **(3)**

provided information about how to "claim" the vehicle; and **(4)** provided information about wha

vas required to **"release"** and **"retrieve"** the vehicle.

---

See, Pl. 1st Adm., Ex. **O**. See also, Def's. Stmt ¶8, Jones Decl. ¶8 & Ex. *C*.
2 See, Pl. 1st Adm., **Ex. O**.
3 *See,* Pl. 1st Adm., Ex. **N**.

Specifically, the undelivered written notice stated that:

*"Failure to claim the vehicle within forty five (45)days from the date of arrival of this vehicle, shall constitute a waiver of all right, title, and interest in the vehicle and shall constitute consent to the sale of the vehicle at public auction"*

The undelivered notice further stated that to "claim" your vehicle, you must "report to" the Bureau of Adjudication, 65 K Street. N.E., Washington D.C. 26002. All outstanding tickets, tow and storage fees were to be paid before the vehicle was **"released**."[24]

*D.C.* Code *§50-2622(b)* also required the District of Columbia to publish, in a newspaper of general circulation for two **consecutive weeks,** a notice that described the vehicle subject to sale and informed the vehicle's owner of his or her statutory rights.  The District acknowledged that it published notice in the *Washington Times* **only once,** not twice **as** required by *D.C. Code §50-2622(b)*.[25] As a consequence, Plaintiff did not receive statutory notice.

Further, Plaintiffs car did not meet the common law definition of an "abandoned" vehicle. Clearly, Plaintiff did not voluntarily relinquish her ownership rights in her **car**.[26] Among other things, Plaintiff "claimed" her vehicle **and** had a hearing on May 29, 2002, she did not remove her personal property (i.e., computers, books, etc.) from the car after the May 29, 2002 hearing,  payments were applied to outstanding tickets subsequent to the May 29, 2002 hearing, and she attempted to retrieve her vehicle on June 7, 2002.

Moreover, Plaintiff did not know that the Blue Plains Lot was considered an "abandoned vehicle lot and that the District's transfer of her car to the Blue Plains Lot had possible implications with regard to her ownership rights in the vehicle.  Initially, the District of Columbia towed Plaintiffs car to the District's Addison Road Lot in Maryland.  Plaintiff complained that *her car had been towed across the state line to Maryland.*  Plaintiff did not

---

[4] See, Pl. 1st Adm., **Ex.** N & Jones Decl., Ex. C.

[5] See, Pl. 1st Adm., **Ex.** P and Def's Mot. Summ. J., **Ex. 4.**

[6] To show abandonment a party must prove **(1)** intent **to** abandon **and (2)** physical acts carrying that intent into effect. *Zych v. Unidentijied **Wrecked & Abandoned** Vessel*, 755 F. Supp 213. If the alleged abandonment is preceded by a **Fourth** Amendment violation, abandonment is valid only if based on the totality of circumstances, abandonment is voluntary in fact. *U.S. v. Ward* 961 F. 2d 1526.

receive the statutory notice required by *D.C.Code §§50-2402(a)(5) & 50-2622* and thus Plaintiff

did not know about the 45-day time period for "abandonment" or that the 45-day time period

would have begun after the vehicle was moved to the Blue Plains Lot.

The District acknowledges that the initial notice was **"faulty"** (Def.'s Mem. Pts. Auth.,

p. 13) but incorrectly asserts that Plaintiff had "actual notice that the Car was deemed abandoned

by the District more than forty-five days before it was sold at auction." In Def. Stmt.¶11, the

District states that:

> "At the time Plaintiff visited the Lot on April 19, 2002, the public auction date was
> already set and Plaintiff would have been informed of this date when she visited the
> Lot."

The District of Columbia did not assert that Plaintiff *"was"* informed but rather the District

hypothesizes that Plaintiff "would have been" informed. Plaintiff did not receive actual notice

on April 19, 2002.[27] Plaintiff did not receive actual notice until May 2002, shortly before the

June 4, 2002 auction date (and significantly less than **45** days before the auction date).

immediately upon learning about the pending June 4, 2002 sale, Plaintiff requested the May 29,

2002 hearing.

For purposes of the motion for summary judgment, any dispute with regard to the facts must

be resolved in favor of Plaintiff as the nonmoving party.

**2. Dispute About Outcome Of May 29, 2002 Hearing And Whether Stay Was Granted And Blue Plains Fees Were Waived**

There are material factual disputes about whether (i) a stay of the June 4, 2002 auction

sale was granted at the May 29, 2002 hearing, (ii) Blue Plains tow **and** storage fees were waived

at that hearing, (iii) Plaintiff "claimed" her vehicle for purposes of *D.C. Code §50-2401*, and (iv)

Plaintiff was informed that she had until June 7, 2002 to retrieve her **car.** The District of

Columbia did not object to Pl. 1st Adm., which contains in Sec. II ¶12 a statement that *"Blue*

---

[27] The District outrageously and perhaps mockingly points to the **4/19/02** DMV ticket printout (Pl. 1st **Adm.**, **Ex, C**) as another source of possible notice. The DMV ticket printout includes in relatively small print the word "auction", without reference, explanation or an auction date.

*Plains storage, tow and other fees were waived at the 5/29/02 hearing"* and in Sec.II ¶13 a

statement that "DPW *records reflect **that** all Blue Plains **Tow** & Storage Fees were released per

Hearing No. 778 **on** 5/29/02."* Pl. 1st Adm., ¶¶12 &13.   For purposes of the summary judgment,

the court must draw all justifiable inferences in the Plaintiff's favor and accept Plaintiffs

evidence as true. *Anderson v.* Liberty *Lobby,* Inc., 477 U.S. 242,255. Any doubt as to the

existence of a material fact must be resolved against the District of Columbia (as moving party).

*Celotex **Corp.** v. Catrett,* 91 L Ed 2d 265,278.

Further, the District of Columbia erroneously states (Def.'s Stmt. ¶12) that at the May 29,

2002 hearing:

"The Hearing Examiner also upheld the boot, tow and storage fees as plaintiff still had two
remaining tickets outstanding (NOI5 11695074 (issued 1/29/02) and NOI5 14657964 (issued
1/10/02). **Ex.** 1, Claytor Decl. ¶13"

In her declaration (Claytor Decl. ¶13), Ms. Claytor, Head Hearing Examiner, states:

"Also, on May 29, 2002, the same Hearing Examiner reviewed the accumulated tow and
storage fees for the Blue Plains Impound lot. See Ex J.  The examiner upheld the move to
Blue Plains as Plaintiff did not claim the car within fifteen (15) days after the **Car** was towed
to Addison Road."

An inconsistency exists between the Def's Stmt. ¶12 and Ms. Claytor's declaration Decl.

¶13, which the District references.  Ms. Claytor states that the hearing examiner reviewed Blue

Plains tow and storage fees and that the move (the move from the Addison lot to the Blue Plains

lot) was upheld; however, she does not state whether or not Blue Plains tow and storage fees

were upheld.

In fact, the hearing examiner waived Blue Plains fees on May 29, 2002.   Blue Plains

records reflect a notation "All ***Tow*** and ***Storage Fees Release Per HR 778/5/29/02.***"  See, Pl. 1st

Adm., Ex. K & Jones Decl., **Ex.** E.

There were two parts to the May 29, 2002 hearing (or two separate hearings):  (1) the

Request for a stay of the auction and review of Blue Plains tow and storage fees;  and (2) a stale

dated November 19, 2001 ticket that was suspiciously added to Plaintiffs record sometime in

May 2002.  In paragraph 13 of her declaration, Ms. Claytor mistakenly references **Ex.** J when referring to the hearing record for the review of the accumulated tow and storage fees for the Blue Plains Lot.  Claytor Decl., Ex. J is the hearing record for the stale dated ticket that was dismissed.  Claytor Decl., **Ex.** I is the hearing record for the review of the accumulated tow and storage fees for the Blue Plains impound lot.

Plaintiff asserts that not only were Blue Plains storage fees waived at the May 29, 2002 hearing, but also a stay was granted.  Although the handwritten hearing record for the Blue Plains tow and storage fees is partially illegible, there is nonetheless evidence of a discussion about the waiving of fees.  (See, Pl. 1st Adm., **Ex.** I & Claytor Decl., **Ex.** J).  Plaintiff was charged Blue Plains storage fees for the period from April 9, 2002 up until the hearing date May 29, 2002 (i.e., 50 days).  It appears that the examiner upheld 15 days Blue Plains storage fees (and waived 35 days).  The typewritten version, (or tapes from the hearing for trial) would further clarify this matter and confirm the waiver of fees.  The abandoned records reflect a notation "All *Tow and Storage Fees Release* Per HR *778/5/29/02*."  See, Pl. 1st Adm., **Ex.** K & Jones Decl., Ex. E.

The District included in the record a copy of the handwritten record for the May 29, 2002 hearing for that portion of HR 778 that related to the stay and the waiving of Blue Plains tow and storage fees (Claytor Decl., **Ex.** I).  In contrast, the District included a copy of the typewritten record for the May 29, 2002 hearing for the stale dated November 19, 2001 ticket (Claytor Decl. **Ex.** J) and a typewritten copy for all other hearings presented (Claytor Decl., Exs. G & H).  It is appropriate to infer that the typewritten record for HR 778 (stay and waiver of storage fees) would have been prejudicial to the District of Columbia's case, which establishes a prima facie case as to the issues involved and should shift the burden of producing evidence (e.g., "spoliation inference").  Moreover, any dispute with regard to the facts must be resolved in favor of Plaintiff is the nonmoving party. *Celotex Corp. v. Catrett,* 91 L Ed 2d 265, 278.

### 3. Material Unresolved Questions About The Legitimacy Of Boot And Impoundment Under D.C. Code, Polices And Procedures & Possible Misapplied Or Unapplied Payments

There are material factual issues with regard to whether the District of Columbia followed D.C. Code, policies and procedures in connection with tickets that may be used as justification for boot and impoundment and/or possible inconsistencies between the law, policies and procedures. Further, there are material questions with regard to the application and timeliness of application of payments made by Plaintiff **and** on Plaintiffs behalf and other matters that further call into question the legitimacy and timing of the boot **and** impoundment. The district court acknowledged the dispute but incorrectly stated that although Plaintiff disputes that she had five unresolved tickets at the time the car was booted, she does not dispute that she had two unresolved parking tickets. (Mem.Opn. p.5). Depending upon the resolution of the factual matters, it is possible that Plaintiff did not have two tickets that should or could be considered as justification for a boot or impoundment.

Per *§50-2303.5(d)(1)*, a person must answer an NOI within 30 days otherwise monetary penalties are imposed. Per *§50-2303.5(d)(2)*, if a person fails to answer within **60** days, the infraction is **deemed admitted** and all penalties and fines are assessed (referred to herein as the '60-day period"). The penalty amount assessed is equal to the fine. See, Claytor Decl. ¶¶6&7.

At the time Plaintiffs car was impounded **on** March **26,2002,** the District asserts Plaintiff owed $200 (including fines and penalties) for two January **2002** parking tickets that were the subject of March 14 and 15,2002 administrative hearings (NOI5 11695074 & NOI514657964), plus a boot fee.[28]  *See,* Pl. 1st Adm., Sec. II ¶¶3&8. There are issues with regard to the

---

[28] In Def.'s Stmt. ¶6, the District states that "eleven days after Plaintiff was found liable at the administrative hearing for th :ickets which still went unpaid, Plaintiffs car was towed by the District of Columbia to its Addison Road lot." Although th District does not explicitly state that they **assert** there were two tickets outstanding, it may be reasonably inferred since th District referenced the two tickets for which Plaintiff **was** found liable at **the** March 14-15, 2002 hearings. **See,** Def.'s Stmt. ¶6 & Winchester Decl. ¶6. Further, Pl. 1st Adm., Sec. II ¶3 (to which the District did not object) includes **a** statement that "at the tim Plaintiff's car was impounded on 3/26/02, DMV records reflected two outstanding parking tickets...". See also, 4/19/02 DMV icket printout, which reflects $200 due for two tickets. **See,** Pl. 1st Adm., **Ex. C.** Further, the Towing and Impoundment Clean orm includes a manual notation – Before Processing $295.00 (which includes the boot fee). **See,** Pl.'s 1st Adm., Ex. J. There ar ssues with regard to the application and the timeliness of the application of payments, including apparent overpayments and **a**

application and the timeliness of the application of payments, including apparent overpayments and an unapplied amount. Am. Compl. ¶10 & Pl. Opp. p.4 &7-8. Thus, the outstanding balance on the date of impoundment may have been and should have been less than $200. *Ibid*

For example, as of Aug. 23, 2004, District records appear to reflect an unapplied amount of $45, as well as, an overpayment of $45 for an 8/02/99 ticket, NOI950844296 . See, Claytor Decl., Ex. B. Further, the record reflects a number of instances where the penalty exceeded the original fine NOI5 18I46355( 12/13/01), NOI514638154( 11/23/01), NOI974473006(7/01/01), NOI968696540( 1/05/01), NOI526042650(11/03/00), NOI950844296 (8/02/99) and NOI949979925 (9/27/98) . *Ibid.* In addition, a $5 check payment for NOI5 11695074 was credited on July 15, 2002, more than a month after the car was sold at auction. See, Claytor Decl., Ex. G. & Pl. 1st Adm., **Ex.** H.

