## ORAL ARGUMENT NOT YET SCHEDULED

No. 09-7034

_____

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CHRISTINE A. TATE,

*Plaintiff-Appellant*

v.

DISTRICT OF COLUMBIA

*Defendant-Appellee*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

## FINAL BRIEF OF COURT-APPOINTED *AMICUS CURIAE*,
## ON BEHALF OF PLAINTIFF-APPELLANT

Matthew T. Reinhard,
*Counsel of Record*
Jeffrey M. Hahn
Miller & Chevalier Chartered
655 Fifteenth St., N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800

JULY 26, 2010

*Court-Appointed Amicus Curiae on
Behalf of Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## LIST OF PARTIES AND AMICUS CURIAE

Appellant is Christine Tate.  Appellee is the District of Columbia ("the District").  The Amicus Curiae in support of Appellant is court-appointed counsel, Matthew T. Reinhard of Miller & Chevalier Chartered.

## RULINGS UNDER REVIEW

Under review here is the February 27, 2009 Order and Opinion of the District Court (Judge Ricardo Urbina) granting Appellee's motion for summary judgment.  The District Court's Order and Opinion is published at 601 F. Supp. 2d 132.

## RELATED CASES

There are no related cases in this circuit.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF THE AMICUS CURIAE ........................................... 1

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................. 1

STATEMENT OF THE CASE ........................................................... 2

STATEMENT OF FACTS ................................................................. 4

SUMMARY OF ARGUMENT .......................................................... 7

ARGUMENT..................................................................................... 10

I.    STANDARD OF REVIEW ...................................................... 10

II.   BECAUSE THE DISTRICT NEVER "LAWFULLY
      ACQUIRED" MS. TATE'S CAR, ITS SALE OF HER CAR
      WAS A "TAKING" IN VIOLATION OF THE FIFTH
      AMENDMENT ......................................................................... 11

      A.    The District Did Not "Lawfully Acquire" Ms. Tate's Car ............... 12

      B.    Even if the District Seized Ms. Tate's Car Pursuant to Its
            Police Power, It Is Not Immunized From a Takings
            Claim ............................................................................. 17

III.  MS. TATE DID NOT CONCEDE HER COMMON LAW
      CLAIMS................................................................................... 22

CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

## *CASES*

*AmeriSource Corp. v. United States*,
    525 F.3d 1149 (Fed. Cir. 2008) .................................................17

*\*Bennis v. Michigan*,
    516 U.S. 442 (1996).............................................................12, 13

*Brown v. Legal Found.*
    538 U.S. 216 (2003)..................................................................21

*Dellums v. Powell*,
    566 F.2d 216 (D.C. Cir. 1977) ................................................23

*Doe v. United States*,
    821 F.2d 694 (D.C. Cir. 1987) ................................................21

*Duggan v. Keto*,
    554 A.2d 1126 (D.C. 1989)......................................................23

*First English Evangelical Lutheran Church v. County of Los Angeles*,
    482 U.S. 304 (1987)..................................................................19

*Ford Motor Credit Co. v. N.Y. City Police Dep't*,
    503 F.3d 186 (2d Cir. 2007).....................................................21

*Gray v. Poole*,
    275 F.3d 1113 (D.C. Cir. 2002) ..............................................24

*Heller v. Fortis Benefits Ins. Co.*,
    142 F.3d 487 (D.C. Cir. 1998) ................................................23

*John Corp. v. City of Houston*,
    214 F.3d 573 (5th Cir. 2000)....................................................19

*Johnson v. Executive Office for U.S. Attorneys*,
    310 F.3d 771 (D.C. Cir. 2002) ................................................10

*Kearns v. McNeill Bros. Moving & Storage Co.*,
   509 A.2d 1132 (D.C. 1986)..............................................................15

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)..............................................................11, 18

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982)..............................................................18

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)..............................................................18

*Mastro v. Potomac Elec. Power Co.*,
   447 F.3d 843 (D.C. Cir. 2006) ..............................................................10

*O'Callaghan v. District of Columbia*,
   741 F. Supp. 273 (D.D.C. 1990) ..............................................................23

*Pa. Coal Co. v. Mahon*,
   260 U.S. 393 (1922)..............................................................18

*Ray v. Proxmire*,
   581 F.2d 998 (D.C. Cir. 1978) ..............................................................24

*Richardson v. City & County of Honolulu*,
   124 F.3d 1150 (9th Cir. 1997)..............................................................19

*Shankar v. ACS-GSI*,
   258 Fed. Appx. 344, 345 (D.C. Cir. 2007) ..............................................................24

*Toolasprashad v. Bureau of Prisons*,
   286 F.3d 576 (D.C. Cir. 2002) ..............................................................25

*Warren v. District of Columbia*,
   353 F.3d 36 (D.C. Cir. 2004) ..............................................................25

*Webb's Fabulous Pharms., Inc. v. Beckwith*,
   449 U.S. 155 (1980)..............................................................11

*Woodruff v. Peters*,
    482 F.3d 521 (D.C. Cir. 2007) ...................................................... 10, 20

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ............................................................................ 17

## CONSTITUTION AND STATUTES

U.S. Const. amend. 5 ................................................................................ 11

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

28 U.S.C. § 1367 .................................................................................... 1, 22

42 U.S.C. § 1983 .................................................................................... 1, 16

*D.C. Code § 50-2401 (repealed) ...................................... 5, 13, 14, 15

*D.C. Code § 50-2402 (repealed) .............................................. 5, 13

Mich. Comp. Laws Ann. § 600.3825 .................................................. 12

## MISCELLANEOUS

Fed. R. Civ. P. 56 ...................................................................................... 10

Fed. R. App. P. 28 ....................................................................................... 1

*Authorities upon which we chiefly rely are marked with asterisks.

