**ORAL ARGUMENT NOT YET SCHEDULED**

No. 09-7034

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

CHRISTINE A. TATE,

*Plaintiff-Appellant*

v.

DISTRICT OF COLUMBIA

*Defendant-Appellee*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**FINAL REPLY BRIEF OF COURT-APPOINTED *AMICUS CURIAE*, ON
BEHALF OF PLAINTIFF-APPELLANT**

Matthew T. Reinhard,
  *Counsel of Record*
Jeffrey M. Hahn
Miller & Chevalier Chartered
655 Fifteenth St., N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800

July 26, 2010

*Court-Appointed Amicus Curiae on
Behalf of Plaintiff-Appellant*

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................1

ARGUMENT...........................................................................4

I.    THE DISTRICT'S SALE OF MS. TATE'S CAR IS A
PARADIGMATIC TAKING THAT IS NEITHER JUSTIFIED
BY ANY POLICE-POWER EXCEPTION NOR
FORECLOSED BY THE SUPREME COURT'S DECISION
IN *LINGLE* ....................................................................4

    A.    There is No Police Power Exception to the Takings
Clause that Applies in this Case .......................................5

        1.    That the District Purported to Act Under its Police
Power Does Not Immunize it from Liability under
the Takings Clause ................................................5

        2.    Appellee Overstates the Holding of *AmeriSource* ..................10

    B.    The Supreme Court's Decision in *Lingle* Does Not
Foreclose Ms. Tate's Takings Claims ...............................15

II.    MS. TATE DID NOT WAIVE HER COMMON LAW
CLAIMS ........................................................................19

CONCLUSION ..................................................................23

# TABLE OF AUTHORITIES*

## FEDERAL CASES

*Agins v. Tiburon*,
   447 U.S. 255 (1980)..................................................................16

*\*AmeriSource Corp. v. United States*,
   525 F.3d 1149 (Fed. Cir. 2008).......................................... 10, 11, 13, 14

*\*Bennis v. Michigan*,
   516 U.S. 442 (1996).......................................................7, 8, 9, 12, 14

*First English Evangelical Lutheran Church v. County of Los Angeles*,
   482 U.S. 304 (1987)..................................................................15

*\*Innovair Aviation, Ltd. v. United States*,
   72 Fed. Cl. 415 (Ct. Fed. Cl. Aug. 31. 2006)....................... 11, 12, 13, 14

*\*Innovair Aviation, Ltd. v. United States*,
   83 Fed. Cl. 105 (Ct. Fed. Cl. Aug. 15, 2008)........................................13

*John Corp. v. City of Houston*,
   214 F.3d 573 (5th Cir. 2000)..................................................6

*\*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005).......................................2, 4, 6, 7, 15, 16, 17, 18, 19

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982)..................................................................5

*\*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)..................................................................5, 6

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984)..................................................................6

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Tate v. District of Columbia*,
   601 F. Supp. 2d 132 (D.D.C. 2009)......................................................20

*United States v. James Daniel Good Real Property*,
   510 U.S. 43 (1993)..............................................................................12

## STATE CASES

*Blanken v. Harris, Upham & Co., Inc.*,
   359 A.2d 281 (D.C. 1976)...................................................................22

*\*MacLeod v. Georgetown Univ. Med. Ctr.*,
   736 A.2d 977 (D.C. 1999)...........................................................19, 20

## FEDERAL STATUTES

42 U.S.C. § 1983....................................................................................20

## STATE STATUTES

D.C. Code § 50-2401(1)(E) (2001) .........................................................8

D.C. Code § 50-2401 - 2402 (2001) ......................................................13

## SUMMARY OF ARGUMENT

Amicus argued in its opening brief that the District Court erred in granting summary judgment for Appellee District of Columbia ("the District") in two respects.  First, the District Court erroneously held that because the District had, in its view, "lawfully acquired" Appellant Christine Tate's car pursuant to its police power to auction off abandoned vehicles, no claim for a violation of the Fifth Amendment's Takings Clause could lie against it.  But as Amicus explained, the District did not in fact "lawfully acquire" Ms. Tate's car, as her car -- even by the District's own statutory standard for abandonment -- was not actually "abandoned" when sold.  Amicus explained further that, to the extent the District Court grounded its decision in a belief that whenever the District (or any governmental entity) purports to act under its "police powers" it is *ipso facto* immune from a takings claim, such a broad proposition has no basis in the Supreme Court's Takings Clause jurisprudence.

