RECEIVED
Mail Room

OCT 01 2010

United States Court of Appeals
District of Columbia Circuit

**Date of oral argument:  October 14, 2010**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Case No.:  09-7034**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT **Circuit Court Case No.:  02-2216 (RMU)**

OCT - 1 2010

RECEIVED

**Tate v. District of Columbia
601 F. Supp. 2d 132**

# REPLY BRIEF OF APPELLANT

**Christine A. Tate
Plaintiff/Appellant, pro se
P.O. Box 9451
Washington, D.C.  20016-9451
202-286-1795
catdcmes1@hotmail.com**

*Temporary mailing address:*
**3230 Heather Grove Court
Jacksonville, Florida**

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
**REPLY BRIEF OF APPELLANT**
**CONTENTS**

| | | |
|---|---|---|
| **TABLE OF AUTHORITIES** | | i |
| **GLOSSARY OF ABBREVIATIONS** | | ii |
| **I.** | **INTRODUCTION** | 1 |
| **II.** | **ISSUES ON APPEAL** | 1 |
| **III.** | **NEWLY ADMITTED FACTS IN THE DISTRICT OF COLUMBIA'S BRIEF OF APPELLEE** | **3** |
| | A. Partial Waiver Of Blue Plains Lot Storage Fees By Hearing Examiner At May 29, 2002 Hearing Now Admitted. | 3 |
| | B. Blanket Parking Ticket Amnesty Program – Forgiveness Of Original Fines, As Well As, Penalties – Admitted. | 5 |
| | C. Partial Resolution Of Apparent Disagreement About The District's Policies And/Or Practices For Booting And Towing Vehicles. | *6* |
| **IV.** | **FACTUAL ERRORS, MISSTATMENTS AND OUT-OF-CONTEXT AND MISLEADING STATEMENTS** | 8 |
| **V.** | **REPLY ARGUMENTS** | |
| | A. The District Court Erred In Granting the District's Motion for Summary Judgment Because There Are Genuine Issues As To Material Fact And The District Of Columbia Is Not Entitled To Judgment As A Matter Of Law. | 20 |
| | 1. Dispute with regard to tickets used as justification for the immobilization and impound of Plaintiff's car and whether the District complied with D.C. Code, policies, and standard practices & operating procedures. | 21 |
| | 2. Plaintiff's car was not abandoned and she did not receive proper or adequate notice that her car was to be sold as an "abandoned" vehicle. | 29 |
| | 3. Dispute about outcome of May 29, 2002 hearing and whether the auction sale of Plaintiff's vehicle was stopped, a stay was granted and she was informed that she had until June 7, 2002 to retrieve her car. | **33** |
| | B. Plaintiff Has Established Fourth Amendment Violations. | 36 |
| | 1. The district court erred in ruling that because the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond Fourth Amendment challenge, Plaintiff has provided no basis for declaratory judgment with regard to D.C. Code § 50-2201.03(k)(1). | 37 |
| | a. D.C. Code § 50-2201.03(k)(1) is not beyond Fourth Amendment challenge (facial or as applied) under the "community caretaking" doctrine. | 37 |

b.  D.C. Code 50-2201.03(k)(1) is unreasonable under the Fourth                39
    Amendment and a facial challenge would serve the purpose of
    preventing prosecutions under a constitutionally defective standard.

c.  To hold D.C. Code § 50-2201.03(k)(1) as unconstitutional, either          44
    facially or as applied, would not severely and unnecessarily limit
    the District's ability to ensure the efficient **flow** of traffic for the
    safety and convenience of the public.

2.  The district court erred in ruling that District Code permits seizure for 2   **45**
    outstanding tickets and plaintiff had 2 outstanding tickets therefore
    "no reasonable jury could find that the District's impoundment of the
    car was unreasonable under the Fourth Amendment."

    a.  Compliance with D.C. Code does not determine the reasonableness        45
        of seizures under the Fourth Amendment, and it has not yet been
        determined that the District in fact complied with D.C. Code,
        policies, standard practices and operating procedures.

    b.  The facts and circumstances in this case demonstrate that the          48
        immobilization and impound of Plaintiff's car to collect
        outstanding parking tickets were unreasonable seizures in
        violation of the Fourth Amendment.  D.C. Code §50-2201.03(k)(1)
        as applied to the facts in this case is unconstitutional.

    C   The facts in this case demonstrate that a boot is not the only feasible   56
        means of enforcing traffic law.

3.  D.C. Code 50-2623 as applied is unconstitutional.                         58

*C.*  Plaintiff Has Established Fifth Amendment Violations

1.  As a matter of law, Plaintiff can prevail on her claim of Taking of       59
    Property Without Just Compensation.

2.  D.C. Code 950-2623 is unconstitutional as applied to the facts in this case.   63

3.  District deprived Plaintiff of property without due process of law.       66

    a.  The District booted Plaintiffs car before tickets were admitted or    66
        deemed admitted thereby violating her due process rights.

    b.  The District violated Plaintiff's due process rights by failing to     68
        provide "proper" or adequate notice and adequate hearings before
        Plaintiff's car was sold as an "abandoned" vehicle.

4.  District violated plaintiffs right to equal protection.                   73

D.  Pro Se Plaintiff Did Not Concede Her Common **Law** Claims               80

1.  Conversion (Count VI)                                                     82
2.  Promissory Estoppel (Count VII)                                           87
3.  Negligent Misrepresentation (Count VIII)                                  90
4.  Unjust Enrichment (Count IX)                                              92
5.  Intentional **and** Reckless Infliction of Emotional Distress (Count X)   94

E.  The District Of Columbia's 2002 Parking Ticket Amnesty Program Violated   95
    Plaintiff's Right To Equal Protection.

**VI.    CONCLUSION**                                                          98

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
REPLY BRIEF OF APPELLANT
TABLE OF AUTHORITIES

**Case Law**

*AmeriSource Corp. v. United States.* 525 F.3d 1149 (Fed. Cir.)* ...................................... 60. 62

*Anderson v. Liberty Lobby. Inc.,* 477 *U.S.* 242. 106 S. Ct. 2505. 91 L Ed. 2d 202 * .......... 20. 81. 90

*Bennis v. Michigan.* 516 *U.S.* 442. 116 S. Ct. 994. 134 L Ed. 2d 68 .................. 39.44.60. 61. 65

*Brandon* v. *D.C. Parole.* 823 F.2d 644 (D.C. Cir.) ........................................................... 72

*Brockington v. Rhodes.* 396 *U.S.* 41. 90 S. Ct. 206. 24 L Ed. 2d 209 .................................... 41

*Browning v Clinton.* 292 F.3d 235 (D.C. Cir.) ................................................................. 94

*Celotex Corp. v. Catrett.* 477 *U.S.* 317. 91 L Ed. 2d 265. 106 S. Ct. 2548* .............. 20, 21, 75, 81

*Central Kentucky Production Credit Ass'n v. U.S.,* 846 F.2d 1460 (D.C. Cir.) ....................... 41

*Citizen's to Save Spencer County v. EPA.* 600 *F*. 2d 844 (D.C. Cir.). ................................. 32. 85

*City of Los Angeles v. David.* 538 *U.S.* 715 .................................................................. 66

*Cokinos v. District of Columbia.* 728 F.2d 502 (D.C. Cir.) ................................................. 66

*Colorado v. Betrine.* 479 *U.S.* 374 ......................................................................... 38. 44

*Cooper v. California.* 386 *U.S.* 58. 87 S. Ct. 788. 17 L Ed. 2d 730* .................................. 46. 48

*Daskalea v District of Columbia.* 227 F. 3d 433 (D.C. Cir.) ............................................... 94

*Engquist v. Or. Dep't of Agric.,* 128 *S*. Ct. 2146 ............................................................. 73

*Esmail v. Macrane.* 52 F.3d 176* ......................................................................... 74, 80

*Fuentes v. Shevin.* 407 *U.S.* 67* .............................................................................. 67

*Gorman v. Wolpoff & Abramson. LLP.* 552 F.3d 1008 (9th Cir.) ........................................ 46

*Grant v. City of Chicago.* 594 F. Supp. 1441 .................................................. 42.43.56. 65

*Greene v. Dalton.* 164 *F*. 3d 671 (D.C. Cir) ................................................................ 21

*Harrington* v. *Trotman.* 983 A.2d 342 (D.C.) ........................................................... 92, 94

*Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487 (D.C. Cir) ................................................ 9%

*Innovair Aviation Ltd. v. United States.* 72 Fed Cl. 415* .................................................. 62

* Authorities upon which principally rely.

i ( 3 pages)

*Innovair Aviation Ltd. v. United States.* 83 Fed Cl. 105* .................................................. 62
*Jones v. Flowers.* 547 U.S. 220* ............................................................................ 70
*Lingle v. Chevron USA. Inc.,* 544 *U.S.* 528 (2005)* .......................................................... 62

*MacLeod v. Georgetown Univ. Med. Ctr.,* 736 **A.** 2d 977 (D.C.) .......................................... 80

*Miranda v. City of Cornelius.* 429 F. 3d 858 (9th Cir.)* .................................. 38. 39.46.49. 65

*Moreau v FERC.* 982 F. 2d 556 (D.C. Cir) .................................................................... 69

*Munoz v. International Alliance of Theatrical*
    *Stage Employees. Etc.,* 563 F.2d 205 (5th Cir.) .............................................. 24-25. 54

*Offshore Aviation v. Transcon Lines. Inc.,* 831 F.2d 1013 (11th Cir.) ............................... 24. 54

*Rollins v. TechSouth. Inc.,* 833 F.2d 1525 (11th Cir.) ...................................................... 21

*Saukstelis v. City of Chicago.* 932 F.2d 1171 (7th Cir.) ............................................. 42. 43

*Sibron v. New York.* 392 U.S. 40. 88 S. Ct. 1889. 20 L Ed. 2d 917* ................................... 46

*Soldal v. Cook County.* 506 U.S. 56. 113 S. Ct. 538. 121 L Ed. 2d 450* ............ 36.40.43.46. 48

*South Dakota v. Opperman,* 428 U S. 364 ........................................................ 38. 44. 48

*United States v. Askew.* 482 F.3d 532 (D.C. Cir.) .......................................................... 36

*United States v. Proctor.* 489 F.3d 1348 (D.C. Cir.) ...................................................... 38

*United States v. Salerno.* 481 *U.S.* 739 ..................................................................... 39

*United States v. Vertol.* 545 F.2d 648* .................................................................... 67

*Village of Willowbrook v. Olech.* 58 *U.S.* 562. 120 S.Ct. 1073. 145 L Ed. 2d 1060* ............ 73. 80

*Virginia v. Moore.* 553 *U.S.* 164 ............................................................................ 46

*Zinermon v. Burch.* 494 *U.S.* 113* ...................................................................... 62. 72

*Zych v. Unidentified Wrecked and Abandoned Vessel.* 755 F. Supp. 213 ................................ 64


*United States Constitution*
First Amendment* ............................................................................... 74. 80
Fourth Amendment* .............. 1.2. 8. 36. 37. 39.41.43.44.45.46.47.48.49.58.59.62.63.    68

Fifth Amendment* ............................................................. 1. 2. 8.     59. 63. 67, 73

*Statutes and law*
28 U.S.C. $1367 .................................................................................. 82.

42 U.S.C. $1983 ............................................................................. 62, 72

D.C. **Act** 13-289 ........................................................................ **7.** 9. 26

D.C. **Act** 14-413* ................................................................... 5. 6. 77. 95, 96

D.C. Code §50-2201.03(k)* ........................... 7. 8. 16. 22. 23. 26. 27. 36. 37. 38. 39.40.41.43.
    ................... 44, 45, 46, 48, 49, 51, 52, 56, 58, 61, 63.67.76. 82. 83

**i ( 3 pages)**

**D.C. Code** §50-2201.03(k) **(as amended)*** ….…....7.8, 9. 11,16, 22, 23, 25, 27, 37, 41, 42, 51-52, 67

**D.C. Code** §50-2209.02 …………………………………….…….. **8.** 11. 16. 23. 27. 37.42. 67

**D.C. Code** §50-2301.05 …………....……………………… …………………... 7.9.28. 51.67. 76

**D.C. Code** §50-2302.05(d) ·…..………………………………………….…….…..... 9. 11.25. 27. 51

**D.C. Code** §50-2303.05 …….....……………………………………… **8.** 11. 16. 23. 27. 37.42. 67

**D.C. Code** §50-2303.05(d)* ….………… 7.9. 11. 12. 16.22. 25.26.27.42.50.51.53.66.67.  75

**D.C. Code** §50-2303.06 ……...……………………………………..…… **8.** 11. 16. 23. 27. 37.42. 67

**D.C. Code** § 50-2401(1)(E)* ….....………………………………..... 29. 32. 61. 64. 68. 69. 72. 84, 85

**D.C. Code** §50-2402(a)(5) …...…………………………………………………..… 29. 69. 86. 92

**D.C. Code** §50-2601 ……………………………………………………………………………. 40

**D.C. Code** §50-2602(6)(E) **(repealed)*** ………………………………    29. 32. 61. 64. 69. 72. 84, 85

**D.C. Code** §50-2622  **(repealed)*** ………...……….……… 29. 30. 31. 32. 69. 70. 71. 7 ‚85. 86. 93

**D.C. Code** §50-2623 **(repealed)*** …… 16.29. 36.40.58. 59.60. 61 62. 63.65.68.72.  82. 83. 84. 93

*Other*

**Report on Bill** 16-821  ….…………………………………………………………………… **8.** 23.41. 52

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
BRIEF OF APPELLANT
GLOSSARY OF ABBREVIATIONS**

| | |
|---|---|
| **A** | Deferred Appendix |
| **Am. Compl.** | First Amended Complaint |
| **AM. BR.** | Brief of Court-Appointed *Amicus* Curiae on Behalf of Plaintiff-Appellant |
| **AM. Rep. Br.** | Corrected Reply Brief of Court-Appointed *Amicus* Curiae on Behalf of Plaintiff-Appellant |
| **APL. BR.** | Brief of District of Columbia as Appellee |
| **BR.** | Brief of Appellant |
| **Claytor Decl.** | Declaration of C. Claytor, Chief Hearing Examiner, DMV, included as Exhibit 1 to the District of Columbia's Motion for Summary Judgment |
| **D.C. or DC** | District of Columbia |
| **Decl.** | Declaration |
| **Def.'s Mem. Pts. & Auth.** | District of Columbia's Memorandum of Points and Authorities in support of Defendant's Motion for Summary Judgment |
| **Def.'s Mot. Summ. J.** | District of Columbia's Motion for Summary Judgment |
| **Def.'s Stmt.** | District of Columbia's Statement of Material Fact in support of Defendant's Motion for Summary Judgment |
| **DMV** | District of Columbia's Department of Motor Vehicles |
| **DPW** | District of Columbia's Department of Public Works |
| **Ex.** | Exhibit or exhibits |
| **HR** | Administrative Hearing |
| **Jones Decl.** | Declaration of C. Jones, Program Manager, Department of Public Works, Parking Services Administration, included as Exhibit 3 to the District of Columbia's Motion for Summary Judgment |

ii (2 pages)

| | |
|---|---|
| **Mem. Opn.** | District Court's Memorandum Opinion Granting Defendant's Motion for Summary Judgment |
| **MPD** | District of Columbia's Metropolitan Police Department |
| **NOI** | Notice of Infraction |
| **Opp. to Mot. for Prelim. Inj.** | District of Columbia's Opposition To The Plaintiffs Motion For Preliminary Injunction |
| **p.** | Page or pages |
| **Pl. 1st Adm.** | Plaintiffs First Set of Requests for Admission entered into the record on May 3,2005 |
| **Pl. Opp. or Pl.'s Opp.** | Plaintiffs Opposition to Defendant's Motion for Summary Judgment |
| **Pl. Opp. Mot. Summ J./ or Mot. Ext. to File** | Plaintiff s Opposition to Defendant's Motion for Summary Judgment/ Motion for 30-Day Extension of Time to File |
| **Section** | Sec. |
| **Winchester Decl.** | Declaration of B. Winchester, Associate Administrator, Department of Public Works, Parking Services Administration, included as Exhibit 2 to the District of Columbia's Motion for Summary Judgment |

### UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
### REPLY BRIEF OF APPELLANT

## I.      INTRODUCTION

Plaintiff/Appellant brought action against the District of Columbia (referred to herein as the "District" or the "District of Columbia") for constitutional violations under the Fourth and Fifth Amendments and common law torts resulting from the District's immobilization, impoundment and sale of her late-model car for *ut most two unpuidpurking tickets* as of the auction sale date and its retention of all of the sale proceeds. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the District of Columbia moved for summary judgment. The district court granted the District of Columbia's motion for summary judgment for all claims in the complaint.

To dismiss this case would be a travesty of justice. Plaintiff respectfully requests that the court of appeals reverse the district court's opinion and remand the case for further proceedings. Plaintiff also respectfully requests declaratory relief, as appropriate. Further, Plaintiff has implicated more than one constitutional protection and respectfully requests that the court consider her claims in turn, as appropriate. *Soldal v. Cook County, 506 U.S. 56.*

## 11.      ISSUES ON APPEAL

1. Whether the district court erred in granting summary judgment on Plaintiff's Fourth and Fifth Amendment claims, where there are material factual disputes and issues with regard to application of law, and Plaintiff has established Fourth Amendment (e.g., unreasonable seizures) and Fifth Amendment (e.g., deprivation of property without due process of law, violation of equal protection, and taking of property without just compensation) violations.

2. Whether the new factual admissions by the District of Columbia in its brief, individually or in the aggregate, are grounds for reversal.

3. Whether the district court erred in ruling that because the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond Fourth Amendment challenge, Plaintiff has provided no basis for declaratory judgment with regard to her constitutional challenges of D.C. Code §50-2201.03(k)(1).

4. Whether the district court erred in ruling that District Code permits seizure for two outstanding tickets and Plaintiff had two outstanding tickets thus "no reasonable jury could find that the District's impoundment of the car was unreasonable under the Fourth Amendment."

5. Whether the district court erred in ruling that pro se Plaintiff had conceded her common-law claims by allegedly not responding to the District's arguments against her claims, where the claims have merit and Plaintiff may not have structured her opposition as an attorney would have (or labeled her opposition by claim number), but did indeed respond to the central arguments made by the District.

6. Whether the District's **2002** Parking Ticket Amnesty Program, in and of itself, violated Plaintiff's right to equal protection under the Fifth Amendment.

**III.  NEWLY ADMITTED FACTS IN THE DISTRICT OF COLUMBIA'S BRIEF OF APPELLEE.**

The District has now accepted, as true, facts that it previously disputed and has provided additional information with regard to a disputed matter about the District's practices for booting and towing vehicles.  However, the District has not admitted or acknowledged that these matters previously were in dispute and incorrectly presented in its motion for summary judgment, and the District has not addressed the fact that these matters either individually or in the aggregate could have affected the outcome of the case and may be grounds for reversal.

**A. Partial Waiver Of Blue Plains Lot Storage Fees By The Hearing Examiner At The May 29, 2002 Hearing Now Admitted.**

The District of Columbia has now admitted that Blue Plains Lot storage fees were partially waived by the hearing examiner at a May 29, 2002 hearing.  See, APL. BR. p. 12 & 51.   The District previously disputed that storage fees were waived and in its motion for summary judgment stated that at the May 29, 2002 hearing:

- "The Hearing Examiner also upheld the boot, tow and storage fees as Plaintiff still had two remaining tickets outstanding (NOI 511695074 (issued 1/29/02) and NOI 514657964 (issued 1/10/02))." Def.'s Stmt. ¶ 12. (A81.)
- "The hearing examiner upheld these fees, noting their propriety in light of the fact that − as of May 29, 2002, over two months since the boot had been placed on Plaintiffs car − Plaintiff still had not paid the two tickets." Def.'s Mem. Pts. & Auth. p. 4. (A86.)
- "[O]n May 29, 2002, Plaintiff had a third hearing at which time she disputed the booting, towing and storage fees of her vehicle, which the hearing examiner upheld." Def.'s Mem. Pts. & Auth. p. 9-10. (A91-92.)
- "[S]he received another Administrative Hearing on May 29, 2002 in which the hearing examiner upheld the boot, tow and storage fees on Plaintiffs Car as Plaintiff still had the two delinquent tickets on her Car…" Def.'s Mem. Pts. & Auth. p. 11. (A93.)
- "In addition, Plaintiff received a third hearing on May 29, 2002 at which time the boot, tow and storage fees were also upheld." Def.'s Mem. Pts. & Auth. p. 11. (A93.)
- "The hearing examiner found these fees to be valid.. ." Def.'s Mem. Pts. & Auth. p. 27. (A109.)

-3-

The district court assumed the District of Columbia's facts to be true and repeated the error. See, BR. p. 13. The court stated that "[t]he examiner nonetheless upheld the fees for the boot, tow and storage based on the plaintiffs 'two delinquent tickets remaining.'" Mem. Opn. at 2. (A17.) The court also stated that "the hearing examiner determined that the plaintiff had two unresolved tickets…[t]he hearing examiner therefore upheld the boot, tow and storage fees…" Mem. Opn. at 9. (A24.)

The District now admits in its brief that storage fees indeed were waived stating that "[w]hile the hearing examiner partially waived the storage fees, [Plaintiff] was required to pay the remainder.'" See, APL. BR. p. 12. The District also states that Plaintiff "points to the record from the May 29, 2002 hearing, which indicates that some of the fees she owed were waived." See, APL. BR. p. 51. The District, however, has not indicated the amount of Blue Plains Lot storage fees waived or the reasons for waiving such fees. Plaintiff initially was of the view that 35 days (of 50 days) storage fees and other incidental fees were waived by the examiner at the May 29, 2002 hearing. See, BR. p. 19. See also, Claytor Decl., Ex. I. (A136.) **DPW's** records indicate that "All Tow and Storage Fees Release Per HR. 778/5/29/02." See, Pl. 1st Adm., Sec. II ¶12 & ¶13 & Ex. K. (A170 & 182.)

Further, although the District continues to deny that a stay of the auction sale was granted at the May 29, 2002 hearing, the District now admits that the May 29, 2002 hearing

---

[1] There were two hearings on May 29, 2002 hearing (or two parts to the hearing): (1) a hearing for a ticket that purportedly was issued on Nov. 19, 2001, but did not appear on an Apr. 19, 2002 DMV printout for Plaintiff's vehicle, and (2) a hearing to review storage and other fees and the scheduled **sale** of the car (to stop the sale of the car). See, APL. BR. p. 11-12. See also, BR. p. 18-19. The District asserts that the examiner dismissed the ticket but "upheld the boot, tow and storage fees and the transfer of the car to the Blue Plains Lot" at the hearing for the Nov. 19, 2001 ticket. APL. BR. p. 12. Blue Plains Lot storage fees were waived at the hearing to review storage and other fees and the scheduled sale of Plaintiffs car and the District states that "[w]hile the hearing examiner partially waived the storage fees, [Plaintiff] was required to pay the remainder" (APL. BR. p. 12) and "[s]he points in particular to the record from the May 29, 2002 hearing, which indicates that some of the fees she owed were waived" (APL. BR. p. 51). **See,** BR. p. 18-19.

-4-

was held in part to review the ***scheduled sale*** of Plaintiff's car  ("hearing to review the boot and

storage fees and the scheduled sale of the car").  See, APL. BR. p. 11.  Previously, the District

stated that "Plaintiff received an administrative hearing regarding the boot, tow and storage fees

incurred on her Car."  Def.'s Mem. Pts. & Auth. p. 4. (A86.)  See also, Def.'s Mem. Pts. &

Auth. p. 27 (the hearing "challenged the tow and storage fees at Blue Plains"). (A109.)

### B. Blanket Parking Ticket Amnesty Program – Forgiveness Of Original Fines, As Well As, Penalties – Admitted.

After years of denial, the District of Columbia has now admitted that D.C. Act 14-413

(cited as the "Motor Vehicle Registration and Operator's Permit Issuance Enhancement

Emergency Amendment Act of 2002" and referred to herein as the 2002 Parking Ticket

Amnesty Program) resulted in the forgiveness of ***original fines***, as well as, penalties.  APL.

BR. p. 41.  The District now states that the 2002 Parking Ticket Amnesty Program forgave

uncollected fines, penalties and fees imposed prior to January 1, 1997.  APL. BR. p. 41.

Plaintiff included a copy of D.C. Act 14-413 in her first set of requests for admission

that was entered into the record on May 3, 2005.  Pl. 1st Adm., Ex. Q.  (A189-190.)  D.C. Act

14-413 was signed by then Mayor Williams and Council Chairman Linda Cropp (dated July 16,

2002), but unlike other laws enacted around that time period it apparently was not signed by the

D.C. Corporation Council (now known as Attorney General).  ***Ibid.***  In its motion for summary

judgment, however, the District included a description of a partial amnesty program, not the

2002 Parking Ticket Amnesty Program.  The District stated that (Def.'s Mem. Pts. & Auth. p.

22) (A104):

> "a program was put in place where individuals with outstanding tickets issued prior to
> April 9, 1997 would be forgiven the penalties that had incurred on the tickets, but would
> still have to pay the underlying fines on the tickets in order to clear their records with
> the DMV."

D.C. Act 14-413 (Pl. 1st Adm., **Ex.** Q) (A189) states:

> "(c-1)(2) An owner of a motor vehicle or trailer shall not be liable for any parking fines, penalties and fees for a motor vehicle or trailer imposed prior to January 1, 1997, that have remained uncollected as of the effective date of the Motor Vehicle Registration and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002. Any such uncollected parking fines, penalties or fees are hereby forgiven."

The District also included as **an** attachment to its motion for summary judgment a press release and **an** internal memo that purportedly described the 2002 Parking Ticket Amnesty Program. The press release was issued on **June 12, 2001** and described a partial amnesty program that forgave penalties, but not original fines, and was effective until **October 26, 2001.** See, Def.'s Mot. Summ. J., **Ex.** 5 (page 1 of 2). (A152.) The internal memo was dated **August 13, 2001** and also described a partial amnesty program. See, Def.'s Mot. Summ. J., **Ex.** 5 (page 2 of 2). (A153.) The 2002 Parking Ticket Amnesty Program forgave original fines, as well as penalties, and was signed into law on **July 16, 2002.**[2]

The District's inclusion of the internal memo and press release together with **an** inaccurate description of the 2002 Parking Ticket Amnesty Program in its motion for summary judgment may have misled the district court about the nature and provisions of the 2002 Parking Ticket Amnesty Program and may have affected the outcome of the case.

### C. Partial Resolution Of Apparent Disagreement About The District's Policies And/Or Practices For Booting And Towing Vehicles.

In the motion for summary judgment, there was an apparent dispute or disagreement among District personnel about the District's policies and/or practices with regard to when a ticket is considered eligible as justification for a boot or tow pursuant to D.C. Code §50-

---

[2] A July 3, 2002 *Washington Post* Article, "D.C. Council Votes to Erase Traffic Tickets Williams May Veto $347 Million Amnesty," indicated that the Council for the District of Columbia voted to forgive millions of dollars of parking tickets and penalties incurred before **1997.** *An* earlier *Washington Post* article on June 21, 2002, "District Will Offer Partial Amnesty on Parking Tickets," stated that the District was planning to forgive penalties on pre-**1997** tickets, which totaled **$130** million, and to permit individuals to work out payment plans for the original ticket balances. The Council extended the amnesty to include not just penalties, but also the original fines.

2201.03(k)(1) (2001) (e.g., whether a ticket would be considered as justification after 30 or 60 days). See, BR. p. 22. D.C. Code §50-2303.05(d)(1), provides that a person must respond to a notice of infraction within 30 days otherwise monetary penalties are imposed in addition to the *potential civil fine*, and pursuant to §50-2303.05(d)(2), if a person fails to answer within 60 days the infraction is *deemed admitted* and penalties and fines are *assessed.* The Associate Administrator of DPW Parking Services Administration, mistakenly stated in her declaration that "[a]t the time Plaintiff's Car was booted, Plaintiff had five *(5)* unresolved tickets for which the time for Plaintiff to respond to the tickets had passed and she was thus deemed liable."[3] Winchester Decl. ¶ 5. (A138.) However, three **(3)** of the five *(5)* tickets were issued in January 2002 and were not yet deemed admitted as of the March 12, 2002 boot date and/or Plaintiff was still entitled to an administrative hearing for those tickets. BR. **p.** 21-22. The District's Chief Hearing Examiner **(DMV),** noted that a ticket could not be used as justification for a boot unless it was **30** days old and Plaintiff would be liable for a ticket if 61 days had passed without **a** formal response to the violation. See, Claytor Decl. ¶ 8. (A117.)