On the date Plaintiffs car was immobilized, March 12, 2002, the District asserts Plaintiff had five (5) NOIs outstanding for 30 days or more. Def.'s Stmt¶5, Claytor Decl. ¶8 & **Ex.** F. Three (3) outstanding parking tickets were issued in January 2002: two Jan. 29, 2002 tickets for which the 60-day period clearly had not yet expired and thus the <u>infraction **was** not yet **deemed** admitted</u> under *§50-2303.5(d)(2)* and one ticket issued on Jan. 10, 2002 (NOI5 14657964) for which it appears the 60-day period had not yet expired and for which Plaintiff was still entitled to a hearing. Claytor Decl., Ex. F. & Pl.'s Opp. Pg. 4 &7-8. The District also asserts there were two outstanding parking tickets issued in December 2001: Dec. 13, 2001 (NOI518146355) and Dec. 18, 2001 (NOI540049952). *Ibid.* One of the December 2001 tickets was not fully adjudicated at the time of the boot since Plaintiff was appealing the ticket. Pl. Opp. p.14. In addition, as discussed above, there were issues with regard to the application **and** timeliness of

unapplied amount. Thus, the outstanding balance on the date of impoundment may have been and should have been less tha $200. Am. Compl. ¶10 & Pl. Opp. p.4 &7-8.

-21-

application of payments for the tickets (including possible unapplied amounts and/or payment(s) in transit). Am. Compl. ¶10 & Pl.'s Opp. Pg. **4** &7-8.

Further, it appears there is a dispute or disagreement, among District personnel, about the District's policies for booting and impounding vehicles. Ms. Winchester, Associate Administrator of DPW Parking Services Administration, *mistakenly* states that at the time Plaintiff's car was booted, Plaintiff had five (5) unresolved tickets for which the time to respond had passed and thus she was deemed liable. Winchester Decl. ¶ 5. Ms. Claytor, Chief Hearing Examiner, states that a ticket could not be used as justification for a boot unless it was thirty (30) days old and notes that a driver would be liable for a ticket if 61 days passed without a formal response to the violation. Claytor Decl. ¶8.

*D.C.* Code *§50-2201.3(k)(1)* provided the authority for the District of Columbia to immobilize and impound vehicles for **two** or more unpaid parking **tickets.**[29] In 2003, *D.C.* Code *§50-2201.3(k)(1)* was amended to clarify that the District may immobilize or impound vehicles against which there are **two** or more unpaid tickets **that the owner was deemed to have admitted or that were sustained after a hearing.**

In its Memorandum of Point and Authorities (Def.'s Mem. Pts. Auth. p. 11), the District appears to address one possible problem with the boot. The District acknowledges that Plaintiff had an interest in the use of her car, but states that the time period between the booting of Plaintiff's car and the subsequent administrative hearings for the Jan. 10,2002 and Jan. 29, 2002 tickets was brief.

## B. **District Court Has Not Fully Considered Plaintiff's Fourth Amendment Claims**

The Fourth Amendment to the Unites States Constitution protects the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches **and**

---

[29] In the Memorandum Opinion Granting the Defendant's Motion for **Summary** Judgment (pg. 5), the district court incorrectly references the statute that authorizes the District to immobilize and impound vehicles against which there are 2 or **more** outstanding violations. The court cites D.C. Code §50-2201.03(d)(1). The correct statutory cite is D.C. Code **§50-2201.03(k)(**1).

seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness must be measured in light of the strength of the governmental interests in conducting the intrusion, balanced against the nature and quality of the intrusion on the individual's rights. The Fourth amendment protects against unreasonable seizures of property regardless of whether privacy or liberty is also implicated or the seizure is the outcome of a search, and protects pure property interest even in settings other than law enforcement. *Soldal v. Cook County, 506 U.S. 56.*

Plaintiff had a constitutionally protected interest in her car that was seized by the District of Columbia and sold on June **4,2002.** D.C. *Code § 50-2201.03(k)(1)* provided the authority for the District to immobilize and impound Plaintiff's vehicle. D.C. *Code § 50-2623* provided the authority for the District to sell Plaintiffs car and to retain the proceeds from the auction sale of the vehicle.

The District's seizure(s) (immobilization and impoundment) of Plaintiff's car for outstanding parking tickets and subsequent sale of the car on June **4,2002** and retention of the proceeds unreasonably and meaningfully interfered with Plaintiffs property and possessory interests in her vehicle and constituted an unreasonable seizure(s) of Plaintiffs property in violation of the Fourth Amendment. *(Am.*Compl.) The District's actions were extreme and severely disproportionate to the need presented, the collection of fines and penalties for two outstanding parking tickets. The District's actions were oppressive in a constitutional sense.

Further, *D.C. Code § 50-2201.03(k)(1),* the statute that permits seizure of a vehicle for just two (2) outstanding parking tickets, is unreasonable, arbitrary and capricious and constitutionally deficient. The statute is overly broad, not sufficiently keyed to a legitimate state interest and oppressive in a constitutional sense. To the extent the court declares that *D.C.* Code *§ 50-2201.03(k)(1),* is valid, the statute it is unconstitutional as applied to the facts in this case. Further *D.C. Code § 50-2623* is unconstitutional as applied to the facts in the case.

-23-

**1. District court erroneously held in that District code permits seizure for 2 outstanding tickets and plaintiff had 2 outstanding tickets therefore "no reasonable jury could find that the District's impoundment of the car was unreasonable under the Fourth Amendment." (Mem. Opn. p. 5)**

There are three obvious issues. First, the question "upon review of a state-approved seizure" is not whether the seizure "was authorized by state law." *Sibron v.* New *York* **392** U.S. 40, 61 (quoting Cooper v. *California, 386* U.S. **58,61).** Rather, the question is whether the seizure "was reasonable under the Fourth Amendment." *Ibid.* In *Miranda v. City of Cornelius,* the court stated that "the decision to impound pursuant to the authority of a city ordinance and a state statute does not, in and of itself, determine reasonableness of the seizure under the Fourth Amendment." *Miranda v. City of Cornelius, 429* F.3d *858,* 864. An impoundment cannot be upheld merely because it was lawful under state law as it still would have to meet Fourth Amendment standards and the state law might not satisfy them.

Second, even if *D.C. Code § 50-2201.03(k)(1),* the statute that permits immobilization and impoundment for two tickets, was deemed to be constitutionally valid, there are remaining questions and genuine issues of fact with regard to whether Plaintiff's car was booted and towed pursuant to D.C. Code and standard operating procedures. In particular, as discussed above, there are issues with regard to when the tickets became "boot" and/or "tow" eligible, whether a ticket is considered justification for a boot or tow prior to the date the ticket is deemed admitted, and possible unapplied and/or misapplied payments and amounts. The district court mistakenly states that Plaintiff "does not dispute that she had two unresolved parking tickets" on the date the car was immobilized. (See Mem. Opn. p.5). Depending upon the resolution of the material factual disputes, it is possible that there were not two eligible tickets on the immobilization date or the impoundment date. Alternatively, it is possible that the District considered tickets to be justification for a boot prior to the date the tickets were deemed admitted.

Third, the touchstone of the Fourth Amendment is reasonableness. The reasonableness determination should reflect a careful balancing of governmental and private interests. *Soldal v.*

*Cook County* 506 **U.S.** 56. In *Gorman v. Wolpoff &* Abramson, LLP, 552 F.3d 1008, the court

held that "summary judgment is generally an inappropriate way to decide questions of

reasonableness because the jury's unique competence in applying the 'reasonable man' standard

is thought ordinarily to preclude summary judgment. It is appropriate when only one conclusion

about the conduct's reasonableness is possible."

**2.    District court erroneously held that because the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond Fourth Amendment challenge, Plaintiff has provided no basis for declaratory judgment. (Mem. Opn. p. 6)**

The District of Columbia's actions with regard to Plaintiff's vehicle are not justified by

the community caretaking doctrine and are not beyond Fourth Amendment challenge. **Pl. Opp.**

p.12. In *South Dakota v. Oppermun,* the court held that "the authority of police to seize and

remove from the streets *vehicles impeding traffic or threatening public safety and convenience* is

beyond Fourth Amendment challenge." 428 U.S. 364,369 (emphasis added). In *Opperman,* the

car was left unoccupied and illegally parked in a restricted zone.[30] *Oppermun,* 428 U.S. 364,365

There was no operational necessity for the seizure of Plaintiff's car. Plaintiffs car was

LEGALLY parked and NOT impeding traffic or a threat to public safety or convenience when it

was booted or towed. Plaintiff's car was not ticketed on the boot or tow dates.[31] Further,

Plaintiff's car was NOT used for criminal activity or purchased with the proceeds from criminal

activity. The District asserts and the record reflects that Plaintiff's car was booted and towed

because the District asserts there were two (2) or more outstanding unpaid parking tickets against

Plaintiff's vehicle. See, Def.'s Stmt. ¶¶5&6. The District's interest in seizing Plaintiff's car was

the collection of outstanding parking tickets.

The purpose of the community caretaking function is to remove vehicles that are

**presently** impeding traffic or creating a hazard. *Miranda* v City of *Cornelius,* 429 F.3d 858,

866. The court held that "the need to deter a driver's unlawful conduct is by itself insufficient to

[1] In Proctor, defendant was arrested for OWI and DUI.  US v Proctor , 489 F. 3d 1348

[1] See, Pl. 1" Adm., **Sec. II ¶¶16 & 17. Also** see, Winchester Decl., **¶¶ 4,5&6 & Ex. A & Clayor Decl., Exs.** B &F, which do not reflect the issuance of a ticket(s) on March 12,2002 or any time thereafter.

justify a tow under the 'caretaker' rationale." ***Ibid.*** "An officer, acting within the scope of his or her community caretaking function, is not required to consider 'the existence of less intrusive means' when the vehicle must in fact be moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle." *Miranda* at 865  (quoting Betrine 479 U.S. 374 )

The reasonableness of an impoundment under community caretaking depends on "whether the violation fits within the 'authority of police to seize and remove from the streets vehicles impediag traffic or threatening public safety and convenience'." *Miranda* 429 F.3d 858 864 . "The decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience' on the streets, such that impoundment was warranted." (quoting ***Oppermun,*** 428 U.S. at 369). Ibid.

Further, in Miranda the court states that "while the Supreme Court has accepted a deterrence rational for civil forfeitures of vehicles that were used for criminal activity, see ***Benni*** *v.* ***Michigan,*** **516 U.S.** 442,452, 116 S. Ct. 994, 134 L Ed. 2d 68, the deterrence rationale is incompatible with the principles of community caretaking doctrine." ***Miranda v*** City ***of Cornelius***, 429 F.3d 858, 866. The court further states that "unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard. The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." Ibid.

3 **Facial challenge of D.C. Code § 50-2201.03(k)(1) would serve the purpose of preventing prosecutions under a constitutionally defective standard.**
     The District's statute (***D.C. Code § 50-2201.03(k)(1)***) that permits seizure of a vehicle for just two (2) outstanding parking tickets is overly broad, not sufficiently keyed to a legitimate state interest and oppressive in a constitutional sense. The seizure of a vehicle for just two (2) unpaid parking tickets is severely disproportionate to the need presented, the collection of fines

**-26-**

and penalties for two outstanding parking tickets. The statue (and statute as amended in 2003) is

unconstitutional. Further, the statute is unconstitutional as applied to the facts in this case.

The District asserts that Plaintiffs facial challenge is moot because D.C. *Code § 50-2201.03(k)(1),* was amended on Aug. 15, 2003.[32] *D.C. Code § 50-2201.03(k)(1)* permitted

immobilization and impoundment of vehicles "against which there are 2 or more outstanding or

otherwise unsettled traffic violation notices or notices of infraction." The statue was amended in

2003 to state that the District may immobilize or impound vehicles "against which there are 2 or

more unpaid notices of infraction that the owner was deemed to have admitted or that were

sustained after a hearing."

Plaintiffs facial challenge is not moot. Pl. Opp. p.13-14. While the amended statute

addresses one of the issues raised by Plaintiff in that it clarifies that the District cannot consider a

ticket as justification for immobilization or impoundment until <u>the owner is deemed to have</u>

<u>admitted the infraction or after it is sustained after a hearing</u>, the fundamental issue remains in

that under amended *D.C. Code § 50-2201.03(k)(1),* the District continues to have the authority to

immobilize or impound vehicles against which there are as few as 2 unpaid notices of infraction.

"As a general rule, a statutory change will not moot a dispute unless it cures the problem that led

to the dispute." *Central Kentucky Production Credit Ass'n v. US,* 846 F.2d **1460, 1464** (D.C.

Cir.); *Brockington v. Rhodes,* 396 US 41, 43. Further, repeal of a statute would not moot a

dispute where the relevant provision is reenacted in a new statute. *Central Kentucky*

Production *Credit Ass'n v. US,* 846 F.2d **1460,** 1464 (D.C. Cir.); *Schall v. Martin,* 467 US 253,

256.

The district asserts that D.C. *Code § 50-2201.03(k)(1)* serves the legitimate purpose of

encouraging compliance with District parking laws. The District states that "when an individual

fails to settle the fines, the District may seize the offender's vehicle as a means to collect the deb

---

[32] The District notes that *D.C.Code § 50-2201.03(k)(1)* was amended by the *Removal and Disposition of Abandoned and Other Unlawfully Parked Vehicles Reform Act of 2003,* D.C. Law **15-35,** D.C. Reg. **6579, 6586** (Aug. 15, 2003).

and promote conformity with the law and prompt payment of fines."   Def.'s Mem.Pt. Auth.
p. 16.  The District further states that "the law acts as an enforcement mechanism to allow the
District to manage the parking of vehicles on the public streets in an orderly manner by
providing a penalty of loss of one's vehicle for failure to pay fines when one has failed to comply
with the laws." Def.'s Mem.Pt. Auth. p.17.

One of the many problems with the District's arguments is that the District apparently
does not recognize that there should be a balancing of governmental interests against the nature
and quality of the intrusion and the vehicle owner's property rights, Pl. Opp. p.12-13.  While the
District's statutes may serve the purpose of encouraging compliance with the District's parking
laws, it is nonetheless severe and unreasonable to seize a legally parked vehicle for just 2 unpaid
parking tickets.   Further, the District has other, less intrusive, means to collect parking tickets
including placing a block on vehicle registrations and driver's license renewals.   It was
unreasonable for the District to seize Plaintiff's vehicle, to sell Plaintiffs vehicle and to retain all
of the proceeds from the sale of Plaintiff's late-model vehicle.