## INTEREST OF THE AMICUS CURIAE

The Court appointed counsel to file an amicus brief in support of Appellant in this appeal. Because the amicus is Court-appointed, the amicus brief contains the items required by FRAP 28(a) and the related Circuit Rule.

## JURISDICTIONAL STATEMENT

Appellant raised numerous federal constitutional claims in her complaint pursuant to 42 U.S.C. § 1983, thus vesting the District Court with federal question jurisdiction. *See* 28 U.S.C. § 1331. The District Court had supplemental jurisdiction over Appellant's related state law claims pursuant to 28 U.S.C. § 1367. Defendant did not contest jurisdiction below. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in granting summary judgment on Appellant's Claim under the Fifth Amendment's Takings Clause, where Appellee unlawfully sold Appellant's car and failed to compensate Appellant.

2.     Whether the District Court erred in ruling that Appellant conceded her common law claims by allegedly not responding to Appellee's arguments in her Opposition to Appellee's Motion for Summary Judgment, where Appellant is a *pro se* plaintiff.

## STATEMENT OF THE CASE

This case concerns whether the government has any obligation to compensate a citizen after permanently depriving her of property in contravention of its own laws.

In 2002, the Appellee had the authority to sell at auction so-called "abandoned vehicles," as defined by a since-repealed provision of the D.C. Code. As relevant to this case, a vehicle was considered "abandoned" only if it remained unclaimed for 45 days after proper notice to the owner. When the District auctioned Appellant's car, there is no question that it had not remained unclaimed for 45 days after proper notice, and thus did not qualify as an "abandoned vehicle." Moreover, in the days before the auction, the District was well aware that Appellant was actively trying to regain possession of her car. Yet the car was auctioned anyway. Despite selling the Appellant's car without the authority to do so, the District refused to provide Appellant any compensation whatsoever.

Rebuffed in her attempts to seek recompense directly from the District, the Appellant, proceeding *pro se*, filed suit in the United States District Court for the District of Columbia on November 12, 2002, alleging at first that the District violated her Fifth Amendment Substantive Due Process and Equal Protection rights, and that the towing and impounding of her car constituted an unreasonable seizure in violation of the Fourth Amendment. Appellant also filed with her

complaint a motion for preliminary injunction that was ultimately denied by the

District Court, a decision that was affirmed by this Court on appeal.

Appellant then filed an Amended Complaint on July 13, 2004 -- now the

operative pleading -- alleging a variety of constitutional and common law

violations.   In particular, Appellant -- in addition to asserting claims under the

Fifth Amendment's Due Process and Equal Protection Clauses, as well as a claim

under the Fourth Amendment -- alleged that the District's sale of her car and

subsequent refusal to provide her any compensation violated the Fifth

Amendment's Takings Clause.  Appellant also asserted common law claims for

conversion and unjust enrichment, among others.  The District subsequently

moved for summary judgment on all of Appellant's claims.

The District Court granted the District's motion in its entirety.  As to

Appellant's Takings claim, the District Court held that "the government is not

required to compensate an owner for property which it has already lawfully

acquired," Memorandum Opinion at 6 [A21] (internal quotation and citation

omitted), though it did not explain how it was that the District "lawfully acquired"

Appellant's car.  The District Court further held that Appellant had conceded all of

her common law claims by allegedly not responding in her opposition brief to the

District's arguments on those claims.  *Id.* at 10 [A25].  In deeming these claims

conceded, the District Court did not account for Appellant's *pro se* status, nor did

3

it take into account Appellant's substantive arguments, regardless of their labels, in support of her common law claims.

Appellant timely appealed to this Court. On May 14, 2009, the District filed a motion for summary affirmance. On November 24, 2009, this Court denied the District's motion and, at the same time, appointed the undersigned as amicus curiae to present arguments in favor of Appellant.

## STATEMENT OF FACTS

In 2002, Appellant Christine Tate was the sole legal owner of a 1998 Volkswagen Beetle, Am. Compl. ¶ 7 [A54], for which she paid over $20,000, Pl.'s Opp. to Def.'s Mot. for Summ. J. at 8 (Dkt. No. 73) [A163]. Ms. Tate relied heavily on her car, using it for day-to-day transportation, for conducting her business, and for visiting her children in New York. Am. Compl. ¶ 7 [A54].