Second, Amicus argued that the District Court also erred in holding that Ms. Tate conceded each of her five common law claims by allegedly failing to respond to the District's arguments in her opposition to the District's motion for summary judgment.  In its two-sentence holding, however, the District Court not only failed to even mention Ms. Tate's *pro se* status, but it ignored the fact that many of the same arguments Ms. Tate made in support of her constitutional claims directly

1

supported her common law claims, belying the notion that Ms. Tate meant to concede them.

The District's brief does nothing to diminish either argument. With respect to the Takings Clause, the District takes a similar tack to the District Court, arguing chiefly that because it was acting under its police powers when it sold Ms. Tate's car, it is shielded from Takings Clause liability. But just like the District Court, the District overstates the exception to Takings Clause liability for police power actions, which applies only when the government "lawfully acquires" the contested property, which was not the case here.

The District argues further that, even if its decision to sell Ms. Tate's car was not lawful, it is still immune from the Takings Clause. In the District's view, the Takings Clause may only be used to remedy "otherwise proper" government action. But the Supreme Court decision from which the District derives this proposition -- *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) -- held only that the impropriety of governmental action cannot be the *sole basis* for a claim under the Takings Clause, and that the validity of such claims should instead be measured by the "severity of the burden" imposed on the property right in question. Here, Ms. Tate's takings claim is not based on the District's non-compliance with its abandoned vehicles statute, but is instead based squarely on the fact that the District sold her car without providing her any compensation

whatsoever -- the paradigmatic taking.  The fact that the District did not "lawfully acquire" her car under its abandoned vehicles statute serves only to rebut the District's argument that the police-power exception to Takings Clause liability applies; it is not the basis for Ms. Tate's prima facie takings claim.

As to Ms. Tate's common law claims, the District offers two principal arguments in support of the District Court's waiver finding.  The District first contests that the leniency typically afforded to *pro se* litigants applies only to *prisoner* litigants, not civil litigants like Ms. Tate.  But the very case upon which the District relies for this contention states explicitly that such leniency should also be afforded to plaintiffs suing to vindicate their civil rights under remedial statutes, which is precisely the nature of Ms. Tate's suit in this case.  The District argues further that, in any event, the District Court adequately informed Ms. Tate that she had to respond to the District's arguments or else they would be deemed conceded. But that notice informed Ms. Tate only of her obligation to *file* an opposition, not to substantively respond to every argument advanced by the District.  To the extent the notice gave Ms. Tate any substantive instructions at all, it instructed her only that she had to contest the District's factual assertions, which she clearly did.

For these reasons, the District's Court holdings on Ms. Tate's takings and common law claims should be reversed.

3

## ARGUMENT

I. **THE DISTRICT'S SALE OF MS. TATE'S CAR IS A PARADIGMATIC TAKING THAT IS NEITHER JUSTIFIED BY ANY POLICE-POWER EXCEPTION NOR FORECLOSED BY THE SUPREME COURT'S DECISION IN *LINGLE***

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). In light of this principle, Amicus's takings argument is simple: Ms. Tate had a property interest in her car, which the District appropriated (or, more specifically, liquidated) without providing her any compensation. As set forth in Amicus's opening brief, the District Court's rationale for finding otherwise -- namely, that the District "lawfully acquired" Ms. Tate's car under its police power to sell "abandoned vehicles" -- was erroneous, as Ms. Tate's car was not "abandoned" when sold and was thus never "lawfully acquired" by the District. *See* Amicus Br. at 12-15.

The District now offers two arguments for why the District Court's decision regarding Ms. Tate's Takings claim should be affirmed. First, echoing the District Court, the District argues that because it allegedly sold Ms. Tate's car pursuant to one of the District's "classic" police powers, no Takings claim can ever lie against it. Second, the District claims that the Supreme Court's decision in *Lingle* precludes a takings claim under the facts here, and limits Ms. Tate's constitutional

4

remedy to a substantive due process claim. Both arguments rely on a misreading of the case law, and should be rejected.

### A.     There is No Police Power Exception to the Takings Clause that Applies in this Case

#### 1.     That the District Purported to Act Under its Police Power Does Not Immunize it from Liability under the Takings Clause

Just like the District Court below, the District argues principally that because its sale of Ms. Tate's car was purportedly taken pursuant to its "police power," the car was not taken for a "public use" and thus cannot give rise to a claim under the Takings Clause. Appellee's Br. at 25. But as Amicus showed in its opening brief, such an argument -- that all exercises of the police power are immune from the Takings Clause, and that takings claims are limited only to traditional exercises of eminent domain -- overstates the rule.