The District now admits in its brief that in March 2002 it did indeed permit tickets to be used as justification for **a** boot or tow prior to the date the underlying infractions were admitted or deemed admitted (i.e., boot and tow eligible after **30** days). See, APL. BR. **p.** 22. The District notes that D.C. Code §50-2201.03(k)(1) was amended in 2003 and asserts the record makes clear the amendment *"changed* the previous practices." *Zbid.* The statute was amended to provide that the District may immobilize or impound **a** vehicle against which there are two or

---

[3] D.C. Code §50-2303.05(d)(1) as amended by D.C. Act 13-289 in April 2001, states that, "[a] person to whom a notice of infraction has been issued shall answer within 30 calendar days of the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation. Failure to answer the notice within this period shall result in the imposition of monetary penalties established by § 50-2301.05, in addition to the potential civil fine for the infraction." (A191.) D.C. Code §50-2303.05(d)(2), provides that "[i]f a person fails to answer within 60 days, or within a greater period of time as prescribed by the Director by regulation, the commission of the infraction shall be deemed admitted and all penalties and fines shall be assessed." *Ibid.*

more infractions that "the owner was deemed to have admitted or that were sustained after a

hearing, pursuant to § 50-2303.05, § 50-2303.06 or § 50-2209.02." (A196.) The District

further notes that Report on Bill 16-821, "Department of Motor Vehicles Service and Safety

Amendment Act of 2006," states the "section was amended to 'reflect that vehicles will *nu*

*longer* be towed... based upon tickets for which the appeal rights have not yet expired." See,

4PL. BR. p. 23. However, the District has not stated whether there was an explicit policy in

place that permitted booting or towing before infractions were admitted or deemed admitted or

whether it was only a practice and, if it was just a practice, whether the practice was followed

consistently, occasionally or used in "special" situations.

    D.C. Code §50-2201.03(k)(1)(2001) permitted **an** unconstitutional practice of booting

and towing based upon tickets that were not yet admitted or deemed admitted. The fact that the

District's legislators subsequently amended D.C. Code §50-2201.03(k)(1) to provide that the

District may consider for boot or tow only those infractions that an "owner was deemed to have

admitted or that were sustained after a hearing," at a minimum, bolsters Plaintiff's Fourth and

Fifth Amendment claims, as well as, her common law claims (e.g., conversion, etc.). See,

§50-2201.03(k)(1) (amended), included as Pl. Opp. to Mot. Summ. J./ or Mot. for Ext. to File,

Attachment 2. (A196.)

## IV. FACTUAL ERRORS, MISSTATMENTS AND OUT-OF-CONTEXT AND MISLEADING STATEMENTS

    The District of Columbia has omitted facts that support Plaintiffs case and presented as

"not controverted by any contrary evidence" facts that indeed are in dispute. See Brief of

Appellant, Statement of Facts (BR. p. 4-12). Further, **the** District repeatedly misstates and

mischaracterizes statements made by Plaintiff, as well as, the facts in this case. For example,

1. The District incorrectly states that "plaintiff had five unpaid tickets on which the statutory period to pay or contest the ticket had passed." See, APL **BR** p. **1,** Statement of Issues, Issue 1. Pursuant to D.C. Code **§50-2303.05(d)(2),** if a person fails to answer an infraction within 60 days, or a greater period of time prescribed by regulation, the infraction is deemed admitted and all penalties and fines are assessed.[4] See, D.C. Code §50-2303.05 (included as Pl. 1st Adm., **Ex. R).** (A191.) See also, Claytor Decl. ¶ 8. (A117.) As of the March 12, 2002 boot date, three (3) of the five (5) infractions that were used as justification for the boot were issued in January 2002 and were not yet deemed admitted and/or Plaintiff was still entitled to an administrative hearing for those tickets (Jan. 29, 2002 – NOI 511695074; Jan. 29, 2002 – NOI 511695063; and Jan. 10, 2002 – NOI 514657964). BR. p. 21. See, Claytor Decl. ¶ 8 & **Ex. F.** (A117 & 133.) Indeed, Plaintiff had a hearing for Jan. 29, 2002 – NOI 511695074 on March 14, 2002 and a hearing for Jan. 10, 2002 – NOI 514657964 on March 15, 2002 at which time the hearing examiner waived the $100 penalty for NOI 514657964. See, Claytor Decl. ¶¶ 9 & 10. (A117.) And, Plaintiff was appealing a fourth ticket, a December 2001 ticket (NOI 540049952 12/18/01).

Further, with respect to tickets outstanding on the tow date, the District stated in Def.'s Mot. Summ. J. that Plaintiff "had at least two unpaid tickets on her Car **and** she already had Administrative Hearings on these two tickets and was found liable." Def.'s Mem. Pts. & Auth. p. 15. (A97.) Further, the District did not respond or object to Plaintiff's First Set of Requests for Admission that was entered into the record on May 3, 2005 and admitted **as** true "[a]t the time Plaintiff's car was impounded on 3/26/2002, DMV records reflected two outstanding parking tickets

---

[4] The District cites D.C. Code **§50-2302.05(d)(1)** (2001) as the statute that requires a person to answer a notice of infraction within 30 days before the imposition of penalties. See APL. BR. p. 7. However, D.C. Code §50-2302.05(d) addresses the answer for moving infractions. D.C. Code §50-2303.05(d) is the applicable statute for Parking Infractions. See, D.C. Code §50-2201.03(k)(1) (amended), which cites D.C. Code §50-2303.05. (A196.) **D.C.** Code §50-2303.05(d)(1) as amended by D.C. Act 13-289 in April 2001, states that, "[a] person to whom a notice of infraction has been issued shall answer within 30 calendar days of the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation. Failure to answer the notice within this period shall result in the imposition of monetary penalties established by § 50-2301.05, in addition to the potential civil fine for the infraction." **See,** Pl. 1st Adm, **Ex.** R. (A191.) D.C. Code **§50-2303.05(d)(2),** provides that "[i]f a person fails to answer within 60 days, or within a greater period of time as prescribed by the Director by regulation, the commission of the infraction shall be deemed admitted and all penalties and fines shall be assessed." *Ibid.*

-9-

for DC Tag No. AH3283, which aggregated $200 (including fines of $150 and a penalty of $50): ticket 511695074 issued 1/29/2002 and ticket 511657964 issued 1/10/2002" and "[o]n 3/26/2002, Plaintiff's car was impounded for two outstanding tickets..." Pl. 1st Adm., Sec. II ¶¶ 3 & 8, respectively.' (A169-170.) Further, there are issues with regard to the application and the timeliness of the application of payments made by Plaintiff and on Plaintiff's behalf, including apparent overpayments and an unapplied amount(s). BR. p. 7 & 21. See also, 19. below.

2. The District asserts that Plaintiff received 80 tickets for parking and traffic infractions during the three and one half year period beginning in August 1998 when she registered her vehicle. See, **APL. BR.** p. **6-7.** For many years, Plaintiff lived in the Georgetown section of Washington, D.C., where there is limited on-street parking and zone parking restrictions were not in place 24-hours a day. Plaintiff did not have off-street parking. Plaintiff cannot confirm the actual number of tickets she received for her VW Beetle, D.C. License Plate AH3283, during the period from August 1998 to March 2002, and due to well-publicized problems at DMV, among other things, she does not have complete confidence in the accuracy of DMV records.[6] Nonetheless, DMV records for D.C. license plate AH3283 reflect that Plaintiff paid and did not contest the vast majority of her parking tickets. See, Claytor Decl., **Ex.** B. (A120-127.) Further, DMV records show that Plaintiff paid the vast majority of her parking tickets without a boot to induce payment (the car was booted twice during the period from August 1998 to March 2002 and both boots occurred in 1999). See, **APL. BR.** p. **7.** Furthermore, on or about the March 26, 2002 tow date, DMV records show just two tickets outstanding totaling $200. See, Pl. 1st Adm., **Ex.** C (4/19/02 DMV printout). (A174.)

---

[5] Plaintiffs first set of requests for admissions (Pl. 1st Adm.) was served upon the District of Columbia via certified mail on December 7, 2004. Many of the documents included as exhibits to Pl. 1st Adm. were previously submitted by the District of Columbia as exhibits to its Opposition to Plaintiffs Motion for Preliminary Injunction (to require the District to remit to Plaintiff proceeds from the sale of Plaintiffs car). Plaintiff's intent was to enter into the record documents and facts that should *not* have been in dispute. Plaintiff's Motion for Leave to enter into the record Pl. 1st Adm. was filed and served upon the District on or about February 18, 2005. (A10.) The District of Columbia did not formally respond or object to Plaintiffs admissions or the motion. In open court on May 3, 2005, the district court granted Plaintiffs motion **as** conceded (Minute Order 5/03/2005). (A11.)

[6] Around the time Plaintiffs car was wrongfully seized and sold, DMV had well-publicized problems involving, among other things, employees illegally selling driver's licenses and fixing traffic tickets in exchange for payment. DMV established an "integrity unit" to help safeguard against the kind of scandals that "rocked" the agency. "District Announces Revamping of DMV," *The Washington Post,* January 8, 2004. See, Pl. Opp. to Mot. for Summ. J./ or Mot. for Ext. to File, Attachment 3. (A206-207.)

3.   The District cites D.C. Code §50-2302.05(d)(1) as the statute that requires a person to answer a notice of infraction within 30 days before the imposition of penalties (in addition to the *potential civil fine* for the infraction). See, **APL. BR. p. 7**. However, §50-2302.05(d) apparently addresses the answer for moving infractions. D.C. Code §50-2303.05(d) is the applicable statute for Parking Infractions. Further, the District has omitted the second part of the statute, §50-2303.05(d)(2), which states that "[i]f a person fails to answer within 60 days, or within a greater period of time as prescribed by the Director by regulation, the commission of the infraction shall be deemed admitted and all penalties and fines shall be assessed." See, Pl. 1st Adm., Ex. R. (A191.) Further, D.C. Code §50-2201.03(k)(1) (amended) provides that the District may consider for boot or tow those infractions that an "owner was deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05, § 50-2303.06 or § 50-2209.02." (A196.)

4.   The District includes in its Statement of Facts an out-of-context purported quote from a March 14, 2002 hearing for a January 29, 2002 ticket (NOI 511695074) and states Plaintiff had not answered the ticket within 30 days because she had been "busy with other legal matters" and "with other things." See, **APL. BR. p. 8**. See also, **APL. BR. p. 20**. The District also states that the hearing examiner noted that as of the hearing date, Plaintiff's tag was not properly displayed. See, APL. BR. p. 8. As of the March 12, 2002 boot date, the 60-day period to respond to the January 29, 2002 infraction had not yet expired and thus the infraction was not yet deemed admitted. See, D.C Code §50-2303.05(d)(2). Plaintiff received the January 29, 2002 infraction because her front license plate had been knocked or pulled off her vehicle and was not properly displayed.[7] Following the January 29, 2002 ticket date, Plaintiff's front license plate was displayed in clear view on the dashboard, which was acceptable in the interim. In order to fully rectify the problem, however, Plaintiff had to replace her license plate holder, which required the assistance of a mechanic or technician. At the March 14, 2002 hearing for the January 29, 2002

---

[7] Program Manager, DPW - Parking Services Administration's Abandoned Vehicles Operations, stated that at the time Plaintiff's car was sold at auction, the front tag was displayed under the windshield, which was the basis for one of Plaintiff's unresolved tickets. Jones Decl. ¶ 11. (A142.) In actuality, Plaintiff received the Jan. 29, 2002 ticket because for a brief period her front tag was not displayed. After receiving the Jan. 29, 2002 ticket, Plaintiff's tag was continuously displayed in the windshield, which was acceptable until the necessary license plate holder repair was completed.

infraction, the hearing examiner found Plaintiff liable for the ticket ($50 fine and $50 penalty). See, Claytor Decl. ¶ 9 & Ex. G. (A117 & 134.) If Plaintiffs car had not been booted on March 12, 2002, Plaintiff could have fully corrected the problem prior to the expiration of the 60-day period (and if so, at a hearing for that ticket, the hearing examiner would likely have ruled that mitigation was warranted). The premature boot impaired Plaintiff's ability to respond to the January 29, 2002 infraction.

5.  With regard to January 10, 2002 ticket, the District states that the "hearing examiner waived the late penalty on the ticket, after [Plaintiff] claimed she had not received notice of this violation." APL. BR. p. 9. In fact, the hearing record reflects that Plaintiff stated that "she was not aware that she had received" the Jan. 10, 2002 ticket. See, Claytor Decl., Ex. H. (A135.) Plaintiff asserted that she had just "received notice about her right to a hearing" on or about March 12, 2002 boot date. See, BR. p. 6. See also, Pl. Opp. p. 7. (A225.)  Pursuant to D.C. Code §50-2303.05(d)(2), the District is required to send notice of the outstanding ticket and the *impending deemed admission* not more than 50 days after a notice of infraction is issued. (A191.)  Although the District asserts that DMV records reflect that the notice was mailed February 15, 2002 (APL. BR. p. 9), Plaintiff asserts that she did not receive the notice until on or about March 12, 2002.  BR. p. 6.  At a March 15, 2002 hearing for the infraction, the examiner found that Plaintiffs testimony was "credible and warrant[ed] mitigation."  See, Claytor Decl. ¶ 10 & Ex. H. (A117 & 135.)  The $100 penalty for the ticket was waived. *Ibid.*

6.  The District states that on April 12, 2002, DPW sent a notice to Plaintiff via certified mail informing her that her car was in DPW custody and that failure to claim the car within **45** days would constitute a waiver of her rights, title and interest in the car, and consent to its sale at public auction. APL. B R p. 10. The District further states that the notice was returned undelivered because Plaintiffs address was "erroneously recorded in DPW's system as '3805 O Street' instead of '3305 O Street.'" *Ibid.*  The District previously admitted fault and in its motion for summary judgment stated that the written notice was sent via certified mail to an incorrect address due to a *"typographical error"* and the notice was returned undelivered. See, Def s. Stmt ¶ 8 & Jones Decl. ¶ 8. (A81 & 142.) See also, Pl. 1st Adm., Ex. O. (A186.)  The notice was not sent to Plaintiff's last known address as

reflected in the DMV system and as required by D.C. Code, which was 3305 O
Street, NW, (See, Claytor Decl., Ex. A & B (A119 & 120)), but rather it was sent to
a nonexistent address, 3805 O Street, NW.  See, Pl. 1st Adm., Ex. O.  (A186-187.)

7.   The District states that during Plaintiff's visit to Blue Plains Lot on April 19, 2002,
her driver's license was photocopied and "she wrote and signed a note on the
photocopy, indicating that she had removed a suitcase from the car." **APL. BR. p.
11**.  Although Plaintiff did sign the hand-written note on the photocopy, to the best
of her recollection, the note for the most part was written by a DPW employee. See,
Jones Decl., Ex. D.  (A147.)

8.   The District states that Plaintiff "alleges she did not know [on April 19, 2002] that
her car would be sold at an auction if unclaimed by June 4, and that no one at the
impound lot had told her so." **APL. BR. p. 11**.  The District further states that
Plaintiff claimed that "she learned of the impending sale of her car on an
unspecified date in May." *Ibid.*  In fact, Plaintiff stated that she did not receive
notice when she visited the lot. Pl. Opp. 4-5. (A222-223.)  BR. p. 9.  Plaintiff stated
that she did not receive notice until "shortly before the May 29, 2002 hearing." Pl.
Opp. p. 9. (A.227.)  See also, BR. p. 17.  Upon learning of the impending sale,
Plaintiff immediately requested a hearing (the May 29, 2002 hearing). *Ibid.*

9.   The District states that at the May 29, 2002 hearing the examiner "upheld the boot,
tow and storage fees, and the transfer of the car to the Blue Plains Lot." **APL. BR.
p. 12**.  The District also states that "[w]hile the hearing examiner partially waived
the storage fees, [Plaintiff] was required to pay the remainder." *Ibid.* See also,
**APL. BR. p. 51**.  However, the District has not explained the apparent
contradiction.  There were two parts to the May 29, 2002 hearing (or two separate
hearings): (1) a hearing for a ticket that purportedly was issued on November 19,
2001, but did not appear on an April 19, 2002 DMV printout for Plaintiff's vehicle,
and (2) a hearing to review storage and other fees and the scheduled sale of
Plaintiff's car (to stop the sale of the car).  See, **APL. BR. p. 11** and Claytor Decl.
¶¶ 12 & 13.  (A118.)  The District asserts that the examiner dismissed the ticket but
"upheld the boot, tow and storage fees" at the hearing for the November 19, 2001
ticket.  See, Claytor Decl. ¶ 12. (A118.)  Indeed, Blue Plains storage fees were
waived at the hearing to review storage and other fees and the scheduled sale of the

car (i.e., to stop the sale of the car).  See, Claytor Decl. ¶13 & Ex. I. (A118 & 136.)
Plaintiff initially was of the view that 35 days Blue Plains storage fees (plus other
fees) were waived by the examiner at the May 29, 2002 hearing.  See, BR. p. 17-19.
DPW's records indicate that all Blue Plains tow and storage fees were released per
the May 29, 2002 hearing. *Ibid* & Pl. 1st Adm., Sec. II ¶¶ 12 & 13 & Ex. K.  (A170
& 182.)

10. The District states that "[t]he hearing record does not indicate that the hearing
examiner ordered a stay of the car's sale scheduled for June 4, 2002…and [Plaintiff]
does not provide any details regarding the reasons for, or the duration of, the alleged
stay."  **APL. BR.** p. **12.**    Plaintiff asserts that she "claimed" her car at the May 29,
2002 hearing, the sale of her car was stopped and a stay was granted, and storage
and other fees were waived.  BR. p. 17-19.  Although the District asserts that the
hearing record does not indicate that a stay was granted, the District now admits that
the May 29, 2002 hearing was held in part to review the *scheduled sale of the car.*
**APL. BR. p. 11.**  Further, the District now admits that the hearing examiner
partially waived storage fees at the May 29, 2002 hearing.  See, **APL. BR.** p. **12 &
51.**  (The District previously denied that Blue Plains storage fees were waived.  See,
BR. p. 17-19.)   Further, the District included in the record a copy of the
handwritten record for the May 29, 2002 hearing for that portion of HR. 778 that
related to the review of Blue Plains Lot fees and the scheduled sale of Plaintiff's car.
See, Claytor Decl., Ex. I. (A136.)  In contrast, the District included a copy of the
typewritten record for all other hearings presented, including the May 29, 2002
hearing for a stale-dated November 19, 2001 ticket.  See, Claytor Decl., Ex. G, H &
J. (A134, 135 & 137.)  See also, BR. p. 19.  Further, DPW's records indicate that
all Blue Plains Lot tow and storage fees were released per the May 29, 2002 hearing
(HR.778).  See, Pl. 1st Adm., Sec. II ¶¶ 12 & 13 & Ex. K. (A170 & 182.)  The
hearing examiner's potential reasons for waiving the storage fees also were possible
rationale for granting a stay (e.g., faulty statutory notice, premature or early boot,
payment dispute, etc.).

11. The District asserts that Plaintiff did not present *any* evidence in support of her
claim that she was told that she had until June 7, 2002 to pick up her car.  APL.
**BR. p. 12.**  However, at a minimum, there is evidence that Plaintiff in fact attempted
to retrieve her vehicle on June 7, 2002 (See, APL. **BR.** p. **13**), she had a hearing on

May 29,2002 **(APL. BR.** p. **11)** and DPW records reflect that *"All Blue Plains*
Tow *& Storage Fees Release per HR. 778/5/29/02.*" See, BR. p. 10 and Pl. 1st
Adm., Sec. **II ¶¶** 12 & 13 & **Ex.** K. (A170 & 182.)

12. The District states that an employee "stated in her sworn declaration that "no DPW
employee informed [Plaintiff] that she had until June 7,2002 to reclaim her
vehicle."' **APL. BR. p. 12.**  In fact, the employee stated that "[t]o the best of my
knowledge and based upon the documents I have reviewed that are maintained by
the Abandoned Vehicle Division, no DPW employee informed Plaintiff that she had
until June 7, 2002 to reclaim her vehicle." See, Jones Decl. ¶ 13. (A142.)  The
employee has not asserted that she has first-hand knowledge with regard to
representations and promises made to Plaintiff.

13. The District states that an assertion by **a** DPW employee that Plaintiff had until June
7,2002 to reclaim her car "does not make sense"  because public auctions are
always held on the 1st and 3rd Tuesday of each month and "there would be no
significance in allowing an owner until three days *after* an auction to claim a
vehicle, particularly where the next public auction after the June 4,2002 auction
took place on June 18,2002." See, **APL. BR. p. 12-13.**  (quoting Jones Decl. ¶ 13.)
(A142-143.) This is an opinion and not a statement of fact.  Nonetheless, providing
Plaintiff until June 7,2002 to retrieve her car does make sense because three days
after the June 4,2002 auction was 11 days prior to the June 18,2002 auction and 25
days prior to the next auction, which would provide time for DPW to address
administrative matters such as including Plaintiff's vehicle on auction lists.

14. The District asserts that its records show that Plaintiff's car was sold for $4,000 and
no laptop computers or personal files were found in the car.  See, **APL. BR. p. 13.**
Plaintiff asserts that the car contained two laptop computers, office supplies and
other personal property. BR. p. 10.  Plaintiff also asserts that the car was sold for
substantially more than $4,000 (i.e., $8,000). BR. p. 10-11.

15. The District asserts Plaintiff had five *"delinquent"* tickets when her car was booted
on March 12,2002.  APL, **BR. p. 20.  As** discussed above, Plaintiff did not have
five outstanding unpaid parking tickets that **were *deemed admitted*** as of the March
12,2002 boot date because 60 days had not yet passed without a response for each
ticket.  If the infractions were not yet deemed admitted, then fines and penalties

-15-

were not yet *assessed* under D.C. Code §50-2303.05(d)(2) and the ticket amounts were not yet past due or "delinquent." Per §50-2303.05(d)(1), a person must answer an infraction within 30 days otherwise monetary penalties are imposed in addition to the *potential civil fine* for the infraction. Pursuant to §50-2303.05(d)(2), if a person fails to answer within 60 days, the infraction is deemed admitted and *all penalties and fines are assessed.* As of the March 12, 2002 boot date, three (3) of the five (5) infractions that were considered as justification for the boot were not yet deemed admitted and/or Plaintiff was still entitled to an administrative hearing for those tickets (Jan. 29, 2002 − NOI 511695074; Jan. 29, 2002 − NOI 511695063; and Jan. 10, 2002 − NOI 514657964). See, Claytor Decl. ¶ 8 & **Ex.** F. (A117 & 133.) See also, BR. p. 5 & 21. And, Plaintiff was appealing a fourth ticket, a December 2001 ticket. *Zbid.* Further, Plaintiff has questioned the District's application and timeliness of application of payments made by Plaintiff and on Plaintiffs behalf. See, BR p. 7 & 21.

16. The District states that D.C. Code §50-2201.03(k)(1) was amended to provide that the District may immobilize or impound a vehicle against which there are two or more unpaid notices of infractions that were "deemed admitted or upheld after a hearing." **APL.BR. p.** 22. In fact, D.C. Code §50-2201.03(k)(1) was amended to state the District may immobilize or impound a vehicle against which there are two or more unpaid notices of infractions that the owner was "deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05, § **50-2303.06** or § 50-2209.02." See, D.C. Code §50-2201.03(k)(1) (amended). **(A196.)**

17. The District incorrectly quotes Plaintiff and states that she admits that the purpose of D.C. Code §50-2623 was to encourage compliance with the District's parking laws. APL. **BR. p. 27.** In fact, Plaintiff stated that "[w]hile the District's statutes may serve the purpose of encouraging compliance with the District's parking laws, it is nonetheless severe and unreasonable to seize a legally parked vehicle for just 2 unpaid parking tickets." BR. p. 28. Further, Plaintiffs argument was made with regard to her challenge of **§50-2201.03(k)(1),** not §50-2623 (titled "Sale of abandoned vehicle[s] at public auction; disposal of junk vehicles; disposition of proceeds").

18. The District incorrectly states that Plaintiff "admits that when her car was booted (as well as when it was towed two weeks later), she had five unpaid tickets, on which the statutory 30-day answer period had passed. " APL. **BR.** p. 21. (See also, APL. BR. p. 48.)   Indeed, the district court acknowledged that there was a factual dispute stating that "[allthough the plaintiff disputes the defendant's claim that she had five unresolved tickets at the time her car was seized...she does not dispute that she had two unresolved parking tickets." See, Mem. Opn. at 5. (A20.) In fact, Plaintiff has disputed whether there were even two parking tickets that could have or should have been considered as justification for the boot and tow of her car and/or the District considered tickets to be justification for a boot prior to the expiration of the statutory period to pay or contest the tickets (i.e., 60 days) and prior to the expiration of appeal rights for the tickets. BR. p. 20-22. In addition, Plaintiff has questioned the District's application and timeliness of application of payments made by Plaintiff and on Plaintiffs behalf. See, BR. p. 7 & 21. Further, the District did not respond or object to Plaintiffs First Set of Requests for Admission that was entered into the record on May 3, 2005 and admitted as true "[a]t the time Plaintiffs car was impounded on 3/26/2002, DMV records reflected two outstanding parking tickets for DC Tag No. AH3283, which aggregated $200 (including fines of $150 and a penalty of $50)..." and "[o]n 3/26/2002, Plaintiffs car was impounded for two outstanding tickets..." Pl. 1st Adm., Sec. II ¶¶ 3 & 8, respectively. (A 169-170.)

19. The District incorrectly states that Plaintiff neither elaborates nor substantiates her claim with regard to a payment dispute. See, APL. **BR. p.** 23. The District references BR. p. 24, where Plaintiff refers to a previous discussion in the Brief of Appellant (and specifically states "as discussed above"). Indeed, Plaintiff elaborates on the payment dispute in the Statement of Facts, page 7, as well as, on page 21 of the Brief. The District's own records, at a minimum, demonstrate payment *irregularities.* See, BR. 7 & 21. For example, as of August 23, 2004, District records appear to reflect **an** unapplied amount of $45, as well as, an overpayment of $45 for NOI 950844296 (8/02/99). See, Claytor Decl., **Ex.** B. (A120 & 127.) Further, the record reflects a number of instances where the penalty exceeded the original fine: NOI 518146355 (12/13/01), NOI 514638154 (11/23/01),

-17-

NOI 974473006 (7/01/01), NOI 968696540 (1/05/01), NOI 526042650 (11/03/00), NOI 950844296 (8/02/99) and NOI 949979925 (9/27/98). *Zbid.* (A120-127.) In addition, a $5 check payment for NOI 511695074 (1/29/02) was credited on *July 15,* 2002, more than a month after Plaintiffs car was sold at auction. See, Pl. 1st Adm., Ex. H. (A179.)

20. The District asserts that Plaintiff admits that she still had one unpaid ticket even after her car had been sold. See, APL. **BR. p. 24 &** 38. Plaintiff states that *DMV records* reflected one unpaid ticket after her car had been sold and, as a result, DMV blocked the renewal of her driver's license. BR. p. 11. See payment dispute discussion in 19. above.

21. The District asserts that Plaintiff has not adduced *any* evidence of the District's "spiteful acts" to get her. APL. **BR. p. 40.** However, the District has omitted from its Statement of Facts, and apparently not considered, many of the facts that support Plaintiffs claim. APL. BR. p. 6-13. For example, Plaintiffs car was *legally parked* and not jeopardizing public safety or the efficient flow of traffic when it was booted and towed and Plaintiff's car was not ticketed on either the boot or tow date (BR. p. 4); the 60-day period had not yet expired and thus Plaintiff was not yet deemed liable for all the tickets used as justification or the March 12, 2002 boot (BR. p. 5); there is evidence of payment *irregularities* (BR. p. 7); a stale-dated November 19, 2001 ticket was added to Plaintiffs record sometime after April 19, 2002 (the ticket was not included on an April 19, 2002 DMV ticket printout for Plaintiff's car) (BR. p. 9); the District published notice in a newspaper of general circulation only one time, not for two consecutive weeks as required by statute (BR. p. 8); the District refused to apply the sales proceeds from the auction of Plaintiff's car to Plaintiff's one remaining outstanding parking ticket per DMV records or to remit any of the proceeds to Plaintiff (BR. p. 11); the District blocked the renewal of Plaintiff's driver's license after the sale of her car due to that one outstanding parking ticket per DMV records (BR. p. 11); in 2001, Plaintiff filed a complaint against the MPD and in December 2001, Plaintiff contacted District officials about her intent to take civil action against the District (BR. p. 12); and, in July 2002, the District

enacted a ticket amnesty program that **forgave original fines**,[8] as well as, penalties for unpaid parking tickets (BR. p. 11).