**1.   Court did not  address Plaintiff's Fourth Amendment "as applied" claim with regard to the statute(s)** (*D.C. Code* **$50-2623** ) **that the District asserts authorized it to sell Plaintiff's car, retain all the proceeds and not apply any of the proceeds to the one outstanding ticket after sale.**

The district court (Mem.Opn. p.5 ) responds to a facial challenge to D.C. Code $50-2623 that was not made, but does not address Plaintiffs "as applied" challenge under the Fourth Amendment reasonableness standard.  Am. Compl ¶64.  To the extent the District of Columbia contends that *D.C.* Code $50-2623 authorized it to sell Plaintiff's car and retain the proceeds, Plaintiff asserts that the D.C. Code is unconstitutional **as** applied to the facts in this case.

Plaintiff's late-model car purportedly was seized **and** ultimately sold to collect two (2)
outstanding parking tickets.  However, the proceeds from the sale of the vehicle were not applied
to Plaintiffs one outstanding ticket per DMV records (on or about the date of sale) and **none** of
the proceeds were remitted to the Plaintiff.  Further, because the proceeds were not applied to the

one outstanding ticket, the District blocked renewal of Plaintiff's driver's license. See, Pl.'s 1st Adm., Ex. I. Further, the value of the car far exceeded any balance due the District asserts was due for the outstanding tickets and fees.

**5. This is not a civil forfeiture case.**

Plaintiffs car was NOT used for criminal activity or purchased with the proceeds from criminal activity.   The District purportedly seized, impounded and ultimately sold Plaintiffs ca to collect two (2) outstanding parking tickets. The District of Columbia asserts that it sold Plaintiff's car and retained all of the proceeds from the sale pursuant to its abandoned vehicle statutes ( D.C. Code *§§ 50-2402, 50-2622, 50-2623).*

In *Miranda v* City *of Cornelius,* the court held that "while the Supreme Court has accepted a deterrence rational for civil forfeitures of vehicles that were used for criminal activity see *Bennis v. Michigan*, 516 U.S. 442,452, 116 S. Ct. 994, 134 L Ed. 2d 68, the deterrence rationale is incompatible with the principles of community caretaking doctrine."    *Miranda* v *City of Cornelius,* 429 F 3d **858,866.**   The court further stated that "unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard."  *Zbid.*   "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Zbid.*

**C.  District Court Has Not Fully Considered Plaintiff's Fifth Amendment Claims**

**1.   As a matter of law, Plaintiff can prevail on her claim of taking of Property Without Just Compensation (Count II)**

Plaintiff was the sole legal owner of the white Volkswagen Beetle that the District of Columbia sold on June 4,2002.  Plaintiff had a constitutionally protected property interest in her vehicle.  On June 4, 2002, the District of Columbia sold Plaintiffs late-model car (with relativel: low mileage) at auction as an "abandoned" vehicle.  At the time the car was sold its blue book

value was approximately $13,000.  At the time the car was sold, there were at most 2 parking tickets outstanding that totaled $200 (inclusive of penalties) plus Addison Road tow and storage fees of $215.[33]  The car was sold for thousands of dollars.  The District of Columbia retained the proceeds, refused Plaintiffs demands for the difference between the sales proceeds and the small amount that was due for the one remaining ticket per DMV records and Addison Road storage and tow fees, and refused to apply the proceeds to the one remaining ticket per DMV records.  Further, the District blocked the renewal of Plaintiffs driver's license due to the one alleged outstanding ticket.

The District asserts that by statute the DPW is not permitted to reimburse a vehicle owner with the proceeds from the sale of an abandoned vehicle as the Abandoned & Junk Vehicles Division is required to use such funds for its operations pursuant to *D.C. Code §50-2623.*  However, Plaintiffs car was not "abandoned."  Thus, the District did not have statutory authority under *D.C. Code §50-2623* to sell Plaintiffs car as an "abandoned" vehicle.  The District further asserts that it is not required to compensate Plaintiff for property it "legally" acquired.  As discussed above, there are disputes with regard to material facts which indicate that the District did not "legally" acquire Plaintiff's car.

For example, as discussed above, there are disputes with regard to, among other things, whether, when and how the District provided notice about the June **4,** 2002 auction sale, whether the District provided "proper notice" under its statutes, whether the District complied with its laws, policies and procedures with regard to the boot and tow of Plaintiff's car, whether payments were properly applied, whether Plaintiff "claimed" her vehicle on May 29, 2002, whether  a stay of the auction was granted at the May 29,2002 hearing and Blue Plains storage Fees were waived, whether Plaintiff was informed that she had until June 7,2002 to retrieve her car and whether the District's actions were reasonable under the Fourth Amendment.[3]

---

[33] **See discussion above with regard to issues with respect to unapplied and possible misapplied payments and other issues with regard to the application and timeliness of application of payments.**

Further, Plaintiffs car was a late-model vehicle with relatively low mileage. The amount Plaintiff allegedly owed for the outstanding ticket(s) and tow and storage fees was relatively small in relation to the value of the car. The District asserts that Plaintiff owed just two hundred dollars for outstanding parking tickets (including fines and penalties), plus Addison Road tow and storage fees of $2 15 on or about the date of auction sale. The record reflects Blue Plains fees were waived (released per HR 778/5/29/02) at the May 29,2002 hearing. **As** discussed above, there are issues with regard to the application and timely application of payments and the application of payments after the sale date; thus the outstanding balance due may have been even less.

The district court held that *D.C. Code§ 50-2623* required the proceeds from the sale of a vehicle to be applied first to the expense of the auction and the cost of towing and storing and required any remainder to be deposited in the Fund to be used by the Abandoned and Junk Vehicle Division to carry out its duties. Further, the district court held that more to the point the government is not required to compensate an owner for property it has already legally acquired and property seized and retained pursuant to police power is not taken for public use in the context of the takings clause.

*D.C. Code§ 50-2623,* was titled *Sale of abandoned vehicles at public auction; disposal of junk vehicles; disposition of proceeds.* The statute provided the authority for the District of Zolumbia to sell "abandoned" vehicles, not to sell vehicles against which there are 2 or more outstanding parking tickets. If Plaintiffs car was not "abandoned" and more specifically did not meet the statutory definition of an "abandoned" vehicle, the District did not have statutory authority under D.C. *Code§ 50-2623* to sell Plaintiffs vehicle and to retain all of the proceeds from the sale. In addition, as discussed above, there **are** disputes with regard to material facts which further indicate that the District did not "legally" acquire Plaintiff's car. Moreover, as discussed above, this is not a civil forfeiture. Under D.C. *Code§ 50-2623,* vehicles and the

-31-

proceeds from the sale of vehicles are taken for public use and used for the operation of the Abandoned and Junk Vehicle Division.

To the extent the District of Columbia contends that D.C. Code *§50-2623* authorized it to sell Plaintiffs car and personal property contained therein and to retain all of the proceeds from the sale, District Code *§50-2623* is unconstitutional as applied to the facts in this case. See, Am. Compl.

**2. This is not a civil forfeiture case.**

Plaintiffs car was NOT used for criminal activity or purchased with the proceeds from criminal activity.   The District purportedly seized, impounded and ultimately sold Plaintiffs car to collect two (2) outstanding parking tickets. The District of Columbia asserts that it sold Plaintiffs car and retained all of the proceeds from the sale pursuant to its abandoned vehicle statutes ( D.C. Code *§§ 50-2402, 50-2622, 50-2623)*.

In *Miranda v City* of Cornelius, the court held that "while the Supreme Court has accepted a deterrence rational for civil forfeitures of vehicles that were used for criminal activity see *Bennis v. Michigan,* 516 U.S. 442,452, 116 S. Ct. 994, 134 L Ed. 2d 68, the deterrence rationale is incompatible with the principles of community caretaking doctrine." *Miranda* v *City of Cornelius*, 429 F 3d 858,866.  The court further stated that "unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard." *Ibid.*  "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Zbid.*

**3. District Deprived Plaintiff of Property Without Due Process of Law**

Because the District of Columbia did not properly notify Plaintiff that her car would be sold at public auction on June 4, 2002 (as discussed above) and because **the** District apparently booted prior to the expiration of the answer period for tickets and because the District failed to

provide Plaintiff with adequate pre- and post-deprivation hearing regarding the sale of the vehicle, and  because the District failed to provide adequate notice or hearing between the time Plaintiff was told she could reclaim her vehicle (May 29,2002) and the time it was sold (June **4,** 2002), the District deprived Plaintiff of her property without due process of law.

As discussed above, there are disputes with regard to material facts in this case including, among other things, whether, when **and** how the District provided notice about the June **4,** 2002 auction sale,  whether the District provided "proper notice" under its statutes, whether the District complied with its laws, policies and procedures with regard to the boot and tow of Plaintiffs car, whether payments were properly applied, whether Plaintiff "claimed" her vehicle on May 29,2002, whether  a stay of the auction was granted at the May 29,2002 hearing and Blue Plains storage fees were waived, **and** whether Plaintiff was informed that she had until June 7, 2002 to retrieve her car.

To the extent the District of Columbia contends that the sale of Plaintiff's car and the retention of the proceeds was authorized by *District* Code *§§ 50-2622, 50-2623 and 50-2402* or other D.C. Code, such D.C. Code is unconstitutional as applied to the facts in this case.  See, Am. Compl.

**4. Violation of Right to Equal Protection**

There are two components to Plaintiff's Equal Protection claim:  Harsh treatment directed at Plaintiff and the District of Columbia's blanket Parking Ticket Amnesty Program. Plaintiff asserts that the Parking Ticket Amnesty Program in and of itself violates Plaintiffs righ to equal protection and creates a prima facie case.  This matter is discussed below.

Plaintiff s Equal Protection claim is inextricably linked to other claims in the amended complaint and cannot be fully resolved until those other claims, and related factual matters, are resolved.  Nonetheless, Plaintiff has provided preliminary evidence of a pattern of policy violations, misrepresentations, errors **and** severe treatment that when viewed individually may

seem innocent and inconsequential, but in the aggregate provide powerful evidence of unequal treatment. For example,

1. Plaintiffs car was legally parked when it was booted and towed in March 2002. Plaintiffs car was not ticketed on the boot or tow dates. See, Pl. 1st Adm., Sec. II ¶¶16 & 17. Also, see Winchester Decl., **Ex.** A, which verifies that there were no tickets issued on March 12,2002.

2. The 60-day Period had not yet expired and thus Plaintiff was not yet deemed liable for all of her tickets when the car was booted. (See, Pl. 1st Adm., **Ex.** R and Winchester Decl. Ex. A). Further, Plaintiff was appealing one of the tickets. See discussion above.

3. Payments do not appear to have been applied in a timely manner. For example, a $5 payment was credited on July 15,2002. See, Pl. 1st Adm. Ex. H. See also, Claytor Decl., Ex. B that as of 8/23/04 reflects, among other things, a $45 unapplied balance and numerous instances where the penalty exceeded the fine for individual tickets.

4. A stale dated Nov. 19, 2001 ticket was suspiciously added to Plaintiffs DMV record sometime in May 2002. The ticket was not reflected on the April 19,2002 ticket printout. See, Pl. 1st Adrn., **Ex.** C & D. The ticket was dismissed by the hearing examiner at the May 29,2002 hearing examiner. See, Pl. 1st Adm., Sec.II ¶11 & Claytor Decl., Ex. J.

5. Notice of Pending Sale of Plaintiffs car was sent to an incorrect address and thus was returned undeliverable due to a "typographical error" by District employee(s). See, Pl. 1st Adm., Ex.O. See also, Def s Stmt. ¶ 8.

6. The District published notice of sale in Washington Times just once, not twice as required by 2002 statute See, Pl. 1st Adm., **Ex.** P. & Def.'s Mot. Summ. J., Ex.4.

7. Plaintiff did not receive actual notice about pending June **4,** 2002 sale until LATE May 2002, a short-time before the scheduled June 4,2002 date sale and significantly less than the 45 days required by D.C. Code.

8. Car was sold on June 4,2002 despite the fact that Plaintiff had a hearing on May 29, 2002 to stop the sale, Plaintiff was told that her car would not be sold and that she had until June 7, 2002 to claim the vehicle. Plaintiff's car even was released in the Abandoned property system with a notation "All *Tow* and *Storage Fees Release* Per HR *778/5/29/02.*" (See, Pl. 1st Adm., Ex. K **&**, Jones Decl., Ex. E ).

9. Plaintiff's car was sold for thousands of dollars. The District did not apply the proceeds from the sale of Plaintiff's car to Plaintiffs one outstanding parking ticket and did not remit any of the proceeds to Plaintiff.

10. In July 2003, after the sale of Plaintiffs car, the District BLOCKED the renewal of Plaintiffs driver's license due to the one outstanding parking ticket. See, Pl. 1st Adm., Ex. I.

11. In July 2002, the District enacted a blanket ticket amnesty program that **forgave original fines for parking tickets,** as well as, penalties for millions of tickets totaling hundreds of **millions of dollars.** See, Pl. 1st Adm., Ex. Q. The District attempted to obsure the facts

about the nature of the July 2002 Ticket Amnesty program by including as exhibits to Def.'s Mot. Summ. J. an Aug. 13, 2001 internal memo and a June 12, 2001 press release that described either an earlier amnesty program or an earlier version of the July 2002 program, but in any event not the version of the statute that was enacted.

The District of Columbia in explaining the justification for the Parking Ticket Amnesty Program, states the following (Def.'s Mem.Pts. Auth., p. 21-22).

"The amounts owed, in many cases, were substantial and could represent a financial obstacle to persons seeking to obtain or renew their driver's license or vehicle registrations. In addition to the vociferous public outcry, it was uncertain whether the potential denial of these applications would result in increased collections or simply more people either not driving or driving with expired registration and operator's permits."