On March 12, 2002, the District immobilized Ms. Tate's car by placing a boot on it, allegedly pursuant to the District's authority to immobilize vehicles with two or more outstanding parking tickets. Def.'s Statement of Material Facts ¶ 5 [A80] (attached to Def.'s Mem. in Support of Mot. for Summ. J.) (hereinafter "Def.'s Statement of Facts"). Soon thereafter Ms. Tate had two hearings before the District's Traffic and Adjudication Division -- the first on March 14 and the second on March 15 -- to contest two of her tickets; she was found liable at both. Am. Compl. ¶ 9 [A55]. On March 26, 2002, the District towed Ms. Tate's car to

4

its Addison Road lot in Maryland. *Id.* ¶ 8 [A54-55]. On April 9, 2002, the District

moved Ms. Tate's car from its Addison Road lot to its Blue Plains lot, which is

operated by the District's Abandoned and Junk Vehicles Division. Def.'s

Statement of Facts ¶ 7 [A81].

At the time, District of Columbia law authorized the Abandoned and Junk

Vehicles Division to sell at auction so-called "abandoned vehicles." As relevant to

this case, "abandoned vehicle" was defined as "any motor vehicle . . . [t]hat has

remained unclaimed for 45 days after proper notice." D.C. Code § 50-2401(1)(E)

(repealed) [A27] (Ex. 2 to Compl.). Thus, in order to auction a car in its

possession, the Abandoned and Junk Vehicles Division was required first to

"[n]otify the owner     . . . that the abandoned vehicle will be sold at public auction

if not reclaimed within 45 days after the date of the notice." D.C. Code § 50-

2402(a)(5) (repealed) [A29] (Ex. 3 to Compl.).

On April 12, 2002, the District attempted to mail such a notice to Ms. Tate,

informing her that if she did not claim her car within 45 days of its arrival at the

Blue Plains lot, it would constitute "waiver of all right, title, and interest in the

vehicle and . . . consent to the sale of the vehicle at public auction." *See* Ex. C. to

Decl. of C. Jones [A146] (Ex. 6 to Def.'s Mot. for Summ. J.); *see also* Def.'s

Statement of Facts ¶ 8 [A81]. However, due to a typographical error by the

District, the notice was sent to the incorrect address and was returned to sender.

Def.'s Statement of Facts ¶ 8 [A81].  That letter was never re-sent to the correct

address or otherwise delivered to Ms. Tate.  Am. Compl. ¶ 12 [A56-57].

     Some time in May of 2002, Ms. Tate went to the District's Department of

Motor Vehicles to inquire whether payments she had made had been applied to her

outstanding parking tickets.  Am. Compl. ¶ 14 [57].  While there, Ms. Tate learned

*for the first time* that her car was designated for auction, and accordingly requested

an administrative hearing regarding her car's status.  *Id.* [A57]  That hearing took

place on May 29, 2002, before the District's Traffic and Adjudication Division,

during which the hearing official agreed to waive certain fees associated with the

towing and storage of Ms. Tate's car at the Blue Plains lot.  *Id.*[A57]; Ex. K. to

Pl.'s 1st Set of Reqs. for Admission [A182] (attached as Ex. 1 to Pl.'s Opp. to

Def.'s Mot. for Summ. J.)  Indeed, the District's computer records for Ms. Tate's

vehicle state that "[a]ll [t]ow & [s]torage [f]ees [r]elease Per HR 778/5/29/02." Ex.

K to Pl.'s 1st Set of Reqs. for Admission [A182] (attached as Ex. 1 to Pl.'s Opp. to

Def.'s Mot. for Summ. J.).  In addition, according to Ms. Tate's Complaint, the

hearing official agreed to grant a stay of the auction.  Am. Compl. ¶ 14 [A57].

Following the hearing, Ms. Tate was told that she could pick up her car at the Blue

Plains lot by June 7th, 2002.  *Id.* ¶ 15 [A57].  But when Ms. Tate went to the Blue

Plains lot to retrieve her car on June 7th, she was informed it had been sold three

days earlier, on June 4th.  Am. Compl. ¶ 16 [A58].  Because Ms. Tate first learned

of the impending auction sometime in May, and because her car was sold on June 4th, her car thus did not remain unclaimed for 45 days after proper notice, and thus did not constitute an "abandoned vehicle" when sold.

Subsequent to the auction, the District neither provided Ms. Tate with an accounting of the sale of her car nor did it compensate her in any way.  Am. Compl. ¶¶ 17-20 [A58-59].  Accordingly, on November 12, 2002, Ms. Tate filed suit against the District in the United States District Court for the District of Columbia, alleging a variety of federal constitutional and state common law claims, including a violation of the Fifth Amendment's Takings Clause.

## SUMMARY OF ARGUMENT

The District Court erred in granting summary judgment for the District on at least one of Ms. Tate's constitutional claims and on all of her common law claims.

First, the District Court erred in granting summary judgment for the District on Ms. Tate's claim that the District's refusal to compensate her after auctioning her car violated the Fifth Amendment's Takings Clause.  According to the District Court, Ms. Tate's takings claim must fail because the District "lawfully acquired" her car; in effect, according to the District Court's rationale, the District merely sold its own property.  Mem. Op. at 6 [A21].  But under then-existing District of Columbia law, the District could "lawfully" auction vehicles held in its tow lots only if they were "abandoned," and, as relevant to this case, a vehicle was

7

considered "abandoned" only if it remained unclaimed for 45 days after proper

notice to the owner that the car was slated for auction.