The Supreme Court's Takings Clause jurisprudence makes explicitly clear that the government does not enjoy blanket immunity from the Takings Clause whenever it acts under its police powers. The Court has found on at least two occasions that government action taken under the police power may give rise to a takings claim. *See* Amicus Br. at 17-18 (*citing Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425 (1982) and *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1009, 1031-32 (1992)). Similarly, the Fifth Circuit has explicitly rejected the contention that police-power actions are *ipso facto* beyond the reach of

5

the Takings Clause. *See John Corp. v. City of Houston*, 214 F.3d 573, 578 (5th

Cir. 2000) ("Such a distinction between the use of police powers and of eminent

domain power, however, cannot carry the day."). If anything, the District's

insistence that it sold Ms. Tate's car in pursuit of its police powers *undermines* its

argument that the "public use" requirement is not met here: As the Supreme Court

has explained, "the scope of the 'public use' requirement of the Taking Clause is

coterminous with the scope of a sovereign's police powers." *Ruckelshaus v.*

*Monsanto Co.*, 467 U.S. 986, 1014 (1984).

Nevertheless, the reach of the Takings Clause is not limitless, and not all

governmental appropriations of private property will give rise to a takings claim.

Such limits, however, are far narrower than the blanket police-power immunity the

District espouses and, in any event, do not apply here. As the Supreme Court

explained in *Lucas*, the property interests that qualify for Takings Clause

protection are limited by so-called "background principles" derived from state law.

*See Lucas*, 505 U.S. at 1030. For example, when private property presents a risk to

public health or safety, the law of nuisance allows the government to infringe upon

it without having to compensate the owner. *See id.* at 1029 ("On this analysis, the

owner of a lakebed, for example, would not be entitled to compensation when he is

denied the requisite permit to engage in a landfilling operation that would have the

effect of flooding others' land."). The Supreme Court in *Lingle* recently re-

6

affirmed this "background principles" exception to Takings Clause liability, explaining that the government must pay compensation when it appropriates property "*except* to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property." *Lingle*, 544 U.S. at 538 (emphasis added).

Thus, the question is whether some "background principle" exists that absolves the District from having to compensate Ms. Tate for the sale of her car. Both the District Court and the District point to the principle announced in *Bennis v. Michigan*, 516 U.S. 442, 452 (1996), a forfeiture case, in which the Court stated that "[t]he government may not be required to compensate an owner for property which it has already *lawfully acquired* under the exercise of governmental authority other than the power of eminent domain." (Emphasis added). *See* Mem. Op. at 6 [A21]; Appellee's Br. at 25-26. The trial court in *Bennis* found that plaintiff's car, which she co-owned with her husband, had been used by her husband for illicit purpose and ordered it forfeited, as permitted by statute. *See Bennis*, 516 U.S. at 444. The plaintiff then brought a takings claim. The Supreme Court found that because "the property in the automobile was transferred by virtue of [the forfeiture] proceeding from petitioner to the State," the government "lawfully acquired" the plaintiff's car, thus precluding her takings claim. *Id.* at 452. In reaching this holding, nowhere did the Court state, as the District suggests

7

here, that *all* purported exercises of the police power are shielded from the Takings Clause.  Rather, it was the state's *lawful* acquisition of property by virtue of having satisfied the forfeiture statute -- not its mere invocation of the police power -- that exempted it from Takings Clause liability.

Applying the *Bennis* principle here, the question is not whether the District sold Ms. Tate's car merely while purporting to act pursuant to its police power, but rather whether the District ever "lawfully acquired" her car in the exercise of that power.  As Amicus explained at length in its opening brief, there is no question that it did not.  *See* Amicus Br. at 13-15.  The District purported to sell Ms. Tate's car under its then-existing authority to dispose of "abandoned vehicles," which the statute defined as "any motor vehicle . . . [t]hat has remained unclaimed for 45 days after proper notice."  D.C. Code § 50-2401(1)(E) (2001) (repealed)  [A27] Ex. 2 to Compl.   But Ms. Tate's car, when sold, had not sat "unclaimed for 45 days after proper notice," principally because the District sent written notice to the incorrect address, and then sold it well short of 45 days after Ms. Tate received actual notice of the impending sale.  *See* Amicus Br. at 14-15.  These facts stand in stark contrast to those in *Bennis*, where the plaintiff's car -- because it was found to have been used for illicit activity -- met the requirements of Michigan's forfeiture statute, and was thus "transferred" to the state as a result.  *See Bennis*, 516 U.S at 443-444, 452.  Accordingly, because the District did not "lawfully acquire" Ms.