22. With regard to Plaintiffs common law claims, the District mischaracterizes statements made by Plaintiff in her Appellant's Brief and incorrectly states that Plaintiff's "self-admitted reason" for not responding to the District's arguments countering her local-law claims was that "she saw no reason to respond" because the District did not meet its burden of identifying evidence that demonstrates that there is no genuine issue of material fact. APL. BR. p. **45.** Plaintiff asserts that she did respond to the District's arguments. See, BR. p. **36.** In her Brief, Plaintiff stated that "[m]oreover, there are at least four material facts in dispute that are relevant for resolution of Plaintiff's Common law claims that were directly addressed in Plaintiff's Opposition to Def's Mot. Summ. J." Zbid. Plaintiff briefly described the four material factual disputes as follows: (1) There is a dispute with regard to the number of tickets considered eligible for boot and tow and disputes with regard to compliance with District policies (Pl. Opp. 4 & 7-8); (2) Plaintiff's car was not abandoned and Plaintiff did not receive statutory notice (Pl. Opp. p. 14-16 & 8-9); **(3) A** Stay of the June 4,2002 auction was granted and Blue Plains storage fees were waived at the May 29,2002 hearing (Pl. Opp. p. 9-11 & 5); (4) Plaintiff was informed that she had until June 7,2002 to retrieve her car and the District acknowledges that on June 7,2002, Plaintiff went to the Blue Plains lot to retrieve her vehicle. (Pl. Opp. p. 10). See, BR. p. **36.**

23. The District states that on April 19, 2002 Plaintiff received a printout evidencing that there was to be an "auction" on the car. APL. **BR. p. 49-50.** In fact, on April 19, 2002, Plaintiff requested and received a DMV printout of her outstanding tickets while visiting DMV to inquire about the status of the application of payments for her car. See, Pl. 1st Adm., Ex. C. (A174.) See also, BR. p. 17. The DMV printout included the word auction in small inconspicuous print, without reference, explanation or an auction date, and did not provide notice about the impending June 4, 2002 auction sale of Plaintiff's car **as** an "abandoned" vehicle. Zbid.

---

[8] In its Mot. Summ. J. (Def.'s Mem. Pts. & Auth p. 22 (A104)), the District provides a description of a partial amnesty program, not the actual 2002 Parking Ticket Amnesty Program that provided blanket forgiveness of original fines and penalties for parking tickets. Further, the District included as exhibits to Def's Mot. Summ. J an 3/13/01 memo and a 6/12/01 press release that discuss an earlier amnesty program(s) that forgave only penalties, not original fines. See, Def.'s Mot. Summ. J., Ex. 5 (2 pages). (A152-153.)

## V.    **REPLY ARGUMENTS**

### A.  The District Court Erred in Granting The District's Motion for Summary Judgment Because There Are Genuine Issues As To Material Fact And The District Of Columbia Is Not Entitled To Judgment As A Matter Of Law.

Summary judgment should not be granted unless it is clear that a trial is unnecessary. Any doubt as to the existence of a material fact should be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255. Summary judgment is only appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 **U.S.** 317, 322.

When drawing all justifiable inferences in Plaintiff's (nonmoving party's) favor and accepting the Plaintiffs evidence as true, clearly there are genuine issues as to material fact and the District of Columbia is not entitled to judgment as a matter of law. For each claim, Plaintiff has made a strong showing sufficient to establish the existence of an element(s) essential to her case. However, the district court appears to have discounted, and even ignored, *pro se* Plaintiffs evidence, including Plaintiff's First Set of Requests for Admissions that was entered into the record on May 3, 2005.[9] In at least one instance, with regard to the outcome of the May 29, 2002 hearing, the district court considered the District of Columbia's (moving party's) related statements of fact to be true even where there was contradictory evidence submitted by both parties and contradictory statements in Plaintiff's First Set of Requests for Admissions. See, Pl. 1st Adm. Sec. **II ¶¶** 12 & 13 & Ex. K. (A170 & 182.) The District has

---

[9] See Plaintiffs First Set of Request for Admissions (referred to as Pl. 1st Adm.") entered into the record on May 3, 2005. Plaintiff's First Set of Requests for Admissions (Pl. 1st Adm.) was served upon the District of Columbia via certified mail on December 7, 2004. Many of the documents included as exhibits to Pl. 1st Adm. were previously submitted by the District of Columbia as exhibits to its Opposition to Plaintiffs Motion for Preliminary Injunction to require the District to remit to Plaintiff proceeds from the sale of her car and contents therein. Plaintiff's intent was to enter documents and facts that should not have been in dispute. (A31-51.) Plaintiffs motion for leave to enter into the record Pl. 1st Adm. was filed and served on or about February 18, 2005. (A10.) The District of Columbia did not formally respond or object to Plaintiffs admissions or the notion. In open court on May 3, 2005, the district court granted Plaintiffs motion as conceded (Minute Order 5/03/2005). (A11.)

now admitted that disputed fact and states that at the May 29,2002 hearing "the hearing examiner partially waived the storage fees." APL. BR. p. 12. See also, APL. BR. p. 51.

It appears the district court in granting the District of Columbia's motion for summary judgment may have "strayed from its proper role and made credibility determinations." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525. In *Rollins,* the court held that the trial judge's function was not to weigh the evidence and determine the truth of the matter but to determine whether there was a genuine issue for trial. *Ibid.* Further, "like the weighing of evidence generally, the task of determining the credibility of a witness is the exclusive domain of the finder of fact." *Greene v. Dalton,* 164 F. 3d 671,674.

Plaintiff has identified genuine issues of material fact and produced evidence that, if believed, is sufficient to allow a reasonable trier of fact to find in her favor, which precludes summary judgment against Plaintiff. Plaintiff is "not required to produce evidence in a form that would be admissible at a trial in order to avoid summary judgment." *Celotex Corp. v. Catrett,* 91 L Ed 2d 265,269,274-275. Plaintiff has presented sufficient evidence to survive summary judgment. See, BR. p. 12-13.

1. **Dispute with regard to the tickets the District used as justification for the immobilization and impoundment of Plaintiff's car and whether the District complied with D.C. Code, policies, standard practices and operating procedures.**

There are material factual disputes with regard to the tickets that were considered or should have been considered as justification for the immobilization and impoundment of Plaintiffs car, which precludes summary judgment against the Plaintiff. See, BR. p. 20-22. Specifically, there are unresolved questions about the number of tickets that were unpaid and outstanding on the boot, tow and auction sale dates and whether the District complied with its laws, policies and standard operating procedures and practices with respect to the timing of the boot, tow and sale of Plaintiffs vehicle and the tickets that were used as justification for the

-21-

District's actions. Further, there are material issues with regard to the application and timeliness of application of payments made by Plaintiff and on Plaintiff's behalf.

### a. Tickets outstanding on boot and tow dates that were used as justification for the immobilization and impoundment of Plaintiff's car.

There is a material dispute about the number of parking tickets that were outstanding and used as justification for the immobilization and impoundment of Plaintiff's car. See, BR. p. 20-22. The District now has expanded the controversy and for the first time states in its brief that Plaintiff admits that when her car was booted on March 12, 2002, as well as, when it was towed two weeks later on March 26, 2002, there were *five* unpaid tickets outstanding for 30 days or more. See, APL. BR. p. 21. This is clearly untrue. Indeed, the district court acknowledged there was a factual dispute (stating "…plaintiff disputes the defendant's claim that she had five unresolved tickets at the time her car was seized on March 12, 2002…"). See, Mem. Opn. at 5. (A20.)

In fact, Plaintiff asserted in her brief that there were material disputes about whether there were even two tickets that could have or should have been used as justification for the boot and tow of her vehicle and/or alternatively, the District considered tickets to be justification for a boot or tow prior to the date the tickets were deemed admitted pursuant to D.C. Code §50-2303.05(d)(2) and prior to the expiration of possible appeal rights that extend beyond an administrative hearing. See, BR. p. 20-22 & 24. Based upon new information included in the District's brief, the record now reflects that the District's practice in March 2002 indeed was to consider tickets as justification for a boot or tow after 30 days, which was prior to the expiration of the 60-day period for admission. See, APL. BR. p. 22-23. See pages 6-8 above.

Subsequent to March 2002, the District's legislators in their wisdom amended D.C. Code §50-2201.03(k)(1)(2001) to provide that the District may immobilize or impound a vehicle against which there are two or more unpaid notices of infraction that the "owner was

-22-

deemed to have admitted or that were sustained after a hearing." D.C. Code § 50-201.03(k)(1)

(amended).]' See, Pl. Opp. to Mot. Summ. J./ or Mot. for Ext. to File, Attachment 2. (A196.)

The District notes that the legislative history states "the section was amended to 'reflect that

vehicles will no longer be towed... based upon tickets for which the appeal rights have not yet

expired.'"[11] See, APL. BR. p. 22-23. The District, however, has not stated whether there was

an explicit policy in place that permitted booting or towing before tickets were admitted or

deemed admitted or whether it was only a practice and, if it was just a practice, whether the

practice was followed consistently, occasionally or used in "special" situations.

As of the March 12, 2002 boot date, three (3) of the five (5) infractions that were

considered as justification for the immobilization were issued in January 2002 and were not yet

deemed admitted and/or Plaintiff was still entitled to an administrative hearing for those tickets

(Jan. 29, 2002 − NOI 511695074; Jan. 29, 2002 − NOI 511695063; and Jan. 10, 2002 − NOI

514657964). See, Claytor Decl. ¶ 8 & **Ex.** F. (A117 & 133.) Plaintiff had a hearing for Jan.

29, 2002 − NOI 511695074 on March 14, 2002 and a hearing for Jan. 10, 2002 − NOI

514657964 on March 15, 2002 at which time the hearing examiner waived the $100 penalty for

NOI 514657964. See, Claytor Decl. ¶¶ 9 & 10. (A117.) And, Plaintiff was appealing a fourth

ticket, a December 2001 ticket (NOI 540049952 12/18/01). The District asserts that Plaintiff

has not provided evidence of her appeal of the December 2001 ticket. APL. BR. p. 8.

However, the appeal is knowledge peculiarly within the District's control and the District has

---

[10] The District states that D.C. Code **§50-2201.03(k)(** 1) was amended to provide that the District may immobilize or impound a vehicle against which there are two or more unpaid notices of infractions that were "deemed admitted or upheld after a hearing." **APL.BR.** p. **22.** In fact, D.C. Code **§50-2201.03(k)(1)** was amended to state the District may immobilize or impound a vehicle against which there are two or more unpaid notices of infractions that the owner was "deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05, **§ 50-2303.06 or § 50-2209.02."** See, **D.C.** Code **§50-2201.03(k)(**1) (amended). **(A196.)**

[11] The District references Report on Bill **16-82**1, "Department **of** Motor Vehicles Service and Safety Amendment Act of **2006."** See, APL. BR. p. **22-23.**

-23-

not denied that Plaintiff was appealing the December 2001 ticket. Further, there are questions about the timeliness of application and application of payments made by Plaintiff and on Plaintiff's behalf. See, BR. p. **7 & 21.**

With regard to the tickets outstanding on the tow date, the record upon motion for summary judgment reflects that on or about March **26,2002,** there were two unpaid parking tickets outstanding and there are remaining questions of material fact with regard to the application and timeliness of application of payments. While the District now attempts to argue in its brief that there were five unpaid tickets outstanding on the tow date (APL. BR. p. 1 **& 21**), the District stated in its motion for summary judgment that at the time Plaintiff's car was towed "she still had at least two unpaid tickets on her car and she already had Administrative Hearings on these two tickets and was found liable." Def.'s Mem. Pts. & Auth. p. 15. **(A97.)** The District further stated that "eleven days after Plaintiff was found liable at the administrative hearings for the tickets which still went unpaid, Plaintiffs car was towed..." Def.'s Stmt ¶ **6.** (A81.)

Moreover, the District did not respond or object to Plaintiff's First Set of Requests for Admission that was entered into the record on May **3,2005** and admitted as true "[a]t the time Plaintiff's car was impounded on **3/26/2002,** DMV records reflected two outstanding parking tickets for DC Tag No. AH3283, which aggregated $200 (including fines of $150 and a penalty of $50): ticket 51**1695074** issued **1/29/2002** and ticket 5**11657964** issued 1/10/2002" and "[o]n **3/26/2002,** Plaintiff's car was impounded for two outstanding tickets..." Pl. **1**st Adm., Sec. **11** ¶¶ **3 & 8,** respectively. (A **169-170.**) The District did not contest the admissibility of Plaintiff's First Admissions, thus, Plaintiff's admissions should be factored into the summary judgment decision.[12] See, Offshore *Aviation v. Transcon Lines, Inc.,* **831** F.2d **1013** (11th Cir.); Munoz v.

---

[12] **Plaintiffs First Set of Requests for Admissions (Pl. 1**st **Adm.) was served upon the District of Columbia via certified mail on December 7, 2004. Many of the documents included as exhibits to Pl. 1**st **Adm. were previously**

*International Alliance of Theatrical Stage Employees, Etc.*, 563 F.2d 205, 214 (5th Cir.).  In addition, an April 19,2002 DMV ticket printout, which was admitted as genuine in Plaintiffs First Set of Requests for Admission, reflects two tickets outstanding totaling $200. See, Pl. 1st Adm., Ex. C. (A174.)  Further, the Towing and Impoundment Crane Form includes a hand-written notation *– Before processing $295* (which presumably includes the boot fee).  See, Pl. 1st Adm., Ex. L. (A183.)

### b.   Plaintiff did not have 5 "delinquent" tickets on boot date (as the District asserts).

The District asserts Plaintiff had five *"delinquent"* tickets when her car was immobilized on March 12,2002.  APL. BR. p. 20.  However, as discussed above, five unpaid tickets were not yet deemed admitted as of March 12,2002 because 60 days had not yet passed without a response for each ticket.  If the tickets were not yet deemed admitted, then fines and penalties were not yet *assessed* under D.C. Code **§50-2303.05(d)(2)** and the ticket amounts were not yet past due or *"delinquent.*·

The District cites D.C. Code §50-2302.05(d)(1) as the statute that requires a person to answer a notice of infraction within 30 days before the imposition of penalties. See, APL. BR. p. 7.  However, D.C. Code **§50-2302.05(d)** apparently addresses the answer for moving infractions.  D.C. Code §50-2303.05(d) is the applicable statute for Parking Infractions. Indeed, D.C. Code **§50-2303.05(d)** is cited in amended D.C. Code **§50-2201.03(k)(1)** (which states that the District may immobilize and impound vehicles against which there are 2 or more infractions that "the owner was deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05,s 50-2303.06 or § 50-2209.02"). (A196.)

submitted by the District of Columbia as exhibits to its Opposition to Plaintiffs Motion for Preliminary Injunction (to require the District to remit to Plaintiff proceeds from the sale of Plaintiffs car).  Plaintiffs Motion for Leave to enter into the record Pl. 1st Adm. **was** filed and served upon the District on or about February 18,2005. (A10.) The District of Columbia did not formally respond or object to Plaintiffs admissions or the motion. In open court on May 3,2005,  the district court granted Plaintiffs motion **as** conceded (Minute Order 5/03/2005). (A11.)

D.C. Code §50-2303.05(d) as amended by D.C. Act 13-289 in April 2001 (Pl. 1st Adm.,

Ex. R (A191.)) states that,

> (1) A person to whom a notice of infraction has been issued shall answer within 30 calendar days of the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation. Failure to answer the notice within this period shall result in the imposition of monetary penalties established by § 50-2301.05, in addition to the potential civil fine for the infraction.
>
> (2) If a person fails to answer within 60 days, or within a greater period of time as prescribed by the Director by regulation, the commission of the infraction shall be deemed admitted and all penalties and fines shall be assessed. Not more than 50 days after the notice is issued, the Director shall send, by regular mail, notice of the outstanding notice of infraction and of the impending deemed admission. This subsection shall not apply to any participant in the fleet adjudication program.

As discussed above, three (3) of the five (5) infractions that were considered as

justification for the immobilization of Plaintiff's car were not yet deemed admitted and/or

Plaintiff was still entitled to an administrative hearing for those tickets. Three parking tickets

were issued in January 2002: two Jan. 29, 2002 tickets (NOI 511695074 & NOI 511695063)

for which the 60-day period clearly had not yet expired and thus the infractions were not yet

deemed admitted under §50-2303.05(d)(2) and one ticket issued on Jan. 10, 2002 (NOI

514657964) for which it appears the period for admission had not yet expired and for which

Plaintiff was still entitled to a hearing. See, Claytor Decl., Ex. F. (A133.) Indeed, Plaintiff had

a hearing for Jan. 29, 2002 – NOI 511695074 on March 14, 2002 and a hearing for Jan. 10,

2002 – NOI 514657964 on March 15, 2002 at which time the hearing examiner waived the

$100 penalty for NOI 514657964. See, Claytor Decl. ¶¶ 9 & 10. (A117.)

The District asserts that in March 2002 it was acceptable to consider tickets as

justification for a boot or tow after 30 days because D.C. Code §50-2201.03(k)(1) (2001)

permitted the District to boot or tow a car for two or more "outstanding or otherwise unsettled"

notices of infractions and the District asserts read together with §50-2303.05(d)(1), the terms

"outstanding or otherwise unsettled" refer to any ticket that remained unanswered after 30 days.

See, APL. BR. p. 22-23.  (The District incorrectly references §50-2302.05(d)(1), see page 11

above (item 3.) for a further discussion.)   However, subsequent to 2002, the District's

legislators in their wisdom amended D.C. Code §50-2201.03(k)(1)(2001) to provide that the

District may consider as justification for a boot or tow only those infractions that **an** "owner

was deemed to have admitted or that were sustained after a hearing, pursuant to § 50-2303.05,

§ 50-2303.06 or § 50-2209.02."  D.C. Code §50-2201.03(k)(1)(amended). (A196.)  See also,

APL. BR. p. 22 and page 16 above (item 16.).   The District notes that the legislative history

states that the "section was amended to 'reflect that vehicles will no longer be towed. . . based

upon tickets for which the appeal rights have not yet expired.'"  See, APL. BR. p. 22-23.

Further, the District asserts that even if the tickets that were not yet admitted were

discounted, there would still be two tickets that could be used as justification for the boot.  See,

APL. BR. p. 23.   However, Plaintiff was appealing one of those two remaining tickets (Dec.

18, 2001-NOI 540049952), and there is a dispute with regard to the application and timeliness

of application of payments made by Plaintiff and on her behalf (including a payment in transit

as of the boot date).  See, BR. p. 21-22.  The District asserts that Plaintiff has not provided any

evidence of her appeal of the December 2001 ticket.  APL. BR. p. 8.  However, the appeal is

knowledge peculiarly within the District's control and the District has not denied that Plaintiff

was appealing the December 2001 ticket.  Further, the record reflects that Plaintiff had a hear-

ing for NOI 540049952 (12/18/01) and "the penalty was dismissed."  See Claytor Decl. ¶ 8.

(A117.)  Following the hearing, Plaintiff appealed the examiner's **ruling**.[13]

---

[13] An examiner's decision may be appealed to the Traffic Adjudication Appeals Board.  At an administrative hearing for NOI 540049952 (12/18/01), the hearing examiner found Plaintiff guilty of the parking violation, but dismissed the penalty.  Plaintiff filed an appeal of the examiner's ruling. Pl. Opp. p. 8. (A226.)

### c. Dispute with regard to payments made and the timeliness of the application of payments by Plaintiff and on Plaintiff's behalf

There are issues with regard to the application and the timeliness of application of payments made by Plaintiff and on Plaintiff's behalf, including apparent overpayments, unapplied amounts and payments in transit. See, BR p. 7 & 21. See also, Am. Compl. ¶ 10. Indeed, the District's own records, at a minimum, demonstrate payment irregularities. For example, as of August 23, 2004, District records reflect an unapplied amount of $45, as well as, an overpayment of $45 for NOI 950844296 (8/02/99). See, Claytor Decl., Ex. B. (A120-127.) Further, the record reflects a number of instances where the penalty exceeded the original fine (pursuant to §50-2301.05 the penalty amount should equal the fine): NOI 518146355 (12/13/01), NOI 514638154 (11/23/01), NOI 974473006 (7/01/01), NOI 968696540 (1/05/01), NOI 526042650 (11/03/00), NOI 950844296 (8/02/99) and NOI 949979925 (9/27/98). Ibid. In addition, a $5 check payment for NOI 511695074 was credited on July 15, 2002, more than a month after Plaintiff's car was sold at auction. See, Pl. 1st Adm., Ex. H. (A179.)

Around the time Plaintiff's car was wrongfully seized and sold, there were well-publicized problems at DMV involving, among other things, employees illegally selling driver's licenses and fixing traffic tickets in exchange for payment. Although it has not yet been determined that these well-publicized problems are in any way related to this case, the problems are nonetheless relevant at this stage in the proceedings because they provide, at a minimum, evidence of a pattern of unethical behavior. Indeed, DMV established a new "integrity unit" to help safeguard against the kind of scandals that "rocked" the department. See, Pl. Opp. to Mot. for Summ. J./ Mot. for Ext. to File, Attachment 3 ("District Announces Revamping of DMV," The *Washington Post,* January 8, 2004). (A206-207.)

-28-

**2. Plaintiff's car was not abandoned and she did not receive proper or adequate notice that her car was to be sold as an "abandoned" vehicle.**

Plaintiff did not voluntarily relinquish her ownership rights in her vehicle. See, BR. p. 16 and AM. BR. p. 15. The District asserts that it sold Plaintiff's vehicle and retained all of the proceeds from the sale pursuant to D.C. Code 950-2623, "Sale of abandoned vehicle[s] at public auction; disposal of junk vehicles; disposition of proceeds." Per D.C. Code §50-2401(1)(E) & §50-2602(6)(E*)*, an abandoned vehicle was defined in relevant part as a vehicle "that has remained unclaimed for 45 days after proper notice." D.C. Code §50-2402(a)(5) and 950-2622 required the District to notify the Plaintiff (and any lien holder of record) that the vehicle would be sold at public auction if not claimed (or reclaimed) within 45 days. Further, D.C. Code 950-2622 required two forms of notice: (a) written notice via certified mail, and (b) publication in a newspaper of general circulation for two consecutive weeks.

### a. The District did not provide statutory notice.

The District states that "[o]n April 12, 2002, DPW sent a notice to [Plaintiff] via certified mail informing her that the car was in DPW's custody and that failure to claim it within 45 days would constitute a waiver of her rights, title and interest in the car, and consent to its sale at public auction." APL. BR. p. 10. The District also states that the notice was returned undelivered because Plaintiff's address was erroneously recorded in DPW's system as "3805 O Street" instead of "3305 O Street." *Zbid.* The District previously admitted fault and stated in its motion for summary judgment that the written notice was sent to an incorrect address due to a *"typographical error."* See, Def's. Stmt ¶ **8 &** Jones Decl. ¶ **8.** (A81 & 142.) See also, Pl. 1st Adm., Ex. **O.** (A186-187.) The notice was *not* sent to Plaintiff's last known address as reflected in the DMV system and as required by D.C. Code, which was **3305 O Street, N.W.** Claytor Decl., Ex. **A** & B. (A1**19** & 120.) Rather, it was sent to a nonexistent address, **3805 O Street, N.W.** See, Pl. 1st Adm., Ex. **O.** (A186-187.)

The written notice, which previously was entered into the record by the District as Attachment E to its Opposition to Plaintiff's Motion for Preliminary Injunction (and then was included as Pl. 1st Adm., Exhibit N), would have: (1) notified Plaintiff that her vehicle was in the custody of DPW; (2) provided notice about the ramifications of failure to "claim" the vehicle; (3) provided information about how to "claim" the vehicle; and (4) provided information about what was required to "release" and "retrieve" the vehicle. See, Opp. to Pl. Mot. For Prelim Inj., Ex. E (A41); Jones Decl., Ex. C (A146); & Pl. 1st Adm., **Ex.** N (A185). The undelivered notice stated that:

> *Failure to claim the vehicle within forty five (45) days from the date of arrival of this vehicle, shall constitute a waiver of all right, title, and interest in the vehicle and shall constitute consent to the sale of the vehicle at public auction.*

The notice further stated that to *"claim"* your vehicle, "report to" the Bureau of Adjudication, 65 K Street, N.E., Washington, D.C. 26002. *Zbid.* All outstanding tickets, tow and storage fees were to be paid before the vehicle would be *"released." Zbid.* In order to *"retrieve"* a vehicle, an owner was required to appear at the Blue Plains Lot with the title or current registration (and for a third party, a written authorization from the owner). *Zbid.*

Further, the District also acknowledged that it published notice once in the *Washington Times* on April 13, 2002. APL. BR. p. 10. See, Def's Mot. Summ. J., Ex. 4. (A151) & Pl. 1st Adm., Ex. P (A188). However, the District has not admitted that D.C. Code §50-2622(b) required notice to be published for *two consecutive weeks.* See, D.C. Code §50-2622(b).

b.    **Plaintiff did not receive actual notice on April 19, 2002.**

The District acknowledged that its statutory notice via certified mail was "faulty." See, Def.'s Mem. Pts. & Auth. p. 13 (A95). See also, Def's Stmt. ¶ 8. (A81.) However, the District asserts that Plaintiff "would have been" informed by DPW about the June 4th auction when she visited the Blue Plains Lot on April 19, 2002. APL. BR. p. 11. Plaintiff asserts that she did not learn that her car was to be sold as an "abandoned" vehicle until late May 2002, "shortly before

the May 29, 2002 hearing." Pl.'s Opp. p. 9. (A227). See also, BR. p. 17. Upon learning of the impending sale, Plaintiff immediately requested a hearing (the May 29th hearing). *Zbid.*

Plaintiff visited the Blue Plains lot on April, 19,2002 to retrieve a case. However, she did not know at that time that the transfer of her car from the District's Addison Road Lot in *Maryland* to its Blue Plains Lot in the District of Columbia had possible implications with regard to her ownership rights in her vehicle. BR. p. 16-17. Plaintiff had complained that her car initially was towed across the state-line and impounded at the District's Addison Road Lot in *Maryland. Zbid.* While visiting DMV on April 19,2002 to inquire about the status of the application of payments made by Plaintiff (and on her behalf), a DMV clerk informed her that her car had been moved from *Maryland* to the Blue Plains Lot in the District. BR. p. 8-9. Upon learning about the move, Plaintiff went to the Blue Plains Lot to retrieve the case. *Ibid.*

The District now has attempted to shift the burden of evidence to Plaintiff and argues that Plaintiff has provided no evidence that she did not receive notice on April 19,2002. APL.BR. p. 35. As discussed above, Plaintiff claimed and indeed has demonstrated that the District did not provide statutory notice. See, **Am.** Compl. ¶ 28-30 (A60) & BR. p. 15-17. The District, however, has not provided documentation of the alleged April 19 notice by DPW other than a statement in a declaration, which accompanied its motion for summary judgment. See, Jones Decl. ¶ 9. (A142.) In that declaration, the DPW employee did not state that she inform-ed Plaintiff about the auction or even that Plaintiff **was** informed, but rather only that Plaintiff would *have been* informed when she visited the Blue Plains Lot. See, BR. p. 15-17 and Pl.'s Op. p. 4-5 (A222-223) & 9 (A227). Further, the District has provided no information or documentation about the content of the alleged DPW notice, how and when the alleged DPW notice was provided, and why, among other things, such notice was adequate and "proper" in lieu of the two forms of notice mandated by statute. See, D.C. Code §50-2622. Plaintiff asserts that she learned that her car was to be sold as an "abandoned" vehicle in late May 2002 (shortly

-31-

before the May 29, 2002 hearing) and immediately upon learning about the pending sale, she requested a hearing (the May 29, 2002 hearing). See, Pl.'s Op. p. 8 (A226) & BR. p. 17.

With regard to the alleged April 19, 2002 DPW notice, the district court stated that "[t]he defendant surmises that plaintiff 'would have been informed of [the auction] date when she visited the Lot' on April 19, 2002, but it has not provided any documentation of such notice. Jones Decl. ¶ 9." Mem. Opn. at 8 n.5. (A23.) "The plaintiff disputes that she was so informed. Pl.'s **Opp'n** at 9." *Zbid.* "While arguably the plaintiff's own exhibit indicating that the car was subject to auction, Pl.'s **Ex** C to First Set if Requests for Admissions [Dkt No. 73-2], suggests perhaps inquiry notice, this disputed fact is a credibility question beyond the province of summary judgment." [14] *Zbid.*

### c. D.C. Code prescribes "proper notice."

An "abandoned" vehicle was defined in relevant part as one "that has remained unclaimed for **45** days after proper notice." [15] The District asserts that "proper notice" is not defined by statute. APL.BR. p. 49. However, the District's own statutes prescribed notice requirements, including D.C. Code §50-2622, which mandated two forms of notice. D.C. Code §50-2622(a) required the District to notify a vehicle owner (and any lien holder of record) via certified mail that his or her vehicle would be sold at public auction as an "abandoned" vehicle if not claimed within 45 days after the date of notice. D.C. Code §50-2622(b) also required the District to publish notice in a newspaper of general circulation for two consecutive weeks. Moreover, the District argues elsewhere in its brief that related statutes should be read together. See, APL.BR. p. 22 *(Citizen's to Save Spencer County v. EPA,* 600 F. 2d 844, 870).