In contrast, Plaintiff has a history of PAYMENT of a large number of parking tickets. Also in contrast, Plaintiffs late model VW Beetle with relatively low mileage, was sold for at most two (2) outstanding parking tickets totaling at most $200 (plus Addison Road tow and storage fees).[35] Plaintiff purchased the VW Beetle new for more than $20,000 with her hard-earned money. When the car was sold in June 2002, the cost to replace it was approximately $24,000.

Prior to the impoundment, Plaintiff wrote letters to city officials about the District's failure to investigate and prosecute crimes that were committed against her and in January 2001 she filed a complaint with the Office of Professional Responsibility about the District of Columbia Metropolitan Police Department (MPD). In December 2001, plaintiff informed city officials about her intent to take civil action against the District **and** she sent a letters to city officials. Plaintiff also participated in subsequent efforts to have Mayor Anthony Williams recalled.

**Plaintiff asserts that the District's severe actions against her were motivated by ill will and a "spiteful effort to get her" for reasons wholly unrelated to legitimate state action,**

---

[5] Plaintiff has raised issues about the application and timeliness of application of payments made by her and on her behalf. For example, a payment for **$5** was credited on **July 15, 2002** (after the sale of the car on June **4, 2002).** See Pl. 1st Adm., **Ex.** H. Further, there are possible unapplied amounts and overpayments. Moreover, the District of Columbia's Department of Motor Vehicles (DMV) has had numerous well-publicized scandals. **As** a consequence, in 2004, the District established a new "integrity unit," that is referred to in a January 8, 2004 *Washington* **Post** article, District **Announces** Revamping *of DMV* **.**

Plaintiff has been treated differently than others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech* 120 S Ct 1073, 58 US 562, 145 L Ed 2d 1060; *Esmail v. Macrane 52* **F.** 3d 176. In the *Village of Willowbrook v Olech,* the Supreme Court held that a person can sue under the equal protection claim as a class of one as long as she alleges that she has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Plaintiffs Equal Protection claims therefore must survive summary judgment.

### D. Plaintiff Did Not Concede Common Law Claims

Plaintiff did not concede common law claims; the District of Columbia did not meet its burden of identifying evidence that demonstrates there is no genuine issue of material fact. In considering whether a moving party has met its burden of persuasion, the court must take account of the entire setting of the case and consider all papers of record, including Plaintiff's First Admissions, as well as, any materials prepared for the motion.

Moreover, there are at least four material facts in dispute that are relevant for resolution of Plaintiffs Common law claims ~~and~~ that were directly addressed in Plaintiffs Oppostion to Def's Mot. Summ. J.

1. There is a dispute with regard to the number of tickets considered eligible for boot and tow and disputes with regard to compliance with District policies. Pl. Opp. **4** & 7-8
2. Plaintiffs car was not abandoned and Plaintiff did not receive statutory notice. Pl. Opp. p. 14-16 & **8-9.**
3. A Stay of the June 4, 2002 auction was granted and Blue Plains storage fees were waived at the May 29, 2002 hearing. Pl. Opp. p. 9-11 & **5.**
4. Plaintiff was informed that she has until June 7, 2002 to retrieve her car and the District acknowledges that on June 7, 2002, Plaintiff went to the Blue Plains lot to retrieve her vehicle. Pl. Opp. p. 10

### 1. Conversion (Count VI)

The District of Columbia asserts that Plaintiff cannot meet the first element of the tort, an unlawful exercise of ownership dominion or control, since they assert the District's exercise of control over Plaintiffs car was never unlawful. The District asserts that its control was never unlawful because it is "without dispute" that there were at least two unpaid parking tickets from

the time the District exercised control over the car on March 12, 2002 when the DMV immobilized the vehicle through the auction date.

As discussed above, there is a dispute with regard to the legality of the District's exercise of control over Plaintiffs car and the proceeds from the sale of her vehicle. Plaintiffs car was not "abandoned" and there are questions with regard to the legitimacy and timing of the boot and tow. Further, the District did not satisfy the notice and procedural requirements set forth in *D.C* Code *¶¶ 50-2622 and 50-2402.* Moreover, Plaintiff asserts that a stay was granted at the May 29, 2002 hearing and there is evidence that Plaintiff's car was released in the abandoned property system prior to the sale Plaintiffs car.

## 2. Promissory Estoppel (Count VII)

The District asserts Plaintiff cannot meet the first element of her claim (the existence of a promise) because there is no evidence in the record of the existence of **any** promise on the part of the government. In addition, the District asserts that Plaintiff cannot show any affirmative misconduct by any governmental official with authority.

Following an administrative hearing on May 29, 2002, an individual(s) acting in an official capacity as employee or agent informed Plaintiff that her car would not be sold on June 4, 2002. He informed Plaintiff that she had until June 7, 2002 to pick up the car. Indeed, there is evidence that Plaintiff's car was released in the abandoned property system on May 29, 2002. The Blue Plains lot records reflect a notation "All *Tow* and *Storage Fees Release* Per HR *778/5/29/02.*" See, Pl. 1st Adm. **,Ex.** K. Also see, Jones Decl. **Ex.** E. Plaintiff relied on these promises and did not attempt to reclaim her car prior to June 4, 2002 or to remove from the car her personal property, including two laptop computers.

In its Def.'s Stmt. ¶16, the District acknowledged that:

> "On June 7, 2002, Plaintiff attempted to recover her car from the Blue Plains Lot, but was told that her **Car** had been sold at public auction three days earlier. "

Further, there also is evidence in the record for the May 29, 2002 hearing (for the Stay and Blue Plains tow and storage fees), that there was a waiver of Blue Plains fees. **(Ex.I** Claytor Decl.) As discussed above, the District included as an exhibit to a declaration accompanying its Mot. Summ. J. a partially illegible copy of a hand written hearing record for the May 29, 2002 hearing. For all other hearings, the District included typewritten hearing records. It is appropriate to infer that the typewritten record for HR 778 (Stay and Blue Plains tow and storage fees) would have been prejudicial to the District of Columbia's case, which establishes a prima facie case as to the issues involved and should shift the burden of producing evidence (e.g., "spoliation inference").

## 3. Negligent Misrepresentation (Count VIII)

The District asserts that Plaintiff cannot demonstrate that any agent or employee of the District, speaking about a matter in the scope of his or her employment, made a false statement or omission of fact.

Individuals acting in their official capacity as employees or agents of the District of Columbia notified Plaintiff on May 29, 2002 that she had until June 7, 2002 to reclaim her car. In its Def.'s Stmt. ¶16, the District acknowledged that:

> "On June 7, 2002, Plaintiff attempted to recover her car from the Blue Plains Lot, but was told that her Car had been sold at public auction three days earlier."

Further, there is evidence that Plaintiffs car was released in the abandoned property system prior to the sale Plaintiff's car. The Blue Plains lot records reflect a notation "All **Tow** and *Storage Fees Release Per HR 778/5/29/02.*" (See **Ex.** K, Plaintiffs First Set of Request for Admission. Also see, **Ex.** E, Jones Decl.).

In addition, there is evidence in the hearing record for the May 29, 2002 hearing for Blue Plains Tow and Storage Fees, that there was a waiver of Blue Plains fees. **(Ex.I** Claytor Decl.) As discussed above, the District included as an exhibit to a declaration a partially illegible copy of a handwritten hearing record for the May 29, 2002 hearing. For all other hearings, the

-38-

District included typewritten hearing records.   It is appropriate to infer that the typewritten record for HR 778  (Stay and Blue Plains Tow and Storage Fees) would have been prejudicial to the District of Columbia's case, which establishes a prima facie case as to the issues involved and should shift the burden of producing evidence  (e.g., "spoliation inference").

Plaintiff has presented evidence that she received a representation that her car would not be sold on June 4, 2002.   Plaintiff's actions clearly demonstrate that she relied on that representation and it was reasonable for Plaintiff to rely on such representation.   After learning about the pending June 4,2002 sale, Plaintiff requested and received  a hearing on May 29, 2002, Plaintiff paid one of the tickets after the May 29, 2002 hearing, Plaintiff did not retrieve her property from the car after the May 29,2002  hearing, and Plaintiff attempted to retrieve her car on June 7,2002.

**4.    Unjust Enrichment (Count IX)**

The District of Columbia asserts that pursuant to its laws, the Department of Public Works (DPW) is NOT permitted to reimburse Plaintiff for the proceeds of her car, or to apply the proceeds to her outstanding ticket, fines or fees.  Thus, District asserts that its laws preclude Plaintiff from having a reasonable expectation that she should be paid for the value of her car, that the District should have reasonably expected to pay for the property seized and sold or that that there is a societal expectation that the District  should have paid Plaintiff for her car.

As discussed above, the law addresses the sale of "abandoned" vehicles.  Plaintiffs car was not abandoned.

The proceeds that the District of Columbia received from **the** June 4,2002 sale of Plaintiff's vehicle and personal property contained therein **far** exceeded the value of any outstanding ticket or fines associated with the vehicle.   The District of Columbia law(s) which the District asserts preclude it from reimbursing Plaintiff for the proceeds of her car, or applying the proceeds to her outstanding ticket, fines or fees cover "abandoned" vehicles and require "proper notice."   As

**-39-**

discussed above, Plaintiffs car was not abandoned and did not meet the statutory definition of an "abandoned" vehicle.  Moreover, the District did not satisfy the notice and procedural requirements set forth in *DC* Code *§§50-2622 and 50-2402*.

Thus, Plaintiff did have a reasonable expectation that she would be paid for the value of her car, that the District should have reasonably expected to pay for the property and that —— there is a societal expectation that the District  should have paid Plaintiff for her car.

### 5.    Intentional Infliction                 of Emotional Distress (Count X)

The District of Columbia acted with intent to deprive Plaintiff of her rights and/or in callous and reckless indifference to Plaintiff's constitutional rights.  The District's actions violated Plaintiffs  privacy, negatively affected Plaintiff's health and well-being and caused embarrassment and mental anguish and suffering.   Plaintiff also experienced a loss and impairment of earnings for an extended time period.   The District's extreme and outrageous conduct caused extreme emotional distress.  The acts of the District of Columbia were accompanied by ill will, discriminatory treatment, recklessness, wantonness, oppressiveness willful disregard for Plaintiff's rights and other circumstances tending to aggravate the injury and proof of those elements may be inferred from the acts of the defendant and from circumstantial evidence. *Daskalea* v District of Columbia, 227 F. 3d 433.   Am. Compl.

### E. District of Columbia's Blanket Ticket Amnesty Program Violated Plaintiff's Right To Equal Protection.

At or around the time the District of Columbia seized Plaintiffs car and sold Plaintiffs car for at most two outstanding parking tickets, the District instituted a Parking Ticket Amnesty Program[36] (referred to herein as the 2002 Parking Ticket Amnesty Program), which was expected to result in the forgiveness of original fines and penalties for millions of parking tickets

---

[36] D.C. Act 14-413 (dated July 16,2002) cited as the *"Motor Vehicle Registration and Operator's Permit Issuance Enhuncemen Emergency Amendment Act of 2002."*

totaling hundreds of millions of dollars. The 2002 Parking Ticket Amnesty Program, in and of itself, violated Plaintiffs right to equal protection and creates a prima facie case.

The 2002 Parking Ticket Amnesty Program is different than other amnesty programs in that the 2002 Parking Ticket Amnesty Program provided for the District of Columbia to forgive original fines for parking tickets, as well as, penalties that had incurred on the tickets. During the time period in question, Plaintiff received parking tickets. Plaintiff was required to pay all outstanding parking ticket fines that she received.

In response to Plaintiff's original compliant, the District asserted that it was without sufficient information or knowledge to either admit or deny many, if not most, of the claims in the original complaint, including the mere existence of the 2002 Parking Ticket Amnesty Program.    Plaintiff included in her First Set of Requests for Admissions ( Exhibit Q) a copy of D.C. Act **14-413** that is cited as the *"Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002,"* and is referred to herein as the 2002 Parking Ticket Amnesty Program. The District of Columbia did not make any requests for admission and did not respond or object to Plaintiff's First Set of Requests for Admissions.

In its Memorandum of Points and Authorities in support of its Motion for Summary Judgment, the District included a description of a partial amnesty program, not the 2002 Parking Ticket Amnesty Program.   On p. 22 of the Mem. Pts.& Auth., the District states that:

"a program was put in place where individuals with outstanding tickets issued prior to April 9, 1997 would be forgiven the penalties that had incurred on the tickets, but would still have to pay the underlying fines on the tickets in order to clear their records with the DMV."

The law (DC Act **14-413**) states

"(B) An owner of a motor vehicle or trailer shall not be liable for any parking fines penalties or fees for a motor vehicle or trailer imposed prior to January **1, 1997** that have remained uncollected as of the effective date of the Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002. **Any** such uncollected **parking** fines, penalties or fees are hereby forgiven."

The 2002 Parking Ticket Amnesty Program clearly was a blanket forgiveness of fines and penalties. Apparently, the law initially was drafted **to** forgive only penalties and a means

-41-

was to be provided for vehicle owners to workout payment arrangements for the underlying

original fines. The law was changed prior to enactment to provide blanket forgiveness of the

underlying fines, as well as, penalties. [37] The law was signed by then Mayor Williams and

Council Chairman Linda Cropp, but unlike other laws enacted around that time period it was not

signed by the DC Corporation Council (now known as Attorney General).

The District included as an attachment to its Motion for Summary Judgment a press

release and an internal memo that purportedly described the 2002 Parking Ticket Amnesty

Program. The press release was issued on June **12,2001** and described a partial amnesty

program that forgave penalties, not the original fines, and was effective until October **26,2001.**

The internal memo was dated August **13,2001** and also described that partial amnesty program.

The Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency

Amendment Act of 2002 (Act **14-413)** was a blanket amnesty program and was signed into law

on July 16,2002.