There is no question that 45 days had not elapsed from the time Ms. Tate

first learned in May of 2002 that her car was set for auction until the June 4th

auction date.  While the District attempted to send written notice of the auction to

Ms. Tate in April, even the District admits that it sent the letter to the wrong

address and that Ms. Tate never received it.  And although the District suggested in

its Motion that Ms. Tate would have likely received actual notice of the auction

when she visited the tow lot on April 19, 2002 -- 46 days prior to the June 4th

auction date -- the District Court rejected such conjecture as unsupported by the

factual record.  But the District Court offered no alternative explanation for how it

was that the 45-day period was satisfied.  Thus, because Ms. Tate's car did not

remain unclaimed for 45 days after proper notice, it never qualified as an

"abandoned vehicle" and the District never "lawfully acquired" it.

The District Court also appeared to rely on a secondary rationale for its

dismissal of Ms. Tate's takings claim, asserting, without further elaboration, that

"property seized and retained pursuant to the police power is not taken for a

'public use' in the context of the Takings Clause." Mem. Op. at 6 [A21]. (internal

citation and quotation omitted).  To the extent the District Court meant to say that

*whenever* the government acts pursuant to its police power, it is *always* immune

8

from a claim under the Takings Clause, such a proposition is clearly overbroad. While lawful exercises of the police power may well be beyond the reach of the Takings Clause, unlawful exercises of the police power are not. The facts here fit into the latter category: The District's decision to auction Ms. Tate's car was in direct contravention of its own abandoned vehicles statute, and was made worse by the fact that Ms. Tate was actively seeking to recover her car at the time of the sale.

Second, the District Court erred in holding that Ms. Tate "conceded" all of her common law claims by allegedly not responding to the District's arguments in her Opposition brief. But although not labeled as such, many of Ms. Tate's arguments in her brief responded directly to the District's arguments on her common law claims. As to Ms. Tate's claims for conversion and unjust enrichment, for example, the District argued that Ms. Tate could not prevail because its sale of her car was lawful. Ms. Tate argued in her Opposition brief, though, that the District had agreed to grant a stay of the auction and to waive certain fees associated with the tow and storage of her car, facts which undermine the District's claim that the auction was lawful. The District Court's elevation of form over substance was particularly inappropriate given Ms. Tate's *pro se* status, a fact that the District Court did not even acknowledge. The District Court should have instead accorded Ms. Tate's Opposition brief the same liberal construction

9

that courts are to accord all *pro se* filings and recognized that she was not, in fact, conceding anything.[1]

## ARGUMENT

### I.    STANDARD OF REVIEW

The Court reviews *de novo* a District Court's grant of summary judgment. *Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007) (*citing Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002)). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 849 (D.C. Cir. 2006) (*citing* Fed. R. Civ. P. 56(c)). "In reviewing a grant of summary judgment, [this Court] must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Woodruff,* 482 F.3d at 526 (internal citations and quotations omitted).

---

[1] Amicus is not here briefing the merits of every claim asserted by Ms. Tate, including her claims under the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the Equal Protection Clause of the Fifth Amendment.

## II.    BECAUSE THE DISTRICT NEVER "LAWFULLY ACQUIRED" MS. TATE'S CAR, ITS SALE OF HER CAR WAS A "TAKING" IN VIOLATION OF THE FIFTH AMENDMENT

The Fifth Amendment's Takings Clause instructs that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. 5.  "[The Takings] Clause stands as a shield against the arbitrary use of governmental power."  *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).  "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).   The District's sale of Ms. Tate's car and subsequent refusal to provide her any compensation presents just such a paradigm case.

But the District Court, relying on two primary arguments, disagreed.  First, it stated without elaboration that "the government [is] not [] required to compensate an owner for property which it has already *lawfully acquired* under the exercise of governmental authority other than the power of eminent domain."  Mem. Op. at 6 [A21]. (emphasis added, internal quotations and citation omitted).  Second, the District Court explained in a similar conclusory fashion that "property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."  *Id.* [A21] (internal quotation and citation omitted).  Because the first rationale does not apply here, and because the second sweeps too

broadly, the District Court's entry of summary judgment on Ms. Tate's takings claim was in error.

### A.    The District Did Not "Lawfully Acquire" Ms. Tate's Car

In rejecting Ms. Tate's takings claim, the District Court rested primarily on the Supreme Court's decision in *Bennis v. Michigan*, in which the Court held that "[t]he government [is] not [] required to compensate an owner for property which it has already *lawfully acquired* under the exercise of governmental authority other than the power of eminent domain," 516 U.S. 442, 452 (1996) (emphasis added). *See* Mem. Op. at 6 [A21].  In the District Court's view, therefore, the District did little more than sell its own property, and thus no taking could have possibly occurred.  But not only does the District Court never explain how it was that Ms. Tate's car lawfully became the District's property, the undisputed facts make clear that, in fact, it never did.