Tate's car under its abandoned-vehicles statute, the *Bennis* principle does not absolve the District of liability under the Takings Clause.[1]

It is for this same reason that the District's reliance on the "deterrent and punitive purposes" served by the abandoned vehicles statute -- which the District claims is similar to the purpose served by the forfeiture statute in *Bennis*, Appellee's Br. at 27 -- is irrelevant. Amicus has nowhere argued that an abandoned-vehicles statute can never serve as the basis for the *Bennis* exception to Takings Clause liability; indeed, where a car *is* in fact abandoned when sold, it is likely no takings claim will lie, as the government, in that instance, would have "lawfully acquired" the car as a result of its abandonment. But where a car is not actually "abandoned" as defined by the applicable abandoned vehicles statute -- just as where an item of property is not actually "forfeitable" under a forfeiture statute -- the exception does not apply, for the obvious reason that the car is not abandoned. Because Ms. Tate's car was not "abandoned" when sold, the fact that the statute may serve a deterrent or punitive purpose is irrelevant.

---

[1] Amicus also notes that nowhere in the Takings Clause section of its brief does the District even attempt to argue that, at the time of its sale, Ms. Tate's car had sat unclaimed for 45 days after proper notice to Ms. Tate. Rather, the District's entire Takings Clause argument is premised on its erroneous belief that its invocation of its nebulous police powers makes it beyond the reach of the Takings Clause for *any actions* taken in the exercise of that power.

2.    Appellee Overstates the Holding of *AmeriSource*

The Federal Circuit's decision in *AmeriSource Corp v. United States*, 525 F.3d 1149 (Fed. Cir. 2008), upon which the District also relies in support of its police-power argument, *see* Appellee's Br. at 26-27, is simply an application of the *Bennis* exception that neither expands its limited scope nor demonstrates that it applies here.  In *AmeriSource*, the government seized a large quantity of prescription medication that the plaintiff (AmeriSource) had shipped to a pharmacy being investigated by the government for suspected criminal violations.   *Id.* at 1150.  At the time of the seizure, the plaintiff, not the pharmacy, held title to the medication.  *Id.*  The government retained the medication through the course of its trial against the pharmacy-defendants and subsequent appeal, by which point the medicine had expired, rendering it worthless.  *Id.* at 1151.  The Plaintiff filed an action under the Takings Clause to recover the value of the seized, now expired, medicine.  *Id.*

The question for the Federal Circuit was thus whether the government's retention of the medication through the course of the trial and appeal -- and beyond its expiration date -- constituted a taking.  While the court may have suggested that *any action* that the government purports to take pursuant to the police power is immune from the reach of the Takings Clause (a proposition that, as explained, is directly contradicted by Supreme Court precedent), the court's actual holding is

10

not so broad and fits well within the narrow exception laid out by the Supreme

Court in *Bennis*.  In particular, the *AmeriSource* court explained that "AmeriSource

did not contest the government's position that the drugs were connected to the

crime or that it was necessary for the government to introduce at least some of the

drugs into evidence," *id.* at 1155, and that "AmeriSouce [did] not contest the

legality of the seizure," *id.* at 1150.  In other words, because the drugs were

connected to the crime under investigation, the government properly seized them

to carry out its investigation and prove its case at trial; *i.e.*, it "lawfully acquired"

them.  *See id.* at 1155 (explaining that it was "satisfie[d]" that "there was at least

some nexus between AmeriSource's pharmaceuticals and the prosecution.").

    Indeed, in a factually analogous case, the Court of Federal Claims clarified

that *AmeriSource* does not mean that any action taken by the government under its

police power, proper or improper, is immunized from a takings claim.  In *Innovair*

*Aviation, Ltd. v. United States*, 72 Fed. Cl. 415 (Ct. Fed. Cl. Aug. 31. 2006)

(*Innovair I*)), the plaintiff, pursuant to the Controlled Substances Act ("CSA"), was

ordered to forfeit certain property that the government alleged had been procured

with funds from the sale of illicit drugs.  *Id.* at 418-19.  The defendant then brought

a takings claim to recover the value of the forfeited property.