---

[14] The district court refers to an April 19, 2002 outstanding ticket printout that Plaintiff requested and received From DMV. See, Pl. 1st **Adm., Ex,** C. (A174.) The DMV ticket printout does not provide notice of a pending auction or any relevant information that was required by statute to be disclosed in a notice or that was included in the written notice that was sent by the District to a wrong address due to a typographical error and returned undelivered.

[15] See, D.C. Code §50-2401(1)(E) and §50-2602(6)(E).

**3. Dispute About Outcome Of May 29, 2002 Hearing And Whether The Auction Sale Was Stopped, A Stay Was Granted And Plaintiff Was Informed That She Had Until June 7, 2002 To Retrieve Her Vehicle.**

There are material factual disputes about whether (i) the auction sale of Plaintiff' car was stopped at the May 29, 2002 administrative hearing and a stay of the June 4, 2002 sale was granted, (ii) Plaintiff "claimed" her vehicle, and (iii) Plaintiff was informed that she had until June 7, 2002 to retrieve her vehicle.   As discussed above, the District has now admitted that Blue Plains Lot fees were waived at the May 29, 2002 hearing (a fact previously in dispute) and states that "[w]hile the hearing examiner partially waived the storage fees, [Plaintiff] was required to pay the remainder."   See, APL. BR. p. 12.   However, the District has not stated the amount of storage fees waived or the reason(s) for such waiver.

Blue Plains Lot storage fees accrued for the period from April 9, 2002 up until the hearing date May 29, 2002 (i.e., 50 days). BR. p. 19.   Initially, Plaintiff was of the view that the hearing examiner waived 35 days storage fees and she would be required to pay the remaining 15 days storage fees. *Ibid.*   However, DPW's records reflect a notation "All Tow & Storage Fees Release Per HR. 778/5/29/02."   Pl. 1st Adm., Ex. K (A182); Jones Decl., Ex. E (A148).   Further, the District did not object to Pl. 1st Adm., Sec. II ¶ 13, which states that "DPW records reflect that all Blue Plains Tow & Storage Fees were released per Hearing No. 778 on 5/29/02." (A170.)  See, BR. p. 10.   Further, the hearing examiner informed Plaintiff that she would be liable for storage fees from the hearing date (May 29, 2002) up until the date she retrieved her vehicle and instructed her to contact the Blue Plains Lot. BR. p. 9-10.  (Plaintiff obtained the Blue Plains Lot telephone number from a DMV clerk.  *Ibid.* )

Following the administrative hearing on May 29, 2002, Plaintiff contacted the Blue Plains Lot and an individual acting in an official capacity as a DPW employee or agent informed her that her car would not be sold on June 4, 2002.  Am. Compl. ¶ 15 (A58);  Pl. Opp. p. 10 (A228).  See also, BR. p. 10.  He informed Plaintiff that she had until June 7, 2002 to pick up her car.  *Ibid.*  Plaintiff relied on DPW's  promises and representations, as well as, the

1  hearing examiner's assertions and did not attempt to retrieve her vehicle prior to June **4,2002**

2  or to remove her personal property (including two laptop computers) from the car prior to June

3  **4, 2002.** Ibid.

4      The District asserts that "[t]he hearing record does not indicate that the hearing

5  examiner ordered a stay of the car's sale scheduled for June **4,2002**... and [Plaintiff] does not

6  provide any details regarding the reasons for, or the duration of, the alleged stay." APL. BR.

7  p. **12.**  However, the District now admits that the May **29,2002** hearing was held in part to

8  review the *scheduled* sale of Plaintiffs car ("hearing to review the boot, tow and storage fees

9  and the scheduled sale of the car").  See, APL. BR. p. **11.**  Previously, the District had stated

10 that "Plaintiff received an administrative hearing regarding the boot, tow and storage fees

11 incurred on her Car."  Def.'s Mem. Pts. & Auth. p. **4.** (A86.)  See also, Def.'s  Mem. Pts. &

12 Auth. p. 27 ("challenged the tow and storage fees at Blue Plains").  **(A109.)**  Further, as

13 discussed above, the District now admits that the hearing examiner partially waived storage

14 fees at the May **29,2002** hearing.  See, APL.BR. p. 12 **& 51.**  (The District previously denied

15 that Blue Plains storage fees were waived.  See, BR. p. **17-19.)**  Indeed, Plaintiff asserts that

16 she "claimed" her car at the May **29,2002** hearing, the auction sale of her vehicle was stopped

17 and a stay was granted, and Blue Plains Lot storage and other fees were waived.  BR. p. **9-10.**

18 In addition to the fact that Plaintiff "claimed" her vehicle at the May **29,2002** hearing, the

19 examiner's possible or probable reasons for waiving the storage fees also were rationale for

20 granting a stay (e.g., faulty statutory notice, premature or early boot, payment dispute, etc.).

21     Further, the District included in the record a partially illegible copy of the handwritten

22 record for the May **29,2002** hearing for that portion of HR. **778** that related to the review of

23 Blue Plains Lot fees and the scheduled sale of Plaintiff's car.  Claytor Decl., **Ex.** I. (A136.)  In

24 contrast, the District included a copy of the typewritten record for all other hearings presented,

25 including a May **29,2002** hearing for a stale-dated November 19,2001 ticket that was

suspiciously added to Plaintiffs DMV record sometime after April **19,2002.**  See, Claytor

1  Decl., Ex. G, **H & J**. **(A134, 135 & 137)**  It is reasonable to infer that the typewritten record

2  for the May **29, 2002** hearing for the stay of the auction sale and waiver of storage fees would

3  have been prejudicial to the District's case, which for purposes of the motion for summary

4  judgment, should establish a prima facie case as to the issues involved (i.e., spoliation

5  inference).  See, BR. p. **18-19.**

6       The District also incorrectly asserts that Plaintiff did not present any evidence in

7  support of her claim that she was informed that she had until June **7, 2002** to retrieve her

8  vehicle and that such an assertion "does not make sense."  APL BR p. **12.**  Further, the

9  District states that an employee "stated in her sworn declaration that 'no DPW employee

10  informed [Tate] that she had until June **7, 2002** to reclaim her vehicle.'"  *Ibid.*  In fact, the

11  individual stated that "[t]o the best of my knowledge and based upon documents I have

12  reviewed that are maintained by the Abandoned Vehicle Division, no DPW employee informed

13  Plaintiff that she had until June **7, 2002** to reclaim her vehicle."  See, Jones Decl. ¶ **13. (142-**

14  **143.)**  The individual has not asserted that she has first-hand knowledge with regard to

15  representations and promises made to Plaintiff.  In addition, as discussed above, there is

16  evidence that Plaintiffs car indeed was released in the abandoned property system on May **29,**

17  **2002.**  DPW records reflect a notation *"All Tow & Storage Fees Release Per HR.*

18  *778/5/29/02.*"  See, Pl. 1st Adm., Sec. II ¶ **13 & Ex. K. (A170 & 182.)**  See also, Jones Decl.,

19  **Ex.** E. **(A148.)**  In addition, the District acknowledged that "[o]n June **7, 2002,** Plaintiff

20  attempted to recover her car from the Blue Plains Lot, but was told that her **Car** had been sold

21  **at** public auction three days earlier."  Def.'s Stmt. ¶**16. (A82.)**  Further, June **7, 2002** was 11

22  days prior to the June **18, 2002** auction and **25** days prior to the next regularly scheduled

23  auction, which would provide time for DPW to address administrative matters, such as

24  inclusion of the vehicle on auction lists, in the event Plaintiff did not retrieve her vehicle by

25  June **7, 2002.**

## B.  Plaintiff Has Established Fourth Amendment Violations

The Fourth Amendment to the Unites States Constitution protects the right of people to be secure in their persons, houses, papers and effects, against unreasonable seizures.  The touchstone of the Fourth Amendment is reasonableness. *United States v. Askew,* 482 F.3d 532, 538.  Reasonableness must be measured in light of the strength of the governmental interests in conducting the intrusion, balanced against the nature and quality of the intrusion on the property and possessory rights.  The Fourth Amendment protects against unreasonable seizures of property regardless of whether privacy or liberty is also implicated or the seizure is the outcome of a search, and protects pure property interests even in settings other than law enforcement. *Soldal v.* Cook *County, 506* U.S. 56, 61-71.

The District's immobilization and impoundment of Plaintiff's late-model car for outstanding parking tickets (and subsequent sale of the car for at most two unpaid parking tickets and retention of all of the sale proceeds) unreasonably and meaningfully interfered with Plaintiff's possessory and property interests in her vehicle and constituted unreasonable seizures of Plaintiffs property in violation of the Fourth Amendment. The District's actions were unreasonable, extreme and severely disproportionate to the need presented, the collection of fines and penalties for outstanding parking tickets.  The District's actions were oppressive in a constitutional sense.  Further, D.C. Code § 50-2201.03(k)(1),  the statute that permits seizure of a vehicle for just two (2) outstanding parking tickets, is unreasonable, arbitrary and capricious and constitutionally deficient.  The statute is overly broad and not sufficiently keyed to a legitimate state interest.  Further, D.C. Code §50-2201.03(k)( 1) and 950-2623 are unconstitutional as applied to the facts in this case.

-36-

1

2   **1. The District Court erred in ruling that because the authority of police to seize
    and remove from the streets vehicles impeding traffic or threatening public safety
3      and convenience is beyond Fourth Amendment challenge, Plaintiff has provided
    no basis for declaratory judgment with regard to D.C. Code § 50-2201.03(k)(1).**

4

5         **a. D.C. Code § 50-2201.03(k)(1) is not beyond Fourth Amendment challenge
            (facial or as applied) under the "community caretaking" doctrine.**

6
    D.C. Code § 50-2201.03(k)(1) provides the authority for the District of Columbia to
7
    immobilize and impound vehicles against which there are two (2) or more outstanding parking
8
    tickets.  In March 2002, D.C. Code § 50-2201.03(k)(1)(2001) stated that:
9

10         "Any unattended motor vehicle found parked at any time upon any public highway of
           the District of Columbia against which there are 2 or more outstanding or otherwise
11         unsettled traffic violation notices or notices of infraction or against which there have
           been issued 2 or more warrants may, by or under the direction of an officer or member
12         of the Metropolitan Police force or the United States Park Police or an employee of the
           District of Columbia Department of Transportation, either by towing or otherwise, be
13         removed or conveyed to and impounded in any place designed by the Mayor or
           immobilized in such manner as to prevent its operation; except, that no such vehicle
14         shall be immobilized by any means other than by the use of a device or other
           mechanism which will cause no damage to such vehicle unless it is moved while such
15         device or mechanism is in place." [16]

16   D.C. Code § 50-2201.03(k)(1) (2001) as written (a statute that permits immobilization

17   and impoundment of a vehicle for as few as two outstanding parking tickets) is unreasonable,

18   arbitrary and capricious and constitutionally deficient.  See, Am Compl. ¶ 60. (A65.)  The

19   statute is overly broad and not sufficiently keyed to a legitimate state interest.  *Zbid.*  Seizure of

20   a vehicle for two parking tickets is a display of power, not an exercise of reason or judgment,

21

22

---

23   [16] D.C. Code § 50-2201.03(k) (1) was amended subsequent to 2002 by striking the phrase "outstanding or
    otherwise unsettled traffic violation notices or notices of infraction" and replacing it with "unpaid notices of
24   infraction that the owner was deemed to have admitted or that were sustained after a hearing, pursuant to D.C.
    Code § 50-2303.05, § 50-2303.06, or § 50-2209.02."  See, D.C.Code §50-2201.03(k) (1) (amended). (A196.)
25   There is a minor discrepancy in the District's description of the amendment in that the District states that the
    statute was amended in 2003, to state "deemed admitted or upheld after a hearing" (as opposed to "deemed to
    have admitted or that were sustained after a hearing")  See, APL. BR. p. 22.  Further, the District notes that the
    legislative history states that the "section was amended to 'reflect that vehicles will no longer be towed... based
    upon tickets for which the appeal rights have not yet expired.'"  APL. BR. p. 23.

1  and it is severely disproportionate to the need presented and oppressive in a constitutional

2  sense. See, BR. p. **26-28.**

3      The district court held that "[b]ecause '[t]he authority of police to seize and remove

4  from the streets vehicles impeding traffic or threatening public safety and convenience is

5  beyond [Fourth Amendment] challenge,' *Proctor,* **489** F. 3d at 1353 (quoting *Oppermun,* 428

6  U.S. at **369),** the plaintiff has provided no basis for granting a declaratory judgment." Mem.

7  Opn. at **6** (internal quotations omitted). However, D.C. Code **§ 50-2201.03(k)(1),** provides

8  authority for the District to immobilize and impound *legally* parked vehicles against which

9  there are two or more unpaid parking tickets, regardless of the location of the vehicle or

10  whether there is an operational necessity for the seizure of such vehicle, and thus the statute

11  should not be beyond challenge under the "community caretaking" doctrine. Indeed, Plaintiffs

12  car was *legally* parked and not "impeding traffic or a threatening public safety and

13  convenience" when it was immobilized and impounded to collect unpaid parking tickets and it

14  was not ticketed on either the boot or tow dates. BR. p. **4.**

15      **In** *Miranda v. City of Cornelius,* the court stated the purpose of community caretaking is

16  to remove vehicles that are *presently* impeding traffic or creating a hazard. *Miranda v City of*

17  *Cornelius,* **429** F.3d **858,866.** See, BR. p. **25.** The reasonableness **of an** impoundment under

18  the community caretaking doctrine depends on "whether the violation fits within the 'authority

19  of police to seize and remove from the streets vehicles impeding traffic or threatening public

20  safety and convenience.'" *Miranda* **429** F.3d at **864** (quoting *Oppermun,* **428** U.S. at **369).**

21  "An officer, acting within the scope of his or her community caretaking function, is not

22  required to consider 'the existence of less intrusive means' when the vehicle must in fact be

23  moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle."

24  *Miranda* **429** F.3d at **865** (quoting *Colorado v. Betrine,* **479 U.S. 374).**

25

1    Further, in *Miranda*, the court held that "the need to deter a driver's unlawful conduct is

2  by itself insufficient to justify a tow under the 'caretaker' rationale.'" *Miranda* 429 F.3d at

3  865.   The court held that "while the Supreme Court has accepted a deterrence rational for civil

4  forfeitures of vehicles that were used for criminal activity, see *Bennis v. Michigan*, 516 U.S.

5  442,452, 116 S. Ct. 994, 134 L. Ed. 2d 68, the deterrence rationale is incompatible with the

6  principles of the community caretaking doctrine." *Mirundu* 429 F.3d  at 866.   "Unlike in civil

7  forfeitures, where the seizure of property penalizes someone who has been convicted of a

8  crime, the purpose of the community caretaking function is to remove vehicles that are

9  presently impeding traffic or creating a hazard." *Ibid.*

10
### b. D.C. Code 50-2201.03(k)(1) is unreasonable under the Fourth Amendment and
11    a facial challenge would serve the purpose of preventing prosecutions under a
        constitutionally defective standard.

12    The District argues that Plaintiff's facial challenge can succeed only if there are no set

13  of circumstances under which the statute would be constitutional (United States *v. Salerno*, 481

14  U.S. 739,745), a burden the District asserts Plaintiff cannot meet. APL.BR. p. 19.   However, a

15  statute that permits immobilization and impoundment of a *legally* parked vehicle (and possible

16  permanent loss of one's vehicle) for as few as two (2) unpaid parking tickets is patently

17  unreasonable and clearly does not reflect a proper balancing of governmental and private

18  interests.   Further, the statute is overly broad and arbitrary implicates a fundamental right (the

19  right of people to be secure in their effects against unreasonable seizures) and should be

20  considered for overbreath.

21
22    The District asserted in its motion for summary judgment that D.C. Code §50-

23  2201.03(k)(1) serves the legitimate purpose of encouraging compliance with the District's

24  parking laws.   Def.'s  Mem. Pts. Auth. p. 16. (A98.)   The District states that "[w]hen

25  individuals fail to follow the laws, **they** are fined in **an** attempt to encourage future compliance"

and "[w]hen an  individual fails to settle the fines, the District may seize the offender's vehicle

as a means to collect the debt and promote both conformity with the law and prompt payment

of fines." *Ibid.*  The District asserts that  D.C. Code §50-2201.03(k)(1), which permits seizure

of a legally parked vehicle for two unpaid parking tickets, "acts as an enforcement mechanism

to allow the District to manage the parking of vehicles on the public streets in an orderly

manner by providing a penalty of loss of one's vehicle for failure to pay fines when one has

failed to comply with the laws." Def.'s Mem. Pts. & Auth. p. 17.(A99.)  The District further

argues that D.C. Code §50-2623 as applied in this case, which permitted the District to sell

Plaintiff's car as an abandoned vehicle after it was impounded, serves "deterrent and punitive

purposes quite similar to those that a forfeiture statute serves."  See, APL. BR. p. 27.

One of the problems with the District's arguments, is that the District apparently does

not recognize that there must be a balancing of governmental and private interests (*Soldal v.

Cook County*, 506 U.S. at 71), including a consideration of the nature and quality of the

intrusions and the vehicle owner's property interests.  While D.C. Code §50-2201.03(k)(1) may

encourage compliance with the District's parking laws, it is nonetheless severe and

unreasonable to *seize a legally parked vehicle,* that is not impeding traffic or threatening public

safety and convenience, in order to collect  two (2) outstanding or otherwise unsettled parking

tickets. [17]  D.C. Code §50-2201.03(k)(1) is unreasonable, arbitrary and capricious and

---

[17]  The district court noted that "[t]he parking regulations [ ] were created out of 'public necessity' to address an increasing 'serious traffic congestion on the highways of the District' by 'the greatly increased use by the public of motor vehicles' and to promote 'the free circulation...necessary to the health safety, and general welfare of the public.' D.C. Code §50-2601."  The court stated "[t]he Council specifically found 'that the parking of motor vehicles on the highways of the District has contributed to this congestion to such an extent as to interfere seriously with the primary use of such highways for the movement of traffic[.]'"  D.C. Code 550-2601 (Chapter 26. Regulation of Parking. Subchapter I. General Provisions) supports the District's traffic rules generally and is not specific to §50-2201.03(k)(1), which permits immobilization or impoundment of a legally parked vehicle for two or more parking tickets.  Further, with regard to the rationale for its 2002 Parking Ticket Amnesty Program, the District was concerned with, among other things, "people not driving" and stated that "[t]he amounts owed, in many cases, [for unpaid tickets] were substantial and could represent a financial obstacle to persons seeking to obtain or renew their driver's license or vehicle registrations." Def.'s Mem. Pts. & Auth. p. 21-22. (A103-104.) The District further stated that "[i]n addition to the vociferous public outcry, it was uncertain whether the potential denial of these applications would result in increased collection or simply more people either not driving or driving with expired registration and operator's permits." *Ibid.*

constitutionally deficient.  The statute is overly broad, not sufficiently keyed to a legitimate state interest and oppressive in a constitutional sense.  Seizure of a vehicle for two unpaid parking tickets is a display of power, not an exercise of reason or judgment.

The constitutional violation was exacerbated because D.C. Code $50-2201.03(k)(1) (2001) did not require infractions to be admitted or deemed admitted in order to be considered as justification for a boot or tow.  Subsequent to 2002, the District's legislators in their wisdom amended the statute to provide that the District may consider as justification for a *boot* or *tow* only those infractions that an "owner was deemed to have admitted or that were sustained after a hearing."  D.C. Code §50-2201.03(k)(1) (amended). (A196.)  See, APL. BR. p. 22.  The District notes that the legislative history states that "the section was amended to 'reflect that vehicles will no *longer* be towed... based upon tickets for which the appeal rights have not yet expired.'" [18]  See, APL.BR. p. 23.

The District previously argued that Plaintiff's Fourth Amendment facial challenge of D.C. Code §50-2201.03(k)(1) was moot because the statute was amended in 2003.  See, Def.'s Mem. Pts. Auth. p. 15. (A97.)  See also, BR. p. 27.  The District now has conceded that argument.

The statutory amendment has not fully cured the constitutional violation, because D.C. Code §50-2201.03(k)(1), as amended, continues to permit immobilization or impoundment of a vehicle for as *few* as two *tickets* and may permit a boot or tow prior to the expiration of appeal rights for those tickets.  See, *Central Kentucky Production Credit Ass'n v. U.S.,* 846 F. 2d 1460, 1464; *Brockington v. Rhodes,* 396 U.S. 41, 43.  Specifically, the amended statute provides that the District may immobilize or impound a vehicle "against which there are 2 or more unpaid

---

[18]  **The District references Report on Bill 16-821, "Department of Motor Vehicles Service and Safety Amendment Act of 2006." See, APL. BR. p. 22-23.**

notices of infractions that the owner was deemed to have admitted or that were sustained after a

hexing, pursuant to § 50-2303.05, § 50-2303.06 or § 50-2209.02." See, D.C. Code §50-

2201.03(k)(1) (amended). (A196.) Since an appeal process is accorded after an administrative

hearing, appeal rights could extend beyond the 60-day period provided. in D.C. Code §50-

2303.05(d)(2) for an individual to respond to an infraction before the infraction is deemed

admitted. In order to fully comply with the stated legislative intent (APL. BR. p. 23) as

reflected in the legislative history (to reflect that vehicles will *no longer* be towed... based

upon tickets for which the appeal rights have not yet expired), the District may need to wait

more than 60 days (e.g., 90 days) before considering a ticket as justification for a boot or tow.

The District further states that courts have long recognized that state and local

government's substantial interest in traffic and parking enforcement can outweigh owners'

interest in avoiding the temporary loss of possession that boots *and tows* entail, noting that

"'the threat (and use) of use of the boot will prod owners to pay attention to tickets' and

concluding that '[i]t is certainly permissible for the government to induce them to do *so*'"

(quoting *Saukstelis v. City of Chicago* 932 *F.* 2d 1171, 1173). See, APL.BR. **p.** 19. In

addition, the District states that courts have long recognized the need for effective methods to

further that governmental interest and have acknowledged that a boot *or tow* "is often 'the **only**

feasible [ ] means of forcing repeat offenders, [in particular], to pay for or contest the tickets

they have received."' (quoting *Grant v. City of Chicago,* 594 *F.* Supp. 1441,1447). *Ibid*

(emphasis added with regard to the phrases *"and tows"* and "*or tow,"* since the court apparently

did not address impoundment of a vehicle).

The District cites two cases that address a local provision that permitted *immobilization*

of a vehicle against which there were 10 or more outstanding tickets. See, *Saukstelis v. City of*

*Chicago 932 F.* 2d 1171 (1991); *Grant v. City of Chicago,* 594 *F.* Supp. 1441 (1984). In

*Grant,* the court considered a facial challenge and held that the ordinance did not violate the

Fourth Amendment (even if the boot were viewed as a seizure it is not an unreasonable one.)

*Grant,* 594 F. Supp. at **145**1. Grant was decided in 1984 prior to *Soldal* in which the Supreme

Court held that the Fourth Amendment protects against unreasonable seizures of property

regardless of whether privacy or liberty is also implicated or the seizure is the outcome of a

search. and protects pure property interests even in settings other than law enforcement. See,

*Soldal v. Cook County,* 506 U.S. 56, 61-71 (1992). Further, in *Grant* the court considered the

reasonableness of a *boot* for 10 or more tickets, but apparently did not address the

reasonableness of impoundment and sale of a vehicle for outstanding tickets.

In *Saukstelis v. City of Chicago,* the court considered whether due process rights were

violated and stated that "it is not [irrational] to distinguish those with fewer than 10 tickets from

those who have accumulated 10 or more and to conclude that the threat (and use) of the boot

will prod owners to pay attention to their tickets." See, *Saukstelis,* 932 F. 2d at 1173. The

court stated that "[i]t is certainly permissible for the government to induce them to do so."

*Ibid.* In addition to requiring 10 tickets in order to boot a vehicle, 21 days advance notice also

was provided before placing a vehicle on an eligible for boot list. The court further stated that

"an owner who ignores 10 tickets together with their follow-up notices and also ignores the 21

day warning of eligibility for booting is in no position to insist that the city has put action ahead

of dialog." *Ibid.*

In contrast, the District's statute permitted immobilization *and impoundment* for as few

as *two* or more tickets (regardless of whether the tickets were admitted or deemed admitted).

See, D.C. § 50-2201.03(k)(1) (2001). Clearly, it is extreme and unreasonable to boot or tow,

and possibly sell, a vehicle for two unpaid parking tickets. Further, it is unreasonable to

consider tickets as justification for a boot or tow before the underlying infractions are admitted

or deemed admitted. *Ibid.* Plaintiff has made a sufficient showing to, at a minimum, survive

summary judgment.

-43-

**c.  To hold D.C. Code § 50-2201.03(k)(1) as unconstitutional, either facially or as applied, would not severely and unnecessarily limit the District's ability to ensure the efficient flow of traffic for the safety and convenience of the public.**

The District argues that to hold its boot and tow procedures as unconstitutional, either

facially or as applied, would "severely and unnecessarily limit the District's ability to ensure

the efficient flow of traffic for the safety and convenience of the public." APL.BR. p. 14.  See

also, APL.BR. p. 20.   However, Plaintiff's constitutional challenge (facial and as applied) is

relatively narrow and is limited to the District's statute that permits immobilization and

impoundment of legally parked cars against which there are as few as two outstanding parking

tickets.  D.C. Code § 50-2201.03(k)(1) (2001). See, BR. p. 26-28.

Plaintiff's constitutional challenge of D.C. Code § 50-2201.03(k)(1) would not affect

the District's authority, under applicable law, to seize vehicles that are used for criminal

activity.  See, ***Bennis v. Michigan***, 516 U.S. 442.  Further, the constitutional challenge would

not affect the authority of police to seize and remove from the streets vehicles ***impeding traffic***

or ***threatening public safety and convenience***, which the courts have ruled is beyond Fourth

Amendment challenge. ***South Dakota v. Opperman***, 428 U.S. 364.  (Consideration of "'the

existence of alternative less intrusive means' is not required when a vehicle must in fact be

moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle."

***Miranda*** 429 F.3d at 865 (quoting ***Colorado v. Betrine***, 479 U.S. 374 ).)

Moreover, the District has other means to satisfy its objective "to collect the debt [from

unpaid tickets] and promote both conformity with the law and prompt payment of fines.""

For example, the District could place a block on a  D.C. driver's license or vehicle registration

renewal when an individual has outstanding parking tickets.   Indeed, even after the District

sold Plaintiffs car, after seizing it purportedly to collect outstanding parking tickets, the

---

[19] *See,* Def.'s Mem. Pts & Auth p. 16. (A98.)

District did indeed block the renewal of her D.C. driver's license because the District asserted

one of those tickets was still unpaid and outstanding after the sale of her vehicle.  See, BR. p.

11 & 14.  Further, the District could utilize other collection methods and implement payment

plans to permit payment over time for amounts due for parking infractions in order to enable

vehicle owners to avoid boot, tow and ultimate sale of their vehicles.

Furthermore, the District could and should amend D.C. Code § 50-2201.03(k)(1) to

ensure the statute is reasonable under the Fourth Amendment and considers a proper balancing

of governmental and private interests in order to prevent prosecutions under a constitutionally

defective standard.

2. The district court erred in ruling that District Code permits seizure for two
   outstanding tickets and Plaintiff had two outstanding tickets therefore "no
   reasonable jury could find that the District's impoundment of the car was
   unreasonable under the Fourth Amendment."

   a. Compliance with D.C. Code does not determine the reasonableness of seizures
      under the Fourth Amendment, and it has not yet been determined that the
      District in fact complied with D.C. Code, policies, standard practices and
      operating procedures.

Under applicable D.C. law, the MPD, U.S. Park Police or an employee of the District of

Columbia Department of Transportation may direct the towing of any unattended vehicle

against which there are two or more outstanding tickets.   See, D.C. Code § 50-2201.03(k)(1).

The district court held that "[allthough the plaintiff disputes the defendant's claim that she had

five unresolved tickets at the time her car was seized on March 12, 2002…she does not dispute

that she had two unresolved parking tickets…[u]nder these circumstances, no reasonable jury

could find that the District's impoundment of the car was an unreasonable seizure under the

Fourth Amendment."   See, Mem. Opn. at 5. (A20.)

As discussed in greater detail in the Brief of Appellant, there are three issues. See, BR. p. 24-25. First, the question upon review of a state-approved seizure is not whether the seizure was authorized by state law, but rather whether the seizure was reasonable under the Fourth Amendment. See, *Sibron v. New York* 392 U.S. 40, 61; *Cooper v. California,* 386 U.S. 58, 61. The decision to immobilize and impound pursuant to the authority of a state statute does not, in and of itself, determine reasonableness of the seizures under the Fourth Amendment. See, *Mirundu v.* City of *Cornelius,* 429 F.3d *858,864.* Second, Plaintiff has made a facial challenge of D.C. Code §50-2201.03(k)(1), the statute that permits immobilization and impoundment of a vehicle for two outstanding parking tickets. Even if the statute were deemed to be constitutionally valid, there are remaining questions and genuine issues of fact with regard to whether Plaintiff's car was booted and towed pursuant to D.C. Code, policies, standard operating procedures and standard practices. See, BR. p. 20-22 and pages 21-28 above. Third, the touchstone of the Fourth Amendment is reasonableness. The reasonableness determination should reflect a careful balancing of governmental and private interests. *Soldal v. Cook County* 506 U.S. 56, 71. "Summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." *Gorman v. Wolpoff & Abramson, LLP,* 552 F.3d 1008,1017.