Inclusion of the internal memo and press release together with an inaccurate description

of the amnesty program in the memorandum of points and authorities may be viewed as a

deliberate attempt by the District of Columbia to mislead the court about the nature and

provisions of the 2002 Parking Ticket Amnesty Program.

### VIII.        CONCLUSION

The district court erred in granting Defendant's Motion for Summary Judgment. Plaintiff

has identified genuine issues of material fact and application of law and produced evidence

which, if believed, is "sufficient to allow a reasonable trier of fact to find" in her favor. The

merits of Plaintiff's case and appeal are "clear." Plaintiff respectfully requests that the court of

---

[37] **A** July 3, 2002 *Washington Post* Article, ***D.C. Council Votes to Erase Traffic Tickets Williams May Veto $347 Million Amnesty,*** indicated that the Council for the District of Columbia voted to forgive millions of dollars of parking tickets and penalties incurred before 1997. An Earlier *Washington Post* article on June **21,2002,** ***District Will Offer Partial Amnesty on Parking Tickets,*** stated that the District **was** planning to forgive penalties **on** pre-1997 tickets, which totaled **$130** million, and to permit individuals to work out payment plans for the original ticket balances. The Council extended the amnesty to include not just penalties but also the original fines.

appeals reverse the district court's opinion and remand the case for further proceedings.  Further,

Plaintiff respectfully requests declaratory relief, as appropriate.

Respectfully submitted,

Christine A. Tate, pro se
P.O. Box 9451
Washington, DC 200 16
202-286-1795
catdcmes1@hotmail.com

-43-

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
### BRIEF OF APPELLANT
#### ADDENDUM
#### STATUTES

D.C. Act 14-413

D.C. Code § 50-2201.03(k)

D.C. Code § 50-2201.03(k) (as amended)

D.C. Code §50-2303.5(d)

D.C. Code § 50-2401(1)(E)

D.C. Code §50-2402

D.C. Code §50-2602(6) (repealed)    to Follow

D.C. Code §§SO-2622 (repealed)

D.C. Code §50-2623 (repealed)

DISTRICT OF COLUMBIA REGISTER

AUG 2 - 2002

**ENROLLED ORIGINAL**

AN ACT

D.C. ACT 14-413

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

JULY 16, 2002

*Codificatio
District of
Columbia
Official Co*

*2001 Editi*

*2002 Wint
Supp.*

*West Gro
Publisher*

To amend, on an emergency basis, the District of Columbia Revenue Act of 1937 and the
District of Columbia Traffic Act, 1925 to allow residents to register their vehicles and
renew their operating permits where they have alleged unpaid parking fines, penalties,
and fees imposed on their motor vehicles prior to January 1, 1997.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That th
act may be cited as the "Motor Vehicle Registration and Operator's Permit Issuance
Enhancement Emergency Amendment Act of 2002".

Sec. 2. Section 2 of the District of Columbia Revenue Act of 1937, approved Aug
17, 1937 (50 Stat. 680; D.C. Official Code § 50-1501.02), is amended as follows:

(a) Subsection (c)(2) is amended by striking the phrase "Has paid all applicable fines"
and inserting the phrase "Except as provided by subsection (c-1) of this section, has paid all
applicable fines" in its place.

(b) A new subsection (c-1) is added to read as follows:

"(c-1)(1) For the purposes of issuing a registration certificate and identification tag or
tags pursuant to subsection (c) of this section, the Mayor shall not refuse to issue a certificate
and identification tag or tags because the owner has not paid all applicable parking fines,
penalties and fees for the motor vehicle or trailer, if those parking fines, penalties, and fees were
first imposed prior to January 1, 1997.

"(2) An owner of a motor vehicle or trailer shall not be liable for any parking
fines, penalties and fees for a motor vehicle or trailer imposed prior to January 1, 1997, that have
remained uncollected as of the effective date of the Motor Vehicle Registration and Operator's
Permit Issuance Enhancement Emergency Amendment Act of 2002. Any such uncollected
parking fines, penalties and fees are hereby forgiven.".

Sec. 3. Section 7(a) of the District of Columbia Traffic Act, 1925, approved March 3,
1925 (43 Stat. 1121; D.C. Official Code § 50-1401.01(a)), is amended by adding a new
paragraph (1A) to read as follows:

"(1A)(A) For the purposes of issuing an operator's permit pursuant to this

*Note,
§ 50-1501*

*Note,
§ 50-1401*

**ENROLLED ORIGINAL**

subsection, the Mayor shall not refuse to issue an operator's permit because the applicant has not paid all applicable parking fines, penalties and fees for a motor vehicle or trailer, if those parking fines and fees were first imposed prior to January 1, 1997.

"(B) An owner of a motor vehicle or trailer shall not be liable for any parking fines, penalties or fees for a motor vehicle or trailer imposed prior to January 1, 1997, that have remained uncollected as of the effective date of the Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002. Any such uncollected parking fines, penalties or fees are hereby forgiven.".

Sec. 4. The Department of Motor Vehicles shall establish and implement an adjudication process for owners and applicants who have paid parking fines, penalties, and fees imposed for a motor vehicle or trailer that were imposed prior to January 1, 1997 and paid since January 1, 2002, and refund amounts only if there is proof that tickets were issued in error.

Note:<br>§§ 50-<br>1501.02<br>1401.01<br>2302.05

Sec. 5. Fiscal impact statement.
This act shall have no fiscal impact.

Sec. 6. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), and shall remain in effect for no longer than 90 days, as provided for emergency acts of the Council of the District of Columbia in section ~~~~~~~~~~~ Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 788; D.C. Official Code § 1-204.12(a)).

*(signature)*
Chairman
Council of the District of Columbia

*(signature)*
Mayor
District of Columbia
APPROVED
July 16, 2002

Publication District of Columbia Official Code, 2001 Edition

West Group Publisher, 1-800-228-2180.

◀ Term ▶

| TEXT

DC ST § 50-2201.03

Formerly cited as DC ST 1981 § 40-703

DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
DIVISION VIII. GENERAL LAWS.
TITLE 50. MOTOR AND NON-MOTOR VEHICLES AND TRAFFIC.
SUBTITLE VII. TRAFFIC.
CHAPTER 22. REGULATION OF TRAFFIC.
SUBCHAPTER I. GENERAL PROVISIONS.
PART A. TRAFFIC ACT, 1925.
Copyright c 2002 By The District of Columbia All Rights Reserved

Current through May 21, 2002

➔ § 50-2201.03. Mayor to make rules; Department of Transportation; Director, Congressional parking; title fees; common carriers, penalties, prosecutions; publication of regulations; excise tax; impoundment for outstanding violations. ➔

(a) The Mayor is authorized and empowered to make, modify, repeal, and enforce rules relating to and concerning the following:
(1) The control of traffic and the movement of traffic;
(2)(A) The length, weight, height, and width of vehicles; and
(B) The brakes, horns, lights, mufflers, and other equipment of vehicles and the inspection of same;
(3)(A) The registration and reregistration of vehicles;
(B) The titling and retitling of motor vehicles and trailers, and the transfer of titles to motor vehicles and trailers; and
(C) The revocation, suspension, restoration, and reinstatement of the registration for motor vehicles and trailers and of certificates of title to motor vehicles and trailers;
(4) The     iance, suspension, revocation, restoration, and reinstatement of operator's permits and operating privileges; provided, that the fee for restoration or reinstatement shall be $75;
(5) The establishment and location of hack stands; and
(6) The speed, routing, and parking of vehicles; provided, that the Mayor shall establish and locate parking areas in the vicinity of government establishments for use only by members of Congress and governmental officials when on official business.
(b) There is established in the government of the District of Columbia a Department of Transportation, which under the direction of the Mayor, shall have charge of the issuance and revocation of operators' permits, the registration and titling of motor vehicles, the making of traffic studies and plans, the establishment and designation of arterial and other public highways, providing for the equipment of any street, road, or highway with control lights or other devices, or both, for the regulation of traffic, the installation and maintenance of traffic signs, signals, and markers, and of such other matters as may be determined by the Mayor. The Mayor shall appoint a Director of Vehicles and Traffic, who shall be in charge of said Department, and such other personnel as he may deem necessary to perform the duties thereof and as may be appropriated for by Congress. The Director of Vehicles and Traffic shall be responsible directly to the Mayor for the faithful performance of his duties and shall be subject to removal by the Mayor for cause.
(c) Members of Congress may park their vehicles in any available curb space in the District of Columbia, when:
(1) The vehicle is used by the member of Congress on official business;
(2) The vehicle is displaying a Congressional registration tag issued by the jurisdiction represented by the member; and
(3) The vehicle is not parked in violation of a loading zone, rush hour, firehouse, or fire plug limitation.
(d) The Mayor shall cause to be levied, collected, and paid a $20 fee for each titling and retitling, and he shall not, after the 1st day of January, 1932, register or renew the registration of any motor vehicle or trailer unless and until the owner thereof shall make application in the form prescribed by the Mayor and be granted an official certificate of title for vehicle. No registration or other fee shall be charged to vehicles owned by the federal or District government or any duly accredited representative of a foreign government The owner of a motor vehicle or trailer registered in the District of Columbia shall not, after the 1st day of January, 1932, operate or permit or cause to be operated any such vehicle upon any public highway in the District without first obtaining a certificate of title therefor, nor shall any individual knowingly permit any certificate of title to be obtained in his name for any vehicle not in fact owned by him, and any individual violating any provision of this subsection or any regulations promulgated thereunder shall be fined not more than $1,000 or imprisoned not more than one year, or both. If the properly designated agent of the Mayor shall determine that an applicant for a certificate of title is not entitled thereto, such certificate of title may be refused, and in that event

such determination is reversed upon written application to the Mayor by the individual affected, *such* individual shall be entitled to proceed further as provided under ß 50-1403.01(a); provided, that reasonable time for hearing be given the applicant *in* the first instance.

(e) AS to all common carriers by vehicle which enter, operate *in*, or leave the District of Columbia, the power to mute small vehicles within the District of Columbia, to regulate their equipment other than that specifically named elsewhere in this part, to regulate their schedules and their loading and unloading, to locate their stop and all platforms and loading zones, and to require the appropriate marking thereof is vested in the Public Service Commission of the District of Columbia.

(f) Except as provided in the District of Columbia Traffic Adjudication Act of 1978 (ß 50-2301.01 et seq.), any person violating any provision of this part or any rule promulgated hereunder shall, upon conviction thereof, be fined not more than $300 or imprisoned for not more than 90 days, or both. Prosecution for violations shall be *in* the Superior Court of the District of Columbia upon information filed by the Corporation Counsel of the District of Columbia or any of his or her assistants.

(g) All regulations promulgated under the authority of this part shall be published in accordance with *the* requirements of title 1 of the District of Columbia Administrative Procedure Act (ß 2-501 et seq.).

(h) Repealed.

(i) Repealed.

(j)(1) In addition to *the* fees and charges levied under other provisions of this part, there is hereby levied and imposed tax on the issuance of every original certificate of title for a motor vehicle or trailer in the District of Columbia and, in the case of a sale, resale, gift or other transfer thereof, on the issuance of every subsequent certificate of title (except in the case of a bona fide gift between spouses or between parent and child) at the following percentage of the fair market value of the motor vehicle or trailer at the time the *certificate* of title is issued

| Weight .Class | Registration Fee |
|---|---|
| Class I (3,499 pounds or less) ..................................... | 6% |
| Class II (3,500 pounds or more) .................................... | 7% |

(2) For the purpose of this section, the Mayor or his duly authorized representative shall determine the fair market value of a motor vehicle or trailer. As used in this section, the term "original certificate of title" shall mean the first certificate of title issued by the District of Columbia for any particular motor vehicle or trailer. No *certificate* of title so issued shall be delivered or furnished *to* the person entitled thereto until the tax has been paid in full. The Assessor of the District of Columbia may require every applicant for a certificate to title to supply such information as he deems necessary as to the time of purchase, the purchase price, and *other information* relative to the determination of the fair *market* value of any motor vehicle or trailer for which a certificate of title is required and issued.

(3) The issuance of certificates of title for the following motor vehicles and trailers shall be exempt from the tax imposed by this subsection:

(A) Motor vehicles and trailers owned by the United States or the District of Columbia.

(B) Repealed.

(C) Repealed.

(D) Motor vehicles and trailers owned by a utility or public service company for use in furnishing a commodity or service; provided, that the receipts from furnishing such commodity or service are subject to a gross receipts or *mileage* tax in force in the District of Columbia at the time of a certificate of title for any such ✦vehicle✦ or trailer is issued.

(E) New motor ✦vehicles✦ acquired from dealers as replacements for defective ✦vehicles✦ purchased new not more than 60 days prior *to* the date of such replacement, except that if the fair market value of any replacement ✦vehicle✦ is greater than that of *the* ✦vehicle✦ which it replaces, then the tax imposed by this section shall be paid on such difference in value. If *the* fair market value of any replacement ✦vehicle✦ is less than that of the ✦vehicle✦ which it replaces, then the Mayor or his designated agent is authorized to refund to the owner of the replacement ✦vehicle✦ an amount equal to the difference between the *excise tax* paid on the defective ✦vehicle✦ and the excise tax paid on the replacement ✦vehicle✦.

(F) Rental ✦vehicles✦ and utility trailers, as defined in ß 50-1505.01.

(G) Taxis or taxicabs as defined in ß 50-303(8).

(H) Previously permanently registered motor ✦vehicles✦ and trailers purchased or acquired by nonresidents prior to coming into the District of Columbia and establishing or maintaining residences in the District.

(I) Commercial ✦vehicles✦ having the characteristics specified in ß 47-2352(c) that are owned or leased by a company with an established place of business (as defined in ß 47-2302(13)) located within the District of Columbia, if such ✦vehicles✦ are used to furnish a commodity or *service;* provided, that, the receipts from *furnishing* such commodity or service are subject to a gross receipts or mileage tax in force in the District of Columbia at the time a certificate of title is issued for the vehicle.