In *Bennis*, the car that the plaintiff owned jointly with her husband was declared by the trial court to be a public nuisance and subsequently sold pursuant to a court order.  *Bennis,* 516 U.S. at 443.  The state's sale of the plaintiff's car there was in full accordance with Michigan's nuisance statute, which provided that "[i]f the existence of the nuisance is established in an action as provided in this chapter," -- which it was -- "an order of abatement shall be entered as a part of the judgment in the case." *See id.* at 444 n.3 (*quoting* Mich. Comp. Laws Ann. §

600.3825).  The plaintiff argued that because she had no knowledge that her husband had been using the car for illicit purposes, the sale was an unconstitutional taking.  *Id.* at 444.  The Court rejected the plaintiff's claim, noting that "the property in the automobile was transferred by virtue of [the forfeiture] proceeding from petitioner to the State."  *Id.* at 452.  Based on this lawful transfer, on review the Court concluded that the "government [is not] [] required to compensate an owner for property which it has already lawfully acquired." *Id.*

But unlike the car in *Bennis*, Ms. Tate's car was never "lawfully acquired" by the District.  Under the then-existing law, the District's Abandoned and Junk Vehicle Division was empowered to "[s]ell any abandoned vehicle at public auction," provided that it first "[n]otify the owner . . .  that the abandoned vehicle will be sold at public auction if not reclaimed within 45 days after the date of the notice."  D.C. Code § 50-2402(a)(5) and (6) (repealed) [A29] Ex. 3 to Compl. "Abandoned vehicle" was in turn defined as "any motor vehicle . . . [t]hat has remained unclaimed for 45 days after proper notice."  D.C. Code § 50-2401(1)(E) (repealed) [A27] Ex. 2 to Compl.  Thus, the District was permitted to sell Ms. Tate's car as an "abandoned vehicle" -- or, put differently, the property interest in Ms. Tate's car would have been lawfully transferred to the District -- *only if* Ms. Tate had failed to claim it within 45 days *after* having been properly notified that it was designated for auction.

13

Viewing the facts in a light most favorable to Appellant, as the Court must at this stage of the proceedings, there is no question that 45 days did not elapse from the date Ms. Tate was notified of the planned auction to the date her car was sold. Although the District, on April 12, 2002, *attempted* to send a letter to Ms. Tate notifying her that failure to claim her car within 45 days "shall constitute consent to the sale of the vehicle at public auction," (Ex. C to C. Jones Decl. [A146] (Ex. 6 to Def.'s Mot. for Summ. J.)), by the District's own admission, the letter was mailed to the wrong address and returned.  Def.'s Statement of Facts ¶ 8 [A81].  In fact, Ms. Tate learned of the planned auction only in May, when she went to the DMV to contest a ticket.  Am. Compl. ¶ 14 [A57].   Even assuming, *arguendo*, that Ms. Tate received this verbal notification on the earliest possible date in May (May 1st)[2] -- and assuming such a verbal notification could even constitute "proper notice"[3] -- clearly 45 days had not elapsed before the District sold her car on June

---

[2] Ms. Tate does not specify when exactly in May she went to the DMV.

[3] Again, District of Columbia law defined an "abandoned vehicle" as one that remained unclaimed for 45 days after "proper notice." D.C. Code § 50-2401(1)(E) (repealed) [A27] (Ex. 2 to Compl.). Such notice was required to instruct the owner of the car that he or she had 45 days to reclaim the vehicle. *Id.* [A27]  There is no indication in the record that when Ms. Tate was informed of the impending auction, that she was simultaneously informed that she had 45 days to claim her car.  As a result, it is questionable whether, in fact, any notice Ms. Tate received in May was "proper notice" as that term is defined.  However, given that 45 days had not elapsed from the date notice was provided, the question of whether Ms. Tate was told she had 45 days to reclaim her car is moot.

4th.  Accordingly, Ms. Tate's car unequivocally did not "remain[] unclaimed for 45 days after proper notice," D.C. Code § 50-2401(1)(E) (repealed) [A27]. (Ex. 2 to Compl.), and thus did not constitute an "abandoned vehicle" under the District's own definition.[4]  Not being an "abandoned vehicle," Ms. Tate's car was never "lawfully acquired" by the District.

In light of the plain fact that Ms. Tate's car was not "abandoned" when sold, it is not surprising that the District Court nowhere explains how it was that the District "lawfully acquired" Ms. Tate's car.  It certainly did not adopt the reasoning of the District, which, in its motion, speculated that Ms. Tate would have received actual notice of the pending sale when she went to the Blue Plains lot to retrieve some personal items on April 19, 2002 -- 46 days before the June 4th auction date -- and that her car was thus technically "abandoned" at the time of the auction.  *See* Def.'s Mot. for Summ. J. at 19 [A101].  Indeed, the District Court explicitly rejected the District's conjecture, pointing out that "[the District] has not provided