    The claims court noted at the outset that although the government's power

under the CSA to forfeit property is broad, it is "not unlimited," as the CSA

11

expressly prohibits forfeiture in cases where the owner of the property is unaware of the illegality and thus "[does] not intend to deprive innocent owners of their property." *Id.* at 422 (*quoting United States v. James Daniel Good Real Property,* 510 U.S. 43, 55 (1993)). The plaintiff argued that because it was an "innocent owner" (a finding that the Ninth Circuit had previously made in a related challenge), its property was not forfeitable under the CSA, and the government's forfeiture of the property thus constituted a taking. *See id.* at 422-423. Just as the District does here, the government argued in response that there can be no taking when it acts under its police powers, as it was doing when it seized and forfeited the property pursuant to the CSA. *See id.* at 423.

The court unequivocally rejected the government's argument, finding that "it is no defense to say, as the Government does, that the Government was acting under the CSA." *Id.* The court explained that the government's argument may have had more validity "if, instead, Innovair were seeking to recover for the loss of the [property] during the time between the valid seizure and the forfeiture." *Id.* But "[h]ere we have the total destruction of the Plaintiff's property," which was not permitted by the CSA. *Id.* The court also rejected the government's reliance on *Bennis* for the proposition that the Takings Clause should give way "when the police powers are at stake," pointing out that the forfeiture at issue in *Bennis* was proper under Michigan's forfeiture statute because the property there was put to

12

illicit use.  *See id.* at 424.  In contrast, "it was conclusively established by the Ninth

Circuit that the property at issue [in *Innovair*] was in no way subject to forfeiture

because Innovair was an innocent owner under the statute."  *Id.*  The court held

that the government's uncompensated forfeiture thus constituted a taking.

The government then sought reconsideration explicitly in light of the Federal

Circuit's then-recent decision in *AmeriSource*, arguing that "under *AmeriSource*,

when the Government seizes property pursuant to its police power, there is no

taking under the Fifth Amendment, as the property is not taken for 'public use.'"

*Innovair Aviation, Ltd. v. United States*, 83 Fed. Cl. 105 (Ct. Fed. Cl. Aug. 15,

2008) (*Innovair II*).  This is precisely the argument advanced by the District in this

case.  The court, however, found it "clear . . . that *AmeriSource* is distinguishable."

*Id.*  In particular, the court explained that "[w]hile in *AmeriSource* the Government

seized and retained evidence for use in the criminal investigation," in *Innovair*, the

government "permanently extinguish[ed] Innovair's interest in the property," in

violation of the CSA.  *Id.*

This case is no different from *Innovair.*  Just as the forfeiture of the

plaintiff's property was not permitted by the CSA in *Innovair* and thus constituted

a taking irrespective of whether the initial seizure was valid, so too here the sale of

Ms. Tate's car was not permitted under the District's then-operable abandoned-

vehicles statute, D.C. Code § 50-2401-02 (2001), regardless of the propriety of the

13

initial seizure.  While the seizure of Ms. Tate's car may well have been justified by the District's police power to tow cars with unpaid parking tickets and arguably could not have itself given rise to a Takings claim, that is beside the point.  It is the *sale* of Ms. Tate's car as an "abandoned vehicle" -- a separate action distinct from its initial seizure and subsequent retention and based on an entirely separate statute -- that serves as the basis for Ms. Tate's takings claim.  And there is no question that Ms. Tate's car, when sold, was not "abandoned" as defined by the statute.  If Ms. Tate's takings claim were instead premised on, say, the diminution in the value of her car during the time the District held it in its tow lots (*i.e.,* as a result of the car's seizure and retention on account of the unpaid tickets), then arguably *AmeriSource* and *Bennis* would defeat her claim.  But because Ms. Tate's Takings claim is not premised on the seizure and retention of her car, but rather on the District's improper decision to sell it, both cases are distinguishable.