The District argues that "[w]hether a state follows state law is irrelevant to the constitutional analysis under the Fourth Amendment." *Virginia v.* Moore, 553 U.S. 164. See, APL. BR. p. 21. The District asserts that in any event it complied with its laws. *Zbid.* However, the District mistakenly states that Plaintiff "admits that when her car was booted (as well as when it was towed two weeks later), she had five unpaid tickets, on which the statutory 30-day answer period had passed" and argues "[t]his was more than sufficient under §50-2201.03(k)(1)(2001), and the district court correctly concluded that '[u]nder these

circumstances, no reasonable jury could find that the District's impoundment of the car was an unreasonable seizure under the Fourth Amendment.'" See, APL. BR. p. 21. In addition to misstating the facts in this case, the District quotes the district court out-of-context and in a potentially misleading manner. In fact, the district court stated that "[allthough the plaintiff disputes the defendant's claim that she had five unresolved tickets at the time her car was seized on March 12,2002...she does not dispute that she had two unresolved parking tickets...[u]nder these circumstances, no reasonable jury could find that the District's impoundment of the car was an unreasonable seizure under the Fourth Amendment." See, Mem. Opn. at 5. (A20.)

There continue to be material disputes with regard to the tickets that were considered as justification for the immobilization and impoundment of Plaintiff's car, which should preclude summary judgment against Plaintiff. See, **BR.** p. 20-22. The District has now expanded the controversy and states *for the first time* in its brief that Plaintiff had five unpaid tickets on the March 26, 2002 tow date, as well as, the March 12, 2002 boot date, and Plaintiff admits there were five unpaid tickets outstanding on the boot and tow dates. See, **APL.BR.** p. 21. This is clearly untrue. The district court acknowledged there was a factual dispute (stating "...plaintiff disputes the defendant's claim that she had five unresolved tickets at the time her car was seized on March 12,2002..."). See, Mem. Opn. at 5. (A20.) Further, with regard to tickets outstanding as of the March 26,20002 tow date, the District did not respond or object to Plaintiffs First Set of Requests for Admission that was entered into the record on May 3,2005 and admitted as true "[a]t the time Plaintiff's car was impounded on 3/26/2002, DMV records reflected two outstanding parking tickets...which aggregated $200 (including fines of $150 **and** a penalty of $50)..." and "[o]n 3/26/2002, Plaintiffs car was impounded for two outstanding tickets..." Pl. 1st Adm., Sec. II ¶¶ 3 & 8, respectively. (A169 & 170.)

Indeed, Plaintiff stated in her brief that there are material disputes about whether there were even two tickets that could have or should have been used as justification for the boot and tow of her vehicle and/or alternatively, the District considered tickets to be justification for a boot or tow prior to the date the tickets were deemed admitted and prior to the expiration of possible appeal rights for those tickets after **an** administrative hearing.   See, BR. p. 20-22 & 24-25.   *Based upon new information* provided in the District's brief, the record now reflects that the District's practice in 2002 indeed was to consider tickets as justification for a boot or tow after 30 days, which was prior to the date the tickets were deemed admitted (i.e., 60 days). See, APL. BR. p. 22.   The District notes that D.C. Code §50-2201.03(k)(1) was amended in 2003 and asserts the record makes clear the amendment *"changed* the previous practices authorized by the statute." APL. BR. p. 22.   The District notes that the legislative history states that the section was amended to "reflect that vehicles will *no longer* be towed…based upon tickets for which the appeal rights have not yet expired."   See, APL. BR. p. 23.

**b.   The facts and circumstances in this case demonstrate that the immobilization and impound of Plaintiff's car to collect outstanding parking tickets were unreasonable seizures in violation of the Fourth Amendment. D.C. Code §50-2201.03(k)(1) as applied to the facts in this case is unconstitutional.**

The Fourth Amendment protects against unreasonable seizures of property regardless of whether privacy or Liberty is also implicated or the seizure is the outcome of a search, and protects pure property interests even in settings other than law enforcement. *Soldal v. Cook County,* 506 U.S. 56, 61-71.   Whether a seizure is reasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. *South Dakota v. Opperman,* 428 U.S. 364, 375; *Cooper v. California,* 386 U.S. 58, 59.

The District's immobilization and impound of Plaintiff's late-model car for outstanding parking tickets (and subsequent sale of the car and retention of all of the sales

-48-

proceeds) unreasonably and meaningfully interfered with Plaintiff's property and possessory

interests in her vehicle and constituted unreasonable seizures of Plaintiff's property in violation

of the Fourth Amendment.  Am.Compl. ¶ 61. (A65-66.)  The District's actions were extreme

and severely disproportionate to the need presented, the collection of fines and penalties for

outstanding parking tickets.  *Ibid.*  The District's actions were oppressive in a constitutional

sense.

The District surprisingly argues that the facts and circumstances in this case "leave no

room for doubt" that the booting and towing of Plaintiff's car were "reasonable within the

meaning of the Fourth Amendment."  APL.BR. p. 18-19.   Indeed, the facts in this case

demonstrate that, when considering the totality of the circumstances, as well as, the facts and

circumstances around each seizure, the immobilization and impoundment of Plaintiff's vehicle

(and sale of the vehicle and retention of the sales proceeds) individually and in the aggregate

were unreasonable.  Further, although compliance with D.C. Code does not determine the

reasonableness of seizures under the Fourth Amendment (*Miranda*, 429 F. 3d at 864), it is

important to note that, due to material factual disputes, it has not yet been determined whether

Plaintiff's car was in fact immobilized and impounded (and sold) pursuant to District of

Columbia laws, policies and standard practices and operating procedures. See pages 21-28

above. Plaintiff has made a sufficient showing to, at a minimum, survive summary judgment.

### 1.    *March 12, 2002 Immobilization of Plaintiff's Vehicle.*

D.C. Code §50-2201.03(k)(1) permitted, but did not require, the District to immobilize

and impound vehicles against which there were two or more outstanding or otherwise unsettled

notices of infractions, without regard for the dollar amount of the tickets or the length of period

the tickets were outstanding.   See, D.C. Code §50-2201.03(k)(1) (2001).  In March 2002, the

District admittedly followed a practice of considering tickets to be boot or tow eligible after 30

-49-

days (before the 60-day period for admission had expired). APL. BR. p. 22. Although there are remaining factual disputes, the evidence demonstrates that the March 12,2002 immobilization of Plaintiffs car was unreasonable.

Plaintiff's car was legally parked and not impeding traffic or threatening public safety and convenience at the time it was immobilized. BR. p. 5. District agents or employees did not ticket Plaintiffs car on the date of immobilization. *Zbid.* The record reflects that Plaintiffs car was immobilized on March 12,2002 simply because Plaintiff had two or more unpaid parking tickets outstanding for 30 days or more. BR. p. 4.

Specifically, the District asserts that as of March 12,2002 Plaintiff had five unpaid parking tickets that were "delinquent" and outstanding for 30 days or more. However, as of the March 12,2002 boot date, three (3) of the five (5) infractions that were considered as justification for the *boot* were issued in January 2002 and were not yet deemed admitted and/or Plaintiff was still entitled to an administrative hearing for those tickets (Jan. 29, 2002 – NOI 511695074; Jan. 29,2002 – NOI 511695063; and Jan.10, 2002 – NOI 514657964). See, Claytor Decl., Ex. F. (A133.) In fact, Plaintiff had a hearing for NOI 511695074 (Jan. 29, 2002) on March 14,2002 and a hearing for NOI 514657964 (Jan.10,2002) on March 15,2002 at which time the hearing examiner waived the $100 penalty for NOI 514657964.[20] See, Claytor Decl. ¶¶ 9 & 10. (A117.) And, Plaintiff was appealing a fourth ticket, a December

---

[20] With regard to the January 10,2002 ticket, the District states that the "hearing examiner waived the late penalty on the ticket, after [Plaintiff]claimed she had not received notice of this violation." APL. BR. p. 9. In fact, Plaintiff stated that she "was not aware of" the Jan. 10,2002 ticket NOI 514657964" and she had "received notice about her right to a hearing...just prior to the boot date on or about March 12,2002." See, Claytor Decl. Ex. H. (A135.) See also, BR p. 6. Pursuant to D.C. Code §50-2303.05(d)(2), the District is required to send notice of the outstanding ticket and the impending deemed admission not more than 50 days after a notice of infraction is issued. (A191.) Although the District asserts that DMV records reflect that the notice was mailed on February 15, 2002 (APL. BR. p. 9), Plaintiff asserts that she did not receive the notice until on or about March 12,2002. BR. p. 6. At a March 15,2002 hearing for the infraction, the examiner found that Plaintiffs testimony was "credible and warrants mitigation." See, Claytor Decl. ¶10 & Ex. H. (A117 & 135.) The $100 penalty for the ticket was waived. *Ibid.*

2001 ticket.[21]    In addition, there are questions about the timeliness of application and application of payments made by Plaintiff and on her behalf, including an unapplied amount as of the boot date.   See, BR. p. 7 & 21.   See also, page 28 above.

If the underlying infractions were not yet admitted or deemed admitted, then fines **and** penalties were not yet *assessed* under D.C. Code §50-2303.05(d)(2) and the amounts due for the tickets were not yet past due or "**delinquent.**"[22]   Per §50-2303.05(d)(1), a person must answer an infraction within 30 days otherwise monetary penalties are imposed in addition to the potential fine.   Per §50-2303.05(d)(2), if a person fails to answer within 60 days, the infraction is deemed admitted and ***all penalties and fines are <u>assessed</u>.***   The District argues that in March 2002 it was acceptable to consider tickets as justification for a boot or tow after **30** days because D.C. Code §50-2201.03(k)( 1) permitted the district to boot or tow **a** car for two or more "outstanding or otherwise unsettled" notices of infractions  and the District asserts read together with §50-2303.05(d)(1), the terms "outstanding or otherwise unsettled" refer to any ticket that remained unanswered after 30 days.   **APL.** BR. p. 22.

However, the District's own legislators recognized a problem or potential problem(s) with seizing vehicles for unpaid tickets before those tickets were admitted and in their wisdom subsequently amended D.C. Code 50-2201.03(k)( 1) to provide that the District may consider

---

[21]   The District asserts that Plaintiff has not provided evidence of her appeal of the December 2001 ticket.   APL. BR. p. 8.   However, the appeal is knowledge peculiarly within the District's control and the District has not denied that Plaintiff was appealing the December 2001 ticket.   Further, the record reflects that Plaintiff had a hearing for NOI540049952 (12/18/01) and "the penalty was dismissed." See, Claytor Decl. ¶ 8. (AI 17.)  Plaintiff appealed the hearing examiner's ruling.

[22]   The District cites D.C. Code **§50-2302.05(d)**(1) as the statute that requires a person to answer a notice of infraction within 30 days before the imposition of penalties.   See, APL.BR. p. 7.   However, D.C. Code §50-2302.05(d) apparently addresses the answer for moving infractions. D.C. Code §50-2303.05(d) is applicable statute for Parking Infractions. D.C. Code **§50-2303.05(d)**(1) as amended by D.C. Act 13-289 in April 2001, states that, "[a] person to whom a notice of  infraction has been  issued shall answer within 30 calendar days of the date the notice was issued, or within a greater period of time as prescribed by the Director by regulation. Failure to answer the notice within this period shall result in the imposition of monetary penalties established by § 50-2301.05, in addition to the potential civil fine for the infraction." See, Pl. 1ˢᵗ Adm, Ex. R. (A191.)  D.C. Code §50-2303.05(d)(2), provides that "[i]f a person fails to answer within 60 days, or within a greater period of time as prescribed by the Director by regulation, the commission of the infraction  shall be deemed admitted and all penalties and fines shall be assessed." *Ibid.*

for boot or tow only those infractions that an "owner was deemed to have admitted or that were sustained after a hearing." D.C. Code § 50-2201.03(k)(1) (amended). (A196.) See, APL. BR. p. 22. The District notes that the legislative history states that "the section was amended to 'reflect that vehicles will *no longer* be towed…based upon tickets for which the appeal rights have not yet expired.'" [23] APL. BR. p. 22-23.

The District further argues that even if the tickets that were not yet admitted were discounted, there would still be two tickets that could be used as justification for the boot. See, APL. BR. p. 23. However, Plaintiff was appealing one of those two remaining tickets (Dec. 18, 2001-NOI 540049952), and there is a dispute with regard to the application and timeliness of application of payments made by Plaintiff and on her behalf. See, BR. p. 21.

### 2.    *March 26, 2002 Impoundment of Plaintiff's Vehicle.*

The District recognizes the impoundment as a second seizure of Plaintiff's car and indeed in its brief refers to the plural "seizures" of her vehicle. See, APL.BR. p. 1 & 18. On March 26, 2002, the District towed Plaintiff's car across the state line and impounded the vehicle at its Addison Road Lot in Maryland. The impoundment was more severe and burdensome than the boot. In addition to the loss of the use of and access to her vehicle, once the car was impounded daily storage fees accrued ($10 per day) and the vehicle was subjected to the possibility of physical damage while stored first at the District's Addison Road lot in Maryland and then after it was moved to its Blue Plains Lot in the District of Columbia.

Although there are remaining factual disputes, the evidence demonstrates that the March 26, 2002 impoundment clearly was unreasonable. Plaintiff's car was legally parked and not impeding traffic or threatening public safety and convenience at the time it was impounded.

---

[23] The District references Report on Bill 16-821, "Department of Motor Vehicles Service and Safety Amendment Act of 2006." See, APL. BR. p. 22-23.

BR. p. 5.  District agents or employees did not ticket Plaintiff's car on the March 26, 2002

impoundment date.  *Ibid.*  In its motion for summary judgment, the District asserted that

Plaintiffs car was towed across the state line to its Addison Road Lot and impounded because

two weeks had passed since the immobilization, and the District asserted that Plaintiff had at

least two unpaid parking tickets remaining and she had administrative hearings on these two

tickets and was found liable (referencing Def.'s Stmt. ¶¶ 9 & 10 (A81)).  See, Def.'s Mem. Pts.

& Auth. p. 15. (A97.)   The two outstanding tickets were issued in January 2002 (Jan. 29, 2002

– NOI 511695074 and Jan. 10, 2002 – NOI 514657964) and totaled only $200 (including fines

and penalties).  Plaintiff received an administrative hearing for the January 29, 2002 infraction

(NOI 511695074) on March 14, 2002.  Def.'s Stmt. ¶ 9. (A81.)  Plaintiff was not aware of the

January 10, 2002 infraction (NOI 514657964).  She had just received notice in the mail about

the impending admission for the infraction on or about March 12, 2002 (the immobilization

date).[24]  At a March 15, 2002 administrative hearing, the hearing examiner waived the penalty

for the January 10, 2002 ticket (NOI 514657964).  Def.'s Stmt. ¶ 10. (A81.)  On March 26,

2002, eleven days after Plaintiff was found liable at the administrative hearing for the ticket,

Plaintiffs car was towed by the District to its Addison Road Lot.  Def.'s Stmt. ¶ 6. (A81.)  As

of  March 26, 2002, neither ticket was 90 days old (a standard threshold for default) and the

January 29, 2002 ticket (NOI 511695074) was not even 60 days old as of the impoundment

date.  Moreover, the impoundment was tainted by the premature immobilization (see pages 49-

52 above).

---

[24] Pursuant to  D.C. Code §50-2303.05(d)(2), the District was required to send notice of an outstanding ticket and
the impending deemed admission not more than 50 days after a notice of infraction is issued. (A191.)  Although
the District asserts that DMV records reflect that the notice (Jan. 10, 2002 ticket NOI 514657964) was mailed on
February 15, 2002 (APL. BR. p. 9), Plaintiff asserts that she did not receive the notice until on or about March 12,
2002. BR. p. 6. At a March 15, 2002 hearing for the infraction, the examiner found that Plaintiffs testimony was
"credible and warrants mitigation."  See, Claytor Decl. ¶ 10 & Ex. H. (A117 & 135.) The $100 penalty for the
ticket was waived. *Ibid.*

In its brief, the District now attempts to argue that Plaintiff had five unpaid parking tickets as of the March 26, 2002 impoundment date. See, APL.BR. p. 21. The record on motion for summary judgment, however, reflects that there were two tickets outstanding on or about March 26, 2002, and there are remaining questions with regard to the application and timeliness of application of payments. In addition to the District's statements in its motion for summary judgment (as discussed in the preceding paragraph), the District did not respond or object to Plaintiff's First Set of Requests for Admission that was entered into the record on May 3, 2005 and admitted as true "[a]t the time Plaintiffs car was impounded on 3/26/2002, DMV records reflected two outstanding parking tickets, which aggregated $200 (including fines of $150 and a penalty of $50): ticket 511695074 issued 1/29/2002 and ticket 511657964 issued 1/10/2002" and "[o]n 3/26/2002, Plaintiffs car was impounded for two outstanding tickets..." Pl. 1st Adm. Sec. II ¶¶ 3 & 8, respectively. (A169 & 170.) The District did not contest the admissibility of Plaintiff's First Set of Requests for Admissions, thus, the admissions should be factored into the summary judgment decision.[25] See, *Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013 (11th Cir.); *Munoz v. International Alliance of Theatrical Stage Employees, Etc.,* 563 F.2d 205, 214 (5th Cir.). See, BR. p. 20. In addition, an April 19, 2002 DMV ticket printout reflects $200 due for two tickets. See, Pl. 1st Adm., Ex. C. (A174.) Moreover, the Towing and Impoundment Crane Form includes a manual notation *– Before processing $295* (which presumably includes the boot fee). See, Pl. 1st Adm., Ex. L. (A183.)

---

[25] Plaintiffs First Set of Requests for Admissions (Pl.1st Adm.) was served upon the District of Columbia via certified mail on December **7, 2004.** Many **of** the documents included as exhibits to Pl. 1st Adm. were previously submitted by the District of Columbia as exhibits to its Opposition to Plaintiff's Motion for Preliminary Injunction (to require the District to remit to Plaintiff proceeds from the sale of Plaintiffs car). (A31-51.) Plaintiff's Motion for Leave to enter into the record Pl. 1st Adm. was filed and served upon the District on or about February **18, 2005. (A10.)** The District **of** Columbia did not formally respond or object to Plaintiff's admissions or the motion. In open court on May **3,** 2005, the district court granted Plaintiffs motion as conceded (Minute Order **5/03/2005). (A1**1.)

Further, there is a dispute with regard to the application and timeliness of application of payments made by Plaintiff and on her behalf, including apparent overpayments **and** an unapplied amount(s). See, BR p. 7 & 21; *Am.* Compl.¶ 10. (A55-56.) Thus, Plaintiff's outstanding DMV balance on the boot and tow dates may have been and should have been less than that reported by DMV. *Ibid.* The District apparently ignores Appellant's Brief pages 7 & 21 and argues that Plaintiff neither elaborates on this claim nor substantiates it. See, APL. BR. p. 23. The District's own records, however, demonstrate, at a minimum, payment "irregularities."[26] BR. p. 7 & 21. For example, as of August 23, 2004, District records reflect an unapplied amount of $45, as well as, an overpayment of $45 for **an** 8/02/99 ticket, NOI 950844296. See, Claytor Decl., **Ex.** B. (A120 & 127.) In addition, there is an apparent $40 unapplied payment as of the March 12, 2002 boot date. See, Claytor Decl., **Ex.** F. (A133.) Further, the record reflects a number of instances where the penalty exceeded the original fine (pursuant to §50-2301.05 the penalty should equal the fine): NOI 518146355 (12/13/01), NOI 514638154 (11/23/01), NOI 974473006 (7/01/01), NOI 968696540 (1/05/01), NOI 526042650 (11/03/00), NOI 950844296 (8/02/99) and NOI 949979925 (9/27/98). See, Claytor Decl., Ex. B. (A120-127.) In addition, a $5 check payment for NOI 511695074 was credited on July **15,** 2002, more than a month after the car was sold at auction. See, Pl. 1st Adm., **Ex.** H. (A179.)

The District further argues that any payment dispute would be "immaterial" here because Plaintiff never claimed or adduced evidence that she paid all her tickets and states that Plaintiff admits she still had one unpaid parking ticket even after her car had been sold. See,

---

[26] Around the time Plaintiffs car **was** wrongfully seized and sold, there were well-publicized problems at DMV involving, among other things, employees illegally selling driver's licenses and fixing traffic tickets in exchange for payment. Although it has not yet been determined that these well-publicized problems are directly related to this case, the problems are nonetheless relevant at this stage in the proceedings because they provide evidence of, at a minimum, a pattern of unethical behavior. Indeed, DMV established an "integrity unit" to help safeguard against the kind of scandals that "rocked" the agency. See, "District Announces Revamping of DMV," *The Washington* Post, January 8, 2004. See, Pl. Opp. to Mot. for Summ. J./ or Mot. for Ext. to File, Attachment 3. (A206-207.)

APL.BR. p. 23.    In fact, Plaintiff stated that *DMV* records reflected one outstanding parking

ticket after her car was sold (not that there was one unpaid parking ticket).  BR. p. 11  Further,

Plaintiff need only show that she did not have two unpaid tickets outstanding on the boot and/or

tow date that could have been used as justification for the boot or tow in order to demonstrate

that the District did not comply with D.C. Code § 50-2201.03(k)(1) (2001).

### c. The facts in this *case* demonstrate that a boot is not the only feasible means of enforcing traffic law

The District states that "this case amply illustrates both the challenges the District faces

in trying to enforce its traffic laws and the importance of its statutory procedures in meeting

these challenges." APL. BR p. 20.   In actuality, however, this case demonstrates the serious

possible ramifications of an overly broad and arbitrary statute and a premature boot and tow

(including possible permanent loss of a vehicle).

The District asserts that Plaintiff "paid attention" to her tickets because her car had been

booted, which the District asserts "shows that, far from being unreasonable, the boot can at

times truly be 'the only feasible [ ] means' of enforcing the parking laws."   See, APL BR. p. 20

(quoting Grunt 594 F. Supp. at 1447).   As of the March 12, 2002 boot date, however, three (3)

of the five (5) infractions that were used as justification for the boot were issued in January

2002 and were not yet deemed admitted and/or Plaintiff was still entitled to an administrative

hearing for those tickets (Jan. 29, 2002 – NOI 511695074; Jan. 29, 2002 – NOI 511695063;

and Jan.10, 2002 – NOI 514657964).   See, Claytor Decl.  ¶ 8 & **Ex.** F.  (A117 &  133.)  And,

Plaintiff was appealing a fourth ticket, a December 2001 ticket (Dec.18, 2001 – NOI

540049952).

Moreover, the District's own records refute its assertions that Plaintiff "paid attention"

to the tickets because her car had been booted which shows the boot can at times truly be the

only feasible means of enforcing the parking laws.   For many years, Plaintiff resided in the

Georgetown section of Washington D.C., without off-street parking. The area is congested due to tourist attractions, shopping, restaurants and bars and university activities, and zone parking restrictions were not in place 24-hours a day. Although Plaintiff cannot attest to the exact number of parking tickets she received during the period from August 1998 to March 2002, she does acknowledge that she received and *paid* many parking tickets during that **period**.[27] However, despite the fact that Plaintiff received many tickets during the approximate 3 ½ year period (August 1998 to March 2002), District records show that during that time period Plaintiff's car was booted only two times prior to March 12, 2002 (boots on July 26, 1999 and Oct. 26, 1999). See, Claytor Decl. ¶ 5 & **Ex.** C. (A116 & 129.) Plaintiff paid the vast majority of her parking tickets, without a boot on her car to induce payment of those tickets. *Ibid.* Further, the records show that prior to December 2001 the vast majority of Plaintiff's parking tickets were uncontested and paid without a hearing. See, Claytor Decl., Ex. B. (A120-127.)

The District includes in its brief an out-of-context purported quote from a March 14, 2002 hearing for one of those tickets (a Jan. 29, 2002 ticket) and states Plaintiff stated that she had not answered the ticket because she had been "busy...with other things." APL. BR. p. 20. As of the March 12, 2002 boot date, the January 29, 2002 ticket was not yet deemed admitted because *60* days had not yet passed without a response to the infraction. Plaintiff received the January 29, 2002 ticket because her front license plate had been knocked or pulled off her vehicle and was not properly **displayed**.[28] Following the January 29, 2002 ticket date,

---

[27] Due to well-publicized problems at DMV, among other things, Plaintiff does not have complete confidence in DMV records. Around the time Plaintiffs car was wrongfully seized and sold, DMV had, among other things, well-publicized problems involving employees illegally selling drivers licenses and fixing traffic tickets in exchange for payment. DMV established a new "integrity unit" to help safeguard against the kind of scandals that "rocked" the department. District Announces Revamping of DMV, The Washington Post, January 8, 2004. See, Pl. Opp. to Mot. Summ. J./ or Mot. for Ext. to File, Attachment 3. (A206-207.)

[28] DPW Program Manager - Parking Services Administration's Abandoned Vehicles Operations -stated that at the time Plaintiff's car was sold at auction, the front tag was displayed in the windshield, which was the basis for one of Plaintiffs unresolved tickets. Jones Decl. ¶ 11. (A142.) In actuality, Plaintiff received the Jan. 29, 2002 ticket because for a brief period her front tag was not displayed. After receiving the Jan. 29, 2002 ticket, Plaintiffs tag

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiff's front license plate was displayed in clear view on the dashboard, which was

acceptable in the interim. In order to fully rectify the problem, however, Plaintiff had to

replace her license plate holder, which required the assistance of a mechanic or technician. At

the March 14, 2002 hearing, the examiner upheld the fine and peiialty for the January 29, 2002

ticket. If Plaintiff's car had not been booted on March 12, 2002, Plaintiff may have fully

corrected the problem prior to the expiration of the 60-day period and if so, at a hearing for that

ticket, the hearing examiner would likely have ruled that mitigation was warranted. The

premature boot impaired Plaintiff's ability to respond to the January 29, 2002 infraction (one of

the tickets DMV records show as outstanding on the March 26, 2002 tow date and the June **4,**

2002 auction sale date).

### 3. D.C. Code 50-2623 as applied is unconstitutional.

The District of Columbia asserts that it is reasonable for an individual to suffer

permanent, not temporary loss, of a vehicle due to two outstanding and unpaid parking tickets.

The District argues that D.C. Code 50-2201.03(k)(1) "acts as an enforcement mechanism to

allow the District to manage the parking of vehicles on the public streets in an orderly manner

by providing **a** penalty of loss of one's vehicle for failure to pay fines when one has failed to

comply with the laws." See, Def.'s Mem. Pts. & Auth. p. 17. (A99.) The District further

argues that D.C. Code §50-2623 as applied in this case, an abandoned vehicle statute, serves

"deterrent and punitive purposes quite similar to those that a forfeiture statute serves." See,

APL.BR. **p.** 27. However, the District argues that the sale of Plaintiff's vehicle **and** retention

of the sale proceeds purportedly pursuant to §50-2623 was not a seizure under the Fourth

Amendment. See, APL.BR. p. 24. Plaintiff asserts that it is appropriate to consider §50-2623,

as applied, when considering the reasonableness of the totality of the circumstances

---

was continuously displayed in the windshield, which was acceptable until the necessary license plate holder repair
was completed.

surrounding the seizures of Plaintiffs vehicle. Plaintiff has made parallel "as applied" claims with regard to 550-2623 under the Fourth and Fifth Amendments.

The facts and circumstances in this case demonstrate that, when considering the totality of the circumstances, as well as, the facts and circumstance around each seizure, the immobilization and impoundment Plaintiff's vehicle (and sale of the vehicle and retention of the sale proceeds) individually and in the aggregate were unreasonable. D.C. Code §50-2623 as applied to the facts in this case is unconstitutional. See further discussion below with regard to Plaintiffs Fifth Amendment challenge of 550-2623.