(k)(1) Any unattended motor vehicle found parked at any time upon any public highway of *the* District of Columbia against which there are 2 or more outstanding or otherwise unsettled traffic violation notices or notices of infraction or against which there have been issued 2 or more warrants may, by or under the direction of an officer or member of the Metropolitan Police force *or the* United States Park Police force *or* an employee of the District of Columbia Department of Transportation, either by towing or otherwise, be removed *or* conveyed to and ✦impounded✦ in any place designated by



" the Mayor or immobilized in such manner as to prevent its operation; except, that no such ✦vehicle✦ shall be immobilized by any means other than by the use of a device or other mechanism which will cause no damage to such ✦vehicle✦ unless it is moved while such device or mechanism is in place.

(2) It shall be the duty of the officer or member of the police force or employee of the District of Columbia Department of Transportation, removing or immobilizing such motor ✦vehicle✦, or under whose direction such ✦vehicle✦ is removed or immobilized, to inform as soon as practicable the owner of an ✦impounded✦ or immobilized ✦vehicle✦ of the nature and *circumstances* of the prior unsettled *traffic* violation notices, notices of infractions or warrants, for which or an account of which such ✦vehicle✦ was ✦impounded✦ or immobilized. In any case involving immobilization of a ✦vehicle✦ pursuant to this subsection, such          member or officer *or* employee shall cause to be placed on such ✦vehicle✦, in a conspicuous manner, notice sufficient to warn any individual to the effect that such ✦vehicle✦ has been immobilized and that any attempt to move such ✦vehicle✦ might result in damage *to* such ✦vehicle✦.

(3) The owner of such ✦impounded✦ or immobilized ✦vehicle✦, or *other* duly authorized person, shall be permitted to repossess or to secure the release of the ✦vehicle✦ upon:

(A)(i) The depositing of the collateral required for his appearance in the Superior Court of the District of Columbia to *answer* for each violation; or

(ii) Depositing the amount of the potential fine and penalty for each infraction, for which there is no outstanding or. *otherwise* unsettled *traffic* *violation notice*, notice of infraction or warrant; and

(B) Upon the payment of the *fees* required by paragraph (4) of this section.

(4) The owner of an immobilized ✦vehicle✦ shall be subject to a booting fee of *$50* for such immobilization. The owner of an ✦impounded✦ motor ✦vehicle✦ shall be subject to a towing fee of *$75*, plus a fee for storage. The owner of an immobilized ✦vehicle✦ which was ✦impounded✦ shall be subject to a total fee of *$75* plus a fee for storage, except that the total fee shall be $175 plus a fee 'for storage whenever the *size* or weight of the ✦impounded vehicle✦ requires the Mayor *to* engage an outside contractor or utilize special equipment to *tow* the ✦vehicle✦.

### CREDIT

### CREDIT(S)

#### 2001 Main Volume

(Mar. 3, 1925, 43 Stat. 1121, ch. 443, ◊ 6; July 3, 1926, 44 Stat. 814, ch. 739, ◊ 4; Feb. 27, 1931, 46 Stat. 1424, ch. 317, ◊◊ 3, 4; Dec. 19, 1932, 47 Stat. 750, ch. 5; Apr. 1, 1942, 56 Stat. 190, ch. 207, ◊ 1; July 2, 1945, 59 Stat. 313, ch. 222; May 27, 1949, 63 Stat. 128, title III, ch. 146, ◊ 301; Oct. 28, 1949, 63 Stat. 972, title XI, ch. 782, ◊ 1106(a); July 24, 1956, 70 Stat. 633, ch. 695, ◊ 1; Sept. 2, 1957, 71 Stat. 598, Pub. L. 85-273, ◊ 3; Oct. 3, 1962, 76 Stat. 742, Pub. L. 87-745, ◊ 1; July 8, 1963, 77 Stat. 77, Pub. L. 88-60, ◊ 1; Aug. 30, 1964, 78 Stat. 634, Pub. L. 88-503, ◊ 21; Sept. 30, 1966, 80 Stat. 856, Pub. L. 89-610, title II, ◊ 201; 1967 Reorg. Plan No. 3, 81 Stat. 980, ◊ 503(c); Dec. 4, 1967, 81 Stat. 532, Pub. L. 90-172, ◊ 1; Oct. 31, 1969, 83 Stat. 172, 174, Pub. L. 91-106, titles II, IV, ◊◊ 201, 404; Dec. 12, 1969, 83 Stat. 343, Pub. L. 91-145, ◊ 101; July 29, 1970, 84 Stat. 570, 583, Pub. L. 91-358, title I, ◊◊ 155(a), 163(g)(2); Dec. 15, 1971, 85 Stat. 657, Pub. L. 92-196, title VII, ◊ 705; Oct. 21, 1972, 86 Stat. 1015, Pub. L. 92-518, title III, ◊ 301(a); Nov. 1, 1973, 87 Stat. 531, Pub. L. 93-145, ◊ 101; Oct. 21, 1975, D.C. Law 1-23, title I, ◊ 102, 22 DCR 2094; Jan. 22, 1976, D.C. Law 1-42, ◊ 7(b), 22 DCR 6317; June 15, 1976, D.C. Law 1-70, title II, ◊ 201, 23 DCR 536; Apr. 19, 1977, D.C. Law 1-124, title I, ◊ 102, 23 DCR 8749; Apr. 26, 1977, D.C. Law 1-133, title IV, ◊ 402, 23 DCR 9697; Sept. 12, 1978, D.C. Law 2-104, ◊◊ 501, 601, 25 DCR 1275; Mar. 3, 1979, D.C. Law 2-139, ◊ 3205(l), 25 DCR 5740; Mar. 6, 1979, D.C. Law 2-157, ◊ 5, 25 DCR 6995; Apr. 3, 1982, D.C. Law 4-97, ◊ 5, 29 DCR 765; Sept. 14, 1982, D.C. Law 4-145, ◊ 7, 29 DCR 3138; June 22, 1983, D.C. Law 5-14, ◊◊ 803, 804, 30 DCR 2632; Nov. 15, 1983, D.C. Law 5-42, ◊ 2(b), 30 DCR 4999; May 1, 1990, D.C. Law 8-103, ◊ 2, 37 DCR 1615; Sept. 26, 1990, D.C. Law 8-170, ◊ 2, 37 DCR 4839; Aug. 17, 1991, D.C. Law 9-30, ◊ 4(a), 38 DCR 4215; May 5, 1992, D.C. Law 9-96, ◊ 4(b), 38 DCR 7274; Mar. 26, 1999, D.C. Law 12-175, ◊ 802, 45 DCR 7193; April 5, 2000, D.C. Law 13-80, ◊ 2, 46 DCR 10463.)

#### HISTORICAL NOTES – HISTORICAL AND STATUTORY NOTES

#### HISTORICAL AND STATUTORY NOTES

Prior Codifications

1981 Ed., ◊ 40-703.

1973 Ed., ◊ 40-603.

**Effect of Amendments**

D.C. Law 13-80 added par. (j)(3)(III).

Section 3 of D.C. Law 13-80 provides:

"The Council adopts the fiscal impact statement in the committee report, as revised and amended by the attached memorandum dated October 25, 1999, as the fiscal impact statement required by section 602(c)(3) of the Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Code ٥ 1-233(c)(3)) [٥ 1-206.02(c)(3), 2001 Ed.]."

Section 4 of D.C. Law 13-80 provides: "This act shall apply as of January 1, 2000."

Emergency Act Amendments

For temporary amendment of section, see ٥ 502 of the Fiscal Year 1999 Budget Support Emergency Act of 1998 (D.C. Act 12-401, July 13, 1998, 45 DCR 4794), ٥ 502 of the Fiscal Year 1999 Budget Support Congressional Review Emergency Act of 1998 (D.C. Act 12-564, January 12, 1999, 46 DCR 669), and ٥ 502 of the Fiscal Year 1999 Budget Support Congressional Review Emergency Act of 1999 (D.C. Act 13-41, March 31, 1999, 46 DCR 3446).

For temporary (90-day) amendment of section, see ٥ 502 of the Fiscal Year 3999 Budget Support Congressional Review Emergency Act of 1999 (D.C. Act 13-41, March 31, 1999, 46 DCR 3446).

For temporary (90-day) amendment of section, see ٥ 2(b) of the Motor Coach Vehicles Tax Exemption Emergency Amendment Act of 1999 (D.C. Act 13-182, November 22, 1999, 47 DCR 1).

Legislative History of Laws

Law 1-23 was introduced in Council and assigned Bill No. 1-47, which was referred to the Committee on Finance and Revenue. The Bill was adopted an first, amended first, and second readings, and reconsideration of second reading, on April 15, 1975, June 1, 1975, June 24, 1975 and July 11, 1975, respectively. Signed by the Mayor on July 23, 1975, it was assigned Act No. 1-34 and transmitted to both Houses of Congress for its review.

Law 1-42 was introduced in Council and assigned Bill No. 1-161, which was referred to the Committee on the Budget. The Bill was adopted on first and second readings on July 29, 1975 and October 7, 1975, respectively. Signed by the Mayor on October 24, 1975, it was assigned Act No. 1-59 and transmitted to both Houses of Congress for its review,

Law 1-70 was introduced in Council and assigned Bill No. 1-229, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings and reconsiderations of final reading on February 20, 1976, March 11, 1976 and April 6, 1976, respectively. Signed by the Mayor on April 20, 1976, it was assigned Act No. 1-106 and transmitted to both Houses of Congress for its review.

Law 1-124 was introduced in Council and assigned Bill No. 1-375, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings on December 3, 1976 and December 17, 1976, respectively. Signed by the Mayor on January 25, 1977, it was assigned Act No. 1-226 and transmitted to both Houses of Congress for its review.

Law 1-133 was introduced in Council and assigned Bill No. 1-11, which was referred to the Committee on Transportation and Environmental Affairs, the Committee on the Judiciary and the Committee on Criminal Law. The Bill was adopted on first and second readings on October 12, 1976 and November 23, 1976, respectively. Signed by the Mayor on February 4, 1977, it was assigned Act No. 1-230 and transmitted to both Houses of Congress for its review.

Law 2-104 was introduced in Council and assigned Bill No. 2-195, which was referred to the Committee on the Judiciary. The Bill was adopted on first and second readings on June 13, 1978 and June 27, 1978, respectively. Signed by the Mayor on July 1 1978, it was assigned Act No. 2-215 and transmitted to both Houses of Congress for its review.

Law 2-139 was introduced in Council and assigned Bill No. 2-10, which was referred to the Committee on Government Operations. The Bill was adopted on first and second readings on October 17, 1978 and October 31, 1978, respectively. Signed by the Mayor on November 22, 1978, it was assigned Act No. 2-300 and transmitted to both Houses of Congress for its review.

Law 2-157 was introduced in Council and assigned Bill No. 2-284, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings on November 28, 1978 and December 12, 1978, respectively.

Signed by the Mayor on December 29, 1978, it was assigned Act No. 2-326 and transmitted to both Houses of Congress for its review.

Law 4-97 was introduced in Council and assigned Bill No. 4-337, which was referred to the Committee on Transportation and Environmental Affairs. The Bill was adopted on first and second readings on January 12, 1982, and January 26, 1982, respectively. Signed by the Mayor on February 9, 1982, it was assigned Act No. 4-155 and transmitted to both Houses of Congress for its review.

Law 4-145 was introduced in Council and assigned Bill No, 4-389, which was referred to the Committee on Transportation and Environmental *Affairs*. The Bill was adopted on first and second readings on June 8, 1982, and June 22, 1982, respectively. Signed by *the* Mayor on July 12, 1982, it was assigned Act No. 4-233 and transmitted to both Houses of Congress for its review.

Law 5-14 was introduced in Council and assigned Bill No. 5-74, which was referred to the committee on Finance and Revenue. The Bill was adopted on first and second readings on April 12, 1983 and April 26, 1983, respectively. Signed by the Mayor on May 4, 1983, it was assigned Act No. 5-29 and transmitted to both Houses of Congress for its review.

I a w 5-42 was introduced in Council and assigned Bill No. 5-29, which was referred to the Committee on Transportation and Environmental *Affairs*. The Bill was adopted on first and second readings on July 5, 3983, and September 6, 1983, respectively. Signed by the Mayor on September 22, 1983, it was assigned Act No. 5-67 and transmitted to both Houses of Congress for its review.

Law 8-103, the "District of Columbia Traffic Act Amendment Act of 1990," was introduced in Council and assigned Bill No, 8-270, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings on January 30, 1990, and February 13, 1990, respectively. Signed by *the* Mayor on February 28, 1990, it was assigned Act No. 8-157 and transmitted to both Houses of Congress for its review.

Law 8-153, *the* "Motor Vehicle *Fees* Amendment *Temporary Act of 1990*," was introduced in Council and assigned Bill No. 8-591. The Bill was adopted on first and second readings on May 29, 1990, and June 12, 1990, respectively. Signed by the Mayor on June 13, 1990, it was assigned Act No. 8-213 and transmitted to both Houses of Congress for its review.

Law 8-170, the "Motor Vehicle Fees Amendment Act of 1990," was introduced in Council and assigned Bill No. 8-213, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings on June 12, 1990, and June 26, 1990, respectively. Signed by the Mayor on July 12, 1990, it was assigned Act No. 8-235 and transmitted to both Houses of *Congress* for its review.

Law 9-30, the "District of Columbia Motor Vehicle Services Fees Amendment Act of 1991," was introduced in Council and assigned Bill No. 9-163, which was referred to the Committee on Public Works. The Bill was adopted on first and second readings on June 4, 1991, and June 18, 1991, respectively. Signed by the Mayor on July 2, 1991, it was assigned Act No. 9-57 and transmitted to both Houses of Congress for its review.