---

[4] Nor did Ms. Tate "abandon" her car under the common law definition of abandonment, which requires that "[t]he owner must have utterly and entirely relinquished all hope and intent of recovering the property" and manifested "a clear and unequivocal intent to abandon." *Kearns v. McNeill Bros. Moving & Storage Co.*, 509 A.2d 1132, 1136 (D.C. 1986). (citations omitted).  Ms. Tate's repeated visits to the DMV in the weeks and months following the towing of her car -- and, in particular, her requesting a hearing immediately after learning of the planned auction -- hardly manifests a "clear and unequivocal intent to abandon." *See* Am. Compl. ¶¶ 9, 14 [A55, A57]**.**

any documentation of such notice" and that "[t]he plaintiff disputes that she was so informed." *See* Mem. Op. at 8, n.5 [A23]. "This disputed fact," the District Court thus concluded, "is a credibility question beyond the province of summary judgment." *Id.*[A23]. But neither the Appellee nor the District Court proffered an alternative basis upon which Appellee could have "lawfully acquired" Ms. Tate's car. Instead, the District Court summarily stated that "[t]he defendant is entitled to judgment on [the Takings] claim" because "the government is not required to compensate an owner for property which it has already lawfully acquired." *See* Mem. Op. at 7, 6 [A22, A21] (internal quotation and citation omitted). In the face of uncontroverted evidence to the contrary, such an unadorned conclusion is not enough to sustain summary judgment on Ms. Tate's takings claim.

Finally, although not an issue below, the fact that Ms. Tate's takings claim is premised in part on the District's non-compliance with its own laws does not mean that her only remedy lies in a state law tort action. The Supreme Court has made clear that a plaintiff can bring a § 1983 claim to remedy a constitutional violation even where such a violation also runs afoul of state law:

> Thus, overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983. A plaintiff, for example, may bring a § 1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion. As was noted in *Monroe*, in many cases there is 'no quarrel with the state laws on the

16

books,'; instead, the problem is the way those laws are or are not implemented by state officials.

*Zinermon v. Burch*, 494 U.S. 113, 124-25 (1990) (internal citation omitted).

Indeed, and in any event, as explained in Part III, *infra,* Ms. Tate has also asserted

a number of valid common law causes of action that should not have been disposed

of on summary judgment.

### B.    Even if the District Seized Ms. Tate's Car Pursuant to Its Police Power, It Is Not Immunized From a Takings Claim

Aside from its view that the District "lawfully acquired" Ms. Tate's car, the

District Court further appears to have invoked an alternative rationale for granting

Summary Judgment to the District on Ms. Tate's takings claim.  Specifically, the

District Court relied on the broad proposition that "property seized and retained

pursuant to the police power is not taken for a 'public use' in the context of the

Takings Clause." Mem. Op. at 6 [A21] (*quoting AmeriSource Corp. v. United

States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008)).  Although the District Court did not

further elaborate on this point, the implication appears to be that when the

government acts pursuant to its police powers, *ipso facto*, no takings claim can

*ever* lie.  Such a position overstates the rule.

The District's invocation of its police powers does not cloak it with the

ability to sell private property at will, free from the strictures of the Takings

Clause.  In the regulatory takings context, the Supreme Court has made clear that

17

the mere fact that a taking is accomplished pursuant to the police power does not alone defeat a Takings claim. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982) ("The Court of Appeals determined that § 828 . . . is within the State's police power. *We have no reason to question that determination*. It is a separate question, however, whether an otherwise valid regulation so frustrates property rights that compensation must be paid.") (emphasis added); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1009, 1031-32 (1992) (Finding that a takings claims could lie even though "[the plaintiff] did not take issue with the validity of the Act as a lawful exercise of South Carolina's police power."). If, under the Supreme Court's decisional law, a regulatory taking pursuant to the police power can give rise to a Fifth Amendment Takings claim, then surely a physical taking pursuant to the police power -- the "paradigmatic" form of a taking, *Lingle,* 544 U.S. at 537 -- must as well. Indeed, "[i]f . . . the uses of private property were subject to unbridled, uncompensated qualification under the police power, 'the natural tendency of human nature [would be] to extend the qualification more and more until at last private property disappeared.'" *Lucas,* 505 U.S. at 1014 (*quoting Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Accordingly, at least one circuit has rejected, in unequivocal terms, the proposition that the Fifth Amendment's Takings Clause is inapplicable when property is seized pursuant to the government's police powers:

> Appellants argue strenuously that their claims do not include a takings claim because they nowhere allege that the City used its power of eminent domain to take property for public use.  Instead, Appellants assert that the City relied on its police powers to destroy their property.  Such a distinction between the use of police powers and of eminent domain power, however, cannot carry the day.  The Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking.[(citation omitted)]  Moreover, as the Supreme Court has noted, 'while the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings.'  *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316, 96 L. Ed. 2d 250, 107 S. Ct. 2378 (1987).  Thus, simply because the City did not formally use its powers of eminent domain to destroy Appellants' property does not mean that its actions could not amount to a taking requiring just compensation.

*John Corp. v. City of Houston*, 214 F.3d 573, 578-79 (5th Cir. 2000).  Far from being inapplicable to the state's exercise of its police powers, therefore, "the Takings Clause is a limitation upon the state's police powers; if a regulation goes too far . . . then it must be treated as an exercise of eminent domain - a taking - which requires compensation."  *Richardson v. City & County of Honolulu*, 124 F.3d 1150, 1167 (9th Cir. 1997).