In the end, the District's argument that there was no taking here because the District was acting pursuant to some broad and nebulous power to enforce its traffic laws, even if those laws did not just justify the sale, is no different from the government's argument in *Innovair* that there was no taking because it was "acting under the CSA[.]"  *See Innovair I*, 72 Fed. Cl. at 423.  The Federal Circuit squarely rejected such an argument, and this court should do the same.  *Id.*

14

**B.      The Supreme Court's Decision in *Lingle* Does Not Foreclose Ms. Tate's Takings Claims**

Independent of its police-power argument, the District also argues that, based on the Supreme Court's decision in *Lingle*, Ms. Tate's claim "does not sound under the Takings Clause."  Appellee's Br. at 29.  The District derives this conclusion from a snippet of the Court's opinion in which the Court stated that the Takings Clause "does not bar government from interfering with property rights, but rather requires compensation 'in the event of *otherwise proper interference* amounting to a taking."  *Lingle*, 544 U.S. at 543 (*quoting First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (Court's emphasis)).  According to the District, "because it is Tate's, and Amicus's, argument that the sale was a compensable taking because the District did not comply with local law and thus 'never lawfully acquired' Tate's car," the Takings Clause "does not provide a remedy for [Ms. Tate's] grievance," for which the only constitutional remedy is the onerous substantive due process test.  Appellee's Br. at 29.  The District mischaracterizes both the nature of Ms. Tate's takings claim and the meaning of *Lingle*, which does nothing to disturb Ms. Tate's takings claim.

The actual significance of the seized-upon excerpt from *Lingle* becomes clear when it is understood in the context of the entire case.  At issue in *Lingle* was the proper test for determining when a government regulation effects a taking.  *See Lingle*, 544 U.S. at 532.  In an earlier opinion, the Court had held that a municipal

15

zoning ordinance "effects a taking if the ordinance does not substantially advance legitimate state interests *or* denies an owner economically viable use of his land." *Agins v. Tiburon*, 447 U.S. 255, 260 (1980) (emphasis added).  The *Lingle* Court explained that, "[b]ecause this statement is phrased in the disjunctive, *Agins'* 'substantially advances' language has been read to announce a stand-alone regulatory takings test that is wholly independent of . . . any other test." *Lingle*, 544 U.S. at 540.  Applying the *Agins* test, the district court in *Lingle* held that a Hawaii statute violated the Takings Clause not because the plaintiff stood to lose any money or property as a result of the statute, but rather because the statute did not "substantially advance a legitimate state interest." *Id.* at 534.  Thus, *Lingle* presented the Court with its "first opportunity to consider [the "substantially advances" test's] validity as a freestanding takings test." *Id.* at 540.

The Court soundly repudiated the "substantially advances" formula as a valid test under the Takings Clause.   The Court explained that its regulatory takings jurisprudence "aims to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain" and thus "focuses directly upon the severity of the burden that government imposes on private property," *id.* at 539.  In contrast, "the 'substantially advances' inquiry reveals nothing about the *magnitude or character of the burden* a particular regulation imposes upon private property

16

rights," and, as a result, "does not help to identify those regulations whose effects are functionally comparable to government appropriation or invasion of private property." *Id.* at 542 (emphasis in original). Rather, the "substantially advances" test, the Court noted, "asks, in essence whether a regulation of private property is *effective* in achieving some legitimate public purpose," *id.*, and thus "probes the regulation's underlying validity," *id.* at 543. The Court found that this was not a proper inquiry for the Takings Clause, which "does not bar government from interfering with property rights, but rather requires compensation in the event of *otherwise proper interference* amounting to a taking." *Id.* (emphasis in original) (internal citation and quotations omitted).

Ignoring the context of the Court's opinion, the District leaps to the conclusion that, based on *Lingle*, improper government action can *never* give rise to a claim under the Takings Clause. But *Lingle* was merely rejecting the notion that the impermissibility of a challenged government action can serve as the sole, independent basis for a takings claim. The point of *Lingle* is that the Takings Clause inquiry should instead focus on the "severity of the burden" -- in particular, whether that burden is "functionally comparable to government appropriation or physical invasion of private property" -- not on the character or propriety of the challenged action. The District reads *Lingle* as standing for almost the opposite proposition: That even where property has in fact been physically appropriated by

17

the government and where the burden is therefore at its most severe, if the appropriation was improper, there can be no takings claim, only one for substantive due process. Such a conclusion is unsupported either by the facts or reasoning of *Lingle*.