## C. Plaintiff Has Established Fifth Amendment Violations

### 1. As a matter of law, Plaintiff can prevail on her claim of Taking of Property Without Just Compensation.

Plaintiff was the sole legal owner of a late-model white Volkswagen Beetle (D.C. tag number AH3283). BR. p. 4. Plaintiff had a constitutionally protected property interest in that vehicle. On June 4, 2002, the District of Columbia sold Plaintiff's late-model car (with relatively low mileage) at auction as an "abandoned" vehicle. BR. p. 10. At the time the car was sold, there were ut most two unpaid parking tickets outstanding that totaled $200 (inclusive of penalties) plus Addison Road Lot tow and storage fees of $215 (and any Blue Plains Lot storage fees remaining after the May 29, 2002 hearing).[29]  See, Pl. 1st Adm., **Ex.** E. (A176.) (See also, pages 3-5 above for a discussion about the waiver of Blue Plains Lot storage fees). District records reflect that two payments were processed after the June 4, 2002 auction sale (a $100 payment on June 7, 2002 for NOI 514657964 and a $5 payment on July 15, 2002 for NOI 511695074), thus, reducing Plaintiffs total DMV balance to $310. See, Claytor Decl.,

---

[29] There is a dispute about the timeliness of application and application of payments made by Plaintiff and on her behalf. See BR. p. 7 & 21, as well as, page 28 above for a discussion about overpayments, unapplied amounts and possible misapplied payments and other issues with respect to the application and timeliness of application of payments.

**Ex.** D and Pl. 1st Adm., Ex. F & H. **(A130, 177 & 179.)** Plaintiff's car was sold for thousands

of dollars. BR. p. **10-11.** The District retained all of the proceeds from the sale of Plaintiffs

car, denied Plaintiff's claim for payment, refused Plaintiffs demands for the difference

between the sales price and the small amount that was due per DMV records, and refused to

apply the sales proceeds to the one remaining ticket (per DMV records) after the sale of the

vehicle. BR. p. **11.** Further, after the sale of the vehicle, the District blocked the renewal of

Plaintiff's driver's license because it alleged that one ticket was outstanding **($95 - NOI**

5 1**1695074).** *Zbid.*

        The district court stated that District of Columbia law (D.C. Code **§50-2623)** required

the proceeds from the sale of an abandoned vehicle to be applied first to the expense of the

auction and the cost of towing and storing and required any remainder to be deposited in the

Abandoned and Junk Vehicle Division Fund to be used by the Division to carry out its duties.

See, Mem. Opn. at **6. (A21.)** Further, the district court stated "[m]ore to the point, '[ t]he

government [is] not [ ] required to compensate an owner for property which it has already

lawfully acquired under the exercise of governmental authority other than the power of eminent

domain'" (quoting *Bennis v. Michigan* **516 U.S.** **442,452 (1996)** (citations omitted)), and

"'[p]roperty seized and retained pursuant to the police power is not taken for 'public use' in the

context of the Takings Clause.'" (quoting *AmeriSource Corp. v. United States,* **525** F.3d **1149,**

**1153** (Fed. Cir. **2008)).** *Zbid.*

        Similarly, the District argues that "because [Plaintiff's] car was towed **and** sold pursuant

to the District's police powers, and not 'for public use,' there was no constitutional taking in

this case." APL. BR. p. **28.** See also, APL. BR. p. **25-27.** The District also asserts that "D.C.

Code §50-2623(a) (2001), as applied in this case, serves deterrent and punitive purposes quite

similar to those that a forfeiture statute serves." APL. BR. p. **27.**

Although Plaintiff's car indeed was immobilized and impounded allegedly pursuant to

D.C. Code **50-2201.03(k)(1),** the car was sold and the sales proceeds retained purportedly

pursuant to an abandoned vehicle statute, D.C. Code **550-2623** (repealed), **"Sale** of abandoned

vehicle[s] at public auction; disposal of junk vehicles; disposition of proceeds." Under D.C.

Code **§50-2623,** "abandoned" vehicles and the proceeds from the sale of "abandoned' vehicles,

literally were taken for public use in that the statute required the net proceeds (after covering

the expense of the auction and the cost of towing and storing) to be used for the operation of

DPW's Abandoned and Junk Vehicle Division. *Zbid.*

The facts in this case demonstrate that the District did not lawfully acquire Plaintiff's

vehicle *(Bennis,* **516** U.S. **442,** does not apply). D.C. Code **§50-2623** provided the authority

for the District of Columbia to sell "abandoned" vehicles, not to sell vehicles against which

there were two or more outstanding parking tickets. While the District argues that "§ 50-

2623(a) **(2001), as** applied in this case, serves deterrent and punitive purpose quite similar to

those that a forfeiture statute serves" (APL. **BR.** p. **27),** the statute as written only permitted the

District to sell "abandoned" vehicles (defined in relevant part as a vehicle "that has remained

unclaimed for **45** days after proper **notice).**[30] If Plaintiff's car was not "abandoned" and more

specifically did not meet the statutory definition of an "abandoned" vehicle, the District did not

have statutory authority under **§50-2623** to sell Plaintiff's vehicle or to retain all of the

proceeds from the sale of the vehicle.

Plaintiff's car was not in fact "abandoned" and the car was not "abandoned" for

statutory purposes because the vehicle did not remain "unclaimed for **45** days after proper

notice." See, **BR. p. 13-19** and pages **29-35** above. See also, **AM.BR.** p. **12-17.** Moreover,

there are disputes with regard to other material facts that further demonstrate that the District

---

[30] *See,* **D.C. Code §50-2401(1)(E) & §50-2602(6)(E).**

did not "lawfully" acquire the vehicle.   For example, there are disputes about whether Plaintiff "claimed" her vehicle at the May **29, 2002** administrative hearing, the auction sale was stopped, a stay was granted and following the hearing Plaintiff was informed that she had until June **7, 2002** to retrieve her vehicle (See, BR. p. **17-19** and pages **33-35** above); about whether the District complied with its laws, policies and standard practices and procedures with regard to the immobilization and impoundment of Plaintiff's car and whether payments were properly and timely applied (See, BR. p. **20-22** and pages **21-28** above); and whether the District's seizures of Plaintiff's vehicle were in violation of the Fourth Amendment (See pages **36-59** above).

The District further argues that the fact that Plaintiff alleges the District did not lawfully acquire her car confirms that Plaintiff's claim is not properly brought and analyzed under the Takings Clause (citing *Lingle v. Chevron USA, Inc.*, 544 U.S. at **543)** and states her relief should lie under local law.  APL. BR. p. **29-30.**   As discussed in-depth in Amicus' briefs, unlawful exercises of the police power are not beyond the reach of the takings clause.  See, AM.BR. p. **17-21 & AM.** Rep. Br. p. **5-14. "***AmeriSource* does not mean that any action taken by the government under its police power, proper or improper, is immunized from a takings claim."  AM. Rep. Br.  p. **11.**   See also, *Innovair Aviation Ltd. v. United States* **(72** Fed. Cl. **415** and 83 Fed. Cl. **105).**  See, AM. Rep. Br. p. **10-14.**  Further, to the extent *Lingle* is relevant to this case,  it supports the validity of Plaintiff's claim (it is the appropriation of Plaintiff's car without compensation that gives rise to her claim, which is consistent with *Lingle).*  AM. Rep. Br. p. 15-19.  Moreover, Plaintiff can bring a **§1983** claim to remedy  a constitutional violation even where such a violation also runs afoul of state law.  See, **AM.BR.** p. **16-17.**  Overlapping remedies are generally irrelevant to the question of the existence of a cause of action under **§1983**.  *Zinermon v. Burch,* **494 U.S. 113, 124-125.** *Ibid.*

The District also argues that to the extent Plaintiff has a constitutional claim at all, it would be under the substantive due process and asserts that Plaintiff does not pursue any substantive due process theory.   APL. BR. **p.** 30.   Indeed, Plaintiff has made an "as applied" challenge of D.C. Code $50-2623 under the Fifth Amendment.   **See** further discussion below.

### 2.    D.C. Code §50-2623 is unconstitutional as applied to the facts in this case.

The District asserts that D.C. Code §50-2623 provided the authority for it to sell Plaintiff's car as an "abandoned" vehicle.   The District asserts that under §50-2623 it was *required* to retain all of the proceeds from the sale of her car and to apply the proceeds first to the expenses of the auction and the cost of towing and storing and to deposit any remainder in the Abandoned Vehicle Division Fund to be used by the Division to carry out its duties.

In its motion for summary judgment, the District argued that Plaintiff has set forth no basis indicating why D.C. Code $50-2623 should not be applied to her or how the application **to** her particular actions or circumstances was unconstitutional.  Def.'s Mem. Pts. & Auth. p. 12-13. (A94-95.)  The District now argues that $50-2623, as applied in this case, serves "deterrent and punitive purposes quite similar to those that a forfeiture statute serves."  See, APL.BR. p. 27.   Further, the District states incorrectly that Plaintiff admits that the purpose of §50-2623 was "[t]o encourage[e] compliance with the District's parking laws."  APL.BR. p. 27. In fact, Plaintiff stated that "[w]hile the District's statutes may serve the purpose of encouraging compliance with the District's parking laws, it is nonetheless severe and unreasonable to seize a legally parked vehicle for just 2 unpaid parking tickets."  BR. p. 28. Plaintiff's argument was made with regard to her constitutional challenge of $50-2201.03(k)(1), not §50-2623. (See, Fourth Amendment discussion above on pages 39-43.) D.C. Code §50-2201.03(k)(1) provided the authority for the District to immobilize and

impound a vehicle against which there were two or more outstanding tickets. D.C. Code §50-2623 (repealed), was titled "Sale of abandoned vehicle[s] at pubic auction; disposal of junk vehicles; disposition of proceeds," and provided the, authority for the District to sell "abandoned" vehicles (not to sell vehicles against which there were two or more outstanding parking tickets).

Plaintiff's car clearly was not in fact *abandoned*.[31]   See, BR. p. 16. See also, AM. BR. p. 15. n.4.    Plaintiff did not voluntarily relinquish her ownership rights in her late-model vehicle. Among other things, Plaintiff "claimed" her vehicle and had a hearing on May 29, 2002 to stop the sale of her car, she did not remove her personal property from the car after the May 29,2002 hearing, payments were applied to her outstanding tickets, and she attempted to retrieve her vehicle on June 7,2002. BR. p. 16. Further, as discussed above, the District did not satisfy its statutory notice requirements and provide "proper" notice **45** days prior to sale of the vehicle (and even if it had, Plaintiff claimed her vehicle at the hearing on May 29, 2002), thus, Plaintiffs car was not even "abandoned" for statutory **purposes**.[32]   See, pages 29-35 above. In addition, the fair market value of Plaintiff's car far exceeded the balance DMV asserts was due for unpaid tickets and storage and tow **fees**.[33]

---

[31] To show abandonment a party must prove (1) intent to abandon and (2) physical acts carrying that intent into effect. Zych *v. Unidentified Wrecked and Abandoned Vessel*, 755 F. Supp. 213. See, BR. p. 16.

[32] Pursuant to D.C. Code §50-2401(1)(E) & **§50-2602(6)(E),** an abandoned vehicle was defined in relevant part as a vehicle "that has remained unclaimed for 45 days after proper notice."

[33] At the time Plaintiffs VW Beetle was sold, its blue book value was approximately $13,000 and the cost to replace the car with a new comparably equipped VW Beetle was approximately $24,000 (including taxes and fees). BR. p. 11. At the time the car was sold, Plaintiff had at most two unpaid parking tickets that totaled $200 (inclusive of penalties) plus Addison Road tow and storage fees of $215 (and there is a dispute with regard to the application of payments made by Plaintiff and on Plaintiffs behalf so the balance should have been less). See, BR. p. 29-30 and Pl. 1st Adm., Ex. E. (A176.) The car was sold for thousands of dollars. BR. p.11. The District retained *all* of the proceeds and refused Plaintiffs demands for the difference between the sale price and the small amount that was due per DMV records for the one remaining ticket and fees after the sale of the vehicle. *Ibid.* See also, Pl. 1st Adm. Sec. II ¶ 14 and Ex. F & G. (A171 & 177-178.) Further, the District refused to apply the sales proceeds to that one remaining ticket per DMV records and after the sale of Plaintiffs vehicle, the District blocked the renewal of Plaintiffs driver's license due to that one alleged outstanding ticket. BR. p.11.

Furthermore, Plaintiff's car was *not* used for criminal activity or purchased with the proceeds from criminal activity.  Moreover, Plaintiffs car was legally parked and not impeding traffic or threatening public safety and convenience at the time it was immobilized. BR. p. 5.  The District purportedly immobilized, impounded and ultimately sold Plaintiffs car to collect at most two **(2)** outstanding parking tickets as of the auction sale date.  Although Plaintiff asserts that the seizures of her legally parked car are not beyond challenge under the "community caretaking" doctrine (the purpose of which is to remove vehicles that are *presently* impeding traffic or creating a hazard, see pages 37-39 above), it is nonetheless noteworthy that in *Miranda v. City of Cornelius,* the court held that "while the Supreme Court has accepted a deterrence rational for civil forfeitures of vehicles that were used for criminal activity, see *Bennis* [ ] the deterrence rationale is incompatible with the principles of the community caretaking doctrine."  *Mirundu v. City of Cornelius,* 429 F 3d *858, 866*.   The court further stated that "unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard." *Zbid.*  "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Ibid.*   Further, in Grunt, the court stated that the city is not attempting to punish owners for having 10 outstanding tickets but merely is trying to get them to respond to those tickets.  *Grant v City of Chicago,* 594 F.Supp. **1441, 1452.** (The boot fee is compensatory in nature to cover the cost of the boot and is not punishment. ***Zbid.)***

To the extent the District of Columbia contends that the sale of Plaintiff's car and the retention of the proceeds was authorized by District Code **§50-2623** or other D.C. Code, such D.C. Code is clearly unconstitutional as applied to the facts in this case.  Plaintiff has made a showing sufficient to, at a minimum,  survive summary judgment.

### 3. District deprived Plaintiff of property without due process of law

The District violated Plaintiffs rights under the due process clause because the District booted Plaintiff's car for unpaid parking tickets before the underlying infractions were admitted or deemed admitted; the District did not properly notify Plaintiff that her car was considered "abandoned" and would be sold at public auction as an "abandoned" vehicle on June 4, 2002; the District failed to provide Plaintiff with adequate pre- and post-deprivation hearings regarding the sale of the vehicle; and the District failed to provide adequate notice or hearing between the time Plaintiff had a hearing and was told that her car would not be sold (May 29, 2002) and the time it was sold on June 4, 2002.

### a. The District booted Plaintiff's car before tickets were admitted or deemed admitted thereby violating her due process rights.

The District violated Plaintiffs rights under the due process clause by immobilizing her *legally* parked car for unpaid parking tickets before the underlying infractions were admitted or deemed admitted. The District argues that Plaintiffs argument fails because due process guarantees an opportunity to be heard at a "meaningful time" and in a "meaningful manner" and in the context of a towing procedure, this guarantee is satisfied by a prompt post-deprivation hearing and Plaintiff had two hearings after the boot date for two of the tickets that were used as justification for the boot. *Cokinos v. District of Columbia,* 728 F.2d 502, 502-503. See, APL. BR. p. 31. The District further states that in *City of Los Angeles v. David* the court noted that "a predeprevation hearing...is impossible if the city is to be able to enforce the parking rules." *City of Los Angeles v. David,* 538 U.S. 715, 719. However, *Cokinos* challenged the constitutionality of a traffic regulation which allowed the District to tow *illegally* parked vehicles. See, *Cokinos v. District of Columbia,* 728 F.2d 502, 502-503. Similarly, in *City of Los Angeles v. David* the vehicle was illegally parked and towed from a spot where parking was prohibited. 538 U.S. 715, 716.

The District has not addressed the issue that Plaintiff raises, which is the District took
action and immobilized a *__legally parked__* vehicle to collect outstanding parking tickets before
the underlying infractions were admitted or deemed admitted and before fines and penalties
were assessed pursuant to D.C. Code **§50-2303.05(d)(2).**[34]  In Plaintiff's case, her car was
legally parked and there was no "special need for very prompt action" and the premature
seizures were not "necessary to secure an important governmental or public interest." See,
*Fuentes v. Shevin,* 407 **U.S.** 67, 91. See also, *U.S. v. Vertol,* 545 F.2d 648.

The District's legislators in their wisdom amended D.C. Code §50-2201.03(k)(1)(2001)
subsequent to March 2002 to provide that the District may consider for boot or tow only those
infractions that an "owner was deemed to have admitted or that were sustained after a hearing,
pursuant to D.C. Code § 50-2303.05, § 50-2303.06 or § 50-2209.02." See, D.C. Code §50-
2201.03(k)(1)(amended).(A196.) See, APL. BR. p. 22.  The District notes that the legislative
history states that "the section was amended to 'reflect that vehicles will *no longer* be towed.. .
based upon tickets for which the appeal rights have not yet expired.'" See, **APL.** BR. p. 22-23.
(An appeal may be filed after an administrative hearing, thus appeal rights could extend beyond
the 60-day period for admission provided in **§50-2303.05(d)(2).)**  The fact that the District's
legislators amended D.C. Code §50-2201.03(k)(1)(2001) to provide that the District may
consider as justification for *boot or tow* only those infractions that an "owner was deemed to
have admitted or that were sustained after a hearing," at a minimum, bolsters Plaintiff's Fifth
Amendment claims.

---

[34] D.C. Code **§50-2303.05(d)(2)** as amended in April 2001, states that, [i]f a person fails to answer within 60
days, or within a greater period of time as prescribed by the Director by regulation, the commission of the
infraction shall be deemed admitted and all penalties and fines shall be assessed." (A191.) D.C. Code §50-
2303.05(d)(1) provides that failure to answer the notice within 30 days, or within a greater period of time as
prescribed by the Director by regulation, shall result in the imposition of monetary penalties established by §50-
2301.05, in addition to the *potential civil fine* for the infraction. *Ibid.*

**1**

At the time Plaintiff's car was immobilized and impounded, it was *legally parked* and

**2**

not jeopardizing public safety or the efficient movement of traffic.[35]    The District asserts, and

**3**

the record reflects, that Plaintiffs car was seized as a result of unpaid parking tickets.[36]    Three

**4**

(3) of the five (5) infractions that were considered as justification for the March 12, 2002 boot

**5**

were issued in January 2002 and were not yet deemed admitted and/or Plaintiff was still

**6**

entitled to an administrative hearing for those tickets (Jan. 29, 2002 – NOI 511695074; Jan. 29,

**7**

2002 – NOI 511695063; and Jan. 10, 2002 – NOI 514657964).  See, Claytor Decl.¶ 8 & **Ex.** F.

**8**

(A117 & 135.)  See, BR. p. 21.  And, Plaintiff was appealing a fourth ticket, a December 2001

**9**

ticket (Dec. 18, 2002-NO1540049952).  BR. p. 21.

**10**

The District argued with regard to Plaintiff's Fourth Amendment claims that even if the

**11**

tickets that were not yet admitted were discounted, there would still be two tickets that could be

**12**

used as justification for the seizure.  See, APL. BR. p. 23.  As of the March 12, 2002 boot date,

**13**

however, Plaintiff was appealing one of those two remaining tickets (Dec. 18, 2002-NO1

**14**

540049952). And, there is a dispute with regard to the application and timeliness of application

**15**

of payments made by Plaintiff and on her behalf.  See, BR. p. 21.  See also, page 28 above.

**16**

**17**

Plaintiff has made a showing sufficient to, at a minimum, survive summary judgment.

**18**

**19**

### b. The District violated Plaintiff's due process rights by failing to provide "proper" or adequate notice and adequate hearings before Plaintiff's car was sold as an "abandoned" vehicle.

**20**

The District asserts that it sold Plaintiff3 late-model car and retained all of the proceeds

**21**

from the sale pursuant to D.C. Codes 50-2623, *Sale of abandoned vehicle[s] at public auction;*

**22**

*disposal of junk vehicles; disposition of proceeds.*    Pursuant to D.C. Code §§ 50-2401(1)(E)

**23**

**24**

**25**

[35]See, Pl. 1st Adm., Sec. II ¶¶ 16 & 17. (A171.)  Also, see Winchester Decl., Ex. A, which verifies that there were no tickets issued on March 12, 2002.(A140.)  Further, Claytor Decl., Ex. B which verifies there were no tickets issued on May 12, 2002 or any time thereafter. (A120.)

[36]See, Def.'s Stmt. ¶¶ 5 & 6 (A80-81) & Winchester Decl. ¶¶ 4-8 (A138-139) (See BR. p. 22).  See also, Am. Compl. ¶ 8. (A54-55.)  See also, Pl. 1st Adm., Sec. II ¶ 8. (A170.)

and 50-2602(6)(E), an abandoned vehicle was defined in relevant part as a vehicle "that has remained unclaimed for **45** days after proper notice."

The District argues that the purpose of the due process requirement of notice is to inform a person that the matter in which his protected interests are at stake is pending, and whether this purpose is met in any given case depends on the facts of the case. See, *Moreau v FERC*, 982 F 2d 556, 569. APL.BR. p. 32. Although the District admits that its statutory notice failed, the District assets that Plaintiff learned about the sale in time to prevent it and to reclaim her car. See, APL. BR. p. 32. See also, Def.'s Mem. Pts. & Auth. p. 7. (A89.)

Plaintiff, however, did not receive statutory notice and thus she did not know that her car was or would be considered "abandoned" if not claimed within **45** days and thus would be subject to sale at public auction as an "abandoned" vehicle. The undelivered written notice that was sent via certified mail by DPW stated that *failure to claim the car within* **45 days** *shall constitute a waiver of all right, title, and interest in the vehicle and shall constitute consent to the sale of the vehicle at public auction.* Jones Decl., **Ex.** C. (A146.) See also, Pl. 1st Adm., **Ex. N.**[37] (A185.) The notice further provided information about how to "claim" the vehicle and the amounts that had to be paid before the vehicle would be "released." *Zbid.*

The District asserts that on April 12, 2002, as required by D.C. Code §50-2622(a), it attempted to send the written notice via certified mail to **Plaintiff.**[38] See, Def.'s Stmt. ¶ 8. (A81.) However, due to a *"typographical error"* on the part of the District of Columbia, the

---

[37] A copy of the notice originally was included in the record as Exhibit E to Defendant's Opposition to Plaintiffs Motion for Preliminary Injunction. See Pl. 1st Adm., Ex. N. (A41.)

[38] There are minor inconsistencies between applicable D.C. laws and the language of the written notice sent by the District of Columbia. D.C. Code §50-2401(1)(E) defines in relevant part an abandoned vehicle as one "that has remained unclaimed for 45 days after proper notice." (emphasis added). Similarly, **§50-2402(a)(5)** required notification that the "abandoned vehicle would be sold at public auction if not reclaimed within 45 days after the date of the notice." (emphasis added.) The actual written notice that was sent by the DPW Abandoned and Junk Vehicle Division (and returned undeliverable) stated that "failure to claim the vehicle within forty five **(45) days** from **the date of arrival of this vehicle**, shall constitute a waiver of all right, title, and interest in the vehicle and shall constitute consent to the sale of the vehicle at public auction." (emphasis added). The written notice was dated 4/12/02; the vehicle arrived at the Blue Plains lot on 4/09/02. See, Jones Decl., Ex. C. (A146.)

notice was sent to an erroneous address. *Ibid* & Jones Decl. ¶ 8. (A81 & 142.) See also, *Am. Compl.* ¶12 & Pl. 1st Adm., **Ex. O.** (A56-57 & 186-187.) The District did *not* send the written notice to Plaintiffs last known address, **3305 O Street, N.W.,** as reflected in the DMV vehicle registration system and as required by statute. See, Claytor Decl., **Ex. A & B.** (A119 & 120.) Rather, the notice was sent to **3805 O Street, N.W.** See, Pl. 1st Adm., Ex.O. (A186-187.) The notice was returned to the District of Columbia as undelivered. *Ibid.* Apparently, the District did not attempt to resend the notice to Plaintiff's DMV address of record, but rather sent the notice a second time to the incorrect address. Opp. to Pl. Mot. For Prelim. Inj. p. 2. (A32.) **In** *Jones v. Flowers,* the court held that where the government knew a mailed notice of tax sale had been returned unclaimed, it should have taken additional reasonable steps to attempt to notify the property owner. *Jones v. Flowers,* 547 **U.S.** 220,225.

Moreover, the District did not comply with its statutory requirement mandating publication of information pertaining to abandoned vehicles. D.C. Code § 50-2622(b) required publication in a newspaper of general circulation for *two consecutive weeks* a notice that (i) describes any vehicle subject to sale, and (ii) informs the vehicle's owner of his or her statutory right to reclaim the vehicle. The District published notice regarding Plaintiff's vehicle just once, on April 13,2002. See, APL. BR. p. 10. See also, Def.'s Mot. for Summ. J., **Ex.** 4 (A151); Pl. 1st Adm., **Ex. P** (A188). Thus, Plaintiff did not receive either form of statutory notice. See pages 29-30 above.

The District acknowledged that its statutory notice failed. See, APL.BR. p. 32 & Def.'s Mem. Pts & Auth. p. 7. (A89.) However, the District asserts that Plaintiff "would have been" informed by DPW about the June 4,2002 auction when she visited the Blue Plains Lot on April 19,2002. Def.'s Stmt. ¶ 11. (A81.) In spite of the fact that the District admits that its statutory notice was "faulty," the District now has attempted to shift the burden of evidence to

the Plaintiff and asserts that Plaintiff has not presented evidence that she was not informed on

April 19, 2002.  APL. BR. p. 34-35.

Indeed, Plaintiff claimed and has provided evidence demonstrating that she did not

receive statutory notice.  Am. Compl. ¶¶ 28-30. (A60.)  See also, BR. p. 13-17.  The District

has provided no documentation of the alleged April 19, 2002 DPW notice other than a

statement in a declaration that accompanied its motion for summary judgment.  See, Jones

Decl. ¶ 9.  (A142.)  In that declaration, the District employee did not state that she informed

Plaintiff or even that Plaintiff *was* informed, but rather only that Plaintiff *would have been*

informed when she visited the Blue Plains Lot on April 19, 2002.  *Ibid.*  Further, the District

has provided no information or documentation about the content of the alleged DPW notice,

how and when the alleged notice was provided, and why, among other things,  such notice was

adequate and "proper" in lieu of the two forms of notice mandated by statute.  See, D.C. Code

§50-2622 (a) & (b).  Plaintiff asserts that she learned that her car was to be sold as an

"abandoned" vehicle in late May  2002 and immediately upon learning about the pending sale,

she requested a hearing (the May 29, 2002 hearing).   With regard to the alleged April 19, 2002

notice, the district court correctly held that "this disputed fact is a credibility question beyond

the province of summary judgment."[39]   Mem. Opn. at 8. n.5. (A23.)

The District also argues that because Plaintiff happened to learn about the June 4, 2002

sale in late May 2002 that cures any defect in statutory notice.  APL. BR. p. 36.   The District

argues that the 45 day notice requirement is a requirement of state law and not of due process

---

[39] The District court stated that "[t]he defendant surmises that plaintiff  'would have been  informed of [the auction] date when she visited the Lot' on April 19, 2002, but it has not provided any documentation of such notice. Jones Decl. ¶ 9."  Mem. Opn. at 8 n.5.   "The plaintiff disputes that she was so informed. Pl.'s Opp'n at 9." *Ibid.*   "While arguably the plaintiffs own exhibit indicating that the car was subject to auction, Pl.'s **Ex.** C to First Set if **Requests** for Admissions [**Dkt** No. 73-21, suggests perhaps inquiry notice, this disputed fact is a credibility question beyond the province of summary judgment."  *Ibid.*   The court refers to a 4/19/02 DMV ticket printout that Plaintiff requested and received from DMV (not DPW), which does not provide notice of the June 4, 2002 auction sale. See, Pl. 1st Adm., **Ex.** C. (A174.)

-71-

and  states are free to provide greater protections than the constitution requires and argues that is what the District has done and falling short of a local statute's notice is not a per se violation of due process. Ibid.  Similarly, the court held that "[e]ven if the car was sold in less than the statutory requirement of **45** days after receipt of proper notice...violations of state procedural requirements must be enforced in state court under state law.'" (quoting Brandon *v. D.C. Parole*, **823** F.2d **644, 650**)  Mem. Opn. at **9. (A24.)**   However, Plaintiff's car clearly was not in fact abandoned and the 45-day statutory notice requirement was the basis for defining her car as an "abandoned" vehicle and selling her car as an "abandoned" vehicle.   See, BR. p. **13-17** and pages **29-32** above.   (D.C. Code **950-2623** authorized the District to sell an "abandoned" vehicle defined in relevant part as a vehicle "[t]hat has remained unclaimed for **45** days after proper notice." D.C. Code §§50-2623, 50-2602(6)(E) & 50-2401(1)(E).)   Strict adherence to the statutory provisions should be mandated.  Furthermore, Plaintiff can bring a **§1983** claim to remedy  a constitutional violation even where such a violation also runs afoul of state law.  See, AM.BR. p. **16-17.**  Overlapping remedies are generally irrelevant to the question of the existence of a cause of action under **§1983**. *Zinermon v. Burch,* **494** U.S. **113, 124-125.**

Plaintiff was prejudiced by the District's failure to provide "proper" or adequate notice.  As soon as Plaintiff became aware of the pending sale of her car as an "abandoned" vehicle, she requested a hearing.  Plaintiff had a hearing on May **29, 2002,** just six days prior to the scheduled auction sale of her car on June **4, 2002.**  Indeed, Plaintiff asserts that at the May **29, 2002** hearing she "claimed" her vehicle and the auction was stopped and following the hearing she was informed that she had until June **7, 2002** to retrieve her car.  Nevertheless, the District sold Plaintiff's vehicle on June **4, 2002,** without warning, notice or opportunity for a further hearing.   If Plaintiff had received statutory notice or even adequate notice, in all likelihood, her car would not have been sold on June **4, 2002.**  Plaintiff has made a showing sufficient to, at a minimum, survive summary judgment.