For legislative history of D.C. Law *9-96* , see Historical and *Statutory* Notes following § 50-2201.02.

Law 9-19, *the* "Omnibus Budget Support Temporary *Act* of 1991," was introduced in Council and assigned Bill No. 9-205. The Bill was adopted on first and second readings on May 7, 1991, and June 4, 1991, respectively. Signed by the Mayor on June 21, 1991, it was assigned *Act* No. 9-43 and transmitted to both Houses of *Congress* for its review.

Law 12-175, the "Fiscal Year 1999 Budget Support *Act* of 1998," was introduced in Council and assigned Bill No. 12-618, which was referred to the Committee of *the* Whole. The Bill was adopted on first and second readings on May 5, 1998 and June 2, 1998, respectively. Signed by the Mayor on June 23, 1998, it was assigned Act No. 12-399 and transmitted to both Houses of Congress for its review. D.C. Law 12-175 became effective on March 26, 1999.

Law 13-80, the "Motor Coach Vehicles Tax Exemption Amendment Act of 1999," was introduced in Council and assigned Bill No. 13-347, which was referred to the Committee on Finance and Revenue. The Bill was adopted on first and second readings on October 5, 1999, and November 2, 1999, respectively. Signed by the Mayor on November 22, 1999, it was assigned Act No. 13-205 and transmitted to both Houses of *Congress* for its review. D.C. Law 13-80 became effective on April 5, 2000.

Change in Government

This section originated at a *time* when local government powers were delegated to a Board of Commissioners of the District of Columbia (see Acts Relating *to the* Establishment of the District of Columbia and its Various Forms of Governmental Organization in Volume 1). Section 402 (295 to 299) of Reorganization Plan No. 3 of *1967* (see

Reorganization Plans in Volume 1) transferred all of the functions of the Board of Commissioners under this section to the District of Columbia Council, subject to the right of the Commissioner as provided in ง 406 of the Plan. The District of Columbia Self- Government and Governmental Reorganization Act, 87 Stat. 818, ง 711 (D.C. Code, ง 1-207.11), abolished the District of Columbia Council and the Office of Commissioner of the District of Columbia. These branches of government were replaced by the Council of the District of Columbia and the Office of Mayor of the District of Columbia, respectively. Accordingly, and also pursuant to ง 714(a) of such Act (D.C. Code, ง 1-207.14(a)), appropriate changes in terminology were made in this section.

### Delegation of Authority

Delegation of authority under Law 5-14, see Mayor's Order 83-190, July 25, 1983.

### Miscellaneous Notes

Department of Vehicles and Traffic abolished: The Department of Vehicles and Traffic, including the Director, was abolished and the functions thereof transferred to the Board of Commissioners of the District of Columbia by Reorganization Plan No. 5 of 1952. Reorganization Order No. 54 of the Board of Commissioners, dated June 30, 1953, as amended, September 1, 1953, established a Department of Vehicles and Traffic, headed by a Director; a Board of Revocation and Review of Hackers' Identification Cards; a Motor Vehicle Parking Agency; and a Commissioners' Traffic Advisory Board; prescribed the functions *thereof*; and abolished *the* previously existing Department of Vehicles and Traffic, the Registrar of Titles and Tags, the Board of Revocation and Review of Hackers' Identification Cards, the Driver Improvement Section, and the Motor Vehicle Parking Agency. Reorganization Order No. 54 was repealed and replaced by Organization Order Nos. 105, 106, 107, and 108, dated May 17, 1955. Organization Order No. 105 continued the Department of Vehicles and Traffic and prescribed the functions thereof. Organization Order No. 106 continued the Motor Vehicle Parking *Agency* and prescribed *the* composition and functions thereof. The Department of Vehicles and·Traffic was redesignated as the Department of Motor Vehicles by Commissioners' Order No. *58-919*, dated June 10, *1958*. The Department of Highways was replaced by Reorganization Order No. 58-1116, dated July 15, 1958, which order established the Department of Highways and Traffic. The executive functions of the Board of Commissioners were transferred to the Commissioner of the District of Columbia by ง 401 of Reorganization Plan No. 3 of 1967. Organization Order No. 107, relating to the Hackers' Board was redesignated as Organization Order No. 13, dated August 15, 1968, and amended. Organization Order No. 108, as amended, replaced the Commissioners' Traffic Advisory Board with a Citizens' Traffic Board, and prescribed the composition and functions thereof. Reorganization Plan No. 2 of 1975 combined the Department of Motor Vehicles and the Department of Highways and Traffic to form the Department of Transportation.

The functions of the Department of Transportation were transferred *to* the Department of Public Works by Reorganization Plan No. 4 of 1983, effective March 1, 1984.

Office of *Assessor* abolished: The Office of the Assessor was abolished and the functions thereof transferred to the Board of Commissioners . of the District of Columbia by Reorganization Plan No. 5 of 1952. All functions of the Office of the Assessor including the functions of all officers, employees and subordinate agencies were transferred to the Department of General Administration by Reorganization Order No. 3 of the Board of Commissioners, dated August 28, 1952. Reorganization Order No. 20, dated November 10, 1952, abolished the Office of the Assessor and transferred the functions to the Finance Office in the Department of General Administration. The same order provided that an Office of *the* Assessor would be created in the Finance *Office*. Reorganization Order No. 20 was superseded and replaced by . Organization Order No. 121, dated December 12, 1957, provided that the Finance Office (consisting of the Office of the Finance Officers, Property Tax Division, Revenue Division, Treasury Division, Accounting Division, and Data Processing Division) shall continue under the direction and control of the Director of General Administration, and prescribed the functions thereof. The executive functions of the Board of commissioners were transferred to the Commissioner of the District of Columbia by ง 401 of Reorganization Plan No. 3 of 1967. Organization Order No. 121 was revoked by . . Organization Order No. 3, dated December 13, 1967, Part IVC of which prescribed the functions of the Finance Office within a newly established Department of General Administration. Functions of the Finance Office was stated in Part IVC of Organization Order No. 3 were transferred *to the* Director of the Department of Finance and Revenue by Commissioner's Order No. 69-96, dated March 7, 1969. Functions pertaining to *centralized* accounting as set forth in Commissioner's Order No. *69-96* were transferred to the Director of the Office of Budget and Financial Management by Organization Order No. 30, dated *April* 6, 1972. The Office of Budget and Financial Management was replaced by Organization Order No. 50, dated December 31, 1974, which Order established the Office of Budget and Management Systems. The Office of Budget and Management Systems was replaced by Mayor's Order *79-5*, dated January 2, 1979, which Order established the Office of Budget and Resource Development.

Mayor authorized *to* issue d e s : Section 1102 of D.C. Law 5-34 provided that the Mayor shall issue rules necessary to carry out the provisions of *the* act-

DC CODE ὁ 50-2201.03
END OF DOCUMENT .

Copr. (C) West 2002 No Claim to Orig. U.S. Govt. Works

◄ Term ►

**THOMSON**

WEST

AS Amended

(O) Vehicles for which a lessor previously paid the excise tax to the District of Columbia, or for which the lessor was exempt from the excise tax pursuant to subparagraph (J), and application for title is being made by the former lessee.

(P) Vehicles for which a District of Columbia title is being issued to the lienholder because of repossession or was re-issued to the owner after repossession.

(Q) Vehicles designated as non-repairable or salvage pursuant to Chapter 13A of this title.

(k)(1) Any unattended motor vehicle found parked at any time upon any public highway of the District of Columbia against which there are 2 or more unpaid notices of infraction that the owner was deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05, § 50-2303.06, or § 50-2209.02, or against which there have been issued 2 or more warrants may, by or under the direction of an officer or member of the Metropolitan Police force or the United States Park Police force or an employee of the District of Columbia Department of Transportation, either by towing or otherwise, be removed or conveyed to and impounded in any place designated by the Mayor or immobilized in such manner as to prevent its operation; except, that no such vehicle shall be immobilized by any means other than by the use of a device or other mechanism which will cause no damage to such vehicle unless it is moved while such device or mechanism is in place.

(2) The notice, reclamation, and disposition procedures set forth in §§ 50- 2421.06 through 50-2421.10, shall apply to any vehicle impounded pursuant to this section. In any case involving immobilization of a vehicle pursuant to this subsection, such member or officer or employee shall cause to be placed on such vehicle, in a conspicuous manner, notice sufficient to warn any individual to the effect that such vehicle has been immobilized and that any attempt to move such vehicle might result in damage to such vehicle.

(3) Repealed.

(4) The owner of an immobilized vehicle shall be subject to a booting fee of $75 for such immobilization.

(l) The Director of the Department of Motor Vehicles may establish a fee discount of up to 10% on any service obtained through the telephone, Internet, mail, or other method that does not involve an in-person visit to the Department. This subsection shall not apply to the payment of the motor vehicle title tax.

CREDIT(S)

(Mar. 3, 1925, 43 Stat. 1121, ch. 443, § 6; July 3, 1926, 44 Stat. 814, ch. 739, § 4; Feb. 27, 1931, 46 Stat. 1424, ch. 317, §§ 3, 4; Dec. 19, 1932, 47 Stat. 750, ch. 5; Apr. 1, 1942, 56 Stat. 190, ch. 207, § 1; July 2, 1945, 59 Stat. 313, ch. 222; May 27, 1949, 63 Stat. 128, title III, ch. 146, § 301; Oct. 28, 1949, 63 Stat. 972, title XI, ch. 782, § 1106(a); July 24, 1956, 70 Stat. 633, ch. 695, § 1; Sept. 2, 1957, 71 Stat. 598, Pub. L. 85-273, § 3; Oct. 3, 1962, 76 Stat. 742, Pub. L. 87-745, § 1; July 8, 1963, 77 Stat. 77, Pub. L. 88-60, § 1; Aug. 30, 1964, 78 Stat. 634, Pub. L. 88-503, § 21; Sept. 30, 1966, 80 Stat. 856, Pub. L. 89-610, title II, § 201; 1967 Reorg. Plan No. 3, 81 Stat. 980, § 503(c); Dec. 4, 1967, 81 Stat. 532, Pub. L. 90-172, § 1; Oct. 31, 1969, 83 Stat. 172, 174, Pub. L. 91-106, titles II, IV, §§ 201,404; Dec. 12, 1969, 83 Stat. 343, Pub. L. 91-145, § 101; July 29, 1970, 84 Stat. 570, 583, Pub. L. 91-358, title I, §§ 155(a), 163(g)(2); Dec. 15, 1971, 85 Stat. 657, Pub. L. 92-196, title VII, § 705; Oct. 21, 1972, 86 Stat. 1015, Pub. L. 92-518, title III, § 301(a); Nov. 1, 1973, 87 Stat. 531, Pub. L. 93-145, § 101; Oct. 21, 1975, D.C. Law 1-23, title I,§ 102, 22 DCR 2094; Jan. 22, 1976, D.C. Law 1-42, § 7(b), 22 DCR 6317; June 15, 1976, D.C. Law 1-70, title II, § 201, 23 DCR 536; Apr. 19, 1977, D.C. Law 1- 124, title I, §

102, 23 DCR 8749; Apr. 26, 1977, D.C. Law 1-133, title IV, § 402, 23 DCR 9697; Sept. 12, 1978, D.C. Law 2-104, §§ 501, 601, 25 DCR 1275; Mar. 3, 1979, D.C. Law 2-139, § 3205(l), 25 DCR 5740; Mar. 6, 1979, D.C. Law 2-157, § 5, 25 DCR 6995; Apr. 3, 1982, D.C. Law 4-97, § 5, 29 DCR 765; Sept. 14, 1982, D.C. Law 4-145, § 7, 29 DCR 3138; June 22, 1983, D.C. Law 5-14, §§ 803, 804, 30 DCR 2632; Nov. 15, 1983, D.C. Law 5-42, § 2(b), 30 DCR 4999; May 1, 1990, D.C. Law 8-103, § 2, 37 DCR 1615; Sept. 26, 1990, D.C. Law 8-170, § 2, 37 DCR 4839; Aug. 17, 1991, D.C. Law 9-30, § 4(a), 38 DCR 4215; May 5, 1992, D.C. Law 9-96, § 4(b), 38 DCR 7274; Mar. 26, 1999, D.C. Law 12-175, § 802, 45 DCR 7193; April 5, 2000, D.C. Law 13-80, § 2, 46 DCR 10463; Oct. 19, 2002, D.C. Law 14-213, § 34, 49 DCR 8140; June 5, 2003, D.C. Law 14-307, § 1706(a), 49 DCR 11664; Oct. 28, 2003, D.C. Law 15-35, § 13(b), 50 DCR 6579; Mar. 16, 2005, D.C. Law 15-239, § 2(a), 51 DCR 9600; Apr. 8, 2005, D.C. Law 15-307, § 402, 52 DCR 1700; Oct. 20, 2005, D.C. Law 16-33, § 6002, 52 DCR 7503; June 16, 2006, D.C. Law 16-129, § 2, 53 DCR 4716; June 22, 2006, D.C. Law 16-139, § 10, 53 DCR 3682; Mar. 2, 2007, D.C. Law 16-191, § 89, 53 DCR 6794; Mar. 14, 2007, D.C. Law 16-279, §§ 202(a), 401(a), 54 DCR 903.)

HISTORICAL AND STATUTORY NOTES

Prior Codifications

1981 **Ed.,** § 40-703.

1973 Ed., § 40-603.

Effect of Amendments

D.C. Law 13-80 added par. (j)(3)(III).

Section 3 of D.C. Law 13-80 provides:

"The Council adopts the fiscal impact statement in the committee report, as revised and amended by the attached memorandum dated October 25, 1999, as the fiscal impact statement required by section 602(c)(3) of the Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Code § 1-233(c)(3)) [§ 1-206.02(c)(3), 2001 Ed.]."

Section 4 of D.C. Law 13-80 provides: "This act shall apply as of January 1, 2000."