In this case, while the District's decisions to tow and retain Ms. Tate's car may well have been lawful exercises of its police power (to enforce its traffic laws) that do not implicate the Takings Clause, the District's *sale* of her car -- notwithstanding that Ms. Tate had not "abandoned" it and was actively seeking to

19

recover it -- was not.  Indeed, there is evidence in the record that suggests that even the District did not believe Ms. Tate's car could be sold at auction pursuant to some police power justification.  After first learning in May of the impending auction, Ms. Tate requested a hearing, which took place on May 29, 2002 before a hearing examiner at the District of Columbia Department of Motor Vehicles.  Am. Compl. ¶ 14 [A57].  Ms. Tate claims that the hearing examiner granted her a stay of the auction.  *Id.* [A57].  Although Ms. Tate's account is contested by the District, the hearing examiner's written record -- though difficult to read -- clearly states that, at the very least, Ms. Tate informed the examiner that she had failed to receive notice of the impending auction, and states further that "the transfer fee and (15) fifteen days of storage is waived."  Ex. I to C. Claytor Decl. [A136] (Ex. 2 to Def.'s Mot. for Summ. J.)  Moreover, the District's own computer record for Ms. Tate's vehicle stated that "All [t]ow & [s]torage [f]ees [r]elease Per HR 778/5/29/02" -- *i.e.,* at Hearing No. 778 on May 29, 2002. Ex. K to Pl.'s 1st Set of Reqs. for Admission [A182] (attached as Ex. 1 to Pl.'s Opp. to Def.'s Mot. for Summ. J.).  While the District's Chief Hearing Examiner -- who was not the actual examiner at Ms. Tate's hearing -- disputes that a stay of the auction was granted, C. Claytor Decl. ¶ 14 [A118] (Ex. 1 to Def.'s Mot. for Summ. J.), the evidence on

summary judgment must be construed in favor of Ms. Tate, the nonmovant.[5] *Woodruff v. Peters,* 482 F.3d 521, 526 (D.C. Cir. 2007).

But regardless of the outcome of the May 29th hearing, there is no question that when Ms. Tate's car was sold at auction on June 4th, it did not qualify as an "abandoned vehicle" under the District of Columbia's then-applicable law. The District, therefore -- no matter what happened at the hearing -- had no more right to sell her car than it had a right to sell any of the other hundreds of thousands of other registered, non-abandoned motor vehicles in the District of Columbia. Moreover, given that the District improperly sold Ms. Tate's car and deposited the proceeds in its coffers, it was, at minimum, required to compensate her for it. It did not. The result is a naked violation of the Fifth Amendment's Takings Clause.[6]

---

[5] To the extent the District Court relied for its ruling on the Chief Hearing Examiner's account of the May 29th hearing, summary judgment would have been improper -- where there "is a factual matter about which the parties vehemently disagree, and where issues of material fact are in dispute summary judgment is inappropriate." *Doe v. United States*, 821 F.2d 694, 710 (D.C. Cir. 1987). In any event, the outcome of the May 29th hearing is ultimately irrelevant to the takings claim; no matter what happened at the hearing, the District lacked the authority to sell Ms. Tate's car on June 4th because at that point the car was not "abandoned."

[6] Given that the District's sale of Ms. Tate's car constituted a taking, the other aspect of the District Court's decision on the Takings claim -- that the District was not statutorily required to apply the proceeds of the sale to Ms. Tate's outstanding ticket balance -- is irrelevant. *See* Mem. Op. at 6 [A21]. Ms. Tate is entitled to the fair market value of her car at the time of its sale. *Brown v. Legal Found.*, 538 U.S. 216, 236 (2003) (explaining that private party from whom the government has taken property "is entitled to be put in as good a position pecuniarily as if his

(footnote continued on next page)

## III.   MS. TATE DID NOT CONCEDE HER COMMON LAW CLAIMS

Even if Ms. Tate has failed to state a valid constitutional claim, her Complaint properly asserts a number of valid common-law tort claims against the District.[7]  But the District Court did not even assess the merits of those claims. Instead, because Ms. Tate allegedly did not respond to the District's arguments on her common law claims, the District Court deemed those claims "conceded." Mem. Op. at 10 [A25].  Although Ms. Tate, a *pro se* plaintiff, may not have structured her brief as an attorney would have done, much of the substance of Ms. Tate's Opposition brief directly rebuts arguments advanced by the District, and belies any suggestion that she intended to concede anything.  Because the District Court failed to accord Ms. Tate's brief the liberal construction to which *pro se* filings are entitled, the District Court erred in granting summary judgment to the District on all of Ms. Tate's common law claims.

---

(footnote continued from previous page)

property had not been taken") (internal citation and quotations omitted); *Ford Motor Credit Co. v. N.Y. City Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007) ("Under the Takings Clause of the Fifth Amendment, the fair market value of property taken is normally ascertained as of the date of the taking.").