To the extent *Lingle* is relevant at all to the facts here, it supports the validity of Ms. Tate's takings claim. While the District characterizes Amicus's takings argument as being premised on the fact that "the District did not comply with local law," *see* Appellee's Br. at 29, that is *not* the basis of Amicus's takings argument. Rather, Amicus argued, in the first instance, that the reason why the sale of Ms. Tate's car was a taking was because Ms. Tate had a property interest in her car that was taken from her without just compensation, Amicus Br. at 11 -- "[t]he paradigmatic taking," *Lingle*, 544 U.S. at 537. This prima facie takings claim is based solely on the "severity of the burden" to Ms. Tate and is unconcerned with whether the District acted properly or improperly. It stands in stark contrast to the claim advanced by the plaintiff in *Lingle*, whose takings claim was premised exclusively on the propriety of the challenged law. *See id.* at 534-35. The character or propriety of the District's action in this case became relevant only because the District Court invoked one of the exceptions to Taking Clause liability -- namely, that the District had "lawfully acquired" the car under its police powers. Amicus pointed to the impropriety of the District's sale of Ms. Tate's car under its

18

abandoned-vehicles statute solely to demonstrate that, in fact, the District did not "lawfully acquire" Ms. Tate's car, and that this "background principle" does not apply here. The impropriety of the sale, therefore, is not the *reason* why the sale constituted a taking. Rather, it is the appropriation of Ms. Tate's car without compensation that gives rise to her claim -- which is entirely consistent with *Lingle*.

## II.    MS. TATE DID NOT WAIVE HER COMMON LAW CLAIMS

In just two sentences, the District Court entered summary judgment for the District as to each of Ms. Tate's five common law claims on the ground that she "conceded" them by not responding to the District's arguments on those claims. *See* Mem. Op. at 10 [A25]. In reaching this decision, the District Court never even acknowledged Ms. Tate's *pro se* status. Nor did the District Court acknowledge that Ms. Tate, in her 18-page opposition brief vigorously contesting the District's summary judgment motion, made arguments that had equal relevance to her common law claims as they did to her constitutional claims. In so doing, the District Court failed to afford Ms. Tate the leniency normally afforded *pro se* litigants with regard to briefing formalities.

The District, citing the District of Columbia Court of Appeals' decision in *MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A.2d 977, 982 (D.C. 1999), now argues that no leniency is due here, because only *pro se* prisoner litigants, not civil

19

litigants like Ms. Tate, are entitled to such pleading leniency, *see* Appellee's Br. at 44-45, and that, in any event, the District Court advised Ms. Tate "about responding to the defendant's dispositive motion and the possible consequences of dismissal if she did not," Appellee's Br. at 44 (*citing Tate*, 601 F. Supp. 2d 132, 138 (D.D.C. 2009)).

Contrary to the District's representation, the court in *MacLeod* did not say that leniency should be afforded only to *pro se* prisoner litigants. In addition to incarcerated litigants, the court found that "[a] second category of cases in which courts may grant leeway to *pro se* litigants are those in which litigants bring suit under remedial statutes, particularly those involving civil rights, which rely largely on lay persons, operating without legal assistance, to initiate and litigate administrative and judicial proceedings." *MacLeod*, 736 A.2d at 980. Ms. Tate, of course, brought suit under 42 U.S.C. § 1983 to vindicate her civil and constitutional rights, and is thus entitled to some measure of leniency, even under the cases upon which the District relies.

Furthermore, the District Court's notice to Ms. Tate about the consequences of failing to respond to the District's motion cannot possibly be deemed tantamount to advising her that she had to respond to each and every legal argument advanced by the District in order to preserve her claims. That notice informed Ms. Tate that if she "fails to *file* a response or opposition within the time

20

provided, the court will treat the motion as conceded." Order Directing Pl. to Respond to Mot. for Summ. J [Dkt. 72] at 2 [A155] (emphasis added). The District Court thus informed Ms. Tate only of the consequences of failing to *file* an opposition, not of the consequences of failing to explicitly *address* in that opposition every single argument in the District's motion.

To the extent the court's notice to Ms. Tate said anything about the contents of her opposition, it advised her only that she had to respond to the District's *factual assertions*, not its legal arguments. *See id.* at 1 [A154] ("on a motion for summary judgment, any factual assertions in the movant's affidavits will be accepted as true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertions made in the movant's affidavits"). And Ms. Tate's opposition did just that, contesting, in exhaustive fashion, the District's factual representations. *See generally* Appellant's Opp. to Mot. for Summ. J. [A219-37]. Ms. Tate should not be penalized for merely following the court's instructions.