**4. The District of Columbia violated Plaintiff's right to Equal Protection**

There are two components to Plaintiff's equal protection claim: District actions directed at Plaintiff (in a "spiteful effort to get her") and the District of Columbia's blanket 2002 Parking Ticket Amnesty Program that forgave *originalfines* and penalties for parking tickets (allegedly totaling millions of dollars). The 2002 Parking Ticket Amnesty Program, in and of itself, violated Plaintiffs right to equal protection and established a prima facie case, which should be sufficient to survive summary judgment. See further discussion below on pages 95-98.

The district court noted that to "succeed on a claim that the defendant has violated her Fifth Amendment right to equal protection, the plaintiff must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (quoting *Vill. of Willowbrook v. Olech, 528* **U.S.** 562, 564 (2000)). Mem. Opn. at 7. (A22.)  The court also stated that "'some forms of state action... by their nature involve [such] discretionary decisionmaking based on a vast array of subjective, individualized assessments' that they simply are not amenable to an equal protection challenge in the absence of a claim based on such suspect classifications as race or gender." (quoting *Engquist v. Or. Dep't of Agric.,* 128 **S.** Ct. 2146 (2008)). *Zbid.*  The court further stated that Plaintiff did not identify the individuals to whom she claims to be similarly situated or support her allegations with any evidence or counter the District's evidence that DPW, not MPD, booted, towed and sold her car at a regularly scheduled public auction with more than 100 other vehicles, pursuant to a rationally based law. Mem. **Opn.** at 8 (A23.)

Although Plaintiff is a woman (from New York) and a Republican, suspect classifications that may have been contributing factors, Plaintiff claims that she was singled out in a "spiteful effort to get her" primarily because, among other things, she filed a complaint about **MPD,** wrote letters to District officials, threatened to sue the District of Columbia and pushed for prosecution of crimes that were committed against her (actions that, for the most

1    part, are protected under the First *Amendment).* Am. Compl. ¶ 74. (A68.) See, BR. 35-36.

2    Neither in terms nor in interpretation is the Equal Protection Clause limited to protecting

3    members of identifiable groups. *Esmail v. Macrane,* 52 F.3d 176, 180.

4          The District stated in its motion for summary judgment that "there is no evidence that

5    MPD was in any way involved with the ticketing and towing of Plaintiff's **Car**" and "[t]he

6    tickets that Plaintiff challenged were issued by DPW parking officers." Def.'s Mem. Pts &

7    Auth. p. 23. (A105.) This is untrue. To the best of Plaintiff's knowledge, the two tickets that

8    the District asserts were unpaid as of the March 26, 2002 impoundment and the June 4, 2002

9    auction sale were issued by MPD officers and those tickets were the subject of March 14-15,

10   2002 administrative hearings. Pl. 1st Adm., Ex. C. (A174.) See, Def.'s Stmt. ¶¶ 9-10. (A81.)

11   Indeed, many of Plaintiff's parking tickets were issued by MPD. The District further stated

12   that DPW employees, not MPD, booted, towed and sold Plaintiff's car.[40] Def.'s Mem. Pts &

13   Auth. p. 23. (A105.) Even if true, however, this is irrelevant since MPD, DMV and DPW

14   work together regularly. Moreover, around the time Plaintiff's car was wrongfully seized and

15   sold, there were well-publicized problems at DMV involving, among other things, employees

16   illegally selling driver's licenses and fixing traffic tickets in exchange for payment. Indeed,

17   DMV established an "integrity unit" to help safeguard against the kind of scandals that

18   "rocked" the department.[41] In addition, MPD was involved in a well-publicized "email

19   scandal" that was reported in *The* Washington Post on April 5, 2001, as well as, alleged efforts

20   to cover up MPD's actions with regard to the arrests of **protestors**.[42] See, Committee on the

21

22   [40] There is an *apparent inconsistency* with regard to which department immobilized Plaintiffs vehicle. In its
     motion for summary judgment, the District stated that DMV is permitted by law to immobilize or impound a

23   vehicle and on March 12, 2002, the District immobilized Plaintiff's vehicle. Def.'s Stmt. ¶ 5. (A80.) A District
     employee stated that the documents show that DPW immobilized the vehicle. See, Winchester Decl. ¶ **5.** (A138.)

24   See also, Claytor Decl. ¶ 8 ("It is my understanding that on March 12, 2002, Plaintiffs car was booted by
     DPW."). (A117.)

25   [41] See, "District Announces Revamping of DMV," *The Washington Post,* January 8, 2004, included as Pl. Opp. to
     Mot. for Summ. J./ or Mot. for 30 Ext. to File, Attachment 3. (A206-207.)
     [42] See, "Police Coverup Alleged After Mass Arrests," *The Washington* Post, January *8,* 2004, included as
     Attachment 5 to Pl. Opp. to Mot. Summ. J./ or Mot. Ext. to File). (A217-218.)

1 Judiciary Draft "Report on Investigation of the Metropolitan Police Department's Practice in

2 Handling Demonstrations in the District of Columbia" (included as Attachment 4 to Pl. Opp. to

3 Mot. Summ. J./ or Mot. Ext. to File). (A208-215.)  These well-publicized problems present

4 evidence of a pattern of unethical behavior.

5      Further, the District asserts that Plaintiff has not adduced any evidence to support her

6 claim that the District acted in a "spiteful effort to get her."  APL. BR. p. 40.  In order to avoid

7 summary judgment, the non-moving party must make a showing sufficient to establish a

8 genuine dispute of material fact regarding the existence of the essential elements of her case

9 that she must prove at trial.  *Celotex Corp. v. Catrett,* 477 **U.S.** 317, 321-23.  As discussed

10 above (pages 20-35), it has not yet been determined whether the District in fact immobilized,

11 impounded and sold Plaintiff's vehicle pursuant to D.C. Code, policies and standard practices

12 and operating procedures.  Further, circumstantial evidence may be sufficient to prove a

13 conspiracy.

14      Plaintiff's Equal Protection claim is inextricably linked to other claims in the amended

15 complaint and cannot be fully resolved until those other claims, and related factual matters, are

16 resolved.  Nonetheless, Plaintiff has provided preliminary evidence of a pattern of apparent

17 policy violations, misrepresentations, errors and severe treatment that when viewed

18 individually may seem innocent and inconsequential, but in the aggregate provide evidence of

19 unequal treatment and a "spiteful effort to get her."  For example,

20
21
22   1. Plaintiff's car was *legally* parked when it was booted and towed in March 2002.
      Plaintiff's car was not ticketed on the boot or tow dates. See, Pl. 1st Adm., Section II
      ¶¶ 16 & 17. (A171.)  Also, see Winchester Decl., Ex. A & Claytor Decl., Ex. B, which
      verify there were no tickets issued on the March 12, 2002 boot date or any time
      thereafter.  (A140 & 120.)

23
24
25   2. The *60-day Period had not yet expired* and thus Plaintiff was not yet deemed liable
      pursuant to D.C. Code §50-2303.05(d)(2) for all five of the tickets that were used as
      justification for the boot of her car. Three of the tickets that were used as justification
      for the boot were issued in January 2002 and Plaintiff was not yet deemed liable for the

underlying infractions and/or she was still entitled to a hearing. And, Plaintiff was appealing a fourth ticket. In the District's motion for summary judgment, there was an apparent dispute or disagreement among District personnel about the District's policies and/or practices with regard to when a ticket is considered eligible as justification for a boot or tow (e.g., whether a ticket would be considered as justification after 30 or 60 days). The District now confirms that D.C. Code 50-2201.03(k)(1) (2001) permitted booting and towing prior to the date infractions were admitted or deemed admitted (i.e., after 30 days). APL. BR. p. 22. The District notes that in 2003 the law was amended and asserts that the record makes clear the amendment *"changed* the previous practices authorized by the statute.'' APL. **BR.** p. 22. The District, however, has not stated whether there was an explicit policy in place in March 2002 that permitted booting or towing before infractions were admitted or deemed admitted or whether it was only a practice and, if it was just a practice, whether the practice was followed consistently, occasionally or used in "special" situations. See pages 6-8 above.

3. There is evidence of payment *"irregularities."* For example, a *$5* payment was credited on *July 15, 2002,* more than a month after the sale of Plaintiff's car. See, Pl. 1st Adm., Ex. H. (A179.) Further, there is a $45 unallocated balance. See, Claytor Decl., Ex. **B.** (A120.)

4. Pursuant to §50-2301.05, the penalty amount for a parking infraction, which **is** not answered within 30 days, should equal the original fine. There are a number of instances where the *penalty exceeded the original fine* (by *$5): * NOI 5 18146355 (12/13/01), NOI 514638154 (11/23/01), NOI 974473006 (7/01/01), NOI 968696540 (1/05/01), NOI 526042650 (11/03/00), NOI 950844296 (8/02/99) and NOI 949979925 (9/27/98). See, Claytor Decl., Ex. *B.* (A120-127.)

5. A *stale dated November 19, 2001 ticket* (NOI 553108710) was suspiciously added to Plaintiff's record sometime after April 19, 2002. BR. p. 9. The ticket was not reflected on an April 19, 2002 DMV ticket printout for Plaintiffs vehicle. See, Pl. 1st Adm., Ex. C, D & **E.** (A174-176.) The ticket was dismissed by the hearing examiner at a May 29, 2002 administrative hearing. See, Claytor Decl. ¶ 12. (A1 18.)

6. There is an *apparent inconsistency* with respect to which department immobilized Plaintiffs vehicle. **In** its motion for summary judgment, the District stated that its law permitted DMV employees to immobilize or impound a vehicle and on March 12, 2002, the District immobilized Plaintiff's vehicle. Def.'s Stmt. ¶ 5. (A80.) A District employee stated that the documents show that DPW immobilized the vehicle. See, Winchester Decl. ¶ 5. (A138.) See also, Claytor Decl. ¶ **8** ("[i]t is my understanding that on March 12, 2002, Plaintiff's car was booted by DPW.") (A1 17.)

7. Notice of the impending constructive "abandonment" and sale of the vehicle was sent to an incorrect address due to a *"typographical error"* by the District. See, Def's Stmt. ¶ 8; Def.'s Mem. Pts. & Auth. p. 4; Jones Decl. ¶ **8.** (A81, 86 & 142.) See also, Pl. 1st Adm., Ex. **O.** (A186-187.)

8. The District published notice of sale in the *Washington Times just once, not for two consecutive weeks* as required by D.C. Code §50-2622(b). See, APL. BR. p. 10. See also, Def.'s Mot. for Summ. J., **Ex.** 4. (A151); Pl. 1st Adm., **Ex.** P (A188).

9. Plaintiff did not receive *actual notice* about the pending June 4, 2002 sale until *late May* 2002, a short-time before the scheduled June 4, 2002 sale date (and significantly less than the 45 days notice required by D.C. Code). See, BR. p. 9.

10. *Plaintifs car was sold* on June 4, 2002 even though Plaintiff had a hearing on May 29, 2002 to stop the sale of her vehicle, Plaintiff was told that her car would not be sold and following the hearing she was told that she had until June 7, 2002 to retrieve her car. See pages 33-35 above. Further, Plaintiff's car was released in DPW's property system with a notation *"All Tow & Storage Fees Release Per HR. 778/5/29/02."* See, Pl. 1st Adm., **Ex.** K (A182); Jones Decl., **Ex.** E (A148). At the time Plaintiffs late-model vehicle was sold, she had at most two tickets outstanding totaling $200. See, Pl. 1st Adm., **Ex. E.** (A180.)

11. Plaintiff's late-model car was sold for *thousands of dollars* (the sale price is a disputed fact). BR. p. 10-11. The District did not apply the sale proceeds to Plaintiff's one outstanding parking ticket (per DMV records) or DMV balance after the sale date or remit any of the proceeds to Plaintiff. BR. p. 11. Further, the District *denied Plaintifs claim* #63674 for payment. *Zbid* & Pl. 1st Adm., **Ex.** A. (A172.) In addition, the District did not account for Plaintiff's personal property that was contained in her car (including *2* laptop computers). *Zbid.*

12. In July 2003, after the sale of Plaintiff's car, the District *blocked renewal of Plaintiffs driver's license* because it asserted one parking ticket was unpaid after the sale of the vehicle.[43] BR. p. 11. See, Pl. 1st Adm., **Ex. I.** (A180.)

13. In July 2002, the District enacted a blanket ticket amnesty program that *forgave original fines,* as well as, penalties for tickets (allegedly *totaling millions of dollars).* See, Pl. 1st Adm., **Ex.** Q. (A189-190.) The District obscured the facts about the nature of the 2002 Parking Ticket Amnesty Program (either intentionally or unintentionally) by including an inaccurate description of the amnesty program in its motion for summary judgment together with an internal memo and a press release that apparently described a partial amnesty program (possibly an earlier program), but not the 2002 Parking Ticket Amnesty Program. See, discussion above on pages 5-6.

Further, the District's 2002 Parking Ticket Amnesty establishes a prima facie case and, n itself, should be sufficient to survive summary judgment. Plaintiff included a copy of D.C. Act 14-413 in her First Set of Requests for Admission that was entered into the record on May 3, 2005. Pl. 1st Adm., **Ex.** Q. (A189-190.) D.C. Act 14-413 was signed by then Mayor

---

[3] The amended complaint contained a typographical error and stated that the District blocked the renewal of Plaintiff's driver's license renewal on July 31, 2002. See, Am. Compl. ¶ 20. (A59.) Indeed, the District blocked he license renewal as of July 31, 2003.

Williams and Council Chairman Linda Cropp (dated July 16, 2002), but unlike other laws enacted around that time period it was not signed by the D.C. Corporation Council (now known as Attorney General). *Zbid.* In its motion for summary judgment, however, the District included a description of a partial amnesty program, not the 2002 Parking Ticket Amnesty Program. See, Def.'s Mem. Pts. & Auth. p. 22. (A104.) The District now admits that the 2002 Parking Ticket Amnesty Program forgave *uncollected fines, penalties and fees* imposed prior to January 1, 1997. APL. BR. p. 41. See discussion above on pages 5-6.

The District also included as an attachment to its motion for summary judgment a press release and an internal memo that purportedly described the 2002 Parking Ticket Amnesty Program. The press release was issued on **June 12, 2001** and described a partial amnesty program that forgave penalties, but not original fines, and was effective until **October 26, 2001.** See, Def.'s Mot. Summ. **J., Ex.** *5* (page 1 of 2). (A152.) The internal memo was dated **August 13, 2001** and also described a partial amnesty program. See, Def.'s Mot. Summ. J., **Ex.** 5 (page 2 of 2). (A153.) The 2002 Parking Ticket Amnesty Program forgave original fines, as well as penalties, and was signed into law on **July 16, 2002.**[44]

The District's inclusion of the internal memo and press release together with an inaccurate description of the 2002 Parking Ticket Amnesty Program in its motion for summary judgment may have misled the district court about the nature and provisions of the 2002 Parking Ticket Amnesty Program and may have affected the outcome of the case. Indeed, the district court did not address in its opinion the 2002 Parking Ticket Amnesty Program, even though it was part of the amended complaint and addressed in Plaintiff's opposition to the

---

[44] A July 3, 2002 *Wushington Post* Article, "D.C. Council Votes to Erase Traffic Tickets Williams May Veto $347 Million Amnesty," indicated that the Council for the District of Columbia voted to forgive millions of dollars of parking tickets and penalties incurred before 1997. **An** earlier *Wushington Post* article on June 21, 2002, "District Will Offer Partial Amnesty on Parking Tickets," stated that the District was planning to forgive penalties on pre-1997 tickets, which totaled $130 million, and to permit individuals to work out payment plans for the original ticket balances. The Council extended the amnesty to include not just penalties, but also the original fines.

District's motion for summary judgment.   See, Am. Compl. ¶ 22 & 76. (A59 & 69.) See also,

Pl. Opp. p. 6-7 &  16-17. (A224-225 & 234-235.)

In explaining its justification for the 2002 Parking Ticket Amnesty Program (which the

District asserts came about when it instituted a new system), the District stated:

> "[t]he amounts owed, in many cases [for unpaid tickets], were substantial and could
> represent a financial obstacle to persons seeking to obtain or renew their driver's
> licenses or vehicle registrations.  In addition to the vociferous public outcry, it was
> uncertain whether the potential denial of these applications would result in increased
> collections or simply in more people either not driving or driving with expired
> registration and operator's permits."  See, Def.'s Mem. Pts. & Auth. p. 21-22. (A103-104.)

In contrast, Plaintiff has a history of payment of a large number of parking tickets

*during and after the amnesty period*.  Also in contrast, Plaintiff's late model VW Beetle with

relatively low mileage was sold for *at most two outstanding parking* tickets totaling at most

$200 (plus tow and storage fees).[45]   Pl. 1st Adm., Ex. E. (A176.)  Plaintiff purchased the VW

Beetle new for more than $20,000 (including taxes and fees). BR. p. 11. The District sold the

car for thousands of dollars and refused to remit to Plaintiff any of the proceeds and did not

apply the proceeds to Plaintiff's outstanding DMV balance. *Ibid.*  Further, after selling

Plaintiff's car after purportedly seizing her *legally* parked vehicle to collect unpaid tickets, the

District blocked the renewal of her driver's license because it asserted one of those tickets

remained unpaid and outstanding after the sale of the vehicle.  *Zbid.*

Plaintiff was treated differently than the vehicle owners and drivers who received the

benefit of the 2002 Parking Ticket Amnesty Program (forgiveness of *original fines* and

penalties for parking tickets) and, as discussed above, differently than other vehicle owners

with two (or a few) parking tickets outstanding.  Indeed, there would be a "vociferous public

outcry" if vehicle owners were routinely treated in the manner Plaintiff was treated.  Plaintiff

---

[45] **Plaintiff has raised issues about the application and timeliness of application of payments made by her and on her behalf.  See page 28 above.**

has been treated differently than others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech, 58* US 562; *Esmail v. Macrane, 52* F. 3d 176. The District's differential treatment was not the result of prosecutorial discretion honestly exercised, but of an orchestrated illegitimate desire and effort to "get her" in part because she exercised her *First Amendment* rights. Plaintiff's claims therefore must survive summary judgment.

### D.    Pro Se Plaintiff Did Not Concede Her Common Law Claims

Plaintiff did not concede her Common Law claims and a fair read of her opposition to defendant's motion for summary judgment demonstrates that she responded to the central arguments made by the District even if the responses were not labeled as such. See, AM. Rep. Br. p. 19-23; AM. BR. p. 24;  &  BR. p. 36. Although Plaintiff may not have structured her opposition as an attorney would have done, much of the substance of Plaintiffs opposition "directly rebuts arguments advanced by the District" and "belies any suggestion that she intended to concede anything." See, AM. BR. p. 22. See also, AM. BR. p. 23-25. Further, in her opposition Plaintiff explicitly stated that she "opposes Defendant's motion for summary judgment" and there are "issues with regard to material facts" and "genuine issues for trial." See, Pl. Opp. p. 1. Moreover, pro se pleadings should be subject to less stringent standards than pleadings drafted by attorneys. The District suggests that such leniency is limited to prisoner cases. APL. BR. p. 46-47. Leniency is not necessarily limited to prisoner cases. See, AM. Rep. Br. p. 19-20. Indeed, a second category of cases in which courts have granted leeway are those in which litigants bring suit under remedial statutes, particularly involving civil rights. See, *MacLeod v. Georgetown Univ. Med. Ctr.,* 736 A. 2d 977, 980. *Ibid.*

The District mischaracterizes arguments made by Plaintiff in her brief (BR. p. 36) and incorrectly states that Plaintiffs "self-admitted" reason for not responding to the District's arguments countering her common law claims is that she "saw no reason to respond" because the District did not meet its burden of identifying evidence that demonstrates there is no genuine issue of material fact.   See, APL. BR. p. 45.   While Plaintiff indeed asserts that the District did not meet the standard for summary judgment,  Plaintiff *did* respond to the District's arguments in her opposition to Defendant's motion for summary judgment.   The District ignored, among other things, the following paragraph in the Appellant's Brief in which Plaintiff states  (BR. p. 36) :

> "Moreover, there are at least four material facts in dispute that are relevant for resolution of Plaintiffs Common law claims that were directly addressed in Plaintiffs Opposition to Def's Mot. Summ. J.
> 1. There is a dispute with regard to the number of tickets considered eligible for boot and tow and disputes with regard to compliance with District policies.   Pl. Opp. p. 4 & 7-8.
> 2. Plaintiffs car was not abandoned and Plaintiff did not receive statutory notice.  Pl. Opp. p. 14-16 & 8-9.
> 3. A Stay of the June 4, 2002 auction was granted and Blue Plains storage fees were waived at the May 29, 2002 hearing.   Pl. Opp. p. 9-11 & **5.**
> 4. Plaintiff was informed that she has until June 7, 2002 to retrieve her car and the District acknowledges that on June 7, 2002, Plaintiff went to the Blue Plains lot to retrieve her vehicle.  Pl. Opp. p. 10."

For each claim, Plaintiff has made a strong showing sufficient to establish the existence of elements essential to her case that she must prove at trial.   See, ***Celotex Corp. v. Catrett,*** 477 **U.S.** 317, 321-23.   In ruling on a motion for summary judgment, the court should draw all justifiable inferences in the light most favorable to the Plaintiff, as nonmoving party.  ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 255.   Summary judgment is appropriate **only** if, when drawing all reasonable inferences supported by the evidence in favor of the Plaintiff, the court finds that no genuine disputes of material fact exist and that the district court correctly applied the law.   See, ***Celotex Corp. v. Catrett,*** 477 **U.S.** 317, 321-23.   In the unlikely event

Plaintiff's constitutional claims were dismissed, the district court would retain jurisdiction over

Plaintiffs common law claims pursuant to 28 U.S.C. §1367.

**1.**    Conversion (Count VI)

The District of Columbia argues that Plaintiff cannot meet the first element of the tort,

*an **unlawful** exercise **of ownership dominion*** or control, because the District asserts that its

exercise of control over Plaintiff's car was never unlawful. See, APL. BR p. 47.   The District

argued in its motion for summary judgment that its control was never unlawful because it

asserted there were at least two unpaid parking tickets from the time the District exercised

control over Plaintiff's car on March 12, 2002 when DMV immobilized the vehicle, through

the time the car was sold at auction on June 4, 2002.   See, Def.'s Mem. Pts. & Auth. p. 25.

(A107.)  The District now asserts that Plaintiff had five unpaid tickets outstanding for 30 days

or more (not all of which were admitted or deemed admitted as of the boot date or outstanding

as of the tow date) and argues that was sufficient to boot and tow under D.C. Code §50-

2201.03(k)(1) (2001). See, APL. BR. p. 48. See also, pages 21-28 above.  Further, the District

asserts that Plaintiffs car was sold pursuant to §50-2623 and the sale was not conversion, even

though the District admits that its statutory notice (that the car would be sold as an

"abandoned" vehicle if not claimed within 45 days) was defective. See, APL. BR. p. 48-49.

As discussed above, there are material disputes about the legality of the District's

exercise of control over Plaintiff's vehicle and the proceeds from the sale of her vehicle, which

precludes summary judgment against Plaintiff.  See pages 20-35 above.  For example, there are

material factual disputes with regard to the legitimacy and timing of the immobilization and

impoundment of Plaintiff's vehicle and the tickets that were used as justification for the

District's actions.  See pages 21-27 above and BR. p. 20-22.  See also, Pl.'s Opp. p. **4** & 7-8.

(A222 & 225-226.)   Indeed, the District has added to the controversy by admitting in its brief

that in March 2002 it followed a practice of using tickets as justification for a boot or tow prior to the date the tickets were admitted or deemed admitted.[46]  See, APL. BR. p. 22-23.  In addition, there is a dispute with regard to the application and timelines of application of payments made by Plaintiff and on her behalf.  See page 28.  Moreover, Plaintiff's car was not "abandoned" and the District did not provide "proper" notice, thus, the District did not have statutory authority under D.C. Code §50-2623 to sell her car or to retain the proceeds from the sale.  See pages 29-32 above and BR. p. 13-17.  See also, Pl.'s Opp. p. 8-9 & 14-16. (A226-227 & 232-234.)  In addition, at a May 29,2002 administrative hearing Plaintiff asserts that she "claimed" her car, Blue Plains Lot storage fees were waived (e.g., 35 of 50 days storage) and the auction sale of her vehicle was stopped and a stay was granted.  See pages 33-35 above and BR. p. 17-19.  See also, Pl. Opp. p. 9-11. (A227-229.)  Although the District asserts there is no evidence that a stay of June 4,2002 auction was granted at the May 29,2002 hearing, the District now admits in its brief that the May 29,2002 hearing was held in part to review the *scheduled sale* of Plaintiffs car (APL. BR. p. 11) and admits that Blue Plains Lot storage fees were partially waived at that hearing (APL. BR. p. 12 & 51).

Plaintiff's car was not used for criminal activity or purchased with the proceeds from criminal activity.  Further, Plaintiff's car was *legally* parked and not jeopardizing public safety or the efficient flow of traffic when it was immobilized and impounded.  BR. p. 4.  The District purportedly seized and ultimately sold Plaintiff's car to collect ut most two outstanding parking tickets as of the auction sale date.  Pl. 1st Adm., **Ex.** E. (A176.)   D.C. Code §50-2201.03(k)(1) (2001) provided the authority for the District to immobilize and impound vehicles against which there were two or more outstanding tickets.  The District's actions with regard to the sale

---

[46]  **The District has not stated whether there was an explicit policy in place that permitted tickets to be used as justification for a boot or tow before the tickets were admitted or** "deemed **admitted" or whether it was only a practice and if it was just a practice whether the practice was followed consistently, occasionally or used in** "special" situations.

of Plaintiff's car, however, purportedly were taken pursuant to an abandoned vehicle statute,

D.C. Code §50-2623, "Sale of abandoned vehicle[s] at public auction; disposal of junk

vehicles; disposition of proceeds."

However, D.C. Code §50-2623 (repealed) provided authority for the District of

Columbia to sell "abandoned" vehicles, not to sell vehicles against which there were two or

more outstanding parking tickets.  An "abandoned" vehicle was defined in relevant part as a

vehicle "that has remained unclaimed for 45 days after proper notice."  D.C. Code §50-

2401(1)(E) & §50-2602(6)(E).  If Plaintiff's car was not "abandoned" and more specifically

did not meet the statutory definition of an "abandoned" vehicle, the District did not have

statutory authority under §50-2623 to sell Plaintiff's vehicle or to retain all of the proceeds

from the sale.  The facts in this case demonstrate that Plaintiff's car was not in fact abandoned.

See pages 29-32 above.  Moreover, the vehicle was not "abandoned" for statutory purposes

because the District failed to provide statutory notice ("proper notice" 45 days prior to sale.)

*Ibid.*  Even if the District had provided statutory notice, the car would not be "abandoned" for

statutory purposes because Plaintiff had a hearing on May 29, 2002 and she "claimed" her

vehicle (and the auction sale of her vehicle was stopped and a stay was granted).  See pages

29-35 above.

The District admits that it failed to provide the statutorily mandated written notice.  See,

Def.'s Stmt. ¶ 8 & Def.'s  Mem. Pts. & Auth. p. 7. (A81 & 89.)  Yet, the District surprisingly

has now attempted to shift the burden of evidence to Plaintiff and now asserts that Plaintiff

failed to produce evidence that she did not receive actual notice when she visited the District's

Blue Plain Lot on April 19, 2002.  See, APL. BR. p. 49.  See also, Def.'s Mem. Pts & Auth. p.

24-25. (A 106-107.)  Plaintiff claimed and indeed has provided evidence demonstrating that **the**

District did not provide statutory notice. *Am.* Compl. ¶ 28-30. (A60.)  See, pages 29-30 above

and BR. p. 13-17. The District **has** provided no documentation of the alleged April 19, 2002

notice by DPW, other than a statement in a declaration by a District employee stating that

Plaintiff *"would* have *been"* informed about the June 4,2002 auction when she visited the Blue

Plains Lot on April 19,2002. See Def.'s Stmt. ¶ 11 & Jones Decl. ¶ 9. (A81 & 142.) See also,

Pl. Opp. p. 8-9. (A226-227.) The District employee did not state that she informed Plaintiff or

even that Plaintiff "was" informed, but rather only that Plaintiff "would have been" informed

when she visited the DPW's Blue Plains Lot on April 19, 2002. *Zbid.* Further, the District has

provided no information about the content of the alleged DPW notice, how and when the

alleged notice was provided, and why, among other things, such notice was adequate and

"proper" in lieu of the two forms of notice mandated by statute.[47]  With regard to the alleged

April 19,2002 notice, the district court correctly held that "this disputed fact is a credibility

question beyond the province of summary judgment." Mem. Opn. at 8. (A23.)