D.C. Law 14-213, in the section heading, substituted "Congressional and Council parking" for "Congressional parking"; in subsecs. (c) and (c)(1), substituted "Congress or the Council" for "Congress"; and in subsec. (c)(2), substituted "Congressional or Council" for "Congressional".

D.C. Law 14-307, in subsec. (a)(4), substituted "$98" for "$75"; and in subsec. (d), substituted "$26 fee for each titling, duplicate titling, and retitling," for "$20 fee for each titling and retitling,".

D.C. Law 15-35, in subsec. (k), substituted "The notice, reclamation, and disposition procedures set forth in §§ 50-2421.06 through 50-2421.10, shall apply to any vehicle impounded pursuant to this section." for "It shall be the duty of the officer or member of the police force or employee of the District of Columbia Department of Transportation, removing or immobilizing such motor vehicle, or under whose direction such vehicle is removed or immobilized, to inform as soon as practicable the owner of an impounded or immobilized vehicle of the nature and circumstances of the prior unsettled traffic violation notices, notices of infractions or warrants, for which or an account of which such vehicle was impounded or immobilized." in the first sentence of par. (2), repealed par. (3), and deleted the second and third sentences in par. (4). Prior to amendment, pars. (3) and (4) of subsec. (k) had read as follows:

"(3) The owner of such impounded or immobilized vehicle, or other duly authorized person, shall

VEHICLES AND TRAFFIC                                             § 50–2303.05

§ 50–2303.05.  Answer.

(a)(1)  In answer to a notice of infraction, a person to whom the notice was issued may:

　(A)  Admit, by payment of the civil fine, the commission of the infraction; or

　(B)  Deny the commission of the infraction. .

　(2)  A person charged with a parking violation may contest the charge through an adjudication by mail or at an administrative hearing limited to one or more of the following grounds with appropriate evidence to support:

　　(A)  That the respondent was not the owner or lessee of the cited vehicle at the time of the infraction;

　　(B)  That the cited vehicle or its state registration plates were stolen at the time of the violation occurred;

　　(C)  That the relevant signs prohibiting or restricting parking were missing or obscured;

　　(D)  That the relevant parking meter was inoperable or malfunctioned through no fault . of the respondent; or

　　(E)  That the facts alleged on the parking violation notice are inconsistent or do hot support a finding that the specified regulation was violated. .

(b)  A person to whom a notice of infraction has been issued may answer by personal appearance or by mail. Answers by telephone may be permitted by regulation.  ·

(c)  A person admitting the commission of an infraction shall, at the same time he submits his answer, pay the civil fine and any additional penalties, established pursuant to § 50–2801.05, as may be due for failure to answer within the time required by subsection (d)· of this section without appearing at the hearing.

(d)(1)  A ·person .to whom a notice of infraction has been issued shall answer within 30 calendar days of the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation.·Failure to answer the notice within this period shall result in the imposition of monetary penalties established by § 50–2301.05, in addition to the potential civil fine for the infraction.

　. (2)  If a person fails to answer within 60 ·days, or within a greater period· of time, as  · prescribed by the Director by regulation, the commission of the infraction shall· be deemed admitted and all penalties and fines shall be assessed. Not more than 50 days after the notice is issued, the Director shall send, by regular mail, notice· of the outstanding notice of ·. infraction and of the impending deemed admission. This subsection shall· not apply to any participant in the fleet adjudication program.

(e)  Any person who desires the presence at the hearing of the. police officer or the Department of Transportation employee who served the notice of infraction on such person must so demand at the same time such person answers to the infraction,

(Sept. 12, 1978, D.C. Law 2–104, § 305, 25 DCR 1275; Apr. 9, 1997, D.C. Law 11–198, § 504(c), 43 DCR 4569; March 24, 1998, D.C. Law 12–76, § 2(b), 45 DCR 481; Apr. 27, 2001, D.C. Law 13–289, § 302(i), 48 DCR 2057.)

Historical and Statutory Notes

Effect of Amendments

D.C. Law 13–289 validated a previously made change and rewrote subsec (d), which had read:

"(d) A person to whom a notice of infraction has been issued shall answer within 15 calendar days of the date the notice was issued. Failure to answer within the prescribed period may result in

imposition of monetary penalties established by § 50–2301.05, in addition to the potential civil fine for the infraction.  This subsection shall not apply to any fleet owner who participates in the fleet adjudication program."

Legislative History of Laws

For D.C. Law 13–289, see notes following § 50–401.

125



TEXT

DC ST ∂ 50-2401

Formerly uted as DC ST 1981 ∂ 40-831

### DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
### DIVISION VIII. GENERAL LAWS.
✦TITLE 50. MOTOR AND NON-MOTOR VEHICLES AND TRAFFIC.✦
✦SUBTITLE VIII. VEHICLES ON PUBLIC AND PRIVATE SPACE.✦
✦CHAPTER 24. ABANDONED AND JUNK VEHICLE REMOVAL.✦
Copyright c 2002 By The District of Columbia All Rights Reserved

Current through May 21, 2002

∂ 50-2401. Definitions.

For the purpose of this chapter, *the term:*
(1) ✦"**Abandoned vehicle**✦" means any motor ✦vehicle✦, trailer, or semitrailer;
    (A) That is inoperable and left unattended on public property for more than 72 hours;
(B) That has remained illegally on public property far more than 72 hours;
(C) That has remained on public property for more than 72 hours *and*
(i) Is not displaying current valid registration; or
(ii) Is displaying registration of another vehicle;
(D) That has remained on private property for more than 3 months and is inoperable in that one of *its major mechanical components,* including, but nut limited to, engine, transmission, drive train or wheels, is missing or not functional unless such vehicle is kept in an enclosed building completely shielded from the view of individuals on the adjoining properties; or
(E) That has remained unclaimed for 45 days after proper notice.
(2) "**Junk** ✦**vehicle**✦" means any ✦vehicle✦ that has remained on private property for more than 7 days and is inoperable in that more than *one* of its major mechanical components, including, but not limited to, engine, transmission, drive train or wheels, is missing or not functional unless such ✦vehicle✦ is kept in an enclosed building completely shielded *from the view* of individuals *on the* adjoining properties; or any ✦vehicle✦ that is wrecked, dismantled, or in irreparable condition.

CREDIT

CREDIT(S)

2002 Electronic Pocket Part Update
*(Sept. 9, 1989, D.C. Law 8-24, ∂ 2, 36 DCR 4575; Feb. 28, 1996, D.C. Law 11-95, ∂ 4, 42 DCR 7180; Apr. 3, 2001, D.C. Law 13-267, ∂ 3, 48 DCR 1248.)*

HISTORICAL NOTES — HISTORICAL AND STATUTORY NOTES

HISTORICAL AND STATUTORY NOTES

Prior **Codifications**

1981 Ed., ∂ 40-831.

**Effect of Amendments**

**D.C. Law 13-267** rewrote pars. (1)(D) and (2), which had read:

"(D) That has remained on private property for more than 30 days and is inoperable in that one or more of its major

mechanical components, including, but not limited to, engine, transmission, drive train or wheels, is missing or not functional unless such vehicle is kept in an enclosed building completely shielded from the view of individuals on the

*Legislative* **History** of Laws

For legislative history of D.C. Law *8-24*, see Historical **and Statutory** Notes following ง 50-2622.

Law 11-95, the "Prohibition on ✦Abandoned Vehicles✦ Amendment Act of 1995," was introduced in Council and assigned Bill No. 11-071, which was referred to the Committee on Consumer and *Regulatory* Affairs. The Bill was adopted on first and second readings on November 7, 1995, and December 5, 1995, respectively. Signed by *the* Mayor on December 19, 1995, it was ass' Act No. 11-178 and transmitted to both Houses of Congress for its review. D.C. Law 11-95 became effective . on February 28, 1996.

Law 13-267, *the* "Prohibition on ✦Abandoned Vehicles✦ Amendment Act of 2000", was introduced in Council and assigned Bill No. 13-407, which was referred to the Committee on Public Works and the Environment. *The* Bill was adopted on first and second readings on *November 8*, 2000, and *December 5,2000*, respectively. Signed by *the* Mayor on January 5, 2001, it was assigned Act No .13-557 and transmitted to both Houses of Congress for its review. D.C. Law 13-January 5, a effect was assigned Act No. 13-557 and transmitted to both Houses of Congress for its review. D.C. Law 13- ... became effective on April 2, 2001.

'Section 12 of D.C. Law *8-24* provided *that the* act shall take effect after a 30-day period of Congressional review following approval by the Mayor (or in the event of veto by the Mayor, action by the Council of *the* District of Columbia to override the veto) as provided in ง 1-206.02(c)(1), and publication in either the District of Columbia Register, the District of Columbia Statutes- at-large, or the District of Columbia Municipal Regulations; *or* by November 1, 1989, whichever occurs later. D.C. Law *8-24* was effective September 9, 1989.

DC CODE ง 50-2401
END OF DOCUMENT .

Copr. (C)West 2002 No Claim *to* Orig. U.S. Govt. Works

◄ Term ►

THOMSON
WEST

  

TEXT

DC ST ᴊ 50-2402

Formerly cited as DC ST 1981 ᴊ 40-832

### DISTRICT OF COLUMBIA OFFICIAL CODE 2001 EDITION
### DIVISION VIII. GENERAL LAWS.

◆TITLE 50. MOTOR AND NON-MOTOR VEHICLES AND TRAFFIC.◆
◆SUBTITLE VIII. VEHICLES ON PUBLIC AND PRIVATE SPACE.◆
◆CHAPTER 24. ABANDONED AND JUNK VEHICLE REMOVAL.◆
Copyright *c* 2002 By The District of Columbia All Rights Reserved

Current through May 21, 2002

◆ᴊ 50-2402. Abandoned and Junk Vehicle Division established.◆

(a) There is established an ◆Abandoned◆ and Junk ◆Vehicle◆ Division of the Department of Public Works ᴇ ("Abandoned◆ and Junk ◆Vehicle◆ Division"), which shall be responsible for the removal of any ◆abandoned◆ or junk ◆vehicle◆ from any public or private property including any public highway. The ◆Abandoned◆ and Junk +Vehicle+ Division shall:

(1) Determine whether the ◆vehicle◆ is an ◆abandoned◆ or junk ◆vehicle◆ in accordance with ᴊ 50-2401;

(2) Determine whether the ◆vehicle◆ has been stolen and relinquish custody of the ◆vehicle◆ to the Metropolitan Police Department, if the +vehicle+ has been stolen;

(3) Place a conspicuous warning notice on the +vehicle+ that informs the owner that unless the ◆vehicle◆ is removed within 72 consecutive hours it shall be removed by the District government, if the ◆Abandoned◆ and Junk ◆Vehicle◆ Division has reason to believe that the ◆vehicle◆ is ◆abandoned◆;

(4) Impound any ◆abandoned vehicle◆, if appropriate;

(5) Notify the owner and any lien holder of record in the Office of the Recorder of Deeds of the District of Columbia that the ◆abandoned vehicle◆ will be sold at public auction if not reclaimed within 45 days after *the* date of the notice;

*(6)* Sell any +abandoned vehicle+ at public auction and use the proceeds of the sale in accordance with ᴊ 50-2623;

(7) Place a conspicuous warning notice on a junk ◆vehicle◆ on public property that informs the owner that the District government shall tow and transfer the ◆vehicle◆ and recycle, dismantle, salvage, or demolish the ◆vehicle◆ immediately;          and

*(8)* Implement and enforce Chapter *8* of Title *6*, with respect to a junk ◆vehicle◆ on private property, if the junk ◆vehicle◆ has been deemed a nuisance.

(b) The Mayor shall use personnel who are charged with private or public space inspection, sanitation inspection, and *traffic* and parking enforcement responsibilities to investigate and place warning notices on ◆abandoned◆ and junk ◆vehicles◆.

(c) The Mayor shall encourage all District government agencies and residents to identify and report ◆abandoned◆ and junk ◆vehicles◆ *to* the ◆Abandoned◆ and Junk ◆Vehicle◆ Division and shall, within 90 days of September 9, 1989, implement an educational campaign to accomplish this task.

CREDIT

CREDIT(S)

2001 Main Volume

(Sept. 9, 1989, D.C. Law 8-24, ᴊ 3, 36 DCR 4575; Apr. 20, 1999, D.C. Law 12-261, ᴊ 3003, 46 DCR 3142.)

HISTORICAL NOTES − HISTORICAL AND STATUTORY NOTES

HISTORICAL AND STATUTORY NOTES



**Prior Codifications**

1981 Ed. ⅜ 40-832.

1981 Ed., ง 40-832.

**Legislative History of Laws**

For legislative history of D.C. Law 8-24, see Historical and *Statutory* Notes following ง 50-2622.

Law 12-261, the "Second Omnibus Regulatory Reform Amendment Act of 1998," was introduced in Council and assigned Bill No. 12-845, which was referred to the Committee of the Whole. The Bill was adopted on first and second readings on December 1, 1998, and December 15, 1998, respectively. Signed by the Mayor on December 3, 1998, it was assigned Act No. 12-615 and transmitted to both Houses of Congress for its review- D.C. Law 12-261 became effective on April 20, 1999.

**Effective Dates**

Section 12 of D.C. Law 8-24 provided that the act *shall take* effect after a 30-day period of Congressional review following approval by the Mayor (or in the event of veto by the Mayor, action by the Council of the District of Columbia to override the veto) as provided in ง 1-206.02(c)(1), and publication in either the District of Columbia Register, the District of Columbia Statutes-at-Large, or the District of Columbia Municipal Regulations; or by November 1, 1989, whichever occurs later. D.C. Law 8-24 was effective September 9, 1989.

**Miscellaneous Notes**

Short title: *See* Historical and *Statutory* Notes following ง 50-2401. .

DC CODE ง 50-2402
END OF DOCUMENT .  .

Copr. (C) West 2002 No Claim to Orig. U.S. Govt. Works