[7] The District Court has supplemental jurisdiction over Ms. Tate's claims predicated on District of Columbia law, *see* 28 U.S.C. § 1367(a), and may properly retain jurisdiction over those claims even if its rulings on Ms. Tate's constitutional claims are upheld, *id.* § 1367(c).

In particular, two of Ms. Tate's common law claims -- for conversion (Am. Compl. ¶¶ 80-92 [A70-71]) and unjust enrichment (*id.* ¶¶ 107-112 [A73-74]) -- are clearly meritorious, and should not have been dismissed. First, the District's unauthorized, *ultra vires* sale of Ms. Tate's car, without providing her any recompense, constitutes common-law conversion. "The elements of conversion are: (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990) (*citing Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989)). Because, as explained in Part II(A), *supra*, Ms. Tate's car was not abandoned, the District's "exercise" of "ownership" over her car -- by selling it at auction -- was "unlawful," and thus constitutes a conversion for which compensation is due.

Second, Ms. Tate also properly alleges a claim for unjust enrichment, which requires a plaintiff to show that "(1) [s]he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by non-payment." *Heller v. Fortis Benefits Ins. Co.¸* 142 F.3d 487, 495 (D.C. Cir. 1998) (citation omitted). That the District should pay compensation to Ms. Tate after improperly selling her non-abandoned car is something that Ms. Tate, the District, and the rest of society would reasonably expect.

Yet because Ms. Tate, in her Opposition to the District's motion for summary judgment, allegedly failed to respond to the District's arguments on her common law claims, the District Court ruled that Ms. Tate "conceded them." *See* Mem. Op. at 10 [A25]. But in its one-paragraph dismissal of Ms. Tate's common law claims, the District Court failed to acknowledge that Ms. Tate is an unrepresented *pro se* litigant who did not have the assistance of counsel in drafting her Opposition. This Court has repeatedly instructed that some measure of leniency should be accorded to filings by *pro se* litigants. *Shankar v. ACS-GSI*, 258 Fed. Appx. 344, 345 (D.C. Cir. 2007) ("Appellant is correct that complaints or motions drafted by pro se plaintiffs are held to 'less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted); *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002) ("because Gray is proceeding pro se, our review of his pleadings is subject to 'less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted); *Ray v. Proxmire*, 581 F.2d 998, 1003 (D.C. Cir. 1978) ("We agree wholeheartedly that courts must always heed their responsibility to afford Pro se litigants 'every fair opportunity to present their case(s).'").

Even setting aside the leniency *pro se* litigants are typically afforded with regard to the structure of their pleadings, a fair reading of her Opposition finds that Ms. Tate *did* respond to the District's arguments on her common law claims, even if such responses were not expressly labeled as such. For example, the District

24

sought summary judgment on Ms. Tate's conversion and unjust enrichment claims on the grounds that it did not exercise "unlawful" control over her car.  Def.'s Mot. for Summ. J. at 24-25 and 29-30 [A106-07 and A111-12].  In her Opposition, Ms. Tate argued that at her May 29th hearing, the District agreed to stop the planned sale of her car, and that certain fees associated with the tow and storage of her car were waived as a result,  Pl.'s Opp. to Def.'s Mot. for Summ. J. at 5-6 (Dkt. No. 73) [A160-61], facts that directly undermine the District's claim to having lawfully sold her car.  That Ms. Tate's Opposition directly contested the legal argument central to the District's attempt to defeat her conversion and unjust enrichment claims belies any argument that such claims were "conceded."  While she may not have compartmentalized or labeled her opposition brief by claim number, her failure to adhere to the conventions of motions practice should not be construed as a concession of the District's arguments, particularly in light of Ms. Tate's *pro se* status.  *See Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (Explaining that "in one such [pro se] case, we derived the prisoner's cause of action not only from his formal complaint but also from other papers he had filed."); *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) ("we have an obligation to construe pro se filings liberally").

25

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the District Court's decision to grant summary judgment for the District on Ms. Tate's claim under the Fifth Amendment's Takings Clause and on all of her common law claims.

Respectfully submitted,

<u>/s/ Matthew T. Reinhard</u>
Matthew T. Reinhard
Jeffrey M. Hahn
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
Phone:  (202) 626-5800
Facsimile:  (202) 626-5801

July 26, 2010                    *Court–Appointed Amicus Curiae on behalf*
                                 *of Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2010, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Donna M. Murasky, Esquire, Deputy Solicitor
Mary Larkin Wilson, Assistant Attorney General
Office of the Attorney General for the District of Columbia
Office of the Solicitor General
441 4th Street, NW
One Judiciary Square, Sixth Floor
Washington, DC 20001-2714
Email: donna.murasky@dc.gov
Email: mary.wilson@dc.gov

I further certify that on July 26, 2010 I have mailed two true and correct

copies of the foregoing document by U.S Mail, First-Class, postage prepaid, to the

following non-CM/ECF participant, addressed as follows:

Christine A. Tate
45 Frank Court
Brooklyn, NY 11229

Christine Tate
3230 Heather Grove Court
Jacksonville, FL 32223

_____/s/ Matthew T. Reinhard_____
Matthew T. Reinhard