Deeming Ms. Tate's common law claims conceded would be particularly punitive in this case, as many of the factual points made by Ms. Tate in her opposition directly support not only the constitutional claims addressed therein, but also her common law claims, which thus belies the notion that Ms. Tate meant to concede anything. Amicus Br. at 24-25. This is perhaps most apparent with

21

respect to Ms. Tate's claim for conversion, which requires "an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of [her] right to such property." *Blanken v. Harris, Upham & Co.*, 359 A.2d 281, 283 (D.C. 1976). Ms. Tate argued quite clearly in her opposition that her car, when sold, was not "abandoned," *see* Appellant's Opp. to Mot. for Summ. J. at 14-15 [A232-33], a fact which, if true, would demonstrate that the District's sale of her car was "unlawful." The notion that, based on the contents of her opposition, Ms. Tate meant to concede her claim for conversion or her other common law claims elevates form over substance.

The District argues in response that, notwithstanding the substance of her opposition, Ms. Tate should not be excused for failing properly to label her arguments. *See* Appellee Br. at 46. First, the District reasons that because Ms. Tate labeled her claims in her Complaint, "there is no reason" why she should not have not done so in her opposition. *Id.* But as explained, the Court's Order did not instruct her to do so, and in fact suggested that she need only respond to the District's factual assertions, which she did. Second, the District argues that Ms. Tate's "mere inclusion" of the facts relevant to her common law claims "did not oblige the district court to assume that Tate intended to respond, *sub slientio*, to the District's arguments pertaining to conversion and unjust enrichment." *Id.* By the same token though, neither did Ms. Tate's "mere exclusion" of formalistic labels

22

oblige the District Court to assume that Ms. Tate intended to concede her common law arguments, particularly in light of her *pro se* status.

There is no question in this case that the District improperly sold Ms. Tate's car, and there is no question that it refuses to provide her any compensation whatsoever. Ms. Tate has been vigorously and persistently seeking redress for nearly eight years, as is evident from even a cursory review of the filings below. Even if the District's actions did not violate the Constitution (which they did), Ms. Tate, at the very least, has valid common law claims. But the District Court deemed these claims waived based on its view that Ms. Tate's *pro se* brief did not comport with the finer points of civil motions practice, leaving Ms. Tate without a remedy for the District's unlawful sale of her automobile. Considering Ms. Tate's opposition to the District's Motion for Summary Judgment as a whole, the deference afforded to *pro se* litigants, and the inadequacy of the Court's notice to Ms. Tate regarding the necessary contents of her briefing, the District Court's decision should be reversed.

## CONCLUSION

For the foregoing reasons and the reasons stated in Amicus's opening brief, the Court should reverse the District Court's decision to grant summary judgment for the District on Ms. Tate's claim under the Fifth Amendment's Takings Clause and on all of her common law claims.

23

Respectfully submitted,


<u>/s/ Matthew T. Reinhard</u>
Matthew T. Reinhard
Jeffrey M. Hahn
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005-5701
Phone:  (202) 626-5800
Facsimile:  (202) 626-5801

July 26, 2010                          *Court–Appointed Amicus Curiae on behalf*
                                       *of Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(B), the undersigned certifies that this brief complies with the type-volume limitations applicable to a reply brief.  Exclusive of the Tables of Contents and Authorities, the brief contains 5,779 words, as calculated by the word-processing system used to prepare the brief.


_____/s/ Matthew T. Reinhard_____
Matthew T. Reinhard

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2010, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Donna M. Murasky, Esquire, Deputy Solicitor
Mary Larkin Wilson, Assistant Attorney General
Sonia Ignatova
Office of the Attorney General for the District of Columbia
Office of the Solicitor General
441 4th Street, NW
One Judiciary Square, Sixth Floor
Washington, DC 20001-2714
Email: donna.murasky@dc.gov
Email: mary.wilson@dc.gov
Email: sonia.ignatova@dc.gov

I further certify that on July 26, 2010 I have mailed the two copies of the

foregoing document by U.S Mail, First-Class, postage prepaid, to the following

non-CM/ECF participant, addressed as follows:

Christine A. Tate
3230 Heather Grove Court
Jacksonville, FL 32223

Christine A. Tate
45 Frank Court
Brooklyn, NY 11229

_____/s/ Matthew T. Reinhard_____
Matthew T. Reinhard