The District further argues that the statute does not define "proper" notice. APL. BR. p.

49. (Pursuant to See, D.C. Code § 50-2401(1)(E) and 50-2602(6)(E) an "abandoned" vehicle

was defined in relevant part as one "that has remained unclaimed for 45 days after proper

notice.")  The District, however, argues elsewhere in its brief that related statutes should be

read together (See, APL, BR. p. 22, *Citizen's to Save Spencer County* v. *EPA,* 600 F. 2d 844,

870), yet it ignores its own statutes, including D.C. Code 950-2622 that mandated two forms of

notice. D.C. Code §50-2622(a) required the District to notify Plaintiff (and any lien holder of

record) via certified mail that the "abandoned" vehicle would be sold at public auction if not

reclaimed within 45 days after the date of notice. D.C. Code §50-2622(b) also required the

---

[47] The District also refers to an April 19,2002 DMV printout of Plaintiffs outstanding tickets as another source of notice. APL. BR. p. 49-50. See also, Pl. 1st Adm., **Ex,** C. (A174.) *See* also, BR p. 17. Plaintiff requested and received from DMV a copy of her outstanding parking tickets while visiting DMV to inquire about the status of the application of payments made for her vehicle. See, Pl. 1st Adm., **Ex,** C. (A174.) Although the DMV ticket printout includes the word "auction" in small inconspicuous print, it does not provide notice of the pending June 4, 2002 auction or any relevant information that was required by statute to be disclosed in a notice or that was included in the written notice that was sent by the District to a wrong address due to a *"typographical error"* and returned to the District undelivered. *Ibid.*

District to publish in a newspaper of general circulation for two consecutive weeks a notice that (i) described any vehicle subject to sale and (ii) informed the vehicle owner of his or her statutory right to reclaim the vehicle. See, D.C. Code $50-2622.

Plaintiff did not receive the written notice required by D.C. Code §50-2622(a) (and D.C. Code §50-2402(a)(5)), which purported to notify her that if her car remained unclaimed for 45 days from the date custody began at the Blue Plains Lot, all rights in ownership of the car would be waived and she would consent to sale of her car at public auction. The District admits that on April 12, 2002, the written notice was sent via certified mail to an incorrect address due to a *"typographical error"* and that the notice was returned undelivered. See, Def's. Stmt ¶ 8; Jones Decl. ¶ 8. (A81 & 142.) See also, Pl. 1st Adm., Ex. O. (A186-187.) The notice was not sent to Plaintiffs last known address as reflected in the DMV system and as required by D.C. Code, which was 3305 O Street, NW, but rather it was sent to a nonexistent address, 3805 O Street, NW. Pl. 1st Adm., Ex. O. (A186-187.) Further, the District published notice in the Washington Times once, not twice as required by statute. See, D.C. Code §50-2622(b). See APL. BR. p. 10. See also, BR. p. 8.

The District also asserts that Plaintiff could "easily have reclaimed her car on any day between the tow date (March 26) and sale (June 4) by simply paying what she owed to the District..." APL. BR. p. 48. However, the District ignores the facts in this case. On March 26, 2002, Plaintiff's car was towed across the state line and impounded for approximately 14 days in *Maryland* at the District's Addison Road Lot. BR. p. 4. For all intents and purposes, the car was inaccessible to Plaintiff from March 26, 2002 until April 19, 2002 (when Plaintiff learned that her car had been moved from *Maryland* to the District's Blue Plains Lot in the District of Columbia). In addition, there is a dispute with regard to the application of payments made by Plaintiff and on her behalf. BR. p. 7 & 21. Moreover, Plaintiff did not receive the required statutory notice that her car would be sold as an "abandoned" vehicle if *not*

claimed within 45 days after the vehicle's move to the Blue Plains Lot, because the District

sent the written notice via certified mail to an incorrect address due to a "*typographical* error"

on its part. BR. p. 7 & 8. Further, the District did not publish notice in a newspaper of general

circulation for two *consecutive weeks,* as required by statute. In late May 2002, upon learning

about the pending sale of her car as an "abandoned" vehicle, Plaintiff immediately requested an

administrative hearing (the May 29, 2002 hearing). BR. p. 9. In May 2002, Plaintiff also

learned that a third ticket (a November 19, 2001 ticket) was added suspiciously to her DMV

record sometime after April 19, 2002. *Zbid.* The November 19, 2001 ticket had a letter date of

May 10, 2002, and it did not appear on an April 19, 2002 DMV printout of outstanding tickets

for Plaintiffs vehicle. *Zbid.* At the May 29, 2002 administrative hearing, the examiner

dismissed the November 19, 2001 ticket and waived Blue Plains Lot storage fees (e.g., 35 days

of 50 days storage fees) and Plaintiff asserts that she "claimed" her car and the auction sale was

stopped and a stay of the auction was granted. See pages 33-35 above and BR. p. 9-10 & 17.

Following the May 29, 2002 hearing, Plaintiff contacted the Blue Plains Lot (as instructed by

the hearing examiner) and she was informed that she had until June 7, 2002 to retrieve her

vehicle. BR. p. 10. The District sold Plaintiffs car without warning on June 4, 2002 and

retained all of the proceeds from the sale of the car. BR. p. 10-11. Plaintiff has made a

showing sufficient to, at a minimum, survive summary judgment.


### 2.    **Promissory** Estoppel (Count **VII**)

The District argues that Plaintiff cannot meet the first element of her claim (the

existence of a promise) because the District asserts incorrectly that Plaintiff has not produced

evidence that a promise was made and, even if she had, her claim would fail because

**promissory** estoppel is based in quasi-contract. See, APL. BR. p. 52.

On May 29, 2002, Plaintiff had an administrative hearing to stop the sale of her late-model vehicle for *at most* two unpaid parking tickets totaling $200 and to review Blue Plains Lot storage and other fees that had accrued. See, APL. BR. p. 11. & Pl. 1st Adm. Ex. E. (A176). See also, BR. p. 9-10; Pl.'s Opp. p. 10 (A228). At that hearing, Plaintiff asserts she "claimed" her vehicle, the auction sale was stopped and a stay was granted, and the hearing examiner waived Blue Plains Lot storage fees (e.g., 35 days of the 50 days fees that had accrued). See, BR. p. 17-19. See also, Pl.'s Opp. p. 9-11. (A227-229.) (Also see discussion on pages 33-35 above with respect to factual disputes about the outcome of the May 29, 2002 hearing.) The hearing examiner informed Plaintiff she would be liable for storage fees from the May 29, 2002 hearing date up until the time she retrieved her car and Plaintiff was instructed to contact the Blue Plains Lot. See, BR. p. 10.

Following the administrative hearing on May 29, 2002, Plaintiff contacted the Blue Plains Lot, as instructed by the hearing examiner, and an individual acting in an official capacity as employee or agent informed her that her car would not be sold on June 4, 2002 and she had until June 7, 2002 to pick up the car. BR. p. 10. See also, Pl. Opp. p. 10. (A228.) Plaintiff relied on these promises *and the administrative hearing* and did not attempt to retrieve her car prior to June 4, 2002 or to remove from the car her personal property, including two laptop computers. See, BR. p. 37-38. It was reasonably foreseeable that Plaintiff would rely on these promises.

Indeed, there is evidence that Plaintiff's car was released in the abandoned property system on May 29, 2002, DPW's records reflect a notation "*All* Tow *& Storage Fees Release Per* HR. *778/5/29/02.*" See, Jones Decl. Ex. E. (A148) See also, Pl. 1st Adm., **Ex.** K. (A182). Moreover, the District did not object to Pl. 1st Adm., Sec. II ¶ 13, which states "DPW records reflect that all Blue Plains Tow & Storage Fees were released per Hearing No. 778 on 5/29/02." (A170.) See, BR. p. 10. The District also acknowledged that "[o]n June 7, 2002, Plaintiff

attempted to recover her car from the Blue Plains Lot, but was told that her Car had been sold at public auction three days earlier." See, Def.'s Stmt. ¶ 16. (A82.)

Further, the District has now admitted in its brief that Blue Plains Lot storage fees were partially waived at the May 29, 2002 hearing (a fact denied in its motion for summary judgment). See, APL. BR. p. 12 & 51. See also, BR. p. 17-19 and pages 3-5 above. The District also now admits that the May 29, 2002 hearing was scheduled in part to review the scheduled sale of Plaintiffs car. See, APL. BR. p. 11. Previously, the District had stated that "Plaintiff received an administrative hearing regarding the boot, tow and storage fees incurred on her Car." Def's Mem. Pts. & Auth. p. **4.** (A86.) See also, Def's Mem. Pts. & Auth. p. 27. (A109.) The possible reasons for waiving storage fees also would be rationale for stopping the sale of Plaintiff's car and granting a stay (e.g., faulty statutory notice, premature or early boot, payment dispute, etc.). Indeed, Plaintiff asserts that she "claimed" her car at the May 29, 2002 hearing, the auction sale of her vehicle was stopped and a stay was granted. See pages 33-35 above and See, BR. p. 17-19.

The District included in the record a partially illegible copy of a hand-written hearing record for the May 29, 2002 administrative hearing with respect to the review of storage fees and the scheduled sale of Plaintiffs car. See, Claytor Decl., **Ex.** I. (A136.) See also, BR. p. 19. For all other hearings, the District included typewritten hearing records. See, Claytor Decl., **Ex** . G, H & J. (A134, 135 & 137.) See also, BR. p. 19. For purposes of the motion for summary judgment, it is appropriate to infer that the typewritten record for HR. 778 (for the hearing to review storage fees and the scheduled sale of Plaintiff's car) would have been prejudicial to the District's case, which should establish a prima facie case as to the issues involved and shift the burden of producing evidence (e.g., "spoliation inference"). In ruling on the motion for summary judgment, the court should draw justifiable inferences in Plaintiff's favor. See,

*Anderson v. Liberty Lobby, Inc.*, 47? U.S. 242,255.  Plaintiff has made a showing sufficient to,

at a minimum, survive summary judgment.

### 3.    Negligent Misrepresentation (Count VIII)

The District incorrectly asserts that Plaintiff has not produced evidence of her claim that

an individual acting in his official capacity as employee or agent of the District of Columbia

informed her on May 29, 2002 that she had until June 7, 2002 to reclaim her car or that her

reliance on the alleged statement was reasonable.  See, APL. BR. p. 50-51.

On May 29, 2002, Plaintiff had an administrative hearing to stop the auction sale of her

car for at most two unpaid parking tickets totaling $200 and to review the Blue Plains storage

and other fees that had accrued.  See, APL. BR. p. 11. & Pl. 1st Adm. Ex. E. (A176).  See also,

BR. p. 9-10;  Pl.'s Opp. p. 10 (A228).  Plaintiff asserts at that hearing, she "claimed" her

vehicle, the auction sale was stopped and a stay was granted, and the hearing examiner waived

Blue Plains Lot storage fees (e.g., 35 days of 50 days fees).  See, BR. p. 17-19. See also, Pl.'s

Opp. p. 9-11. (A227-229.)  (Also see discussion on pages 33-35 above with respect to factual

disputes about the outcome of the May 29, 2002 hearing.)   Plaintiff was informed that she

would be liable for storage fees from the hearing date up until the date she retrieved her car and

she was instructed to contact the Blue Plains Lot.  See, BR. p. 10.  Following the administrative

hearing on May 29, 2002, Plaintiff contacted the Blue Plains Lot and an individual acting in an

official capacity as employee or agent informed Plaintiff that her would not be sold on June **4,**

2002 and he stated that she had until June 7, 2002 to pick up her car.  ***Zbid*** & Pl. Opp. p. 10.

(A228.)   Plaintiff relied on this information ***and the administrative hearing*** and did not attempt

to retrieve her car prior to June 4, 2002 or to remove from the car her personal property,

including two laptop computers.

The District now admits in its brief that the May **29, 2002** administrative hearing (**HR** 778) was held in part to review the *scheduled sale* of Plaintiffs car, as well as, Blue Plains storage fees. See, APL. BR. p. 11. In addition, the District now admits that Blue Plains fees indeed were partially waived at the May **29, 2002** hearing (this fact was denied in its motion for summary judgment). See, **APL.** BR. p. **12 & 51.** See also, **BR.** p. **17-19** and pages **3-5** above. The District also previously admitted that "[o]n June **7, 2002,** Plaintiff attempted to recover her car from the Blue Plains Lot, but was told that her Car had been sold at public auction three days earlier." See, Def.'s Stmt. ¶**16. (A82.)** Further, there is evidence that Plaintiffs car was released in the abandoned property system prior to its sale. DPW's records reflect a notation *"All Tow & Storage Fees Release Per HR 778/5/29/02."* See, Pl. **1**[st] Adm., Sec. II ¶ **13** & Ex. **K. (A170 & 182.)** See also, Jones Decl., **Ex.** E. **(A148.)**

Further, the District included in the record a partially illegible copy of a handwritten hearing record for the May **29, 2002** administrative hearing (to stop the sale of the car and to review Blue Plains Lot Fees). See, Claytor Decl., **Ex.** I. **(A136.)** For all other hearings, the District included typewritten hearing records. See, Claytor Decl., **Ex** . G, **H** & J. **(A134, 135 & 137.)** It is appropriate to infer for purposes of the motion for summary judgment that the typewritten record for the hearing would have been prejudicial to the District of Columbia's case, which establishes a prima facie case as to the issues involved and should shift the burden of producing evidence (e.g., "spoliation inference").

Plaintiff has presented evidence that she received representations that her car would not be sold on June **4, 2002** and that she had until June **7, 2002** to retrieve her vehicle. Plaintiffs actions clearly demonstrate that she relied on those representations and it was reasonable for Plaintiff to rely on such representations. Plaintiff has made a showing sufficient to survive summary judgment.

### 4.    Unjust Enrichment (Count IX)

In its motion for summary judgment, the District stated that pursuant to its laws, DPW is *not* permitted to reimburse Plaintiff for the proceeds of her car, or to apply the proceeds to her one outstanding ticket (per DMV) remaining after the sale of her vehicle. Thus, the District argued that its laws precluded Plaintiff from having a reasonable expectation that she should be paid for the value of her car, that the District should have reasonably expected to pay for the property seized and sold or that that there was a societal expectation that the District should have paid Plaintiff for her car. The District cited *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 495. See, Def.'s Mem. Pts. & Auth. p. 29-30. (Al1l-112.)

The District now argues that the elements of unjust enrichment as articulated in *Heller* are not applicable to this case. APL. BR. p. 53. The District asserts that unjust enrichment like promissory estoppel is quasi-contractual in nature. *Ibid.* Further, the District presents an overly simplistic, incomplete and misleading account of the facts in this case and states that Plaintiff refused to settle her delinquent account and chose to leave her car unclaimed. See, APL. BR. p. 54. The District argues that on these facts it did not sell Plaintiffs car or retain the proceeds from the sale "'under such circumstances that in equity and good conscience [it] ought not [have done so].'" *Harrington v. Trotman,* 983 A.2d 342, 346. *Ibid.*

The District purportedly seized and ultimately sold Plaintiffs late-model car to collect *at most* two (2) outstanding parking tickets as of the auction sale date.[48] See, Pl. 1st Adm., Ex. E. (A176.) Plaintiff's car clearly was not in fact abandoned and, as discussed above, Plaintiff's

---

[48] The District asserts that Plaintiff had five tickets remaining unpaid for 30-days or more and asserts this was sufficient ground to boot and tow her car. However, as discussed above, three of the five tickets were issued in January 2002 and the 60-day period had not expired thus the infractions were not yet deemed admitted and/or Plaintiff was still entitled to an administrative hearing for the tickets. See pages 21-28 above. And, Plaintiff was appealing a December 2001 ticket. *Ibid.* Further, the record upon summary judgment reflects that on or about the March 26, 2002 tow date, there were two outstanding tickets, and there were at most two tickets outstanding on the auction sale date. *Ibid.* Further, there is a dispute with regard to the application and timeliness of application of payments made by Plaintiff and on her behalf. Ibid.

car did not meet the statutory definition of an "abandoned" vehicle because the District did not

satisfy the notice and procedural requirements set forth in D.C. Code **§50-2622** and **§50-2402.**

See, pages **29-32** above and BR. p. **13-17.** See also, Pl. Opp. p. **8-9 & 14-16. (A226-227 &**

**232-234.)** Even if the District had satisfied its notice requirements, Plaintiff's car would not be

"abandoned" under the relevant statutes because Plaintiff had a hearing on May **29, 2002** to

stop the sale of her car, and at that time she "claimed" her vehicle and a stay of the auction was

granted. See, pages 33-35 above and BR. p. **9-10 & 17-19.** See also, Pl. Opp. p. **9-11. (A227-**

**229.)** Following the hearing, Plaintiff was informed that she had until June **7, 2002** to retrieve

her vehicle. BR. p. **10 &** Pl. Opp. p. **10.**

On June **4, 2002,** the District sold Plaintiff's late-model car and personal property

contained therein for thousands of dollars and retained all of the sale proceeds. BR. p. **10-**11.

The proceeds from the June **4, 2002** auction sale far exceeded the amount the District asserted

was due for the one outstanding ticket per DMV records after the sale date (i.e., **$95)** and

Addison Road Lot storage fees (i.e., **$215). BR. p. 9-10.** See, Pl. 1st Adm., Sec. II ¶ **14 & Ex.**

F & G. **(A171, 177 & 178.)** See also discussion on pages 3-5 above with regard to the waiver

of Blue Plains Lot storage fees. Further, the District of Columbia law that the District asserts

authorized it to sell Plaintiff's vehicle and precludes it from remitting to Plaintiff the sale

proceeds (net of the small disputed balance the District asserts was due per DMV records) was

an abandoned vehicle statute. See, D.C. Code **§50-2623.** As discussed above, Plaintiff's car

was not abandoned and did not meet the statutory definition of an "abandoned" vehicle

Thus, Plaintiff did have a reasonable expectation that she would be paid for the value of

her car (and other damages, etc.), that the District should have reasonably expected to pay for

the property and that that there is a societal expectation that the District should have paid

Plaintiff for her car. The District's retention of the proceeds from the sale of the vehicle was

unjust. Clearly, the District should not have sold Plaintiffs vehicle and once the vehicle was

sold, the District should *not* have retained the proceeds from the sale. Indeed, the District did sell Plaintiffs car and retain the proceeds from the sale "under such circumstances that in equity and good conscience [it] ought not [have done so]." *Harrington v. Trotman,* 983 A.2d 342, 346. (internal quotations omitted.) Plaintiff has made a showing sufficient to, at a minimum, survive summary judgment.

### 5. Intentional and Reckless Infliction of Emotional Distress (Count X)

The District argues that this tort is reserved for truly outrageous behavior and requires conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Browning v. Clinton,* 292 F. 3d 235, 248. (quotations omitted.) See, APL. BR. p. 55. The District argues that the booting and towing of Plaintiff's car are hardly that. *Zbid.* The District further argues that Plaintiff has failed to show the kind of emotional injury that the law requires to support of emotional distress. *Zbid.*

The District of Columbia acted with intent to deprive Plaintiff of her rights and/or in callous and reckless indifference to Plaintiff's constitutional rights. The District's actions violated Plaintiff's privacy, negatively affected Plaintiff's health and well-being and caused embarrassment and mental anguish and suffering. Plaintiff also experienced a loss and impairment of earnings for an extended time period. The District's extreme and outrageous conduct caused extreme emotional distress. The acts of the District of Columbia were accompanied by ill will, discriminatory treatment, recklessness, wantonness, oppressiveness, willful disregard for Plaintiff's rights and other circumstances tending to aggravate the injury and proof of those elements may be inferred from the acts of the District and from circumstantial evidence. *Daskalea v District of Columbia,* 227 F. 3d 433. Like the Equal Protection claim, Plaintiff's Intentional and Reckless Infliction of Emotional Distress claim is

linked to other claims in the complaint and cannot be fully resolved until those other claims,

and related factual matters are resolved.

Further, other circuits (e.g., 2nd Cir.) have characterized a deprivation of constitutional

rights as per se irreparable harm for purposes of a preliminary injunction and held that a

presumption of irreparable harm flows from a violation of constitutional rights.  Although the

irreparable harm finding is not directly relevant to this case, it is nonetheless indicative of the

seriousness of alleged constitutional violations.  Plaintiff has made a showing sufficient to

survive summary judgment.

### E.    The District's 2002 Parking Ticket Amnesty Program Violated Plaintiff's Right to Equal Protection

The 2002 Parking Ticket Amnesty (D.C. Act 14-413, "Motor Vehicle Registration and

Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002"), which was

signed on July 16, 2002 and forgave ***original*** fines and penalties for parking tickets issued prior

to January 1, 1997, violated Plaintiff's right to equal protection.    The District obscured the

facts about the nature of the 2002 Parking Ticket Amnesty Program (either intentionally or

unintentionally) by including an inaccurate description of the amnesty program in its motion

for summary judgment together with an internal memo and a press release that apparently

described a partial amnesty program (possibly an earlier program), but not the 2002 Parking

Ticket Amnesty Program.  See, BR. p. 40-42 and pages 5-6 above.

Plaintiff included a copy of D.C. Act 14-413 in her first set of requests for admission

that was entered into the record on May 3, 2005.  Pl. 1st Adm., **Ex.** Q. (A189-190.)  D.C. Act

14-413 was signed by then Mayor Williams and Council Chairman Linda Cropp (dated July 16,

2002), but unlike other laws enacted around that time period it was not signed by the D.C.

Corporation Council (now known as Attorney General). ***Ibid.***  In its motion for summary

judgment, however, the District included a description of a partial amnesty program, not the

2002 Parking Ticket Amnesty Program. The District stated that:

> "a program was put in place where individuals with outstanding tickets issued prior to
> April 9, 1997 would be forgiven the penalties that had incurred on the tickets, but would
> still have to pay the underlying fines on the tickets in order to clear their records with
> the DMV." See, Def.'s Mem. Pts. & Auth. p. 22. (A104.)

D.C. Act 14-413 states:

> "(c-1)(2) An owner of a motor vehicle or trailer shall not be liable for any parking fines,
> penalties or fees for a motor vehicle or trailer imposed prior to January 1, 1997, that
> have remained uncollected as of the effective date of the Motor Vehicle Registration
> and Operator's Permit Issuance Enhancement Emergency Amendment Act of 2002.
> Any such uncollected parking fines, penalties and fees are hereby forgiven." See, Pl. 1st
> Adm., Ex. Q. (A189-190.)

The District also included as an attachment to its motion for summary judgment a press

release and an internal memo that purportedly described the 2002 Parking Ticket Amnesty

Program. The press release was issued on **June 12, 2001** and described a partial amnesty

program that forgave penalties, but not original fines, and was effective until **October 26,**

**2006.** See, Def.'s Mot. Summ. J., **Ex.** 5 (page 1 of 2). (A152.) The internal memo was dated

**August 13, 2001** and also described a partial amnesty program. See, Def.'s Mot. Summ. J., **Ex.**

5 (page 2 of 2). (A153.) The 2002 Parking Ticket Amnesty Program forgave original fines, as

well as penalties, and was signed into law on **July 16, 2002.**[49]

The District's inclusion of the internal memo and press release together with an

inaccurate description of the 2002 Parking Ticket Amnesty Program in its motion for summary

judgment may have misled the district court about the nature and provisions of the 2002

Parking Ticket Amnesty Program and may have affected the outcome of the case. Indeed, the

---

[49] A July 3, 2002 *Washington Post* Article, "D.C. Council Votes to Erase Traffic Tickets Williams May Veto **$347** Million Amnesty," indicated that the Council for the District of Columbia voted to forgive millions of dollars of parking tickets and penalties incurred before 1997. An earlier *Washington Post* article on June 21, 2002, "District Will Offer Partial Amnesty on Parking Tickets," stated that the District was planning to forgive penalties on pre-1997 tickets, which totaled $130 million, and to permit individuals to work out payment plans for the original ticket balances. The Council extended the amnesty to include not just penalties, but also the original fines.

1    district court did not address in its opinion the 2002 Parking Ticket Amnesty Program, even

2    though it was part of the amended complaint and addressed in Plaintiffs opposition to the

3    District's motion for summary judgment.    See, Am. Compl. ¶¶ 22 & 76. (A59 & 69.)  See also,

4    Pl.'s Opp. p. 6-7 & 16-17. (A224-225 & 234-235.)

5        In explaining its justification for the 2002 Parking Ticket Amnesty Program (which the

6    District asserts came about when it instituted a new system), the District stated, among other

7    things, that:

8        "[t]he amounts owed, in many cases, were substantial and could represent a financial
9        obstacle to persons seeking to obtain or renew their driver's licenses or vehicle
         registrations.  In addition to the vociferous public outcry, it was uncertain whether the
10       potential denial of these applications would result in increased collections or simply in
         more people either not driving or driving with expired registration and operator's
11       permits." Def.'s Mem. Pts. & Auth. **p.** 21-22. (A103-104.)

12       In contrast, Plaintiff has a history of payment of a large number of parking tickets

13   *during and after the amnesty period.*  Also in contrast, Plaintiffs late model VW Beetle with

14   relatively low mileage was immobilized, impounded and ultimately sold for *at most two*

15   *outstanding parking* tickets totaling at most $200 (plus tow and storage fees) as of the auction

16
17   sale date.[50]  Pl. 1st Adm., **Ex.** E. (A176.)  Plaintiff purchased the VW Beetle new for more than

18   $20,000 (including taxes and fees).  BR. p. 11.  The District sold the car for thousands of

19   dollars and refused to remit to Plaintiff any of the proceeds and did not even apply the proceeds

20   to Plaintiff's outstanding DMV balance.  *Ibid.*  Further, after selling Plaintiffs car after

21   purportedly seizing her *legally* parked vehicle to collect unpaid tickets, the District blocked the

22   renewal of her driver's license because it asserted one of those tickets remained unpaid and

23   outstanding after the sale of the vehicle.   *Ibid.*

24

25

---

[50] **See discussion above on page 28 with regard to issues raised issues about** the **application and timeliness of application of payments made by Plaintiff and on her behalf.**

Although an amnesty program that forgave penalties for unpaid parking tickets but required vehicle owners to pay *the original fines* on such tickets, as described in the District's motion for summary judgment, may not have violated the equal protection component of the Fifth Amendment's Due Process Clause, the program that was in fact enacted (which *forgave original fines* and penalties for all uncollected parking tickets issued prior to January 1, 1997) indeed did violate equal protection. Moreover, the District's stated rationale for its 2002 Parking Ticket Amnesty Program is irrational and supports Plaintiff's Equal Protection claim.

The District's 2002 Parking Ticket Amnesty Program was neither rational, fair nor appropriately linked to a legitimate state interest. Plaintiff has made a showing sufficient to, at a minimum, survive summary judgment.

## VI.    CONCLUSION

The district court erred in granting the District of Columbia's Motion for Summary Judgment. Plaintiff has identified genuine issues of material fact and application of law and produced evidence which, if believed, is "sufficient to allow a reasonable trier of fact to find" in her favor. The merits of Plaintiff's case and appeal are "clear." Plaintiff respectfully requests that the court of appeals reverse the district court's opinion and remand the case for further proceedings. Further, Plaintiff respectfully requests declaratory relief, as appropriate.

Respectfully submitted,

Christine A. Tate, pro se
P.O. Box 9451
Washington, DC 20016
202-286-1795
catdcmes1@hotmail.com

**UNITED STATES COURT OF APPEALS**

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| **Christine A. Tate** | **Case No.: 09-7034** |
| **Appellant/Plaintiff** | |
| **vs.** | **District Court Case No.: 02-2216(RMU)** |
| **District of Columbia** | |
| **Appellee/Defendant** | |

**Certificate of Service**

I, Christine A. Tate, hereby certify that on this 29th day of September 2010, the

Reply Brief of Appellant was sent via first class mail to Mary L. Wilson, Senior Assistant

Attorney General, Office of the Attorney General for the District of Columbia, Office of the

Solicitor General, 441 4th Street, N.W., 1 Judiciary Square, 6th Fl., Washington, DC 20001

and Jeffrey M. Hahn, Miller & Chevalier Chartered, 655 Fifteenth St., N.W., Suite 900,

Washington, D.C. 20005.

Respectfully submitted,

Christine A. Tate, pro se
PO Box 9451
Washington, DC 20016
202-286-1795
catdcmes1@hotmail.com

*temporary mailing address*:
3230 Heather Grove Court
Jacksonville, Florida 32223